1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  TINHO MANG, #322146
   tmang@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   RICHARD A. MARSHACK

7

8              UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10 In re                              Case No. 8:21-bk-10635-SC

11 ALICIA MARIE RICHARDS,             Chapter 7

12          Debtor.                   TRUSTEE'S OMNIBUS OPPOSITION TO
                                      DEBTOR'S MOTIONS TO DISQUALIFY
13                                    OR RECUSE PRESIDING JUDGE

14                                    Hearing:
                                      Date:    September 14, 2022
15                                    Time:    11:00 a.m.
                                      Ctrm:    5C
16                                    Address: 411 W. Fourth Street,
                                               Santa Ana, CA 92701
17

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26

27

28

# TABLE OF CONTENTS

1. Summary of Argument and Preliminary Statement by Trustee ................................................1

2. Factual Background ................................................................................................................3

3. Legal Argument ......................................................................................................................7

    A.    Debtor fails to satisfy her substantial burden of overcoming the presumption of impartiality by presenting zero evidence. ..............................................................7

    B.    Debtor is not a criminal defendant. ..............................................................9

    C.    No evidence of extrajudicial bias is presented by Debtor. ............................................9

4. Conclusion ..............................................................................................................11

1

## TABLE OF AUTHORITIES

**Cases**

*Alicia Maria Richards v. Patricia Strang* ........................................................................... 2

*Ankenbrandt v. Richards,*

   504 U.S. 689, 703-04 (1992) ............................................................................... 11

*Barber v. Barber,*

   62 U.S. 582 (1859) ............................................................................................... 11

*Blank v. Sullivan & Cromwell,*

   418 F.Supp. 1, 4 (S.D.N.Y. 1975) ..................................................................... 10

California Superior Court Case No. 15D009634 ("Dissolution Action") ........................... 3

*Cheney v. United States District Court,*

   541 U.S. 913, 927-28 (2004) ................................................................................ 7

*First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler,*

   210 F.3d 983 (9th Cir. 2000) ................................................................................ 7

*Goodyear Tire & Rubber Co. v. Haeger,*

   581 U.S. 101, 137 S. Ct. 1178 (2017) ................................................................. 2

*Holland,*

   519 F.3d at 912 (9th Cir. 2008) ........................................................................... 8

*Holland,*

   519 F.3d at 913 ..................................................................................................... 9

*In re Larson,*

   43 F.3d 410 (8th Cir. 1994) .................................................................................. 7

*In re Mason,*

   916 F.2d 384, 385 (7th Cir. 1990) ....................................................................... 9

*Liteky v. United States,*

   510 U.S. 540, 555 (1994) .................................................................................... 10

*Liteky v. United States, infra*............................................................................................ 2

*Macdraw*,

  138 F.3d at 37 .................................................................................................... 10

*MacDraw, Inc. v. CIT Group Equipment Financing*,

  138 F.3d 33, 37 (2d Cir. 1998) .......................................................................... 10

*Maier v. Orr*,

  758 F.2d 1578, 1583 (9th Cir. 1985) ................................................................... 7

*Marshall v. Marshall (In re Marshall)*,

  403 B.R. 668, 679 (C.D. Cal. 2009) (*aff'd*, 721 F.3d 1032, 1041-45 (9th Cir. 2013)) ................... 7

*Mehmood v. Sarani*,

  2018 U.S. Dist. LEXIS 67214 at *3-4 (E.D. Cal. April 19, 2018)......................... 10, 13

*Richards v. Strang*,

  2022 Cal.App.Unpub. LEXIS 2686 at *25-26 (May 2, 2022). ................................. 1, 13

*Spector v. Diaz*,

  115 F.Supp.3d 1121, 1135 (C.D. Cal. 2015) ....................................................... 9

*Tumey v. Ohio*,

  273 U.S. 510, 535 (1927) ................................................................................... 9

*United States v. Holland*,

  519 F.3d 909, 912 (9th Cir. 2008) ...................................................................... 7

*United States v. Snyder*,

  235 F.3d 42, 45-46 (1st Cir. 2000) ..................................................................... 8

*Waters v. Howard Sommers Towing*,

  2013 U.S. Dist. LEXIS 201290 at *6 (C.D. Cal. February 4, 2013)....................... 10, 13

**Statutes**

28 U.S.C. § 1452(b) ................................................................................................. 6, 11

28 U.S.C. § 455(a) ................................................................................................... 7, 9

28 U.S.C. § 455(b)(1) ................................................................................................... 7

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES, DEBTOR, AND ALL INTERESTED PARTIES:

Richard A. Marshack, Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of

Alicia Marie Richards ("Debtor"), files this omnibus opposition to the five substantially identical

motions to disqualify or recuse presiding judge, filed as the following documents:

| Case No. | Short Title | Docket No. |
|----------|-------------|------------|
| 8:21-bk-10635-SC | *In re Alicia Marie Richards* | 829 |
| 8:21-ap-01094-SC | *Marshack v. Richards* (Remsen Family Trust) | 89 |
| 8:22-ap-01024-SC | *Marshack v. Richards* (Discharge action) | 46 |
| 8:22-ap-01056-SC | *Remsen v. Richards et al.* (Contract Breach Action) | 29 |
| 8:22-ap-01067-SC | *Richards v. Richards* (REMANDED) | 30 |

## 1.  Summary of Argument and Preliminary Statement by Trustee

A party moving for recusal bears a substantial burden of overcoming the presumption that the

presiding judge is not impartial. In this case, Debtor argues without evidence[1] that the Court harbors

a bias against her "because she is a white pro se litigant woman and the appearance of bias and

prejudice exists such that [Judge Clarkson's] impartiality might reasonably be questioned…" *See*

Motion at 6:14-16. She further speculates that the Court's entry of an order granting remand of her

family law case after the matter was fully briefed but before the hearing proves the existence of

"extrajudicial communications" – a serious and wholly baseless allegation. To the contrary, federal

courts often rule on motions and appeals where oral argument will not aid in the decision-making

process. This is especially true in this case where nothing Debtor could have said could have altered

the inescapable conclusion that a family law dissolution proceeding must be litigated in state court.

---

[1] As stated in by the California Court of Appeal in an unpublished decision entered on May 2, 2022, in Case
No. G059305.  "We understand Alicia believes she has not had her day in court to fully litigate her claims
against Ryal, Robinson, and Strang…These, and other disparaging remarks regarding the family law court, do
not belong in this appeal… because we are familiar with the basis for Alicia's many appeals challenging the
family law court's rulings, we do not appreciate her fabricated complaints about being unfairly denied the
opportunity to litigate her disputes." *See Richards v. Strang*, 2022 Cal.App.Unpub. LEXIS 2686 at *25-26
(May 2, 2022).

TRUSTEE'S OMNIBUS OPPOSITION TO MOTION TO DISQUALIFY

4859-8155-2691v.1/1015-148

1  Debtor's arguments for recusal are foreclosed by the Supreme Court's decision in *Liteky v. United*

2  *States*, *infra*.

3      Trustee observes that this is an easy case made unnecessarily difficult by Debtor. As set forth

4  below, Debtor's requests for recusal lack merit and Trustee is again called upon to waste precious

5  estate resources opposing five frivolous motions that are neither well-grounded in fact nor supported

6  by law. Federal courts have inherent power to impose sanctions for bad faith litigation to compensate

7  parties for attorneys' fees that would not have been incurred but for such tactics. *Goodyear Tire &*

8  *Rubber Co. v. Haeger*, 581 U.S. 101, 137 S. Ct. 1178 (2017). Trustee reserves the right to seek an

9  award of damages to compensate the Estate for Debtor's ongoing bad faith.

10      This is not the first time Debtor has filed a motion to recuse. Previously, she filed a motion to

11  disqualify Orange County Superior Court Judge Andre De La Cruz. The motion was denied and she

12  subsequently filed a lawsuit against Judge De La Cruz. In fact, in her most recent Amended

13  Schedule A/B filed on June 28, 2022, as Dk. No. 719 (p. 19 of 20), she asserts damage claims in

14  excess of $1 million against each of the following judicial officers: Superior Court Judge Andre De

15  La Cruz, Superior Court Judge Linda L. Miller (Ret.), and Court of Appeals Justice Kathleen E.

16  O'Leary.

17      Debtor's *modus operandi* is obvious – she falsely accuses judicial officers of misconduct

18  after losing frivolous positions on the merits. Adverse decisions, however, do not evidence bias. The

19  motions to disqualify are so completely lacking in merit that it brings to mind the following quote by

20  Presiding Justice Kathleen O'Leary of the California Fourth District Court of Appeals filed on May

21  2nd, 2022, in *Alicia Maria Richards v. Patricia Strang*: "Moreover, because we are familiar with the

22  basis for Alicia's many appeals challenging the family law court's rulings, we do not appreciate her

23  fabricated complaints about being unfairly denied the opportunity to litigate her disputes." The

24  subject motions to disqualify contain her typical fabricated allegations but this time about this Court,

25  Trustee, and counsel. Such *ad hominem* attacks lack civility and have no place in this litigation. The

26  motions must be denied.

27

28

TRUSTEE'S OMNIBUS OPPOSITION TO MOTION TO DISQUALIFY
4859-8155-2691v.1/1015-148

## 2. **Factual Background**

Debtor and Ryal Richards ("Mr. Richards") were married in 1995 and separated in 2016. In 2015, Mr. Richards filed a petition for marital dissolution, initiating California Superior Court Case No. 15D009634 ("Dissolution Action"). Mr. Richards is the Petitioner and Debtor is the Respondent. In the Dissolution Action, the parties disagreed regarding the disposition of the Property, despite the entry of a judgment by the family court directing the sale of the Property and providing for an equitable division of the proceeds of the Property. Essentially, Debtor contends that the judgment is void, and that the Property belonged solely to her and her family members. Debtor's arguments have been repeatedly rejected by all courts to consider the issues, at the trial and each appellate level. Eventually, Mr. Richards obtained an order from the family court to remove Debtor from the Property.

On April 20, 2020, Debtor filed a complaint in the United States District Court for the Central District of California for temporary restraining order against the presiding judge in the Dissolution Action, initiating civil case no. 8:20-cv-00768-DMG.

On April 21, 2020, the District Court entered an order denying a temporary restraining order and summarily dismissing the case. Debtor filed two motions for reconsideration and a notice of appeal to the Ninth Circuit. Debtor's two motions for reconsideration were denied and the Ninth Circuit summarily dismissed the appeal as frivolous.

On August 28, 2020, Debtor filed a notice of removal for the Dissolution Action in the United States District Court for the Central District of California, initiating case number 8:20-cv-01653-JVS ("First Removed Action").

On September 1, 2020, the District Court entered an order *sua sponte* remanding the case back to state court ("First Remand Order"). A true and correct copy of the First Remand Order is attached to the Request for Judicial Notice ("RJN") as Exhibit "1."

On October 19, 2020, Debtor filed a second notice of removal for the Dissolution Action in the United States District Court for the Central District of California, initiating case number 8:20-cv-02003-JVS ("Second Removed Action").

On October 22, 2020, the District Court entered an order in the Second Removed Action

3

remanding the case to state court for lack of subject-matter jurisdiction ("Second Remand Order"). A true and correct copy of the Second Remand Order is attached to the RJN as Exhibit "2."

On October 23, 2020, Debtor filed a third notice of removal for the Dissolution Action in the United States District Court for the Central District of California, initiating case number 8:20-cv-02039-JVS ("Third Removed Action").

On October 29, 2020, the District Court entered an order remanding the Dissolution Action *sua sponte* to the state court ("Third Remand Order"). A true and correct copy of the Third Remand Order is attached to the RJN as Exhibit "3."

On January 20, 2021, Debtor filed a second complaint against the presiding judge in the Dissolution Action seeking injunctive relief, initiating civil case number 8:21-cv-00122-DMG. On February 5, 2021, the District Court entered an order denying the requested relief and summarily dismissing the case.

On January 21, 2021, Debtor filed a fourth notice of removal for the Dissolution Action in the United States District Court for the Central District of California, initiating case number 8:21-cv-00128-JVS ("Fourth Removed Action"). The District Court almost immediately entered an order remanding the case to state court ("Fourth Remand Order"). A true and correct copy of the Fourth Remand Order is attached to the RJN as Exhibit "4." Debtor filed a notice of appeal and motion for leave to appeal, which was denied (additionally, the appeal was later dismissed by the Ninth Circuit as frivolous).

Eight days after Debtor's motion for leave to appeal was denied in the Fourth Removed Action, on March 12, 2021, Debtor filed (in pro per) a voluntary individual petition for bankruptcy under Chapter 7 of Title 11 of the United States Code. Richard A. Marshack (previously defined as "Trustee") is the duly-appointed and acting Chapter 7 trustee.

Debtor listed in her schedules an interest in real property commonly known as 351 Catalina Drive, Newport Beach, CA 92663 (previously defined as "Property"). Debtor also listed the Property as her residence and claimed a homestead exemption of $600,000. In Debtor's original schedules and a number of subsequent amended schedules, the box indicating that the Property was community property was checked.

TRUSTEE'S OMNIBUS OPPOSITION TO MOTION TO DISQUALIFY
4859-8155-2691v.1/1015-148

On May 17, 2021, as Dk. No. 34, Mr. Richards filed a motion for relief from the automatic stay to proceed with the Dissolution Action in state court ("Stay Relief Motion").

On May 24, 2021, as Dk. No. 44, Debtor filed a declaration in opposition to the Stay Relief Motion ("Opposition Declaration"). The Opposition Declaration contained a number of sworn statements from Debtor that the Property constituted property of the Estate.

On July 7, 2021, as Dk. No. 101, the Court entered an order granting partial relief from the automatic stay to proceed with the Dissolution Action ("Stay Relief Order"). Specifically, the Court granted partial relief from the automatic stay to proceed with property division issues but the Court expressly retained jurisdiction over undivided community property of the Estate, such as the Property, and the administration of Estate property. No appeal of the Stay Relief Order was timely filed.

On December 2, 2021, as Dk. No. 434, the Court entered an order denying Debtor's ex parte motion for stay pending reconsideration of a separate order compelling turnover of the Property ("Ex Parte Denial Order"). In the Ex Parte Denial Order, the Court authorized Trustee to distribute one-half of the homestead proceeds (i.e. $300,000 of the $600,000) to Debtor, and to hold the one-half remainder pending further determination.

On March 8, 2022, Trustee's court-approved sale of the Property closed, and Trustee received net proceeds in excess of $1.8 million out of escrow. Pursuant to the Court's order, Trustee disbursed one-half of the homestead proceeds of $300,000 to Debtor on March 9, 2022 pursuant to the Ex Parte Denial Order, and retained the other $300,000 in a segregated account ("Homestead Remainder"). Both Debtor and Mr. Richards claim an entitlement to the Homestead Remainder.

On March 28, 2022, as Dk. No. 625, Trustee filed a motion seeking an order from the Court to either pay Mr. Richards the Homestead Remainder or to interplead the funds pending further order of the family court ("Homestead Motion"). Debtor opposed.

A hearing was held on May 5, 2022, on the Homestead Motion. At the hearing, the Court indicated that it would grant the alternative relief requested in the Homestead Motion, to allow Trustee to either interplead the funds with the family court or to hold such funds pending further order of the family court.

TRUSTEE'S OMNIBUS OPPOSITION TO MOTION TO DISQUALIFY
4859-8155-2691v.1/1015-148

1    On June 8, 2022, Mr. Richards filed a request for order on the Homestead Remainder in the

2  Dissolution Action. A true and correct copy of the filed RFO is attached to the RJN as Exhibit "5."

3  A hearing was set on the RFO for September 12, 2022 at 8:45 a.m.

4    On June 14, 2022, as Dk. No. 697, the Court entered an order granting the alternative relief

5  requested in the Homestead Motion ("Homestead Order"). A true and correct copy of the

6  Homestead Order is attached to the RJN as Exhibit "6."

7    On July 29, 2022, Debtor filed a fifth notice of removal for the Dissolution Action, initiating

8  adversary proceeding no. 8:22-ap-01067-ES ("Fifth Removed Action").

9    On August 3, 2022, as Adv. Dk. No. 6 in the Fifth Removed Action, Mr. Richards filed a

10 motion to remand all matters back to the family law court ("Remand Motion").

11    On August 16, 2022, the United States Bankruptcy Court for the Central District of

12 California entered administrative order number 22-17, providing that "Judge Smith's pending

13 chapter 7 bankruptcy cases and related adversary proceedings are reassigned to Bankruptcy Judge

14 Scott C. Clarkson," with the exception of case number 8:20-ap-01115-ES. A true and correct copy

15 of Administrative Order 22-17 was entered on the docket as Docket No. 810.

16    On August 29, 2022, as Dk. No. 803, Debtor filed a motion to alter or amend the Stay Relief

17 Order. Debtor's late-filed motion to alter or amend the Stay Relief Order does not toll or revive

18 Debtor's deadline to file a notice of appeal of the Stay Relief Order.

19    On September 1, 2022, the reassignment of the bankruptcy case and related adversary

20 proceedings to the Honorable Scott C. Clarkson became effective.

21    At approximately 10:00 a.m. on September 1, 2022, as Adv. Dk. No. 23 in the Fifth

22 Removed Action, the Court entered an order granting the Remand Motion and vacating the hearing

23 on September 6, 2022 ("Fifth Remand Order"). A true and correct copy of the Remand Order is

24 attached to the RJN as Exhibit "7."

25    On September 2, 2022, as Adv. Dk. No. 23 in the Fifth Removed Action, Debtor filed a

26 notice of appeal regarding the Remand Order notwithstanding 28 U.S.C. § 1452(b) ("An order

27 entered under this subsection remanding a claim or cause of action, or a decision not to remand, is

28 not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292

1   of this title or by the Supreme Court of the United States under section 1254 of this title.").

2        Also on September 2, 2022, as Adv. Dk. No. 28 in the Fifth Removed Action, the Court

3   entered an order regarding Debtor's motion for stay pending appeal ("Stay Order"). A true and

4   correct copy of the Stay Order is attached to the RJN as Exhibit "8."

5        On September 6, 2022, as Adv. Dk. No. 30 in the Fifth Removed Action, Debtor filed a

6   motion to disqualify or recuse Judge Clarkson – and also filed four other substantially identical

7   motions to recuse or disqualify Judge Clarkson, including a motion in the main case as Docket No.

8   829 ("Motion"). The Court originally set the hearings on the Motions for September 16, 2022.

9        On September 8, 2022, as Dk. No. 833, Debtor filed a motion to advance the hearing on the

10  Motion or alternatively to stay all of the matters set for hearing on September 15, 2022 ("Advance

11  Motion").

12       On September 8, 2022, as Dk. No. 835, the Court entered an order advancing the hearing on

13  the Motion to September 14, 2022.

14  **3.  Legal Argument**

15       "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any

16  proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Also, a

17  judge "shall also disqualify himself … Where he has a personal bias or prejudice concerning a party,

18  or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C.

19  § 455(b)(1); *see, e.g., Marshall v. Marshall (In re Marshall)*, 403 B.R. 668, 679 (C.D. Cal. 2009)

20  (*aff'd*, 721 F.3d 1032, 1041-45 (9th Cir. 2013)).

21        **A.    Debtor fails to satisfy her substantial burden of overcoming the**

22            **presumption of impartiality by presenting zero evidence.**

23       A judge is presumed to be impartial. *First Interstate Bank of Ariz., N.A. v. Murphy, Weir &*

24  *Butler*, 210 F.3d 983 (9th Cir. 2000). A party seeking recusal bears a substantial burden of proving

25  otherwise. *In re Larson*, 43 F.3d 410 (8th Cir. 1994). "[I]n the absence of a legitimate reason to

26  recuse himself, 'a judge should participate in cases assigned.'" *United States v. Holland*, 519 F.3d

27  909, 912 (9th Cir. 2008) (quoting *Maier v. Orr*, 758 F.2d 1578, 1583 (9th Cir. 1985)); *see also*

28  *Cheney v. United States District Court*, 541 U.S. 913, 927-28 (2004) (In denying a motion to recuse

7

himself from a case in which then-Vice President Richard Cheney was a named party in his official

capacity, the late Justice Scalia explains that recusing himself based primarily on public perception

would only harm the Court). Moreover, "judges are not to recuse themselves lightly under

§ 455(a)… an erroneous recusal may be prejudicial in some circumstances… the unnecessary

transfer of a case from one judge to another is inherently inefficient and delays the administration of

justice." *United States v. Snyder*, 235 F.3d 42, 45-46 (1st Cir. 2000) (cited with approval by *Holland*,

519 F.3d at 912 (9th Cir. 2008)).

Debtor's five motions to disqualify or recuse the presiding judge are expressly intended by

Debtor to evade decisions from the Court on September 15, 2022. *See* Advance Motion [Dk. 833] at

4:21-23 ("If the court were to proceed on September 15, 2022 before the hearing on the

disqualification hearing … it would deny Debtor her constitutional right to a hearing in front of an

unbiased judge."). The following matters are set for hearing on September 15, 2022:

| Case No. | Short Title of Motion/Action | Docket No. |
|---|---|---|
| 8:21-bk-10635-SC | Debtor's Motion to Alter or Amend Homestead Order | 716 |
| 8:21-bk-10635-SC | Trustee's Claim Objection to 10-3 | 721 |
| 8:21-bk-10635-SC | Status Conference on Community Claims Procedures Order | 728 |
| 8:21-bk-10635-SC | Debtor's Motion to Alter or Amend Community Claims Procedures Order | 730 |
| 8:21-bk-10635-SC | Lawrence Remsen Motion to Consolidate Adversaries and Claim Objection | 741 |
| 8:21-bk-10635-SC | Lawrence Remsen Motion to Quash Third-Party Subpoena | 742 |
| 8:21-bk-10635-SC | Debtor's Joint Motion to Alter or Amend Sale and Turnover Orders | 784 |
| 8:21-bk-10635-SC | Debtor's Joint Motion to Require Joinder of Buyer to Docket No. 784 | 786 |
| 8:22-ap-01024-SC | Trustee's Motion for Judgment On the Pleadings | 10 |

8

| 8:22-ap-01024-SC | Status Conference for Adversary Proceeding | n/a |
|---|---|---|
| 8:21-ap-01094-SC | Status Conference for Adversary Proceeding | n/a |
| 8:22-ap-01056-SC | Lawrence Remsen Motion to Consolidate Adversaries and Claim Objection | 9 |

Debtor appears to believe that she will receive unfavorable decisions on September 15, 2022, based on the Fifth Remand Order. Trustee knows that the Court will rule fairly, and impartially, on the merits of each and every motion presented. If Debtor does not prevail in any proceeding, it is because of the lack of merit– not bias or prejudice from the Court.

## B.      Debtor is not a criminal defendant.

Debtor cites *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) for the proposition that "[w]hen a party's right to have her case tried by an impartial judge is compromised, there is a structural error that requires automatic reversal." Motion at 14:17-19. Correctly parsed, "[t]he Due Process Clause guarantees a ***criminal defendant*** the right to a fair and impartial judge." *Spector v. Diaz*, 115 F.Supp.3d 1121, 1135 (C.D. Cal. 2015) (emphasis added).

Debtor is not a criminal defendant. The case cited for a Constitutional right to an impartial judge applies to a criminal case. Here, Debtor's bankruptcy case is a civil case with a substantially different standard for the presiding judge. Moreover, there is absolutely no evidence that the Court is not impartial.

## C.      No evidence of extrajudicial bias is presented by Debtor.

Recusal based on 28 U.S.C. § 455(a) is based on a hypothetical reasonable person who is "a well-informed, thoughtful observer," not a "hypersensitive or unduly suspicious" person. *Holland*, 519 F.3d at 913 (citing *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)). The Supreme Court has articulated the following standard for evidence of bias, which warrants a lengthy citation:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [citation]. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus,

9

> judicial remarks during the course of a trial that are critical or disapproving of, or
> even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias
> or partiality challenge."

*Liteky v. United States*, 510 U.S. 540, 555 (1994).

"The race… of a judge, a party or an attorney Is not typically grounds for recusal." *Waters v. Howard Sommers Towing*, 2013 U.S. Dist. LEXIS 201290 at *6 (C.D. Cal. February 4, 2013) (citing *MacDraw, Inc. v. CIT Group Equipment Financing*, 138 F.3d 33, 37 (2d Cir. 1998)); *see also, e.g., Mehmood v. Sarani*, 2018 U.S. Dist. LEXIS 67214 at *3-4 (E.D. Cal. April 19, 2018) ("gender, race and citizenship are not proper grounds for recusal."). "Courts have repeatedly held that matters such as race or ethnicity are improper bases for challenging a judge's impartiality… Such an accusation is a charge that the judge is racially or ethnically biased and is violating the judge's oath of office." *Macdraw*, 138 F.3d at 37. "Indeed, if background or sex or race of each judge were, by definition, sufficient grounds for removal, no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a sex, often with distinguished law firm or public service backgrounds." *Blank v. Sullivan & Cromwell*, 418 F.Supp. 1, 4 (S.D.N.Y. 1975).

First, Debtor's assertion that the presiding judge harbors "antagonism" against Debtor "because she is a white woman proceeding pro se" is completely nonsensical given that Debtor knows that the Court had not presided over any hearings prior to the entry of the Fifth Remand Order, and Debtor's race or gender was never mentioned by the Court in the Fifth Remand Order. This argument is hokum.

Debtor also concludes without evidence that because the Court entered the Fifth Remand Order "without a hearing" that the presiding judge "clearly could not have made such an assumption by studying the 840 docket entries and four (4) adversary proceedings before he had even been assigned the case…" Motion at 15:23-28. The Court did not need to hold a hearing to enter the Fifth Remand Order; the basis for remand was apparent on the face of Debtor's notice of removal: "the domestic relations exception… divests the federal courts of power to issue divorce, alimony, and child custody decrees… As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce,

TRUSTEE'S OMNIBUS OPPOSITION TO MOTION TO DISQUALIFY
4859-8155-2691v.1/1015-148

alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992) (citing *Barber v. Barber*, 62 U.S. 582 (1859)).

In the Fifth Remand Order, the Court also provided an eight-point analysis of the various factors for equitable remand under 28 U.S.C. § 1452(b) "based upon the law and facts as articulated clearly in the pleadings before this Court." *See* Fifth Remand Order at 2:15-16. Finally, as explained by the Court in the Stay Order, the Court knew as of August 16, 2022 (the date of entry of Administrative Order 22-17) that this case would be assigned to it effective September 1, 2022. The Court thus had ample time to review pleadings and prepare for upcoming hearings on the docket between August 16, 2022, and September 1, 2022 (approximately two weeks). Debtor fails to consider that the Court would diligently prepare for upcoming cases to which it would be assigned upon the retirement of the Hon. Erithe A. Smith.

## 4.  Conclusion

Debtor has failed to present one iota of evidence to support her outrageous allegations of prejudice or bias by the Court. Adverse decisions are not evidence in support of recusal. Debtor's five motions to disqualify must be denied.

DATED: September 13, 2022            MARSHACK HAYS LLP


                                     By:  */s/ D. Edward Hays*
                                          D. EDWARD HAYS
                                          TINHO MANG
                                          General Counsel for Chapter 7 Trustee,
                                          RICHARD A. MARSHACK

# **REQUEST FOR JUDICAL NOTICE**

Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the

Bankruptcy Estate ("Estate") of Alicia Marie Richards, hereby requests, pursuant to Federal Rule of

Evidence 201, that this Court take judicial notice of the following documents:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1. | A true and correct copy of the First Remand Order is attached as Exhibit "1." |
| 2. | A true and correct copy of the Second Remand Order is attached as Exhibit "2." |
| 3. | A true and correct copy of the Third Remand Order is attached as Exhibit "3." |
| 4. | A true and correct copy of the Fourth Remand Order is attached as Exhibit "4." |
| 5. | A true and correct copy of the filed RFO is attached as Exhibit "5." |
| 6. | A true and correct copy of the Homestead Order is attached as Exhibit "6." |
| 7. | A true and correct copy of the Remand Order is attached as Exhibit "7." |
| 8. | A true and correct copy of the Stay Order is attached as Exhibit "8." |

DATED:  September 13, 2022                    MARSHACK HAYS LLP

By: */s/ D. Edward Hays*
_____
D. EDWARD HAYS
TINHO MANG
Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

TRUSTEE'S OMNIBUS OPPOSITION TO MOTION TO DISQUALIFY
4859-8155-2691v.1/1015-148

**NOTICE OF UNPUBLISHED AUTHORITY**

Richard A. Marshack, in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Alicia Marie Richards ("Debtor"), in accordance with Local Bankruptcy Rule 9013-2(b)(4), attaches copies of the following unpublished decisions cited in Trustee's Omnibus Opposition to Debtor's Motions to Disqualify or Recuse Presiding Judge.  The unpublished cases were retrieved from Lexis Advance.

# Unpublished Cases

1.    *Mehmood v. Sarani*, 2018 U.S. Dist. LEXIS 67214 at *3-4 (E.D. Cal. April 19, 2018). A true and correct copy is attached as Exhibit 9.

2.    *Richards v. Strang*, 2022 Cal.App.Unpub. LEXIS 2686 at *25-26 (May 2, 2022). A true and correct copy is attached as Exhibit 10.

3.    *Waters v. Howard Sommers Towing*, 2013 U.S. Dist. LEXIS 201290 at *6 (C.D. Cal. February 4, 2013). A true and correct copy is attached as Exhibit 11.

DATED:  September 13, 2022                MARSHACK HAYS LLP

By: */s/ D. Edward Hays*
    D. EDWARD HAYS
    TINHO MANG
    Attorneys for Chapter 7 Trustee,
    RICHARD A. MARSHACK

Exhibit "1"

**JS-6**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAL W. RICHARDS,<br><br>Plaintiff<br><br>v.<br><br>ALICIA MARIE RICHARDS,<br><br>Defendant(s). | CASE NUMBER:<br><br>8:20-cv-01653-JVS (JDEx)<br><br>**ORDER REMANDING CASE TO STATE COURT** |

The Court <u>sua sponte</u> **REMANDS** this action to the California Superior Court for the County of <u>Orange</u> for lack of subject matter jurisdiction, as set forth below.

"The right of removal is entirely a creature of statute and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.'" Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) (quoting Great N. Ry. Co. v. Alexander, 246 U.S. 276, 280 (1918). Generally, where Congress has acted to create a right of removal, those statutes are strictly construed against removal jurisdiction. Id.; Nevada v. Bank of Am. Corp., 672 F.3d 661, 667 (9th Cir. 2012); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Unless otherwise expressly provided by Congress, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a); Dennis v. Hart, 724 F.3d 1249, 1252 (9th Cir. 2013). The removing defendant bears the burden of establishing federal jurisdiction. Abrego Abrego v.

1   Dow Chem. Co., 443 F.3d 676, 682 (9th Cir. 2006); Gaus, 980 F.2d at 566-67.  "Under the plain

2   terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, [the

3   removing defendant] must demonstrate that original subject-matter jurisdiction lies in the federal

4   courts." Syngenta Crop Prot., 537 U.S. at 33.  Failure to do so requires that the case be remanded,

5   as "[s]ubject matter jurisdiction may not be waived, and . . . the district court must remand if it

6   lacks jurisdiction." Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190,

7   1192 (9th Cir. 2003).  "If at any time before final judgment it appears that the district court lacks

8   subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  It is "elementary

9   that the subject matter jurisdiction of the district court is not a waivable matter and may be raised

10  at anytime by one of the parties, by motion or in the responsive pleadings, *sua sponte* by the

11  trial or reviewing court." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

12          From a review of the Notice of Removal and the state court records provided, it is evident

13  that the Court lacks subject matter jurisdiction over the instant case, for the following reasons.

14  ☑ No basis for federal question jurisdiction has been identified:

15          ☑ The Complaint does not include any claim "arising under the Constitution, laws,
16              or treaties of the United States." 28 U.S.C. § 1331.

17          ☑ Removing defendant(s) asserts that the affirmative defenses at issue give rise to
18              federal question jurisdiction, but "the existence of federal jurisdiction depends
                solely on the plaintiff's claims for relief and not on anticipated defenses to those
19              claims." ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality,
20              213 F.3d 1108, 1113 (9th Cir. 2000).  An "affirmative defense based on federal law"
                does not "render[] an action brought in state court removable." Berg v. Leason, 32
21              F.3d 422, 426 (9th Cir. 1994).  A "case may not be removed to federal court on the
22              basis of a federal defense . . . even if the defense is anticipated in the plaintiff's
                complaint, and even if both parties admit that the defense is the only question truly
23              at issue in the case." Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S.
                1, 14 (1983).
24
25          ☑ Removing defendant(s) has not alleged facts sufficient to show that the
                requirements for removal under 28 U.S.C. § 1443 are satisfied.  Section 1443(1)
26              provides for the removal of a civil action filed "[a]gainst any person who is denied
                or cannot enforce in the courts of such State a right under any law providing for
27              the equal civil rights of citizens of the United States . . . ."  Even assuming that the
28              removing defendant(s) has asserted rights provided "by explicit statutory

enactment protecting equal racial civil rights," Patel v. Del Taco, Inc., 446 F.3d 996, 999 (9th Cir. 2006) (citation omitted), defendant(s) has not identified any "state statute or a constitutional provision that purports to command the state courts to ignore the federal rights" or pointed "to anything that suggests that the state court would not enforce [defendant's] civil rights in the state court proceedings." Id. (citation omitted); see also Bogart v. California, 355 F.2d 377, 381-82 (9th Cir. 1966) (holding that conclusionary statements lacking any factual basis cannot support removal under § 1443(1)). Nor does § 1443(2) provide any basis for removal, as it "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights" and on state officers who refuse to enforce discriminatory state laws. City of Greenwood v. Peacock, 384 U.S. 808, 824 & 824 n.22 (1966).

☐ The underlying action is an unlawful detainer proceeding, arising under and governed by the laws of the State of California.

☐ Removing defendant(s) claims that 28 U.S.C. § 1334 confers jurisdiction on this Court, but the underlying action does not arise under Title 11 of the United States Code.

☑ Diversity jurisdiction is lacking, and/or this case is not removable on that basis:

    ☑ Every defendant is not alleged to be diverse from every plaintiff. 28 U.S.C. § 1332(a).

    ☐ The Complaint does not allege damages in excess of $75,000, and removing defendant(s) has not plausibly alleged that the amount in controversy requirement has been met. Id.; see Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014).

    ☐ The underlying unlawful detainer action is a limited civil action that does not exceed $25,000.

    ☐ Removing defendant(s) is a citizen of California. 28 U.S.C. § 1441(b)(2).

☐ Other:

IT IS THEREFORE ORDERED that this matter be, and hereby is, REMANDED to the Superior Court of California listed above, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Date:  September 1, 2020

_____
United States District Judge

CV-136 (3/16)                    ORDER REMANDING CASE TO STATE COURT                    Page 3 of 3

Exhibit "1"
Page 16

Exhibit "2"

**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| RYAL W. RICHARDS, | CASE NUMBER: |
|---|---|
| Plaintiff | 8:20-cv-02003-JVS (JDEx) |
| v. | |
| ALICIA MARIE RICHARDS, | **ORDER REMANDING CASE TO STATE COURT** |
| Defendant(s). | |

    The Court <u>sua sponte</u> **REMANDS** this action to the California Superior Court for the County of  Orange       for lack of subject matter jurisdiction, as set forth below.

    "The right of removal is entirely a creature of statute and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.'" <u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 32 (2002) (quoting <u>Great N. Ry. Co. v. Alexander</u>, 246 U.S. 276, 280 (1918)). Generally, where Congress has acted to create a right of removal, those statutes are strictly construed against removal jurisdiction. <u>Id.</u>; <u>Nevada v. Bank of Am. Corp.</u>, 672 F.3d 661, 667 (9th Cir. 2012); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

    Unless otherwise expressly provided by Congress, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a); <u>Dennis v. Hart</u>, 724 F.3d 1249, 1252 (9th Cir. 2013). The removing defendant bears the burden of establishing federal jurisdiction. <u>Abrego Abrego v.</u>

CV-136 (3/16)         **ORDER REMANDING CASE TO STATE COURT**         Page 1 of 3



**EXHIBIT "2"**
**PAGE 17**

1  Dow Chem. Co., 443 F.3d 676, 682 (9th Cir. 2006); Gaus, 980 F.2d at 566-67.  "Under the plain

2  terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, [the

3  removing defendant] must demonstrate that original subject-matter jurisdiction lies in the federal

4  courts."  Syngenta Crop Prot., 537 U.S. at 33.  Failure to do so requires that the case be remanded,

5  as "[s]ubject matter jurisdiction may not be waived, and . . . the district court must remand if it

6  lacks jurisdiction."  Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190,

7  1192 (9th Cir. 2003).  "If at any time before final judgment it appears that the district court lacks

8  subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  It is "elementary

9  that the subject matter jurisdiction of the district court is not a waivable matter and may be raised

10 at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the

11 trial or reviewing court."  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

12      From a review of the Notice of Removal and the state court records provided, it is evident

13 that the Court lacks subject matter jurisdiction over the instant case, for the following reasons.

14  ☑  No basis for federal question jurisdiction has been identified:

15          ☑  The Complaint does not include any claim "arising under the Constitution, laws,
16              or treaties of the United States."  28 U.S.C. § 1331.

17          ☑  Removing defendant(s) asserts that the affirmative defenses at issue give rise to
18              federal question jurisdiction, but "the existence of federal jurisdiction depends
                solely on the plaintiff's claims for relief and not on anticipated defenses to those
19              claims."  ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality,
20              213 F.3d 1108, 1113 (9th Cir. 2000).  An "affirmative defense based on federal law"
                does not "render[] an action brought in state court removable."  Berg v. Leason, 32
21              F.3d 422, 426 (9th Cir. 1994).  A "case may not be removed to federal court on the
22              basis of a federal defense . . . even if the defense is anticipated in the plaintiff's
                complaint, and even if both parties admit that the defense is the only question truly
23              at issue in the case."  Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S.
24              1, 14 (1983).

25          ☑  Removing defendant(s) has not alleged facts sufficient to show that the
26              requirements for removal under 28 U.S.C. § 1443 are satisfied.  Section 1443(1)
                provides for the removal of a civil action filed "[a]gainst any person who is denied
27              or cannot enforce in the courts of such State a right under any law providing for
                the equal civil rights of citizens of the United States . . . ."  Even assuming that the
28              removing defendant(s) has asserted rights provided "by explicit statutory

**EXHIBIT "2"**
**PAGE 18**

1    enactment protecting equal racial civil rights," Patel v. Del Taco, Inc., 446 F.3d 996,
2    999 (9th Cir. 2006) (citation omitted), defendant(s) has not identified any "state
      statute or a constitutional provision that purports to command the state courts to
3    ignore the federal rights" or pointed "to anything that suggests that the state court
      would not enforce [defendant's] civil rights in the state court proceedings." Id.
4    (citation omitted); see also Bogart v. California, 355 F.2d 377, 381-82 (9th Cir.
5    1966) (holding that conclusory statements lacking any factual basis cannot
      support removal under § 1443(1)). Nor does § 1443(2) provide any basis for
6    removal, as it "confers a privilege of removal only upon federal officers or agents
      and those authorized to act with or for them in affirmatively executing duties
7    under any federal law providing for equal civil rights" and on state officers who
8    refuse to enforce discriminatory state laws. City of Greenwood v. Peacock, 384
      U.S. 808, 824 & 824 n.22 (1966).
9
10   ☐ The underlying action is an unlawful detainer proceeding, arising under and
        governed by the laws of the State of California.
11
12   ☐ Removing defendant(s) claims that 28 U.S.C. § 1334 confers jurisdiction on this
        Court, but the underlying action does not arise under Title 11 of the United States
13      Code.

14   ☑ Diversity jurisdiction is lacking, and/or this case is not removable on that basis:

15      ☑ Every defendant is not alleged to be diverse from every plaintiff. 28 U.S.C. §
16        1332(a).

17      ☐ The Complaint does not allege damages in excess of $75,000, and removing
          defendant(s) has not plausibly alleged that the amount in controversy requirement
18        has been met. Id.; see Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct.
19        547, 554 (2014).

20      ☐ The underlying unlawful detainer action is a limited civil action that does not
          exceed $25,000.
21
        ☑ Removing defendant(s) is a citizen of California. 28 U.S.C. § 1441(b)(2).
22
23   ☑ | Other: Defendant's citation to 28 U.S.C. § 1343, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 18 U.S.C. §§
          241, 242 do not independently authorize removal of a pending state action.
24

25

26   IT IS THEREFORE ORDERED that this matter be, and hereby is, REMANDED to the Superior
27   Court of California listed above, for lack of subject matter jurisdiction.

28   **IT IS SO ORDERED.**

        Date:  October 22, 2020

                                                United States District Judge James V Selna

CV-136 (3/16)                    **ORDER REMANDING CASE TO STATE COURT**                    Page 3 of 3

Exhibit "3"

**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAL W. RICHARDS,<br><br>                                    Plaintiff<br><br>                 v.<br><br>ALICIA MARIE RICHARDS,<br><br>                                    Defendant(s). | CASE NUMBER:<br><br>    8:20-cv-02039-JVS (JDEx)<br><br>---<br><br>**ORDER REMANDING CASE TO**<br>**STATE COURT** |

        The Court <u>sua sponte</u> **REMANDS** this action to the California Superior Court for the

County of    Orange                for lack of subject matter jurisdiction, as set forth below.

        "The right of removal is entirely a creature of statute and 'a suit commenced in a state

court must remain there until cause is shown for its transfer under some act of Congress.'"

<u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 32 (2002) (quoting <u>Great N. Ry. Co. v.</u>

<u>Alexander</u>, 246 U.S. 276, 280 (1918)).  Generally, where Congress has acted to create a right of

removal, those statutes are strictly construed against removal jurisdiction.  <u>Id.</u>; <u>Nevada v. Bank of</u>

<u>Am. Corp.</u>, 672 F.3d 661, 667 (9th Cir. 2012); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

        Unless otherwise expressly provided by Congress, a defendant may remove "any civil

action brought in a State court of which the district courts of the United States have original

jurisdiction."  28 U.S.C. § 1441(a); <u>Dennis v. Hart</u>, 724 F.3d 1249, 1252 (9th Cir. 2013).  The

removing defendant bears the burden of establishing federal jurisdiction.  <u>Abrego Abrego v.</u>

**EXHIBIT "3"**
**PAGE 20**

1  Dow Chem. Co., 443 F.3d 676, 682 (9th Cir. 2006); Gaus, 980 F.2d at 566-67.  "Under the plain

2  terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, [the

3  removing defendant] must demonstrate that original subject-matter jurisdiction lies in the federal

4  courts."  Syngenta Crop Prot., 537 U.S. at 33.  Failure to do so requires that the case be remanded,

5  as "[s]ubject matter jurisdiction may not be waived, and . . . the district court must remand if it

6  lacks jurisdiction."  Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190,

7  1192 (9th Cir. 2003).  "If at any time before final judgment it appears that the district court lacks

8  subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  It is "elementary

9  that the subject matter jurisdiction of the district court is not a waivable matter and may be raised

10  at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the

11  trial or reviewing court."  Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

12       From a review of the Notice of Removal and the state court records provided, it is evident

13  that the Court lacks subject matter jurisdiction over the instant case, for the following reasons.

14  ☑  No basis for federal question jurisdiction has been identified:

15       ☑  The Complaint does not include any claim "arising under the Constitution, laws,
16           or treaties of the United States."  28 U.S.C. § 1331.

17       ☑  Removing defendant(s) asserts that the affirmative defenses at issue give rise to
18           federal question jurisdiction, but "the existence of federal jurisdiction depends
19           solely on the plaintiff's claims for relief and not on anticipated defenses to those
             claims."  ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality,
20           213 F.3d 1108, 1113 (9th Cir. 2000).  An "affirmative defense based on federal law"
             does not "render[] an action brought in state court removable."  Berg v. Leason, 32
21           F.3d 422, 426 (9th Cir. 1994).  A "case may not be removed to federal court on the
22           basis of a federal defense . . . even if the defense is anticipated in the plaintiff's
             complaint, and even if both parties admit that the defense is the only question truly
23           at issue in the case."  Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S.
             1, 14 (1983).
24

25       ☑  Removing defendant(s) has not alleged facts sufficient to show that the
26           requirements for removal under 28 U.S.C. § 1443 are satisfied.  Section 1443(1)
             provides for the removal of a civil action filed "[a]gainst any person who is denied
27           or cannot enforce in the courts of such State a right under any law providing for
             the equal civil rights of citizens of the United States . . . ."  Even assuming that the
28           removing defendant(s) has asserted rights provided "by explicit statutory

**EXHIBIT "3"**

**PAGE 21**

enactment protecting equal racial civil rights," <u>Patel v. Del Taco, Inc.</u>, 446 F.3d 996, 999 (9th Cir. 2006) (citation omitted), defendant(s) has not identified any "state statute or a constitutional provision that purports to command the state courts to ignore the federal rights" or pointed "to anything that suggests that the state court would not enforce [defendant's] civil rights in the state court proceedings." <u>Id.</u> (citation omitted); <u>see also</u> <u>Bogart v. California</u>, 355 F.2d 377, 381-82 (9th Cir. 1966) (holding that conclusory statements lacking any factual basis cannot support removal under § 1443(1)).  Nor does § 1443(2) provide any basis for removal, as it "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights" and on state officers who refuse to enforce discriminatory state laws.  <u>City of Greenwood v. Peacock</u>, 384 U.S. 808, 824 & 824 n.22 (1966).

☐ The underlying action is an unlawful detainer proceeding, arising under and governed by the laws of the State of California.

☐ Removing defendant(s) claims that 28 U.S.C. § 1334 confers jurisdiction on this Court, but the underlying action does not arise under Title 11 of the United States Code.

☑ Diversity jurisdiction is lacking, and/or this case is not removable on that basis:

   ☑ Every defendant is not alleged to be diverse from every plaintiff.  28 U.S.C. § 1332(a).

   ☐ The Complaint does not allege damages in excess of $75,000, and removing defendant(s) has not plausibly alleged that the amount in controversy requirement has been met.  <u>Id.</u>; <u>see</u> <u>Dart Cherokee Basin Operating Co. v. Owens</u>, 135 S. Ct. 547, 554 (2014).

   ☐ The underlying unlawful detainer action is a limited civil action that does not exceed $25,000.

   ☐ Removing defendant(s) is a citizen of California.  28 U.S.C. § 1441(b)(2).

☑ Other: Defendant's citation to 28 U.S.C. § 1343, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 18 U.S.C. §§ 241, 242 do not independently authorize removal of a pending state action.

IT IS THEREFORE ORDERED that this matter be, and hereby is, REMANDED to the Superior Court of California listed above, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Date:  October 29, 2020

United States District Judge  James V Selna

**EXHIBIT "3"**

**PAGE 22**

Exhibit "4"

**JS-6**

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| RYAL W. RICHARDS, | CASE NUMBER: |
|---|---|
| Plaintiff | 8:21-cv-00128-JVS (JDEx) |
| v. | |
| ALICIA MARIE RICHARDS, | **ORDER REMANDING CASE TO STATE COURT** |
| Defendant(s). | |

The Court <u>sua</u> <u>sponte</u> **REMANDS** this action to the California Superior Court for the County of <u>Orange</u> for lack of subject matter jurisdiction, as set forth below.

"The right of removal is entirely a creature of statute and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.'" <u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 32 (2002) (quoting <u>Great N. Ry. Co. v. Alexander</u>, 246 U.S. 276, 280 (1918)).  Generally, where Congress has acted to create a right of removal, those statutes are strictly construed against removal jurisdiction.  <u>Id.</u>; <u>Nevada v. Bank of Am. Corp.</u>, 672 F.3d 661, 667 (9th Cir. 2012); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

Unless otherwise expressly provided by Congress, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a); <u>Dennis v. Hart</u>, 724 F.3d 1249, 1252 (9th Cir. 2013).  The removing defendant bears the burden of establishing federal jurisdiction.  <u>Abrego Abrego v.</u>

**EXHIBIT "4"**
**PAGE 23**

1  Dow Chem. Co., 443 F.3d 676, 682 (9th Cir. 2006); Gaus, 980 F.2d at 566-67.  "Under the plain

2  terms of § 1441(a), in order properly to remove [an] action pursuant to that provision, [the

3  removing defendant] must demonstrate that original subject-matter jurisdiction lies in the federal

4  courts." Syngenta Crop Prot., 537 U.S. at 33.  Failure to do so requires that the case be remanded,

5  as "[s]ubject matter jurisdiction may not be waived, and . . . the district court must remand if it

6  lacks jurisdiction." Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d 1190,

7  1192 (9th Cir. 2003).  "If at any time before final judgment it appears that the district court lacks

8  subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  It is "elementary

9  that the subject matter jurisdiction of the district court is not a waivable matter and may be raised

10  at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the

11  trial or reviewing court." Emrich v. Touche Ross & Co., 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

12      From a review of the Notice of Removal and the state court records provided, it is evident

13  that the Court lacks subject matter jurisdiction over the instant case, for the following reasons.

14  ☑ No basis for federal question jurisdiction has been identified:

15  ☑ The Complaint does not include any claim "arising under the Constitution, laws,
16      or treaties of the United States." 28 U.S.C. § 1331.

17  ☑ Removing defendant(s) asserts that the affirmative defenses at issue give rise to
18      federal question jurisdiction, but "the existence of federal jurisdiction depends
19      solely on the plaintiff's claims for relief and not on anticipated defenses to those
        claims." ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality,
20      213 F.3d 1108, 1113 (9th Cir. 2000).  An "affirmative defense based on federal law"
        does not "render[] an action brought in state court removable." Berg v. Leason, 32
21      F.3d 422, 426 (9th Cir. 1994).  A "case may not be removed to federal court on the
22      basis of a federal defense . . . even if the defense is anticipated in the plaintiff's
        complaint, and even if both parties admit that the defense is the only question truly
23      at issue in the case." Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S.
24      1, 14 (1983).

25  ☑ Removing defendant(s) has not alleged facts sufficient to show that the
26      requirements for removal under 28 U.S.C. § 1443 are satisfied. Section 1443(1)
        provides for the removal of a civil action filed "[a]gainst any person who is denied
27      or cannot enforce in the courts of such State a right under any law providing for
        the equal civil rights of citizens of the United States . . . ."  Even assuming that the
28      removing defendant(s) has asserted rights provided "by explicit statutory

**EXHIBIT "4"**

**PAGE 24**

1   enactment protecting equal racial civil rights," <u>Patel v. Del Taco, Inc.</u>, 446 F.3d 996,

2   999 (9th Cir. 2006) (citation omitted), defendant(s) has not identified any "state

statute or a constitutional provision that purports to command the state courts to

3   ignore the federal rights" or pointed "to anything that suggests that the state court

would not enforce [defendant's] civil rights in the state court proceedings." <u>Id.</u>

4   (citation omitted); <u>see also</u> <u>Bogart v. California</u>, 355 F.2d 377, 381-82 (9th Cir.

5   1966) (holding that conclusory statements lacking any factual basis cannot

support removal under § 1443(1)).  Nor does § 1443(2) provide any basis for

6   removal, as it "confers a privilege of removal only upon federal officers or agents

and those authorized to act with or for them in affirmatively executing duties

7   under any federal law providing for equal civil rights" and on state officers who

8   refuse to enforce discriminatory state laws.  <u>City of Greenwood v. Peacock</u>, 384

U.S. 808, 824 & 824 n.22 (1966).

9

10  ☐ The underlying action is an unlawful detainer proceeding, arising under and
    governed by the laws of the State of California.

11

12  ☐ Removing defendant(s) claims that 28 U.S.C. § 1334 confers jurisdiction on this
    Court, but the underlying action does not arise under Title 11 of the United States

13  Code.

14  ☑ Diversity jurisdiction is lacking, and/or this case is not removable on that basis:

15  ☑ Every defendant is not alleged to be diverse from every plaintiff.  28 U.S.C. §

16  1332(a).

17  ☐ The Complaint does not allege damages in excess of $75,000, and removing
    defendant(s) has not plausibly alleged that the amount in controversy requirement

18  has been met.  <u>Id.</u>; <u>see</u> <u>Dart Cherokee Basin Operating Co. v. Owens</u>, 135 S. Ct.

19  547, 554 (2014).

20  ☐ The underlying unlawful detainer action is a limited civil action that does not
    exceed $25,000.

21

    ☐ Removing defendant(s) is a citizen of California.  28 U.S.C. § 1441(b)(2).

22

☑ | Other: Defendant's citation to 28 U.S.C. § 1343, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 18 U.S.C. §§
23 | 241, 242 do not independently authorize removal of a pending state action. In addition, although
    | Defendant did not attach the complaint in the underlying state court action with her Notice of Removal
24 | here, the Court is familiar with the underlying complaint from Defendant's multiple prior Notices of
    | Removal, and takes judicial notice of the files from  those earlier cases, including the underlying
25 | complaint. See Richards v. Richards, C.D. Cal. Case Nos. 20-cv-01653, 20-cv-02003, 20-cv-2039.

26  IT IS THEREFORE ORDERED that this matter be, and hereby is, REMANDED to the Superior

27  Court of California listed above, for lack of subject matter jurisdiction.

28  **IT IS SO ORDERED.**

    Date:  January 18, 2021

                                            United States District Judge James V Selna

**EXHIBIT "4"**

**PAGE 25**

Exhibit "5"

**FL-300**

| PARTY WITHOUT ATTORNEY OR ATTORNEY: | STATE BAR NO.: | *FOR COURT USE ONLY* |
|---|---|---|
| NAME: KEVIN E. ROBINSON 88726 | | |

FIRM NAME: LAW OFFICES OF KEVIN E. ROBINSON
STREET ADDRESS: 970 W. 17TH STREET, SUITE D
CITY: SANTA ANA    STATE: CA    ZIP CODE: 92706
TELEPHONE NO.: 714-245-0210    FAX NO.: 714-973-0244
E-MAIL ADDRESS:
ATTORNEY FOR (name): RYAL W. RICHARDS

ELECTRONICALLY FILED
Superior Court of California
County of Orange
Lamoreaux Justice Center
6/8/2022 4:06 PM
David H. Yamasaki, Clerk of the Court
By: J. Duncanson, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    ORANGE
STREET ADDRESS: 341 THE CITY ORANGE
MAILING ADDRESS:
CITY AND ZIP CODE: ORANGE, CA 92868
BRANCH NAME: LAMOREAUX JUSTICE CENTER

PETITIONER: RYAL W. RICHARDS
RESPONDENT: ALICIA MARIE RICHARDS
OTHER PARENT/PARTY:

**REQUEST FOR ORDER** ☐ **CHANGE** ☐ **TEMPORARY EMERGENCY ORDERS**

☐ Child Custody  ☐ Visitation (Parenting Time)  ☐ Spousal or Partner Support
☐ Child Support  ☐ Domestic Violence Order  ☐ Attorney's Fees and Costs
☐ Property Control  ☒ Other (specify): Motion for Order to re
Payment of $300,000 to Ryal Richards (see att)

CASE NUMBER:
15D009634

**NOTICE OF HEARING**

1. TO (name(s)): Alicia Richards
   ☐ Petitioner  ☒ Respondent  ☐ Other Parent/Party  ☐ Other (specify):

2. **A COURT HEARING WILL BE HELD AS FOLLOWS:**

   a. Date 09/12/2022  Time: 8:45AM  ☒ Dept.: C65  ☐ Room:
   b. Address of court  ☐ same as noted above  ☒ other (specify): Central Justice Center  700 W. Civic Center Dr.  Santa Ana, CA 92701

3. **WARNING to the person served with the *Request for Order*:** The court may make the requested orders without you if you do not file a *Responsive Declaration to Request for Order* (form FL-320), serve a copy on the other parties at least nine court days before the hearing (unless the court has ordered a shorter period of time), and appear at the hearing. *(See form FL-320-INFO for more information.)*

   *(Forms FL-300-INFO and DV-400-INFO provide information about completing this form.)*

**COURT ORDER**
*(FOR COURT USE ONLY)*

*It is ordered that:*

4. ☒ Time  ☒ for service  ☒ until the hearing  is shortened. Service must be on or before *(date)*:

5. ☐ A *Responsive Declaration to Request for Order* (form FL-320) must be served on or before *(date)*:

6. ☐ The parties must attend an appointment for child custody mediation or child custody recommending counseling as follows *(specify date, time, and location)*:

7. ☐ The orders in *Temporary Emergency (Ex Parte) Orders* (form FL-305) apply to this proceeding and must be personally served with all documents filed with this *Request for Order*.

8. ☐ Other (specify):

Date:  6/8/2022 4:06 PM

Julie A. Palafox
Supervising Judge, Family Law

JUDICIAL OFFICER    Page 1 of 4

Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. July 1, 2016]    CEB Essential Forms  ceb.com    **REQUEST FOR ORDER**    Family Code, §§ 2045, 2107, 6224, 6226, 6320–6326, 6380–6383;
Government Code, § 26826
Cal. Rules of Court, rule 5.92
www.courts.ca.gov

Richards, Ryal W.

**EXHIBIT "5"**
**PAGE 26**

FL-300

| | |
|---|---|
| PETITIONER: RYAL W. RICHARDS<br>RESPONDENT: ALICIA MARIE RICHARDS<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>15D009634 |

### REQUEST FOR ORDER

**Note**: Place a mark  ☒  in front of the box that applies to your case or to your request. If you need more space, mark the box for
"Attachment." For example, mark "Attachment 2a" to indicate that the list of children's names and birth dates continues on a paper
attached to this form. Then, on a sheet of paper, list each attachment number followed by your request. At the top of the paper, write
your name, case number, and "FL-300" as a title. (You may use *Attached Declaration* (form MC-031) for this purpose.)

1. ☐ RESTRAINING ORDER INFORMATION
   One or more domestic violence restraining/protective orders are now in effect between *(specify)*:
   ☐ Petitioner    ☐ Respondent    ☐ Other Parent/Party    *(Attach a copy of the orders if you have one.)*
   The orders are from the following court or courts *(specify county and state)*:
   a. ☐ Criminal: County/state *(specify)*:                    Case No. *(if known)*:
   b. ☐ Family: County/state *(specify)*:                      Case No. *(if known)*:
   c. ☐ Juvenile: County/state *(specify)*:                    Case No. *(if known)*:
   d. ☐ Other: County/state *(specify)*:                       Case No. *(if known)*:

2. ☐ CHILD CUSTODY                                       ☐ I request temporary emergency orders
   ☐ VISITATION (PARENTING TIME)
   a. I request that the court make orders about the following children *(specify)*:

   | Child's Name | Date of Birth | ☐ Legal Custody to *(person who<br>decides: health, education, etc)*: | ☐ Physical Custody to *(person<br>with whom child lives)*: |
   |---|---|---|---|

   KELLY MICHELE RICHARDS  7-14-06
                                                                       ☐ Attachment 2a.

   b. ☐ The orders I request for  ☐ child custody  ☐ visitation (parenting time) are:
      (1) ☐ Specified in the attached forms:
              ☐ Form FL-305    ☐ Form FL-311    ☐ Form FL-312    ☐ Form FL-341(C)
              ☐ Form FL-341(D)    ☐ Form FL-341(E)    ☐ Other *(specify)*:
      (2) ☐ As follows *(specify)*:                                    ☐ Attachment 2b.

   c. The orders that I request are in the best interest of the children because *(specify)*:    ☐ Attachment 2c.

   d. ☐ This is a change from the current order for  ☐ child custody  ☐ visitation (parenting time).
      (1) ☐ The order for legal or physical custody was filed on *(date)*:                    . The court ordered *(specify)*:

      (2) ☐ The visitation (parenting time) order was filed on *(date)*:                    . The court ordered *(specify)*:

                                                                       ☐ Attachment 2d.

| | | |
|---|---|---|
| FL-300 [Rev. July 1, 2016]    CEB® Essential Forms ceb.com | **REQUEST FOR ORDER** | **Page 2 of 4** |

Richards, Ryal W.

**EXHIBIT "5"**

**PAGE 27**

FL-300

| PETITIONER: RYAL W. RICHARDS | CASE NUMBER: |
| RESPONDENT: ALICIA MARIE RICHARDS | 15D009634 |
| OTHER PARENT/PARTY: | |

3. ☐ CHILD SUPPORT

(Note: An earnings assignment may be issued. See *Income Withholding for Support* (form FL-195))

a. I request that the court order child support as follows:

Child's name and age ☐ I request support for each   ☐ Monthly amount ($) requested
child based on the child support guideline.   (if not by guideline)

KELLY MICHELE RICHARDS  15

☐ Attachment 3a.

b. ☐ I want to change a current court order for child support filed on *(date):*
The court ordered child support as follows *(specify):*

c. I have completed and filed with this *Request for Order* a current *Income and Expense Declaration* (form FL-150) or I filed
a current *Financial Statement (Simplified)* (form FL-155) because I meet the requirements to file form FL-155.

d. The court should make or change the support orders because *(specify):*   ☐ Attachment 3d.

4. ☐ SPOUSAL OR DOMESTIC PARTNER SUPPORT

(Note: An *Earnings Assignment Order For Spousal or Partner Support* (form FL-435) may be issued.)

a. ☐ Amount requested *(monthly):* $
b. ☐ I want the court to   ☐ change   ☐ end   the current support order filed on *(date):*
The court ordered $   per month for support.
c. ☐ This request is to modify (change) spousal or partner support after entry of a judgment.
I have completed and attached *Spousal or Partner Support Declaration Attachment* (form FL-157) or a declaration
that addresses the same factors covered in form FL-157.
d. I have completed and filed a current *Income and Expense Declaration* (form FL-150) in support of my request.
e. The court should make, change, or end the support orders because *(specify):*   ☐ Attachment 4e.

5. ☐ PROPERTY CONTROL   ☐ I request temporary emergency orders

a. The ☐ petitioner ☐ respondent ☐ other parent/party   be given exclusive temporary use, possession, and
control of the following property that we ☐ own or are buying   ☐ lease or rent *(specify):*

b. The ☐ petitioner ☐ respondent ☐ other parent/party   be ordered to make the following payments on debts
and liens coming due while the order is in effect:

Pay to: _____ For: _____ Amount: $ _____ Due date: _____
Pay to: _____ For: _____ Amount: $ _____ Due date: _____
Pay to: _____ For: _____ Amount: $ _____ Due date: _____
Pay to: _____ For: _____ Amount: $ _____ Due date: _____

c. ☐ This is a change from the current order for property control filed on *(date):*
d. Specify in *Attachment 5d* the reasons why the court should make or change the property control orders.

FL-300 [Rev. July 1, 2016]                  **REQUEST FOR ORDER**                  Page 3 of 4

CEB® Essential
ceb.com  Forms™

Richards, Ryal W.

**EXHIBIT "5"**

**PAGE 28**

FL-300

| PETITIONER: RYAL W. RICHARDS<br>RESPONDENT: ALICIA MARIE RICHARDS<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>15D009634 |
|---|---|

6. ☐ **ATTORNEY'S FEES AND COSTS**

I request attorney's fees and costs, which total *(specify amount):* $ _____ . I filed the following to support my request:

    a. A current *Income and Expense Declaration* (form FL-150).

    b. A *Request for Attorney's Fees and Costs Attachment* (form FL-319) or a declaration that addresses the factors covered in that form.

    c. A *Supporting Declaration for Attorney's Fees and Costs Attachment* (form FL-158) or a declaration that addresses the factors covered in that form.

7. ☐ **DOMESTIC VIOLENCE ORDER**

> • Do not use this form to ask for domestic violence restraining orders! Read form DV-505-INFO, *How Do I Ask for a Temporary Restraining Order,* for forms and information you need to ask for domestic violence restraining orders.
> • Read form DV-400-INFO, *How to Change or End a Domestic Violence Restraining Order* for more information.

    a. The *Restraining Order After Hearing* (form DV-130) was filed on *(date):*

    b. I request that the court ☐ change ☐ end   the personal conduct, stay-away, move-out orders, or other protective orders made in *Restraining Order After Hearing* (form DV-130). (*If you want to change the orders, complete 7c.*)

    c. ☐ I request that the court make the following changes to the restraining orders *(specify):* ☐ Attachment 7c.

    d. I want the court to change or end the orders because *(specify):* ☐ Attachment 7d.

8. ☒ **OTHER ORDERS REQUESTED** *(specify):* ☐ Attachment 8.

The Court order that Ryal Richards is entitled to and shall receive the $300,000 dollars from some of the proceeds of the sale the marital residence located at 351 Catalina Drive, Newport Beach.   Said amount representing 1/2 of the $600,000 proceeds released by the Bankruptcy Court.

9. ☐ **TIME FOR SERVICE / TIME UNTIL HEARING**   I urgently need:

    a. ☐ To serve the *Request for Order* no less than *(number):* _____ court days before the hearing.

    b. ☐ The hearing date and service of the *Request for Order* to be sooner.

    c. I need the order because *(specify):* ☐ Attachment 9c.

10. ☒ **FACTS TO SUPPORT** the orders I request are listed below. The facts that I write in support and attach to this request cannot be longer than 10 pages, unless the court gives me permission. ☒ Attachment 10.

See attached Declaration and Exhibits

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: June 2, 2022

Ryal W. Richards ▶ _____

(TYPE OR PRINT NAME)                                   (SIGNATURE OF APPLICANT)

**Requests for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to *www.courts.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Response* (form MC-410). (Civ. Code, § 54.8.)

FL-300 [Rev. July 1, 2016]   CEB Essential Forms   **REQUEST FOR ORDER**   Page 4 of 4

Richards, Ryal W.

EXHIBIT "5"
PAGE 29

1  KEVIN E. ROBINSON       SBN 88726
   LAW OFFICES OF KEVIN E. ROBINSON
2  970 West 17th Street, Suite D
   Santa Ana, California 92706

3
   Tel: 714-245-0210
4  Fax: 714-973-0244

5  Attorney for Ryal W. Richards

6

7

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9        **COUNTY OF ORANGE, LAMOREAUX  JUSTICE CENTER**

10

IN RE THE MARRIAGE OF:              )    Case No. 15D 009634
11                                  )
RYAL W. RICHARDS                    )    POINTS AND AUTHORITIES IN SUPPORT
12                                  )    OF REQUEST FOR ORDER/MOTION TO
          Petitioner                )    RELEASE OR PAY $300,000 TO RYAL
13                                  )    RICHARDS REPRESENTING ONE-HALF
and                                 )    OF SOME OF THE PROCEEDS OF THE
14                                  )    SALE OF 351 CATALINA DRIVE,
ALICIA MARIE RICHARDS               )    NEWPORT BEACH, CA /HOMESTEAD
15                                  )    FUNDS RELEASED
          Respondent.               )
16  _____)

17

18               POINTS AND AUTHORITIES

19        In March of 2021 Alicia Marie Richards filed a Chapter 7 Bankruptcy case in order to

20  avoid the Writ of Possession and eviction from the marital residence located at 351 Catalina

21  Drive, Newport Beach, California.  The marital residence has now been sold by the United States

22  Bankruptcy Trustee at an auction and sold for $2, 200,000.00. Ms. Richards claimed a

23  homestead exemption of $600,000.00.  The Bankruptcy Court granted the homestead exemption

24  and allowed the Trustee to distribute one-half ($300,000.00) of those proceeds to Ms. Richards,

25  but held back the other $300,000.00 because of Ryal Richards' claim that he was entitled to that

26  as one-half of the the  net proceeds of the sale of the Catalina property pursuant to the Judgment

27  of Dissolution.

28        On May 5, 2022 the Motion to Allow the Trustee to pay Ryal Richards the $300,000

1

POINTS AND AUTHORITIES

1  came on for hearing in the United States Bankruptcy Court, Judge Erithe Smith presiding.

2  Having reviewed the motion, oppositions and replies, Judge Smith ordered that the funds be held

3  by the Trustee and/or interpleaded to allow the Orange County Superior Court Family Law

4  Division make the decision as to whether or not Ryal Richards was entitled to these funds.

5  (Attached to the Declaration of Ryal Richards as Exhibit 6 is a true and correct copy of the

6  Tentative Ruling by Judge Smith and incorporated hereat as though fully set forth.  The signed

7  order is in the process of being submitted to the Bankruptcy Court and will be available by the

8  date of the hearing.  The court is requested to take judicial notice of this tentative ruling of Judge

9  Smith.)  This Motion requests that the Family Law Court order that Mr. Richards is entitled to

10  this $300,000.00 as one-half of the "net proceeds" of the sale of the marital residence on Catalina

11  Drive in Newport Beach, California pursuant to the Judgment of Dissolution of Marriage.

12         The facts and law and argument are more clearly and specifically set forth in the Trustee's

13  Motion; Ryal Richards' Joinder in said motion, and the reply documents filed.  The Court is

14  requested to review those documents that are attached to the Declaration of Ryal Richards and

15  that moving party asks the Court to take Judicial Notice of the same in order to arrive at its

16  decision.

17         The Stipulations and Orders for Judgment which were entered on March 2, 2017 and June

18  16, 2017 became incorporated into the Judgment of Dissolution that was filed on January 26,

19  2018.  This Judgment, which has never been appealed nor stayed on appeal, contrary to any such

20  claims made by the Respondent Alicia Richards, clearly sets forth that upon the sale of the house

21  the net proceeds shall be divided equally.  The residence was community property when it

22  entered the bankruptcy estate and the proceeds from the sale are community property still.

23         The sale of the house finally took place in the United States Bankruptcy Court and the

24  $600,000 claimed homestead exemption by Ms. Richards is clearly part of the net proceeds.  The

25  homestead exemption under the California Code of Civil Procedure, Section 704.910 et.seq.

26  allows a homestead exemption from an enforcement of a creditor's judgment.  It does not allow

27  the homestead exemption against the claim of a spouse and/or joint owner of the property.  The

28  enforcement of judgments act of the Code of Civil Procedure defines Judgment Creditors and

2

POINTS AND AUTHORITIES

1    Judgment Debtors as those persons in whose favor a judgment is rendered and a person against

2    whom a judgment is rendered.  It does not include a husband and wife who, as part of a Judgment

3    of Dissolution, deals with community property and the sale of property.

4        Ryal Richards was, until the sale, a co-owner of the property and, in fact, signed a Grant

5    Deed and Escrow Instructions to facilitate the sale of this property in Bankruptcy Court.

6        The residence at 351 Catalina Drive, Newport Beach, California was community property

7    of the parties and the Judgment ordered it sold (upon Ms. Richards' failure to refinance the

8    property and pay off Mr. Richards) and the net proceeds divided equally.  The residence being

9    community property the proceeds from the sale are still community property subject to the

10   division as set forth in the Judgment.  (Of course the Bankruptcy Court has continuing

11   jurisdiction over the rest of the proceeds because of Alicia Richards filing.)  The $600,000 was

12   "released" by the Bankruptcy Court as no longer property of the bankruptcy estate and thus is

13   subject, with the May 5, 2022 order by Judge Erithe Smith to this Family Law Court's orders,

14   judgments and decisions.  This does not mean that Ms. Richards somehow gets to take the whole

15   $600,000 as an alleged homestead exemption as against her ex-spouse and co-owner of the

16   property.

17       The remaining funds from the sale of the house remain under the jurisdiction of the

18   bankruptcy court.  The process of determining what creditors shall be paid, the fees to the trustee

19   and any distribution of a surplus will be subject to the continuing administration and multiple

20   motions, accounting and orders of the Bankruptcy Court.  This process may take a substantial

21   time, while the $600,000 and specifically the $300,000 held by the trustee can be distributed now

22   because it is no longer property of the estate.

23       The Petitioner Ryal Richards is requesting that this Court enforce the Judgment of

24   Dissolution of Marriage and Order that the $300,000.00 being held by the Chapter 7 Trustee

25   should be paid to Ryal Richards.  The Court has the power to enforce this Judgment under the

26   terms of Family Code Section 290 and California Code of Civil Procedure Section 128(a) (4).

27   //

28   //

---

3

POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CONCLUSION</u>**

Based on this Motion the attached documents from the US Bankruptcy Court and the
Declaration of Ryal Richards the Court is requested sign and enter the [Proposed] Order lodged
with the Court along with this motion.

Dated:  May 20, 2022                                    Respectfully submitted,

*Kevin E. Robinson*

KEVIN E. ROBINSON

---

4

POINTS AND AUTHORITIES

1  KEVIN E. ROBINSON        SBN 88726
   LAW OFFICES OF KEVIN E. ROBINSON
2  970 West 17th Street, Suite D
   Santa Ana, California 92706
3
   Tel: 714-245-0210
4  Fax: 714-973-0244

5  Attorney for Ryal W. Richards

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **COUNTY OF ORANGE, LAMOREAUX  JUSTICE CENTER**

10

| | |
|---|---|
| IN RE THE MARRIAGE OF: | Case No. 15D 009634 |
| RYAL W. RICHARDS | DECLARATION OF RYAL W. RICHARDS IN SUPPORT OF REQUEST FOR ORDER/MOTION TO RELEASE OR PAY $300,000 TO RYAL RICHARDS REPRESENTING ONE-HALF OF SOME OF THE PROCEEDS OF THE SALE OF 351 CATALINA DRIVE, NEWPORT BEACH, CA /HOMESTEAD FUNDS RELEASE; and REQUEST FOR JUDICIAL NOTICE FLIED CONCURRENTLY |
| Petitioner | |
| and | |
| ALICIA MARIE RICHARDS | |
| Respondent. | |

17

18       I, RYAL W. RICHARDS, do hereby declare that:

19       1.        If called as a witness I could and would competently testify to the following

20  facts of my own personal knowledge except where stated as relying on information and belief.  I

21  offer this declaration in lieu of direct testimony pursuant to CCP Sections 98, 2009 and 2015.5;

22  _Reifler v. Superior Court_ (1974) 39 C.A. 3d 479, and _Marriage of Stevenot_ (1984) 154 C.A. 3d

23  1051.

24       2.     I make this Declaration in support of my request that this Court release or order paid

25  to me the $300,000 from the proceeds of the sale of 351 Catalina Drive.  This amount represents

26  one-half of the homestead exemption that was released by the United States Bankruptcy Court and

27  pursuant to Judge Erithe Smith's Order this money is being held or inter pled into the Orange County

28  Superior Court for the Family Law Court to make the decision as to whether I am entitled to this

---

1

DECLARATION OF RYAL W. RICHARDS

**EXHIBIT "5"**

**PAGE 34**

1   $300,000.00. I will make this Declaration as short as possible because there will be a lot of Exhibits

2   attached as to the pleadings and proceedings that happened in the Bankruptcy Court.

3   <div align="center">**BACKGROUND**</div>

4       3.     This court entered a Stipulation and Order for Judgment on March 2, 2017 and again

5   on June 16, 2017. Those Stipulations and Orders for Judgment became the typewritten formal

6   Judgment of Dissolution which was entered on January 26, 2018. All of those Orders and the

7   Judgment provide that I am entitled to one-half of the net proceeds of the sale of 351 Catalina Drive

8   property. I was a co-owner of that property until the property was sold in the Bankruptcy Estate of

9   Alicia Marie Richards, Case No. 8-21-BK-10635-ES.

10       4.     My house at 351 Catalina Drive, Newport Beach, CA was sold on or about November

11   4, 2021 through an auction in the United States Bankruptcy Court and escrow closed March 9, 2022.

12   The house sold for $2.2 million. At the time Ms. Richards, in her bankruptcy pleading, claimed a

13   homestead exemption in our house. Under the homestead laws of CCP §704.730, et.seq., the

14   homestead exemption recently dramatically increased to $600,000.00.

15       5.     The Bankruptcy Court granted Ms. Richards the Homestead Exemption but only up

16   to the amount of $300,000 since I claimed that I was entitled to the other $300,000 as my half of any

17   and all community property from the sale of the Catalina residence.

18       6.     Ms. Richards received her $300,000 from the sale of the house and $300,000 is still

19   being held by Richard Marshack, the Trustee of the Chapter 7 Estate.

20       7.     On May 5, 2022 the United States Bankruptcy Court entered an Order that the

21   $300,000 held by Mr. Marshack was to be held until the Family Law Court entered an Order

22   determining who, between Alicia and I, was entitled to that $300,000. Mr. Marshack is holding that

23   amount in his trust account or will inter plead it with the Orange County Superior Court.

24       8.     This matter came up because I had filed a Motion for the Bankruptcy Court to release

25   that money to myself. I did that through my attorney Kevin E. Robinson. At the request of Richard

26   Marshack, the Chapter 7 Bankruptcy Trustee, I withdrew that motion and then joined in the Trustee's

27   motion.

28       9.     The Bankruptcy pleadings filed in regard to that Homestead money are as follows:

<div align="center">2

DECLARATION OF RYAL W. RICHARDS</div>

10. Motion for Order Authorizing Trustee to Pay to Ryal Richards $300,000 from the Proceeds of Sale of Homestead Exemption or in the Alternative to Inter plead the Homestead Proceeds in the Orange County Superior Court; Memorandum of Points and Authorities in Support Thereof, Declaration of Richard G. Heston. This Motion was filed on March 28, 2022 and the hearing was scheduled for May 5, 2022. Attached hereto, labeled Exhibit "1" and incorporated hereat is a true and correct copy of said Motion for Order Authorizing Trustee to Pay to Ryal Richards $300,000.

11. On March 29, 2022, my attorney Kevin Robinson and I filed a Joinder in the Chapter 7 Trustee's Motion for an Order Authorizing the chapter 7 Trustee to Pay Ryal Richards His $300,000/50% of the Homestead Exemption from the Proceeds of Sale. Attached hereto, labeled Exhibit "2" and incorporated hereto is a true and correct copy of said Joinder. Again, this matter was scheduled for May 5, 2022.

12. Alicia Richards, the other party to this matter and Chapter 7 Debtor in the United States Bankruptcy Court filed an Opposition to this Motion and my Joinder. Ms. Richards filed her Objection on April 19, 2022, objecting to Mr. Richards arguments, claiming he is not entitled to any homestead because he had no interest in the real property. I am not attaching this Opposition or Objection because I am sure Ms. Richards will happily attach that in her many other exhibits.

13. On April 20, 2022 Alicia Richards filed her Objection to Richard A. Marshack, the Chapter 7 Trustee's Motion for an order Authorizing Trustee to Pay Ryal Richards $300,000. Again, I am not attaching that document as I am sure Ms. Richards will be attaching that and other documents.

14. On April 26, 2022 Mr. Robinson and I filed an Opposition to debtor Alicia Richards' Objection to Ryal Richards' Joinder in Richard Marshack's Motion for an order Authorizing Trustee to Pay Ryal Richards $300,000.00. Attached hereto labeled Exhibit 3 and incorporated hereat is a true and correct copy of the Opposition to Debtor's Objection filed 04/26/22/

15. On April 28, 2022 Mr. Robinson and I filed a Reply Declaration of Kevin Robinson to Debtor's Objection to Ryal Richards Joinder in Richard Marshack's Motions for an Order Authorizing Trustee to Pay Ryal Richards $300,000. Attached hereto labeled Exhibit "4" and

3

DECLARATION OF RYAL W. RICHARDS

EXHIBIT "5"
PAGE 36

incorporated hereat at is a true and correct copy of the Reply Declaration of Kevin Robinson to Debtor's Objection to Ryal Richards Joinder in Richard Marshack's Motions for an Order Authorizing Trustee to Pay Ryal Richards $300,000.

16.    On April 28, 2022 Richard Marshack, by and through his attorneys, as a Chapter 7 Trustee filed his Reply to Debtor's Opposition to Motion to For Order Authorizing Trustee to Pay to Ryal Richards $300,00 from Proceeds of Sale of Homestead Exemption, or in the Alternative, to Inter Plead the Homestead Proceeds to the Orange County Superior Court; Request for Judicial Notice.  Attached hereto labeled Exhibit 5" is a true and correct copy of the Reply to Debtor's Opposition to Motion and Request for Judicial Notice.

17.    On May 5, 2022 I was present in court (on Zoom) when this matter came on for hearing. Judge Smith's tentative decision was to let the Family Law Court decide this issue and have Mr. Marshack Inter Plead the funds in Orange County Superior Court.  Judge Erithe Smith, after listening the to the argument of the attorneys and Alicia Richards changed her tentative ruling on a straight inter plead and allowed Mr. Marshack, in his discretion, to hold the funds in his trust account. That means we have very little time to have this motion heard, decided and an Order served on Mr. Marshack so I can get the $300,000.  Judge Smith also ordered that no automatic stay on appeal would effect Mr. Marshack from disbursing the funds to me.  At this point, even Judge Smith is aware that Alicia Richards appeals everything, including now four or five matters in the bankruptcy court.  Judge Smith stated that unless the Family Law Court Judge hearing this matter grants a Stay on Appeal, that Mr. Marshack would be authorized to immediately disburse the money to Ryal Richards even based on a Minute Order.  Attached hereto labeled Exhibit 6 is a true and correct copy of Judge Smith's tentative ruling.

18.    I am asking the court to review the declarations and law and argument set forth in the Bankruptcy Court because it clearly sets forth my position and why I should be entitled to the $300,000.  I am asking the court to take Judicial Notice of these documents.

19.    I am requesting the Court to authorize me to receive the $300,000.  This house has substantial funds and there will be a surplus in the Bankruptcy Court.  I am entitled to roughly $900,000 to $1,000,000 representing one-half of the proceeds of the house after the payment of the

4

DECLARATION OF RYAL W. RICHARDS

1   mortgages, etc. The house sold for $2.2 million and there is roughly $200,000 to $300,000 of actual

2   mortgages and liens on the house. That is where I come up with 50% on equally divided proceeds

3   would be about $900,000.

4        20.    I am not a creditor in regard to the proceeds of the sale of the house, at least my half.

5   I was and always was a Joint Owner of this property. The property was community property as is

6   very clear in the Judgment of Dissolution and I am entitled to my fifty percent in my opinion.

7        20.    I desperately need this money. I am living in a two bedroom apartment with three of

8   the four children of our marriage. Kelly, my 15 year old daughter, now lives with me and had taken

9   over my bedroom, leaving me to sleep on the couch since my two middle boys, Steven and Michael,

10  are sharing the other bedroom in that apartment. We are even collecting food stamps because my

11  income does not support the whole household and even though Michael and Stephen are working,

12  I am having trouble making ends meet. I desperately would like to move out of this place, provide

13  a comfortable home for my children, even though two of them are adults, and keep my family

14  together as much as possible.

15       I declare under penalty of perjury under the laws of the State of California that the foregoing

16  is true and correct.

17

18  Dated: _5/15/22_

19                                          RYAL W. RICHARDS
                                            Petitioner and Declarant

20

21

22

23

24

25

26

27

28

5

DECLARATION OF RYAL W. RICHARDS

**EXHIBIT "5"**

**PAGE 38**

# EXHIBIT 1

1  RICHARD G. HESTON, Bar No. 90738
   HALLI B. HESTON, Bar No. 90737
2  BENJAMIN R. HESTON, Bar No. 297798
   HESTON & HESTON, Attorneys at Law
3  19700 Fairchild Road, Suite 280
   Irvine, California 92612-2528
4  (949) 222-1041 Voice
   (949) 222-1043 FAX
5  rheston@hestonlaw.com

6  Special Counsel for Trustee

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   SANTA ANA DIVISION

10

11 In re                        )   Case No.: 8:21-bk-10635-ES
                                 )
12 Alicia Marie Richards,        )   Chapter 7
                                 )
13            Debtor.            )   MOTION FOR AN ORDER
                                 )   AUTHORIZING TRUSTEE TO PAY TO
14                               )   RYAL RICHARDS $300,000 FROM
                                 )   PROCEEDS OF SALE OF
15                               )   HOMESTEAD EXEMPTION, OR IN
                                 )   THE ALTERNATIVE, TO
16                               )   INTERPLEAD THE HOMESTEAD
                                 )   PROCEEDS IN THE ORANGE
17                               )   COUNTY SUPERIOR COURT;
                                 )   MEMORANDUM OF POINTS AND
18                               )   AUTHORITIES IN SUPPORT
                                 )   THEREOF; DECLARATION OF
19                               )   RICHARD G. HESTON
                                 )
20                               )   [Pursuant to Local Bankruptcy Rules
                                 )   9013-1(a) and 9021-1(e)]
21                               )
                                 )   Date:  May 5, 2022
22                               )   Time:  10:30
                                 )   Ctrm:  5A
23 _____)

24      TO THE HONORABLE ERITHE SMITH, UNITED STATES BANKRUPTCY

25 JUDGE, DEBTOR ALICIA MARIE RICHARDS, THE UNITED STATES TRUSTEE,

26 AND ALL OTHER PARTIES IN INTEREST:

27      Richard A. Marshack, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the

28 "Estate") of Alicia Marie Richards ("Debtor"),  brings this motion for an order authorizing the

F:\BK\T\Richards, Alicia Marie\Trustee's Motion for Authoriz[...]le of Homestead Exemption or Interplead Proceed[...]

**EXHIBIT 1-001**

EXHIBIT "5"

PAGE 40

1  Trustee to either disburse to Ryal Richards ("Ryal") $300,000, representing his one half interest

2  in the proceeds of the community property homestead claimed in the property located at 351

3  Catalina Drive, Newport Beach, CA 92663 ("the Property"), pursuant to the terms of the

4  judgment of dissolution of the marriage ("the Divorce Judgment") of Debtor Alicia Marie

5  Richards ("Alicia") and Ryal (collectively referred to as "the Parties") entered on January 25,

6  2018 in the Orange County Superior Court, Family Law Department ("the Family Court"), which

7  directed the sale of the Property and equal division between the Parties of the net proceeds, or in

8  the alternative, authorizing the Trustee to interplead said funds in the Family Court.

9      In support thereof, the Trustee respectfully represents as follows:

10  **I.    PRELIMINARY STATEMENT AND BACKGROUND**

11      Debtor commenced this Chapter 7 bankruptcy proceeding on March 12, 2021. Richard A.

12  Marshack was appointed and is continuing to serve as the permanent Chapter 7 trustee in the

13  case. Scheduled among Debtor's assets was her interest in the Property, identified as "community

14  property". The Debtor claimed a homestead exemption in the Property in the amount of

15  $600,000, and no objection having been made thereto, the homestead exemption was deemed

16  allowed by operation of law.

17      Previously, the Court granted the Trustee's motion for an order approving the sale of the

18  Property. In addition, the Court granted the Trustee's motion for an order authorizing him to

19  disburse from the sale proceeds $300,000 to the Debtor. Such proceeds have been paid to the

20  Debtor. Ryal has filed his notice of claim to the remaining $300,000 of homestead proceeds,

21  based upon the Divorce Judgment entered in the Family Court, which had ordered the sale of the

22  Property as the Parties' community property and the equal division of the net resulting proceeds

23  between the Parties.

24

25  **II.    ARGUMENT**

26  **A.    AT THE TIME THIS CASE WAS COMMENCED, THE RESIDENCE**

27  **WAS UNDIVIDED COMMUNITY PROPERTY THAT HAD BEEN**

28  **ORDERED SOLD AND THE PROCEEDS DIVIDED.**

F:\BK\?\Richards, Alicia Marie\Trustee's Motion for Authorization to Disburse Funds or Interplead Proceeds

**EXHIBIT 1-002**

**EXHIBIT "5"**
**PAGE 41**

1    Pursuant to the Divorce Judgment, the Family Court previously determined that the

2  Property constituted community property and ordered that it be sold, with the proceeds to be

3  divided equally between the parties. Although Debtor disputed and resisted compliance with the

4  Divorce Judgment, ultimately it was upheld and became final. Debtor has twice commenced

5  bankruptcy proceedings, previously a Chapter 13 case that was dismissed, and the current

6  Chapter 7 case. The mere commencement of a bankruptcy proceeding that creates a bankruptcy

7  estate, does not altered the character of property included in that estate. What enters the estate as

8  undivided community property, continues to have that character within the estate, and if

9  abandoned or exempted from the estate, it emerges with the same character.

10    A change of character results only when the property is transmuted from community

11  property to separate property (or vice versa) in accordance with the requirements of California

12  Family Code §852, or upon the division of the property into separate interests. See In re McCoy,

13  111 B.R. 276, 280 (B.A.P. 9th Cir. 1990) ("It is apparent that, section 4800 tells the court how to

14  divide the community property and liabilities upon the dissolution of the marriage. It does not

15  say, however, which party or what property will be liable for any type of debts before the division

16  of community property and liabilities occur. Before the division occurs, unless there is a contrary

17  marital settlement agreement, the property remains community property and is governed by

18  Cal.Civ.Code § 5120.110.")

19    That division had not occurred at the time of the commencement of this case. In order to

20  liquidate the property in order that a division could occur, the Family Court had ordered in the

21  Divorce Judgment that the Property would be sold unless Debtor was able to buyout the interest

22  of Ryal within a limited period of time, and failing to do so, the Property was to be sold. At such

23  time as the sale had occurred, the proceeds were to then be divided equally.

24    Debtor prevented that from occurring, as a result of which the Property remained

25  undivided community property at the time of the commencement of this bankruptcy proceeding.

26  See In re Robertson, 203 F.3d 855, 861 (5th Cir. 2000) ("According to the relevant court

27  decisions we have found, "community property" as used to define property of the estate in section

28  541(a)(2) includes community property and former community property that has not been

F:\BK\7\Richards, Alicia Marie\Trustee's Motion for Authorization to Sell Real Property of the Estate\Sale Motion.docx    2

**EXHIBIT 1-003**

**EXHIBIT "5"**

**PAGE 42**

1  partitioned as of the petition date but does not include former community property which has

2  been divided and reclassified as separate property by state law before that date. Courts addressing

3  the issue have held that community property which has not been legally divided as of the

4  commencement of the bankruptcy case passes to the debtor's estate. See In re Mantle, 153 F.3d at

5  1085 (9th Cir. 1998) (citing Keller v. Keller (In re Keller), 185 B.R. 796 (B.A.P. 9th Cir. 1995));

6  McCoy v. Bank of America (In re McCoy), 111 B.R. 276 (B.A.P. 9th Cir. 1983); Miller v.

7  Walpin (In re Miller), 167 B.R. 202 (Bankr.C.D.Cal. 1994); In re Hendrick, 45 B.R. 976,

8  983-984 (Bankr.M.D.La. 1985).")

9  **B.    OTHER THAN DIVISION UNDER THE CALIFORNIA FAMILY LAW**

10  **ACT AS PART OF THE PROCEEDING FOR DISSOLUTION OF**

11  **MARRIAGE, COMMUNITY PROPERTY MAY ALSO BE**

12  **TRANSMUTED INTO SEPARATE PROPERTY BY A WRITING THAT**

13  **COMPLIES WITH CALIFORNIA FAMILY CODE SECTION 852.**

14  The requirements of California Family Code § 852 are clear and strictly construed. Estate

15  of MacDonald, 51 Cal.3d 262 (Cal. 1990). Cal. Fam. Code § 852 provides:

16      (a) A transmutation of real or personal property is not valid unless made in writing
    by an express declaration that is made, joined in, consented to, or accepted by the spouse

17  whose interest in the property is adversely affected.
        (b) A transmutation of real property is not effective as to third parties without

18  notice thereof unless recorded.
        (c) This section does not apply to a gift between the spouses of clothing, wearing

19  apparel, jewelry, or other tangible articles of a personal nature that is used solely or
    principally by the spouse to whom the gift is made and that is not substantial in value

20  taking into account the circumstances of the marriage.
        (d) Nothing in this section affects the law governing characterization of property in

21  which separate property and community property are commingled or otherwise combined.
        (e) This section does not apply to or affect a transmutation of property made before

22  January 1, 1985, and the law that would otherwise be applicable to that transmutation shall
    continue to apply.

23

24      No transmutation agreement meeting the requirements of Section 852 has ever been

25  executed by Debtor and Ryal, and while the Divorce Judgment directed the sale of the Property

26  and the equal division of the resulting proceeds, Debtor's serial appeals and consecutive

27  bankruptcy filings have prevented that from occurring . . . until now.

28  ///

F:\BK\7\Richards, Alicia Marie\Trustee's Motion for Authority to Sell Real Property\Memorandum of Points...

**EXHIBIT 1-004**

**EXHIBIT "5"**

**PAGE 43**

C.    **UPON ALLOWANCE OF THE DEBTOR'S CLAIM OF EXEMPTION, THE EXEMPT PROPERTY CEASES TO BE PROPERTY OF THE ESTATE AND REVESTS IN THE DEBTOR AS IT STOOD PRIOR TO THE COMMENCEMENT OF THE BANKRUPTCY.**

In her initial petition [DOC 1] filed on March 13, 2021, Debtor failed to list a value for the Property listed in Schedule A, identified as community property, opting instead to enter "TBD" and then claim "100% of fair market value up to any applicable statutory limit" as exempt. However, on May 13, 2021, Debtor filed an amended Schedule C [DOC 32], this time indicating that the fair market value of the Property, again listed as community property, was $3 million, and that she was claiming as exempt the sum of $600,000. While not specifying the California homestead statute, it is assumed to be the basis for such claim.

Debtor's 341(a) examination was ultimately concluded on October 15, 2021, and no objection was filed to the claim of homestead exemption within the 30 days thereafter, as a result of which the claim became allowed by operation of law. Accordingly, in the absence of any objection to the claim of homestead exemption, it ceased to be property of the estate, revesting in its owner as it stood on the date of the petition.

See In re Heintz, 198 B.R. 581, 585 (B.A.P. 9th Cir. 1996) ("After property enters the estate, one way it may exit the estate is through exemption. In re Alsberg, 161 B.R. 680, 683 (9th Cir. BAP 1993), aff'd, 68 F.3d 312 (9th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). By claiming property as exempt, a debtor removes the property from the estate and places it beyond the reach of creditors. In re Galvan, 110 B.R. 446, 449 (9th Cir. BAP 1990). Once property is exempted, its status as property of the estate is terminated and the property is ultimately revested in the debtor. In re Hyman, 123 B.R. 342, 347 (9th Cir. BAP 1991), aff'd, 967 F.2d 1316 (9th Cir. 1992); see also In re Bronner, 135 B.R. 645, 647 (9th Cir. BAP 1992); Alsberg, 161 B.R. at 683.")

D.    **ALTHOUGH DEBTOR SOUGHT TO CONVERT CHAPTER 13, SUCH MOTION WAS DENIED AND THE ORDER HAS BEEN AFFIRMED ON APPEAL, AS A RESULT OF WHICH TRUSTEE HAS NO DUTY**

F:\BK\Richards, Alicia Marie\Trustee's Motion for Auth...

**EXHIBIT 1-005**

**EXHIBIT "5"**
**PAGE 44**

**BEYOND RESTORING THE EXEMPT PROCEEDS TO THE**

**OWNERSHIP STATUS PRIOR TO THE BANKRUPTCY.**

Debtor's initial Chapter 13 case was voluntarily dismissed when the Court found Debtor's plan unfeasible and Debtor ineligible due to her lack of regular income. Although Debtor previously attempted to convert the present Chapter 7 case to Chapter 13, the Court denied that motion. Debtor appealed, but the BAP affirmed that decision on March 24, 2022. See Richards v. Marshack (In re Richards), BAP CC-21-1178-LTF (B.A.P. 9th Cir. Mar. 24, 2022). No doubt Debtor will appeal such decision further, as she has shown the propensity to do. But absent a stay the order is final. Accordingly, as this case remains in Chapter 7, Trustee is empowered to administer the estate, including abandoning property that is allowed as exempt.

**III.    ORDERS BEING SOUGHT BY TRUSTEE**

Trustee is seeking an order that the court authorize the release of the remaining $300,000 of exempt homestead sale proceeds to Ryal, who filed a notice of his demand for his share of the homestead proceeds. [DOC 598] The Court previously authorized the release of $300,000 of the proceeds to the Debtor, and she has received those funds. However, Debtor has objected to the release of the remaining half of the proceeds to Ryal, contending that such proceeds constitute her separate property. [DOC 601]

Trustee believes that the character of the Property has not been altered by the bankruptcy process, and its mere inclusion in the bankruptcy estate, dictated by application of Section 541(a)(2), leaves intact the interests of the spouses who owned the property at the time of the commencement of this case. For that reason, Trustee believes he is under a duty to comply with Ryal's request in the same manner as he has turned over to Debtor her share of the sale proceeds.

Any other conclusion would lead to great mischief, since the commencement of a bankruptcy proceeding is not an unusual event during the financially taxing process of divorce. Were a party able to extinguish the interests of a nonfiling spouse merely by commencing a bankruptcy proceeding, and then claiming the equity in the family residence to be exempt under the recently expanded California homestead statute permitting up to $600,000 of equity to be

F:\BK\VF\Richards, Alicia Marie\Trustee's Motion for Authority to Abandon 3.3.21.wpd\Main Document\3.3.21.wpd

**EXHIBIT 1-006**

**EXHIBIT "5"**

**PAGE 45**

1   claimed as exempt, the role of the family courts would be usurped, and bankruptcy would

2   become a misused process to achieve results contrary to the equal division requirements of the

3   California Family Code.

4        That is exactly what has occurred here, where a judgment was entered upon the

5   stipulation of Debtor and Ryal, and yet years have passed without Debtor complying with the

6   consensual judgment to which she agreed. As a result of her commencement of this Chapter 7

7   case, Debtor invoked the jurisdiction of the Bankruptcy Court, resulting in the appointment of the

8   Trustee, and the subsequent liquidation by sale of the Property. While the nonexempt portion of

9   the proceeds remain within the jurisdiction of the Court to be administered in accordance with

10  the Code, Trustee's sole remaining obligation is to restore the exempt community property to the

11  status it had prior to commencement of the case. And on the date of filing, the Property remained

12  undivided community property[1] which had been ordered sold and divided equally between the

13  parties.

14       In the event that the Court is persuaded that the exempt proceeds from the sale of the

15  Property no longer remain within its jurisdiction, effectively depriving the Court of the

16  jurisdiction to determine the manner of distribution of the proceeds, then Trustee alternatively,

17  would request that he be authorized to interplead the funds with the Family Court, which retained

18  continuing jurisdiction in the divorce proceeding to make such orders as may be necessary to

19  implement the terms of the Divorce Judgment. ("*Reservation of Jurisdiction: The court shall*

20  *retain jurisdiction over the issue of the division of community property assets and obligations of*

21  *both parties until fully executed therein.*" See Judgment of Dissolution of Marriage, p. 20,

22  entered January 25, 2018.)

23

24  **V.    CONCLUSION**

25       Based on the foregoing, the Trustee respectfully requests that this Honorable Court enter

26  an order authorizing the Trustee to either disburse to Ryal Richards $300,000, as his share of the

27  ---

28  [1]    As noted at the outset, in both the initial petition [DOC 1], and the amended Schedules A and C [DOC 32], the Debtor characterized the Property as community property.

F:\BK\\Richards, Alicia Marie\Trustee's Motion for Authority to...

**EXHIBIT 1-007**

1   proceeds of the homestead claimed in the property located at 351 Catalina Drive, Newport

2   Beach, CA 92663, or in the alternative, authorizing the Trustee to interplead said funds in the

3   Family Court.

4   Dated:  3/28/2022                                  HESTON & HESTON
                                                        Attorneys at Law

5

6                                                       /s/  Richard G. Heston
                                                        By: Richard G. Heston
7                                                       Attorneys for Richard Marshack,
                                                        Chapter 7 Trustee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F:\BK\\Richards, Alicia Marie\Trustee's Motion for Authorization to Disburse Proceeds from Sale of Homestead Property                              8

**EXHIBIT 1-008**

**EXHIBIT "5"**
**PAGE 47**

## DECLARATION OF RICHARD G. HESTON

I, Richard G. Heston, declare as follows:

1.      I am an attorney duly authorized to practice in this court. I am a partner with Heston & Heston, Attorneys at Law. I have been approved as Special Counsel for Richard A. Marshack in his capacity as the Chapter 7 trustee ("Trustee") for the bankruptcy estate (the "Estate") of Alicia Marie Richards ("Debtor"). I have personal knowledge of the matters set forth herein, and if called upon as a witness would and could competently testify thereto.

2.      I am making this declaration in support of the Trustee's Motion for an order authorizing the Trustee to either disburse to Ryal Richards $300,000, representing his one half interest in the proceeds of the community property homestead claimed in the property located at 351 Catalina Drive, Newport Beach, CA 92663 ("the Property"), or in the alternative, authorizing the Trustee to interplead said funds in the Family Court.

3.      Previously, Debtor was married to Ryal Richards ("Ryal"). That marriage was terminated by the stipulated judgment of dissolution of marriage ("the Divorce Judgment") entered January 26, 2018 based upon the parties' stipulation entered into in 2017. A copy of that judgment is attached as Exhibit A.

4.      Under the terms of the stipulation and Divorce Judgment, commencing on page 14 and continuing through page 17, Debtor had been given three weeks from June 16, 2017 to refinance the Property and pay Ryal $450,000 by July 7, 2017, and if she failed to do so, the property was to be listed for sale and the net resulting proceeds divided equally between the parties. The Family Court reserved jurisdiction to implement such orders.

5.      At no time did Debtor refinance the Property or pay Ryal $450,000, as a result of which Ryal commenced appropriate proceedings in the Family Court to enforce the terms of the Divorce Judgment requiring the sale of the Property.

6.      In addition to moving to vacated and set aside the stipulated Divorce Judgment, which was unsuccessful, Debtor pursued appellate review of such orders in the Family Court, also without success, and the Divorce Judgment is now final. A copy of the unpublished opinion of the California Court of Appeal, District Four, Division Three filed on January 9, 2020 in case

F:\BK\?\Richards, Alicia Marie\Trustee's Motion for Authorization to Disburse/Interplead Proceeds of Property

**EXHIBIT 1-009**

1    number G055927 is attached to the Compendium of Unpublished Authority in support of this

2    Motion is filed concurrently herewith.

3        7.      Debtor commenced this Chapter 7 bankruptcy proceeding on March 12, 2021.

4    Richard A. Marshack was appointed and is continuing to serve as the permanent Chapter 7

5    trustee in the case.

6        8.      Scheduled among Debtor's assets was her interest in the Property, which she

7    identified as community property. The Debtor claimed a homestead exemption in the Property in

8    the amount of $600,000.

9        9.      Debtor's 341(a) examination was conducted over several continued dates, but

10    ultimately concluded on October 15, 2021. No party has objected to Debtor's claim of homestead

11    exemption.

12        10.      Previously, the Court granted the Trustee's motion for an order approving the sale

13    of the Property. In addition, the Court granted the Trustee's motion for an order authorizing him

14    to disburse from the sale proceeds $300,000 to the Debtor. Such proceeds have been paid to the

15    Debtor.

16        11.      On March 9, 2022, Ryal filed his notice of claim to the remaining $300,000 of

17    homestead proceeds [DOC 598], based upon the Divorce Judgment entered in the Family Court.

18    A copy of that notice of claim is attached as Exhibit B.

19       I declare under penalty of perjury under the laws of the United States of America that the

20    foregoing is true and correct, and that this declaration is executed on March 28, 2022, at Irvine,

21    California.

22

23                             /s/ Richard G. Heston

24

25

26

27

28

F:\BK\\Richards, Alicia Marie\Trustee's Motion for Authori...

**EXHIBIT 1-010**

# EXHIBIT A

## EXHIBIT 1-011

FL-180

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
KEVIN E. ROBINSON 88726
Law Offices of KEVIN E. ROBINSON
970 W. 17th Street, Suite D
Santa Ana, CA 92706
TELEPHONE NO.: (714) 245-0210    FAX NO. *(Optional):* (714) 973-0244
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* RYAL W. RICHARDS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange County
STREET ADDRESS: 341 The City Drive
MAILING ADDRESS: P.O. BOX 14710
CITY AND ZIP CODE: Orange, CA 922863
BRANCH NAME: Lamoreaux

**FOR COURT USE ONLY**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

JAN 2 6 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: K. McDONALD , DEPUTY

**MARRIAGE OR PARTNERSHIP OF**
PETITIONER: RYAL W. RICHARDS

RESPONDENT: ALICIA MARIE RICHARDS

**JUDGMENT**
☒ DISSOLUTION   ☐ LEGAL SEPARATION   ☐ NULLITY
☐ Status only
☐ Reserving jurisdiction over termination of marital or domestic partnership status
☐ Judgment on reserved issues
Date marital or domestic partnership status ends: JAN 2 6 2018

CASE NUMBER:
15D 009 634

1. ☐ This judgment ☐ contains personal conduct restraining orders ☐ modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on *(date):* _____

2. This proceeding was heard as follows: ☐ Default or uncontested ☐ By declaration under Family Code section 2336
   ☒ Contested   ☐ Agreement in court
   a. Date: June 16, 2017 and March 2, 2017    Dept.: L-74    Room:
   b. Judicial officer *(name):* Honorable Linda L. Miller    ☐ Temporary judge
   c. ☒ Petitioner present in court   ☒ Attorney present in court *(name):* Kevin E. Robinson
   d. ☒ Respondent present in court   ☒ Attorney present in court *(name):* Eugene Zech
   e. ☐ Claimant present in court *(name):* _____   ☐ Attorney present in court *(name):*
   f. ☒ Other *(specify name):* Diane Vargas, Attorney for the minors

3. The court acquired jurisdiction of the respondent on *(date):* ~~1/25/2016~~ 1/15/2016
   a. ☐ The respondent was served with process.
   b. ☒ The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. ☒ Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
      status of single persons
      (1) ☒ on *(specify date):* JAN 2 6 2018
      (2) ☐ on a date to be determined on noticed motion of either party or on stipulation.
   b. ☐ Judgment of legal separation is entered.
   c. ☐ Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

   d. ☐ This judgment will be entered nunc pro tunc as of *(date):*
   e. ☐ Judgment on reserved issues.
   f. The ☐ petitioner's ☐ respondent's former name is restored to *(specify):*
   g. ☐ Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. ☒ This judgment contains provisions for child support or family support. Each party must complete and file with the court a
      *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the
      court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice
      of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a
      Child Support Order* (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

**JUDGMENT**

Family Code, §§ 2024, 2340,
2343, 2346
www.courts.ca.gov

CEB® | Essential
ceb.com | 🞊 Forms™

RICHARDS, RYAL W.

EXHIBIT 1-012
FOURTH PROPOSED JUDGMENT

EXHIBIT "5"
PAGE 51

FL-180

| CASE NAME (Last name, first name of each party): | CASE NUMBER: |
|---|---|
| RICHARDS, RYAL and ALICIA | 15D 009 634 |

4.  i.  [X]  The children of this marriage or domestic partnership are:
   (1) [X]  Name            Birthdate
     MICHAEL RYAL RICHARDS   04-24-01
     KELLY MICHELLE RICHARDS  7-14-06

   (2) [ ]  Parentage is established for children of this relationship born prior to the marriage or domestic partnership

 j. [X]  Child custody and visitation (parenting time) are ordered as set forth in the attached
   (1) [X]  Settlement agreement, stipulation for judgment, or other written agreement which contains the information
     required by Family Code section 3048(a).
   (2) [ ]  *Child Custody and Visitation Order Attachment* (form FL-341).
   (3) [ ]  *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).
   (4) [ ]  Previously established in another case. Case number:    Court:

 k. [X]  Child support is ordered as set forth in the attached
   (1) [X]  Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations
     required by Family Code section 4065(a).
   (2) [ ]  *Child Support Information and Order Attachment* (form FL-342).
   (3) [ ]  *Stipulation to Establish or Modify Child Support and Order* (form FL-350).
   (4) [ ]  Previously established in another case. Case number:    Court:

 l. [X]  Spousal, domestic partner, or family support is ordered:
   (1) [ ]  Reserved for future determination as relates to  [ ] petitioner  [ ] respondent
   (2) [ ]  Jurisdiction terminated to order spousal or partner support to  [ ] petitioner  [ ] respondent
   (3) [ ]  As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).
   (4) [X]  As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.
   (5) [ ]  Other *(specify):*

 m. [X]  Property division is ordered as set forth in the attached
   (1) [X]  Settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ]  *Property Order Attachment to Judgment* (form FL-345).
   (3) [ ]  Other *(specify):*

 n. [X]  Attorney fees and costs are ordered as set forth in the attached
   (1) [X]  Settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ]  *Attorney Fees and Costs Order* (form FL-346).
   (3) [ ]  Other *(specify):*

 o. [ ]  Other *(specify):*

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's
provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:                * See pleading *
                   JUDICIAL OFFICER

5. Number of pages attached: 22     [X] SIGNATURE FOLLOWS LAST ATTACHMENT

NOTICE

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or
domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration,
survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the
rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should
review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to
determine whether they should be changed or whether you should take any other actions.
A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the
debt or obligation, the creditor may be able to collect from the other party.
An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.
Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. July 1, 2012]                    Page 2 of 2
CEB® Essential   **EXHIBIT 1-013**            
ceb.com  Forms™    (Family Law)     RICHARDS, RYAL W.

EXHIBIT "5"

PAGE 52

FL-192

## NOTICE OF RIGHTS AND RESPONSIBILITIES
### Health-Care Costs and Reimbursement Procedures

**IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:**

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent, or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion. If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

**a. Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

**b. Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs.

Form Approved for Optional Use
Judicial Council of California
FL-192 (Rev. January 1, 2015)

CEB Essential Forms

Page 1 of 2
Family Code, §§ 4062, 4063
www.courts.ca.gov

NOTICE OF RIGHTS AND RESPONSIBILITIES
Health-Care Costs and Reimbursement Procedures

RICHARDS, RYAL R.

EXHIBIT "5"

FL-192

# INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER

**General Information**
The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

**When a Child Support Order May Be Modified**
The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parties' tax filing status and may consider hardships, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

**Examples**
- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.
- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.
- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

**How to Change a Child Support Order**
To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

**What forms do I need?**
If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:
- FL-680, *Notice of Motion (Governmental)* or FL-683 *Order to Show Cause (Governmental)* and
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is not open with the local child support agency, you must fill out one of these forms:
- FL-300, *Request for Order* or
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:
- FL-150, *Income and Expense Declaration* or FL-155, *Financial Statement (Simplified)*

**What if I am not sure which forms to fill out?**
Talk to the family law facilitator at your court.

After you fill out the forms, file them with the court clerk and ask for a hearing date. Write the hearing date on the form.

The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:
- Form FW-001, *Request to Waive Court Fees*
- Form FW-003, *Order on Court Fee Waiver (Superior Court)*

You must serve the other parent. If the local child support agency is involved, serve it too.

This means someone 18 or over - not you - must serve the other parent copies of your filed court forms at least 16 court days before the hearing. Add 5 calendar days if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). Court days are weekdays when the court is open for business (Monday through Friday except court holidays). Calendar days include all days of the month, including weekends and holidays. To find court holidays, go to *www.courts.ca.gov/holidays.htm*.

The server must also serve blank copies of these forms:
- FL-320, *Responsive Declaration to Request for Order* and FL-150, *Income and Expense Declaration*, or
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

Go to your hearing and ask the judge to change the support. Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:
- FL-340, *Findings and Order After Hearing* and
- FL-342, *Child Support Information and Order Attachment*

**Need help?**
Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

NOTICE OF RIGHTS AND RESPONSIBILITIES
Health-Care Costs and Reimbursement Procedures

**EXHIBIT "5"**

RICHARDS, RYAL W.

**EXHIBIT "5"**

**PAGE 54**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

## ATTACHMENT TO JUDGMENT

This attachment to Judgment is based on the handwritten Stipulated Judgment filed on

June 16, 2017 and March 2, 2017.

I.    STATISTICAL FACTS

    A.    The parties were married on July 30, 1994. *3, 1995 as amended in court 1/26/18*

    B.    There are two minor children of the relationship:

        1.    Michael Ryal Richards, male, date of birth 4-24-2001; and

        2.    · Kelly Michelle Richards, female, date of birth: 7-14-2006.

    C.    Since the date of separation, each of the parties has been and shall continue

        hereafter to be free from interference, authority or control by the other and each

        may conduct, carry on and engage in any employment, business or trade which he

        or she shall deem advisable for his or her sole and separate use and benefit

        without and free from any control, restraint or interference, direct or indirect, by

        the other party, in all respects. *Date of Separation : Feb 20, 2016 (agreed in court 1/26/18*

II.   CUSTODY AND VISITATION

    A.    **Legal Custody**

        1.    The parties shall share joint legal custody of the minor children Michael R.

        Richards, born 4-24-2001 and Kelly M. Richards born 7-14-2006.

Page 1 of 20

# EXHIBIT 1-016

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

2.    Neither parent shall submit the child(ren) to any psychological/psychiatric testing or evaluation or to any extended course of medical, dental, orthodontic, psychiatric or psychological treatment/counseling without first obtaining the approval of the other parent.

3.    Pursuant to Family Code Section 3025, both parents shall have the same access to psychological, medical, dental and school records pertaining to their child(ren) and shall be permitted independently to consult with any and all concerned professionals.  The names of both parents shall be listed on school and extracurricular cards to be contacted in case of emergency.

4.    Each parent is to provide the other with the address and telephone number at which the minor child(ren) reside.  A parent shall notify the other parent if the parent plans to change the residence of the child for more than thirty (30) days, unless there is a prior written agreement to the removal.  The notice shall be given before the contemplated move, by mail, return receipt requested, postage prepaid, the last known address of the parent to be notified.  A copy of the notice shall also be sent to that parent's counsel of record.  To the extent feasible, the notice shall be provided within a minimum of forty-five (45) days before the proposed change of residence so as to allow for mediation of a new agreement concerning custody. (Family Code §3024).

Page 2 of 20

# EXHIBIT 1-017

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

**B.    Physical Custody**

1.    The Parties shall share joint physical custody of the minor children.

Petitioner shall have parenting time with Kelly as follows:

(a)    Alternating weekends from Friday at 8 p.m. to Sunday at 7 p.m.

commencing June 16, 2017.

(b)    Every Tuesday from 8 p.m. to 9:30 p.m.

(c)    Alternating Wednesdays from 8 p.m. to 9:30 p.m. commencing

June 21, 2017.

(d)    Alternating Thursdays from 6:20 p.m. to 9:00 p.m. commencing

June 29, 2017.

2.    Additional visitation as mutually agreed between the parties.

3.    Both parties shall continue with Kelly's extracurricular activities and

facilitate the same to wit: girl Scouts, gymnastics and dance, and Indian

Princess with Father.

4.    All exchanges of the minor child(ren) shall be peaceful and calm. The

parties shall equally share transportation of the child for all exchanges.

5.    When Petitioner/Father has a larger home, the minor Kelly is encouraged

to spend the night at Petitioner/Father's from Tuesday to Wednesday with

a drop-off at school.

6.    Any other times not designated to Father, the minor child Kelly shall be in

Respondent/Mother's physical custody.

Page 3 of 20

# EXHIBIT 1-018

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

7.    The minor child Michael shall be in Petitioner/Father's custody except

for the following times with Respondent/Mother:

(a)    Alternating weeks with the exchange on Sunday at 6 p.m. Neither

parent is obligated to force Michael to exercise visitation with the

other parent. Neither party shall encourage the minor child not to

go with the other parent.

C.    **Holidays and Special Days**

The Court shall reserve jurisdiction over the issue of holidays and special days. It

is the parties' intention to work together with regards to the holidays and special

days. Further, it will be as agreed between the Respondent and the minor

children.    It is the intention of the parties to share the holidays and special days

equally.

D.    **California Family Code §3048**

1.    The basis for the Court's exercise of jurisdiction is personal jurisdiction

over the parties and that California is the home state of the minor child.

2.    Both parties were given notice and an opportunity to be heard as provided

by the laws of the State of California.

3.    A clear description of the custody and visitation rights of each party is

herein above set forth.

4.    A violation of the custody and/or visitation Order set forth herein may

subject the party in violation to civil or criminal penalties, or both.

# EXHIBIT 1-019

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

5.      The Country of habitual residence of the minor child is the United States
of America.

III.    **CHILD SUPPORT**

A.      Petitioner shall pay to Respondent child support of $1250.00 per month payable
$625.00 on the 4th and $625 on the 20th of each month commencing 7/2/17 and
continuing until further order of the court or until the child marries, dies, is
emancipated, reaches 19, or reaches 18 and is no longer a full-time high school
student, whichever occurs first.  Child Support is apportioned for each child as
follows:

Michael R. Richards:  $500.00 per month

Kelly M. Richards: $750.00 per month

B.      As and for additional child support, the Petitioner shall pay for:

1.      The minor child Kelly's gymnastics; and

2.      Health insurance for the minor children at reasonable or little cost through
his employment with a 30 day grace period.  Each party is responsible for
½ of all uncovered medical, dental, orthodontia health costs.

C.      As and for additional child support, the parties shall be equally responsible for all
uninsured and/or unreimbursed hospital, medical, dental, pharmaceutical,
optometric, orthodontic and psychological expenses incurred on behalf of the
minor children.

D.      Family Code §4063

Page 5 of 20

**EXHIBIT 1-020**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

      1.    See attached Notice of Rights and Responsibilities, Health Care Costs and

           Reimbursement Procedures.

E.    Family Code §4065

      1.    The Parties are fully informed of their rights concerning child support.

      2.    This Order is being agreed to freely without coercion or duress and the

           needs of the minor children will be adequately met by the stipulated

           amount.

      3.    The right to support has not been assigned to any county under Section

           11477 of the Welfare and Institutions Code and no application for public

           assistance is pending.

      4.    This order is in the best interest of the minor children involved.

      5.    Pursuant to Family Code § 5616, in the event that there is a contract

           between a party receiving support and a private child support collector, the

           party ordered to pay support must pay the fee charged by the private child

           support collector. This fee must not exceed 33 1/3 percent of the total

           amount of past due support nor may it exceed 50 percent of any fee

           charges by the private child support collector. The money judgment

           created by this provision is in favor of the private child support collector

           and the party receiving support jointly.

IV.    SPOUSAL SUPPORT

    A.    Petitioner shall pay Respondent spousal support in the amount of $1,250.00 per

# EXHIBIT 1-021

Page 6 of 20

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

month, payable $625.00 on the 6th and $625 on the 20th of each month

commencing July 1, 2017 and continuing until further order of the court, the

remarriage of the payee, the death of either party, whichever occurs first.

B.  **GAVRON WARNING:**  The Court hereby issues a Gavron Warning to

Respondent, Alicia Richards.  Family Code Section 4320 states that the goal of

the State of California is that both parties shall become self-supporting within a

reasonable time after a dissolution of marriage.  Respondent shall make

reasonable efforts to obtain employment commensurate with her abilities to

contribute toward her own support.

V.  **PROPERTY DIVISION**

A.  The itemization of community property assets and liabilities referred to below has

been prepared in accordance with information received from and confirmed with

both Petitioner and Respondent and the values assigned to the various items have

been arrived at by negotiation between the parties, from the parties' books and

records and/or based upon values agreed upon between the parties.  Each party

accepts each of the values assigned as being fair and equitable and representing a

compromise of disputed values or an agreed upon value.

B.  The Petitioner is awarded the following assets as his sole and separate property

and shall accept and assume all liabilities associated with the assets as set forth

below:

1.  His clothing, jewelry and personal effects in his possession.

# EXHIBIT 1-022
Page 7 of 20

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    2.    The furniture, furnishings, appliances and collectibles in his possession.

    3.    Any and all community property interest, if any, whether determined or undetermined in the BMW automobile.

    4.    Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Ryal William Richards alone.

    5.    All bank accounts, including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Petitioner's name alone.

    6.    Any and all stocks, bonds, secured notes and/or mutual funds standing in Petitioner's name alone.

C.    The Respondent is awarded the following assets as her sole and separate property and shall accept and assume all liabilities associated with the assets as set forth below:

    1.    Her clothing, jewelry and personal effects in her possession.

    2.    The furniture, furnishings, appliances and collectibles in her possession.

    3.    Any and all community property interest, if any, whether determined or undetermined in the Ford Fusion automobile.

    4.    Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Alicia W. Richards alone.

Page 8 of 20

# EXHIBIT 1-023

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO.  15D 009 634

5.    All bank accounts,   including but not limited to checking, savings, CD's,
money market and credit union or other deposit accounts in Respondent's
name alone.

6.    Any and all stocks, bonds, secured notes and/or mutual funds standing in
Respondent's name alone.

D.    **Confirmation of Property**:  Husband shall assign to Wife all right, title and
interest in the property awarded to Wife hereunder and said property shall be
Wife's separate property hereafter.  Wife shall assign to Husband  all right, title
and interest in the property awarded to Husband  hereunder and said property shall
be Husband's separate property hereafter.

E.    **Liens on Assets:**   Except as otherwise specifically provided, all property
transferred hereunder is transferred subject to all existing encumbrances and liens
thereon.  The transferee of such property shall indemnify and hold harmless the
other party from any claim or liability that the other party may suffer or may be
required to pay on account of such encumbrances or liens.  Each party represents
to the other that all such liens and their amounts are accurately and specifically
referred to herein.  Any liens not disclosed herein shall be deemed a missed and
significant liability.

F.    **Vehicle Liability:**   Whether or not third parties may claim against either or both
of the parties, and whether or not formalities of title have been completed, each
party shall, and does release the other from any and all liability, whether primary,

Page 9 of 20

# EXHIBIT 1-024

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

derivative or vicarious, whether in tort, or in contract, or by statute, and shall hold

the other harmless from all claims of others relative to any vehicle awarded to

each party respectively regardless of the present form of title. Nothing herein

shall provide for or be interpreted as reducing the insurance coverage.

VI.   **DEBTS AND LIABILITIES**

A.   Except as otherwise provided herein, each party shall assume and hold the other

free and harmless from all debts and obligations incurred by such party during the

course of their marriage.

B.   Except as otherwise provided herein, each party shall assume the encumbrances

and liens on all property transferred to such party pursuant to this Judgment. Each

party receiving an asset subject to an encumbrance shall indemnify and hold

harmless the other party from any form of liability that the other party may suffer

or be required to pay on account of such encumbrance or lien. Any liens not

disclosed herein shall be deemed a missed and significant liability.

C.   Except as otherwise provided herein, whether or not third parties make claim

against either or both of the parties, and whether or not formalities of title have

been completed, each party shall, and does, release the other from any and all

liability, whether primary, derivative or vicarious, whether in tort, or in contract,

or by statute, and shall hold the other harmless from all claims of others relative to

any vehicle awarded to each party respectively regardless of the present form of

title. Nothing herein shall provide for or be interpreted as reducing the insurance

Page 10 of 20

# EXHIBIT 1-025

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

coverage.

D.  The Court finds that each party understands that the provisions contained herein
    for one party to assume the obligation(s) of the community for the benefit of the
    other party may not be binding on third party creditors and the creditor may retain
    rights to seek payment against either party. Each party understands that
    obligations to third party creditors and to each other may be subject to possible
    discharge in bankruptcy.

E.   All community debts and obligations shall be divided equally between the parties.
    Kevin E. Robinson on behalf of the Petitioner Ryal W. Richards and the
    Respondent Alicia Richards are ordered to exchange current statements and come
    up with a 50/50 split taking into account the bills in each parties' name alone.

F.  Petitioner shall pay and hold the Respondent harmless on the following debts,
    liabilities, and obligations, and shall indemnify the Respondent from any claim or
    liability that Respondent may suffer in connection with these debts, liabilities and
    obligations:

    1.  Petitioner Ryal Richards to pay Diane Vargas' attorney fees from his funds
        received from the purchase/refinance of the house by the Respondent or
        from his portion of the proceeds if the property is sold. Petitioner to pay
        Diane Vargas' bill in the amount of $6,000.00 or any mutually agreeable
        amount as agreed between Ms. Vargas and Petitioner.

    2.  Any and all debts, liabilities and credit card obligations incurred by the

Page 11 of 20

# EXHIBIT 1-026

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

Petitioner after the date of separation; and

3.    Any and all debts, liabilities and credit card obligations in Petitioner's name alone.

G.    Respondent shall pay and hold the Petitioner harmless on the following debts, liabilities, and obligations, and shall indemnify the Petitioner from any claim or liability that Petitioner may suffer in connection with these debts, liabilities and obligations:

1.    Any and all debts, liabilities and credit card obligations incurred by the Respondent after the date of separation; and

2.    Any and all debts, liabilities and credit card obligations in Respondent's name alone.

H.    Each of the parties warrants and represents that he/she has not incurred, since the date of separation, any indebtedness chargeable against the other.

I.    Each of the parties warrants and represents that there are no remaining obligations for which the community was liable as of the date of separation except as expressly set forth in the Judgment. In the event that hereafter it is determined that there presently exists any obligation for which the community is liable, the party who incurred such obligation shall assume such obligation and shall indemnify the other party therefrom.

J.    Neither party, since the date of separation, shall incur any indebtedness chargeable against the other or contract any debt or obligation in the name of the other. The

# EXHIBIT 1-027

Page 12 of 20

EXHIBIT "5"

PAGE 66

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

party who incurred such indebtedness or contracted such debt or obligation shall

indemnify, including, but not limited to, the payment of reasonable attorney's fees

and costs, the other party therefrom.

VII.    **CONFIRMATION OF SEPARATE PROPERTY**

A.    The Court confirms to Petitioner as his/her sole and separate property, and

Respondent shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Petitioner's separate property are confirmed to the Petitioner.

2.    All of Petitioner's personal effects which are currently in Petitioner's

possession are confirmed to the Petitioner

3.    All earnings, accumulations, assets and debts acquired in and since the

date of separation.

B.    The Court confirms to Respondent as his/her sole and separate property, and

Petitioner shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Respondent's separate property are confirmed to the Respondent.

2.    All of Respondent's personal effects which are currently in Respondent's

**EXHIBIT 1-028**

Page 13 of 20

**EXHIBIT "5"**

**PAGE 67**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

        possession are confirmed to the Respondent.

    3.    All earnings, accumulations, assets and debts acquired in and since the

date of separation.

VIII.  **FAMILY RESIDENCE:**

    The parties own the residence located at 351 Catalina Drive, Newport Beach, California.

The legal description of the real property located at 351 Catalina Drive, Newport Beach

California is as follows:

        Lot 64 of Tract No. 1136, in the city of Newport Beach, County of

        Orange, State of California, as per map recorded in Book 37, in the

        office of the County Recorder of Orange County.

    Since the date of separation, Respondent has been residing at the real property. The

parties agree and the Court has ordered that:

    A.    Respondent Alicia Richards has three weeks from the date of June 16, 2017 to

refinance the property and/or pay the following amounts:

        i.    $450,000 to Ryal Richards on or before July 7, 2016;

        ii.    The first mortgage to First Financial;

        iii.    The second mortgage/HELOC to School's First.

    B.    If the house is not refinanced and the above sums paid by July 7, 2017, the house

shall be immediately listed for sale. The parties are ordered to sign the Exclusive

Listing Agreement on or before July 8, 2016 with one of the following real estate

agents:

# EXHIBIT 1-029

Page 14 of 20

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

1.    Scott Singer, Villa Real Estate;

2.    Cathryn Min; or

3.    Mike Kennedy.

If either party fails to sign the listing agreement, the Court Clerk is ordered to sign said Exclusive Listing Agreement with 24 hour Notice.

Both parties are ordered to cooperate with signing all documents necessary for the sale of the residence.

Time is of the essence.  There shall be no delay in selling said residence.

The Petitioner shall sign any and all documents, deeds, etc. required to be signed by him in connection with Respondent's purchase/refinance of the Catalina property.  In the Event Petitioner fails to execute any reasonable documentation associated with Respondent's purchase/refinance of the Catalina property, the July 7, 2017 sale date can be extended until said required documents are signed by the Petitioner.

The parties are ordered to cooperate with brokers, buyers, escrow companies, appraisers, repairmen and other involved in the sale.

The parties are ordered to promptly execute any documents necessary to effectuate this order.

The failure to cooperate in the sale, or violations of this order may result in being required to pay any loss to the community or other party from the violation, and may result in attorney's fees, monetary sanctions, and/or contempt of court.

Upon sale, the proceeds shall be handled in the following manner: First reasonable costs

Page 15 of 20

# EXHIBIT 1-030

EXHIBIT "5"
PAGE 69

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

of the sale, commission, mortgages and other secure debts including Family Law Attorney Real

Property Liens shall be paid from the proceeds. The balance shall be equally divided between

the parties.

The Court reserves jurisdiction over all aspects of this court ordered sale and over the

enforcement of this order. Given the urgency in selling the property, the court authorizes either

party to make an ex parte motion with proper ex parte notice to carry out this order.

Petitioner is to select the name of three brokers meeting the criteria specified by the court.

They are to provide these names to the Respondent by July 8, 2017. Respondent must then select

one broker from this list by July 8, 2017. (See list contained on page 15)

The listing price shall be:

$1,250,000.00. After 30 days, if the property has not sold the price shall be reduced to an

amount that the parties agree to in writing after consulting the broker.

Both parties shall sign the listing agreement within 1 day of its preparation.

Until the close of escrow, Respondent is awarded temporary exclusive use of the

property. The parties shall make the property available for inspection by brokers, sales agents

and prospective buyers at all reasonable times. The premises shall be maintained in good and

marketable condition.

All ordinary and customary expenses for maintenance of the property shall be timely paid

0% by Petitioner and 100% by Respondent. The parties must agree in writing as to any

extraordinary expenses.   For purposes of this order ordinary expenses are limited to mortgages,

taxes, insurance, ordinary garden and pool maintenance, and emergency plumbing or electrical

Page 16 of 20
# EXHIBIT 1-031

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

repairs. Utilities shall be paid 0% by Petitioner and 100% by Respondent. The party occupying
the property will not be charged any "rent" for the property's use.

IX.    **DIVISION OF PROCEEDS:**

Upon the sale of the property located at 351 Catalina Drive, Newport Beach, California,
after payment of broker's commissions, encumbrances and other costs of sale, the net
proceeds shall be divided equally between the parties, except that any lien or
encumbrance incurred by either party alone, which is not a community obligation shall be
charged to that party's share of the proceeds.

X.    **ORDER-SALE OF REAL PROPERTY:**

The court orders the sale of the real property located at 351 Catalina Drive, Newport
Beach, California, ("the property").

The court orders the parties to list the property for sale by 7/7/17 with a licensed real
estate broker.

Respondent is to choose one of the three brokers listed on page 21.

XI.    **OTHER PROPERTY ISSUES**

A.    **Waiver of Alleged Breach of Fiduciary Duty:** The parties had various
brokerage and retirement accounts during the marriage. For purposes of this
Judgment, the parties are waiving and relinquishing any rights in bringing any
alleged breach of fiduciary duty claims against either party for the way any and all
brokerage and retirement accounts were invested throughout the marriage and
after the date of separation. This issue has been resolved in this Judgment.

Page 17 of 20
# EXHIBIT 1-032

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

XII.    **ATTORNEY FEES**

    A.    Each party shall bear their own attorneys' fees and costs and shall not be

responsible for the attorneys' fees and costs of the other party.

    B.    If either party fails to perform any of his or her obligations under this Stipulated

Judgment, and it thereby becomes necessary for the other to employ counsel

and/or accountants to enforce or defend the same, the prevailing party shall be

entitled to recover reasonable attorneys' fees and costs, accounting fees and other

reasonable expenses incurred in connection with the enforcement of such

obligation or defense of such actions, and the other party shall pay such

reasonable fees, costs and expenses that may be fixed by the Court.

XIII.    **OTHER ORDERS**

    A.    Waiver of Rights to Reimbursement: As part of the division of the community

property, except as may be specifically provided to the contrary in this Stipulated

Judgment, each party waives all rights to claims to credits and reimbursements for

the following:

        1.    Epstein credits (*In Re Marriage of Epstein* (1979) 24 Cal.3d 76) and all

rights to reimbursement to which a party may be entitled as a result of the

payment of community obligations since the date of separation.

        2.    Watts credits (*In Re Marriage of Watts* (1985) 171 CalApp. 3d 366) and

all rights to reimbursement to which a party or the community may be

entitled as a result of one party's use of community assets since separation.

Page 18 of 20

# EXHIBIT 1-033

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

3.   Jeffries credits (*In Re Marriage of Jeffries* (1991) 228 Cal.3d 548) and all

rights of reasonable rental value reimbursement for a party or this

community for the exclusive use of the community residence since the

date of separation.

4.   All rights to reimbursement under Family Code §2640, or otherwise, for

separate property contributed to the acquisition or maintenance of

community property; and

5.   All rights to reimbursement under Family Code §2641 or otherwise due

the community or a party for contributions made by the community or

either of the parties to the education or training of a party.

B.   Waiver or Right to Appeal: Both parties waive the right to appeal, the right to

request a Statement of Decision and the right to move for a new trial or

reconsideration, as well as the time periods in which any of the above rights may

be exercised.

Delivery of Documents of Title; Specific Performance: Each party shall

execute promptly all documents necessary and/or convenient to vest titles, estates

and beneficiaries as provided in this Judgment to effectuate its purpose and intent.

Notwithstanding the failure or refusal of either party to execute any such

documents, this Judgment shall constitute a complete transfer or conveyance of

the properties designated as being transferred, conveyed or assigned by each party.

If either party fails to execute any such document within ten (10) days after

Page 19 of 20

# EXHIBIT 1-034

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

presentation of the document, the Court shall, upon ex parte application with 48

hours' notice (excluding weekends and legal holidays), and upon proper proof that

such request is in accordance with the terms or provisions of this stipulated

Judgment, authorize and direct the Clerk of the Superior Court to execute such

document on behalf of the defaulting party.

D.    **Reservation of Jurisdiction:**    The court shall retain jurisdiction over the issue

of the division of community property assets and obligations of both parties until

fully executed therein.

APPROVED AS TO FORM AND CONTENT:

Dated: _12-14-17_

KEVIN E. ROBINSON
ATTORNEY FOR PETITIONER

Dated: _____

ALICIA MARIE RICHARDS
IN PRO PER.

Dated: _12-14-17_

DIANE VARGAS
ATTORNEY FOR THE MINORS

IT IS SO ORDERED

Dated: _1/26/18_

LINDA LANCET MILLER
JUDGE/COMMISSIONER OF THE
ORANGE COUNTY SUPERIOR COURT

_Court reviewed with_
_incon in prope with and_
_m/o 1/26/17 and_
_no further objections_
_were filed_

_other than Wife filed_
_a request for SOR on the court's m/o_
_of 1/26/17 which simply made sure_
_Judgment conformed to the stipulations._
_Request denied as not_
_supported by the law._

Page 20 of 20

# EXHIBIT 1-035

EXHIBIT "5"

PAGE 74

<div align="center">

**PROOF OF SERVICE**

</div>

STATE OF CALIFORNIA, COUNTY OF ORANGE

     I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 970 W. 17th Street, Suite D, Santa Ana, CA 92706.

     On December 14, 2017 I served the foregoing document(s) entitled: FOURTH PROPOSED JUDGMENT   on the interested parties in this action:

     ☐ by placing true copies thereof in sealed envelopes addressed as stated on the attached mailing list:

     ☒ by placing true copies thereof enclosed in sealed envelopes addressed as follows:

ALICIA RICHARDS                           Diane Vargas, Esq.
In pro per                                    920 W 17th St Suite A
351 Catalina Drive                       Santa Ana, CA 92706
Newport Beach, CA 92663
                                              *Attorney for the minors*
Dept. Of Child Support Services     *Tel: (714)245-0550*
County of Orange                        *email: dianevargas1@sbcglobal.net*
PO Box 22099
Santa Ana, CA 92702

     ☒(BY MAIL) On the date noted above, I deposited in the mail at Santa Ana, California the foregoing described document(s), in a sealed envelope, with postage fully prepaid and addressed to the party(ies) as noted above.

     ☐(BY FACSIMILE) On the date noted above, I personally transmitted from a facsimile transmission machine whose telephone number is (714) 973-0244 the document(s) described above and an unsigned copy of this declaration to the above designated party(ies) at the facsimile transmission telephone number(s) indicated.   The above described transmission was reported complete without error by a transmission report issued by the facsimile transmission machine upon which the said transmission was made and immediately followed transmission.   A true and correct copy of said transmission report is attached hereto and incorporated herein by this reference.

     ☐(BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee, executed on _____, at Santa Ana, California.

     ☐(BY FEDERAL EXPRESS/OVERNIGHT MAIL)   On the date noted above, I placed the document(s) listed above in a sealed FEDERAL EXPRESS packed for overnight deliver at Santa Ana, California addressed as noted above.

     ☒(STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     ☐(FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service  was made.

KAREN GRANOFF

<div align="center">

# EXHIBIT 1-036

</div>

# EXHIBIT B

## EXHIBIT 1-037

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 86 of 350

Case 8:21-bk-10635-ES    Doc 625    Filed 03/28/22    Entered 03/28/22 11:19:35    Desc
Case 8:21-bk-10635-ES    Doc 95    Filed 03/09/22    Entered 03/09/22 12:42:55    Desc
Main Document    Page 1 of 4

KEVIN E. ROBINSON        SBN 88726
LAW OFFICES OF KEVIN E. ROBINSON
970 West 17th Street, Suite D
Santa Ana, California 92706

Tel: 714-245-0210
Fax: 714-973-0244

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE | Case No.: 8-21-bk-10635-ES |
| | NOTICE TO CHAPTER 7 TRUSTEE, RICHARD MARSHACK, OF CLAIM TO HOMESTEAD EXEMPTION FUNDS BY RYAL RICHARDS |
| ALICIA MARIE RICHARDS, | |
| | |
| Debtor. | |

To the Chapter 7 Trustee Richard Marshack and his attorneys of record:

NOTICE IS HEREBY GIVEN that Ryal Richards, the fifty-percent owner of the property at 351 Catalina Drive, Newport Beach, California hereby claims the right to and demands the payment of one-half of the homestead exemption funds as claimed by the Debtor Alicia Richards. Said homestead exemption claimed by Ms. Richards was for $600,000.00. Mr. Richards claims he has the right and interest in one-half of said homestead exemption or $300,000.00 pursuant to the lawful Judgment of the Orange County Superior Court, Family Law Division, which judgment ordered that Mr. Richards was entitled to fifty (50%) percent of any and all proceeds from the sale of said home. The homestead exemption as claimed by the Debtor Alicia Richards is objected to in that any claim for more than one-half of said homestead exemption ($300,000.00) is contrary to the rights and interests of Ryal Richards.

THEREFORE, DEMAND is hereby made that the Chapter 7 Trustee forthwith release

1

NOTICE TO CHAPTER 7 TRUSTEE, RICHARD MARSHACK, OF CLAIM TO
HOMESTEAD EXEMPTION FUNDS BY RYAL RICHARDS

# EXHIBIT 1-038

1 | $300,000.00 of said homestead exemption to Ryal Richards at the close of escrow of the sale of said

2 | property.

3

4 | Dated: March 8, 2022

*Kevin E. Robinson*

5 | KEVIN E. ROBINSON
Attorney for RYAL W. RICHARDS

6

7

8

9 | I, Ryal Richards, the Creditor and Claimant in this matter, having read the Notice to Chapter

10 | 7 Trustee, Richard Marshack, of Claim to Homestead Exemption Funds by Ryal Richards, do hereby

11 | declare under penalty of perjury under the laws of the United States of America that the statements

12 | set forth in this Notice are true and correct to the best of my information and belief. I verify the

13 | contents of this Notice and state that if called to testify I would competently testify to these facts.

14

15 | Dated: March 8, 2022

16

17 | RYAL W. RICHARDS, Claimant

18

19

20

21

22

23

24

25

26

27

28

2

NOTICE TO CHAPTER 7 TRUSTEE, RICHARD MARSHACK, OF CLAIM TO
HOMESTEAD EXEMPTION FUNDS BY RYAL RICHARDS

# EXHIBIT 1-039

EXHIBIT "5"
PAGE 78

Case 8:21-bk-10635-SC   Doc 845   Filed 09/13/22   Entered 09/13/22 11:46:13   Desc
Main Document     Page 88 of 350

Case 8:21-bk-10635-ES   Doc 625   Filed 03/28/22   Entered 03/28/22 11:19:35   Desc
Case 8:21-bk-10635-ES   Doc 593   Filed 03/09/22   Entered 03/09/22 12:42:55   Desc
Main Document     Page 3 of 4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

970 W. 17th Street, Suite D, Santa Ana, Ca  92706

A true and correct copy of the foregoing document entitled (*specify*):
NOTICE TO CHAPTER 7 TRUSTEE, RICHARD MARSHACK, OF CLAIM TO HOMESTEAD EXEMPTION FUNDS BY RYAL RICAHRDS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/9/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

see attached

☑       Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 3/9/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

see attached

☑       Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 3.9/2022_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Alicia Richards via email at :     richardsalicia007@gmail.com
                                   richardsvsrichardsdivorce@gmail.com
                                   alicia4richards@gmail.com

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States ☐ t the foregoing is true and correct.

3/9/2022      Karen Granoff_____        *Karen Granoff*
Date          Printed Name                                     Signature

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    F 9013-3.1.PROOF.SERVICE

# EXHIBIT 1-040

EXHIBIT "5"
PAGE 79

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 89 of 350

Case 8:21-bk-10635-ES    Doc 625    Filed 03/28/22    Entered 03/28/22 11:19:35    Desc
Case 8:21-bk-10635-ES    Main Document    Page 4 of 43    Entered 03/09/22 12:42:55    Desc
Main Document      Page 4 of 4

1.      TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):
CONTINUED:
        INTERESTED PARTY COURTESY NEF: Amanda N Ferns    aferns@fernslaw.com,
mmakalintal@fernslaw.com
        ATTORNEY FOR CREDITOR FIRST FINANCIAL CREDIT UNION: Daniel K
Fujimoto    wdk@wolffirm.com
        ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):D Edward Hays
ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;
cmendoza@marshackhays.com;
cmendoza@ecf.courtdrive.com
        ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR): Richard G Heston
rheston@hestonlaw.com, yflores@hestonlaw.com, docs@hestonlaw.com;
HestonRR41032@notify.bestcase.com, handhecf@gmail.com
        ATTORNEY FOR CREDITOR ANDREW BROWN: Christopher J Langley
chris@slclawoffice.com,
omar@slclawoffice.com; langleycr75251@notify.bestcase.com
        ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR): Tinho Mang
tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;
cmendoza@ecf.courtdrive.com
        TRUSTEE RICHARD A MARSHACK (TR): Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
        ATTORNEY FOR CREDITOR KEVIN E ROBINSON AND CREDITOR RYAL W
RICHARDS: Kevin E Robinson    robinsonlawoffice@yahoo.com
        U.S. TRUSTEE (SA): United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
        ATTORNEY FOR CREDITOR EUGENE V ZECH: Eugene V Zech
evzechlaw@aol.com

2.      TO BE SERVED VIA U.S. MAIL

Hon. Erithe A. Smith
USBC Central Dist of CA
Ronald Reagan Fed Bldg & Crths
411 West Fourth Street, Suite 4050 Crtrm 5A
Santa Ana, CA 92701

DEBTOR/SECURED CREDITOR:

| | | |
|---|---|---|
| Alicia Marie Richards | Alicia Marie Richards | Alicia Marie Richards |
| 351 Catalina Drive | 539 Peach Avenue | 26296 Los Viveros. Unit A |
| Newport Beach, CA 92663 | Brea, CA 92821 | Mission Viejo, CA 92691 |

# EXHIBIT 1-041

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

19700 Fairchild Road, Suite 280
Irvine, CA 92612

A true and correct copy of the foregoing document entitled (specify): **MOTION FOR AN ORDER AUTHORIZING TRUSTEE TO PAY TO RYAL RICHARDS $300,000 FROM PROCEEDS OF SALE OF HOMESTEAD EXEMPTION, OR IN THE ALTERNATIVE, TO INTERPLEAD THE HOMESTEAD PROCEEDS IN THE ORANGE COUNTY SUPERIOR COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF RICHARD G. HESTON** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 3/28/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Amanda N Ferns**   aferns@fernslaw.com, mmakalintal@fernslaw.com
- **Daniel K Fujimoto**   wdk@wolffirm.com
- **D Edward Hays**   ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Christopher J Langley**   chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com
- **Tinho Mang**   tmang@marshackhays.com,
  tmang@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- **Richard A Marshack (TR)**   pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Kevin E Robinson**   robinsonlawoffice@yahoo.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Eugene V Zech**   evzechlaw@aol.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) 3/28/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**
Hon. Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building & Courthouse
411 West Fourth Street, Suite 5040 Crtrm. 5A
Santa Ana, CA 92701-4593

Debtor:
Alicia Marie Richards
351 Catalina Drive
Newport Beach, CA 92663

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

# EXHIBIT 1-042F 9013-3.1.PROOF.SERVICE

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/28/2022 | Yanira Flores | /s/ Yanira Flores |
|-----------|---------------|-------------------|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

# EXHIBIT 1-043 F 9013-3.1.PROOF.SERVICE

# EXHIBIT 2

KEVIN E. ROBINSON        SBN 88726
LAW OFFICES OF KEVIN E. ROBINSON
970 West 17th Street, Suite D
Santa Ana, California 92706

Tel: 714-245-0210
Fax: 714-973-0244

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE | ) Case No.: 8-21-bk-10635-ES |
| | ) |
| | ) RYAL RICHARDS' JOINDER IN THE |
| ALICIA MARIE RICHARDS, | ) CHAPTER 7 TRUSTEE'S MOTION FOR AN |
| | ) ORDER AUTHORIZING THE CHAPTER 7 |
| | ) TRUSTEE TO PAY RYAL RICHARDS HIS |
| | ) $300,000/FIFTY PERCENT OF THE |
| | ) HOMESTEAD EXEMPTION FROM THE |
| | ) PROCEEDS OF SALE; MEMORANDUM OF |
| | ) POINTS AND AUTHORITIES; |
| Debtor. | ) DECLARATION OF RYAL W. RICHARDS |
| | ) IN SUPPORT THEREOF |

DATE:        May 5, 2022
TIME:        10:30 A.M.
DEPT:        5A
JUDGE        ERITHE SMITH

VIA ZOOM.GOV

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL

INTERESTED PARTIES:

**PLEASE TAKE NOTICE** Ryal W. Richards in his capacity as joint owner and former

spouse of the Debtor Alicia Marie Richards Joins in the Chapter 7 Trustees's Motion for An Order

Authorizing the Chapter 7 Trustee to Pay Ryal Richards his $300,000/Fifty Percent to the Homestead

1

EXHIBIT 2.0001

1   Exemption from the Proceeds of Sale.    In support of this Joinder, Ryal W. Richards presents as

2   follows:

3

4                               **SUMMARY OF ARGUMENT**

5          The Debtor Alicia Marie Richards, the former spouse of Ryal W. Richards, filed a Chapter

6   7 Bankruptcy case in order to avoid the Writ of Possession and eviction from the premises located

7   at 351 Catalina Drive, Newport Beach, California.  Said premises have been sold pursuant to an

8   auction held in the United States Bankruptcy Court.  Alicia Marie Richards claimed a Homestead

9   Exemption of $600,000.  Said Homestead Exemption is no longer property of the estate and Ryal

10  W. Richards, whose residence was also 351 Catalina Drive, Newport Beach, claims his fifty percent

11  (50%) ownership interest of said Homestead Exemption.

12                               **FACTUAL BACKGROUND**

13         On March 12, 2021, Debtor filed in pro per a Voluntary Petition under Chapter 7 and Title

14  11 of the United States Code.  Richard A. Marshack is the duly appointed and acting Chapter 7

15  Trustee.

16         The Judgment of Dissolution of Marriage, a valid order of the Orange County Superior Court

17  ordered that when 351 Catalina Drive, Newport Beach, CA was sold that the net proceeds would be

18  divided equally between the parties.  The Homestead Exemption allowed by this Court is part of the

19  net proceeds of the sale of Catalina Drive.  Therefore, Mr. Richards is entitled to his fifty percent

20  (50%) of the Homestead Exemption or $300,000.00.

21                               **LAW AND ARGUMENT**

22         The Bankruptcy Code allows a party to claim a Homestead Exemption.  As soon as the

23  Homestead Exemption is allowed, it is no longer property of the estate. *Taylor v. Freeland & Kronz*

24  (1992) 503 US 638, 112 S. Ct. 1644 and *Taylor v. Freeland & Kronz* (1991) 938 F.2d 420, Court

25  of Appeals, 3rd Circuit.  Since the Homestead Exemption is no longer property of the estate, the

26  Orders and Judgment of the Orange County Superior Court control the disbursement of said funds.

27         The Judgment of Dissolution of Marriage filed on January 26, 2018 and attached to the

28  Declaration of Ryal W. Richards explicitly states that when the house is sold the mortgages, liens

---

2

EXHIBIT 2 002

1   and costs of sale are paid, the net proceeds shall be divided equally.

2       Since the net proceeds must be divided equally, the Homestead Exemption or $600,000 of

3   the net proceeds of the sale of this house can only be divided equally if Ryal Richards is given his

4   $300,000 forthwith.  It is the understanding of the Movant that the Chapter 7 Trustee has already

5   tendered the $300,000 Homestead Exemption to Alicia Richards or shortly will.  It is further the

6   understanding of Movant that the Chapter 7 Trustee is filing a Motion authorizing the Chapter 7

7   Trustee to pay Ryal Richards and/or tender inter-plead the $300,000 into the Orange County Superior

8   Court for disposition by the Family Law Court.  Movant would joint the Trustee's Motion as far as

9   it asks for an immediate payment to Mr. Richards of his one-half of the Homestead Exemption.

10      As further set forth in the Declaration of Ryal Richards, the property at 351 Catalina Drive,

11  Newport Beach, CA is and has been his residence since approximately the age of seven.  He only

12  temporarily vacated the premises in order to preserve the peace through the contentious dissolution

13  proceedings.  However, in November of 2018 the Orange County Superior Court granted Mr.

14  Richards the exclusive use and possession of this residence.  Since Mr. Richards was entitled to both

15  legal possession and residence here, his claim to the Homestead Exemption of $300,000 is not only

16  fair and equitable but has a precedence of the legal right to the Homestead Exemption.

17      The Chapter 7 Trustee has in the alternative asked the Bankruptcy Court to Interplead this

18  money into the Orange County Superior Court.  Having experience with both interpleading actions

19  and the County of Orange funds that hold money in these type matters Mr. Richards asks that if the

20  court has any reluctance to authorize the payment directly to Ryal Richards that the money is

21  segregated by the Trustee in his Trust account until the Orange County Superior Court enters an

22  Order substantiating Mr. Richards clear right and entitlement to this money and that the Trust

23  Account be an interesting bearing account.  The Orange County Superior Court Family Law Section

24  is extremely backed up and an Order from that court could take 4 to 6 months, let alone the process

25  of retrieving the money from the County of Orange.

26      To rebut the anticipated opposition by the Debtor of claiming that this Judgment is not

27  applicable because of Debtor's circuitous arguments Movant states that:

28          1.    There is no Stay on the Judgment of Dissolution that has been automatically granted

RYAL RICHARDS' JOINDER IN THE CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER AUTHORIZING THE
CHAPTER 7 TRUSTEE TO PAY RYAL RICHARDS $300,000 OR 50 PERCENT OF THE HOMESTEAD EXEMPTION
FROM THE PROCEEDS OF SALE

**EXHIBIT 2-003**

1    by a filing of a Notice of Appeal under State Law;

2    2.    No Appeal of the Judgment has been filed;

3    3.    The original Stipulation and Order for Judgment signed by the Debtor, Alicia

4    Richards, and her attorney, Ryal Richards and his attorney of June 16, 2017 provide

5    for the same terms that the net proceeds shall be divided equally. (See page 8/11 of

6    the Stipulation and Order for Judgment and pages 15 and 16 of the Judgment.)

7    The only way for this Court to honor the Orders and Judgments of the Orange County

8    Superior Court is to authorize and/or Order the Chapter 7 Trustee Richard Marshack to forthwith pay

9    to Ryal Richards $300,000 or his fifty percent (50%) net equity of this property as represented by

10    the Homestead Exemption.

11

12

13    Dated: __MARCH 29, 2022__

14    *Kevin E. Robinson*
     _____

15    KEVIN E. ROBINSON
     Attorney for Movant, Ryal Richards

16

17

18

19

20

21

22

23

24

25

26

27

28

4

RYAL RICHARDS' JOINDER IN THE CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER AUTHORIZING THE
CHAPTER 7 TRUSTEE TO PAY RYAL RICHARDS $300,000 OR FIFTY PERCENT OF THE HOMESTEAD EXEMPTION
FROM THE PROCEEDS OF SALE

EXHIBIT 2-004

EXHIBIT "5"
PAGE 87

1  KEVIN E. ROBINSON       SBN 88726
   LAW OFFICES OF KEVIN E. ROBINSON
2  970 West 17th Street, Suite D
   Santa Ana, California 92706
3
   Tel: 714-245-0210
4  Fax: 714-973-0244

5

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10
   IN RE                              )    Case No.: 8-21-bk-10635-ES
11                                    )
                                      )    DECLARATION OF RYAL W. RICHARDS
12 ALICIA MARIE RICHARDS,             )    IN SUPPORT OF JOINDER IN CHAPTER
                                      )    7 TRUSTEE'S MOTION FOR ORDER TO
13                                    )    PAY $300,000 TO RYAL RICHARDS
                                      )
14                                    )
                                      )
15                                    )
              Debtor.                 )
16 _____ )

17        I, Ryal W. Richards, do hereby declare that:

18        1.     If called as a witness I could and would competently testify to the following facts of

19 my own personal knowledge except where stated as relying on information and belief.  I offer this

20 declaration in lieu of direct testimony pursuant to the laws of the United States of America.

21        2.     I make this declaration in support of the Joinder in the Motion by the Trustee

22 Authorizing the Chapter 7 Trustee Richard Marshack to pay Ryal Richards $300,000 of the

23 homestead exemption out of the proceeds of the sale.

24        3.     I base this request for the Court Order on the fact that I am a fifty percent (50%)

25 owner of the property, the Judgment of Dissolution and even the Stipulations and Order for

26 Judgment signed by the parties and their attorneys, all state that I shall receive fifty percent (50%)

27 of the net proceeds of the property.

28

                                         1
   _____
   DECLARATION OF RYAL W. RICHARDS IN SUPPORT OF JOINDER IN CHAPTER 7
   TRUSTEE'S MOTION FOR ORDER TO PAY $300,000 TO RYAL RICHARDS

# EXHIBIT 2-005

4.      I did claim, until it was recently sold, the property at 351 Catalina Drive, Newport Beach as my residence and homestead. Until the sale of the house my youngest child Kelly Richards resided in that home.

5.      I want the Court to know that I have lived in that home since I was approximately seven years old.    I lived there with my brother and my mother, Patricia Strang.  Patricia Strang leased that property with an option to buy and we moved into the property when I was about seven years old. Attached hereto, labeled Exhibit 1 is a true and correct copy of the Grant Deed recorded February 4, 1981showing the property in my Mother, Patricia Strang Richard's name and incorporated hereat as though fully set forth.  I lived there my whole life up until my agreement to move in order to keep the peace in the dissolution proceedings.  Even though I moved, my children were living there and I still considered it my residence.

6.      Patricia Strang bought that property pursuant to the lease with option to buy.  I lived there through my high school years.  For about two years during my college years I lived in a nearby apartment.  I then moved back home and my mother who was traveling a lot on business and I arranged for me to start making the house payment and she was no longer living there.

7.      When I married Alicia Richards, sometime after the first couple of years of our marriage we arranged to purchase the house from my mother Patricia Strang.  My mother gave us an extremely good price on the property and we maintained the first and second mortgages.  Later, my mom wanted to buy a  new house and Alicia was insistent on getting my mom's name off of the title so that we could refinance the house into our own names.  However, even though Patricia released what was then a 25% interest in the property  she ended up still liable for the School's First Loan which was and is a second on the property.  Attached hereto labeled Exhibit 2 is a true and correct copy of the Grant Deeds recorded April 24, 2002 and July 26, 2007 as though fully set forth.

8.      Alicia and I lived in the house, had children, raised children until the divorce which started in 2015.   In 2016, because of an alleged domestic violence action, I agreed to peacefully move out of the house at that time.  However, I maintained my ownership interest and I maintained it as my residence.

2

DECLARATION OF RYAL W. RICHARDS IN SUPPORT OF JOINDER IN CHAPTER 7
TRUSTEE'S MOTION FOR ORDER TO PAY $300,000 TO RYAL RICHARDS

# EXHIBIT 2-006

9.     In March and June of 2017 we entered into two separate Stipulations and Order for Judgment signed by myself, Alicia Richards, her attorney Eugene Zech and my attorney Kevin Robinson.  The June of 2017 Stipulation, which became part of the Judgment of Dissolution of January 26, 2018, provided Alicia a window of three weeks to refinance the property and buy me out. If she could not do that or refused to do so, then the house would be sold and the net proceeds would be divided equally.

10.     The net equity in that property includes any homestead exemption.  Therefore I am entitled to fifty percent (50%) of the homestead.  I also considered it my true residence up until it was sold through the bankruptcy court.      Attached hereto, labeled Exhibit 3 and incorporated hereat as though fully set forth is a true and correct copy of the June 2017 Stipulation.  Attached hereto, labeled Exhibit 4 and incorporated hereat as though fully set forth is a true and correct copy of the of the January 26, 2018 Judgment of Dissolution.

11.     In fact, by the lawful Order of the Orange County Superior Court, I have been entitled to the exclusive use and possession of the property at 351 Catalina Drive.  This Order was entered November 9,  2018 and was the subject matter of the first Writ of Possession that was issued by the Orange County Superior Court.  Attached hereto, labeled Exhibit 5  and incorporated hereat as though fully set forth is a true and correct copy of the Order Re Exclusive Use and Possession of Residence.  Since I am entitled to the possession and use of that property, I believe that fact further substantiates my claim that the property is not only my residence but that I am entitled to fifty percent (50)% of the homestead exemption.

12.     On March 9, 2022 when the house was finally going to sale my attorney and I filed a "Notice to Chapter 7 Trustee, Richard Marshack, of Claim to Homestead Exemption Fund by Ryal Richards".  Attached hereto, labeled Exhibit 6 and incorporated  hereat as though fully set forth is a true and correct copy of Doc 598 the filed copy of the Notice to Chapter 7 Trustee, Richard Marshack, of Claim to Homestead Exemption Fund by Ryal Richards. Ms. Alicia Richards has filed an objection to that claim as Document #601.  I disagree with and believe that Ms. Richards misstates facts in that objection which is also addressed in the Motion itself.

3

DECLARATION OF RYAL W. RICHARDS IN SUPPORT OF JOINDER IN CHAPTER 7
TRUSTEE'S MOTION FOR ORDER TO PAY $300,000 TO RYAL RICHARDS

# EXHIBIT 2-007

13.    Based on all of that and the Family Law Court Judgment stating that the net proceeds are to be divided equally, I am entitled to fifty percent (50%) of the homestead exemption of $600,000 which is now no longer part of the bankruptcy estate. I ask this Court to enter an Order that Mr. Marshack immediately pay me the $300,000.00. It is my understanding that pursuant to this Court's prior order, Mr. Marshack is willing to or has given Alicia Richards her $300,000.00. I am now asking for my $300,000.00.

I, Ryal W. Richards do hereby declare under the penalty of perjury under the laws of the United States of America, that the statements set forth in my Declaration are true and correct to the best of my information and belief.

Dated: 3/29/22

RYAL W. RICHARDS

4

DECLARATION OF RYAL W. RICHARDS IN SUPPORT OF JOINDER IN CHAPTER 7
TRUSTEE'S MOTION FOR ORDER TO PAY $300,000 TO RYAL RICHARDS

# EXHIBIT 2-008

1

REQUEST FOR JUDICIAL NOTICE

2

3        RYAL W. RICHARDS, in his capacity of the fifty percent (50%) owner of 351 Catalina

4   Drive, Newport Beach, California, through his attorney of record KEVIN E. ROBINSON, hereby

5   requests pursuant to Federal Rule of Evidence 201 that this Court take judicial notice of the

6   following documents to be considered in connection with this Motion for an Order Authorizing the

7   Chapter 7 Trustee to pay Ryal Richards the $300,000 representing fifty (50%) of the Homestead

8   Exemption and the proceeds of the sale of 351 Catalina Drive, Newport Beach, California property.

9

| | |
|---|---|
| 1. | Grant Deed recorded February 4, 1981 |
| 2. | Grant Deeds recorded April 24, 2002 and July 26, 2007 |
| 3. | Stipulation and Order for Judgment filed June 16, 2017 |
| 4. | Judgment of Dissolution filed January 26, 2018 |
| 5. | Order Re Exclusive use and Possession of Residence filed November 9, 2018 |
| 6. | Notice to Chapter 7 Trustee of Claim to Homestead Exemption Funds filed March 9, 2022 |

17  Dated:  March 29, 2022

                                            *Kevin E. Robinson*
18                                          _____
                                            KEVIN E. ROBINSON

19

20

21

22

23

24

25

26

27

28

1

_____
Request For Judicial Notice

**EXHIBIT 2-009**

# EXHIBIT 1

# EXHIBIT 2-010

Branch :NAG,User :JVAN     Comment:     Station Id :WZOM

BK 13937PG 1535

RECORDING REQUESTED BY

·4426

AND WHEN RECORDED MAIL TO

Patricia Strang
351 Catalina
Newport Beach, CA

$3.00
C12

·932 A.M.   FEB  4'81

SAME AS ABOVE

## Quitclaim Deed

**Lot 64 of Tract No. 1136**, as per map recorded in Book 37, Pages 18 and 19 of Miscellaneous Maps, in the office of the County Recorder of said County.

END OF RECORDED DOCUMENT

ORANGE,CA
Document: QD 13937.1535

Page 1 of 1

## EXHIBIT 2-011

Printed on 3/10/2016 11:00:15 AM



EXHIBIT "5"
PAGE 94

# EXHIBIT 2

## EXHIBIT 2-012

Stewart Title

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

NAME        RYAL W. RICHARDS
            ALICIA M. RICHARDS
            PATRICIA STRANG
ADDRESS     351 CATALINA DRIVE
STATE & ZIP NEWPORT BEACH, CA 92663

Recorded in Official Records,County of Orange
Darlene Bloom, Interim Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖12.00

20020345216 08:00am 04/25/02
105 122 G02 4
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

## GRANT DEED

TITLE ORDER NO. 129133535        ESCROW 02121585        APN: 049-052-29
DOCUMENTARY TRANSFER TAX is $_____.00        CITY TAX $_____
☐ computed on full value of property conveyed, or ☐ computed on full value less value of liens or encumbrances remaining at time of sale.
☐ Unincorporated area: ☐ City of        and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
PATRICIA STRANG, A WIDOW

hereby GRANT(s) to
RYAL W. RICHARDS AND ALICIA M. RICHARDS, HUSBAND AND WIFE AS JOINT TENANTS AS TO  AN
UNDIVIDED 75% INTEREST AND PATRICIA STRANG, A WIDOW AS TO AN UNDIVIDED 25% INTEREST, ALL AS
TENANTS IN COMMON.

the following described real property in the County of  ORANGE State of California

SEE EXHIBIT "A" ATTACHED HERETO AND MADE PART OF HEREOF.

"THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN, R & T 11911."

Dated April 8, 2002_____                    _Patricia Strang_
                                             PATRICIA STRANG

COUNTY OF _ORANGE_____ } S.S.
On _4-17-02_ before me, _JONATHAN P. WYNNE   NOTARY PUBLIC_
(here insert name and title of the officer), personally appeared
_PATRICIA STRANG_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

JONATHAN P. WYNNE
Commission # 1231254
Notary Public - California
Orange County
My Comm. Expires April 17, 2003

ORANGE,CA
Document: DD 2002.345216

Page 1 of 4

Printed on 3/10/2016 11:00:15 AM

# EXHIBIT 2-013

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 106 of 350

Case 8:21-bk-10635-ES    Doc 631    Filed 03/29/22    Entered 03/29/22 11:38:09    Desc
Branch :NAG,User :JVAN    Main Document    Page 14 of 69    Station Id :WZOM

GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the Notary Seal on the document to which this
Statement is attached reads as follows:

NAME OF THE
NOTARY:            Jonathan P. Wynne
DATE COMMISSION    April 17, 2003
EXPIRES:
COUNTY WHERE BOND IS    Orange
FILED:
COMMISSION        1216254    VENDOR#:    NNA 1
NUMBER:

I certify under penalty of perjury and the laws of the State of California that the illegible
portion of this document to which this statement is attached reads as follows:

_____

_____
_____
_____
_____
_____
_____
_____
_____

PLACE OF
EXECUTION:    Glendale    DATE:    4-25-12

SIGNATURE:

* Personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which
the person(s) acted, executed the instrument.

# EXHIBIT 2-014

## EXHIBIT A
### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ORANGE, DESCRIBED AS FOLLOWS:

LOT 64 OF TRACT NO. 1136, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 37, PAGES 18 AND 19 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

END OF LEGAL DESCRIPTION

## EXHIBIT 2-015

## EXHIBIT "5"
## PAGE 98

Branch :NAG,User :JVAN                                                          Station Id :WZOM

LEGAL DESCRIPTION
EXHIBIT A

LOT 64 OF TRACT NO. 1136, IN THE CITY OF NEWPORT BEACH, COUNTY OF
ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 37, PAGES
18 AND 19 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.
A.P.N. #: 97-283833

ORANGE,CA                          Page 4 of 4                Printed on 3/10/2016 11:00:15 AM
Document: DD 2002.345216

# EXHIBIT 2-016

Branch :NAG,User :JVAN                                    Comment:                                    Station Id :WZOM

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

RECORDING REQUESTED BY:                              15.00
Orange Co. Teachers FCU
P.O. Box 11547                                  2007000466536 08:00am 07/26/07
Santa Ana, CA 92711-1547                        122 73 G02 4
Attn: Home Equity Servicing                     0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:
Ryal W. Richards                Recording Request by
Alicia M. Richards             Zang recording Services on
                               behalf of : PLA
351 Catalina Dr
Newport Beach, Ca 92663-4139
Loan Number:
Title Number: 3369124c
Escrow Number:                              SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX IS $ __No Consideration__ CITY TAX $
☐ Computed on full value of property conveyed, or
☐ Computed on full value less value of liens or encumbrances remaining at time of sale,
☐ Unincorporated area:          City of
FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Ryal W. Richards and Alicia M. Richards, husband and wife as joint tenants as to an
undivided 75% interest and Patricia Strang, a widow as to an undivided 25% interest, all
as tenants in common

hereby GRANT(s) to

Ryal W. Richards And Alicia M. Richards, Husband And Wife As Joint Tenants

the following described real property in the County of  Orange         , State of California.

Lot 64 Of Tract No 1136, As Per Map Recorded In Book 37, Pages 18 And 19 Of
Miscellaneous Maps, In The Office Of The County Recorder Of Said County.

## EXHIBIT A

Dated:   07/13/07

State of California, County of SAN LUIS OBISPO  ss.
On JULY 18TH 2007        before me,
J LORENZ
Notary Public, personally appeared
PATRICIA STRANG.                                Ryal W. Richards

personally known to me to be (or proved to me on the basis of     Alicia M. Richards
satisfactory evidence) to be the person(s) whose name(s)/(is/are
subscribed to the within instrument and acknowledged to me that     Patricia Strang
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.                        J. LORENZ
                                                         COMM. #1644991
Signature  J Lorenz                                      NOTARY PUBLIC-CALIFORNIA
                                                         SAN LUIS OBISPO COUNTY
                                                         My Comm. Expires JANUARY 16, 2009

ORANGE,CA                          Page 1 of 4                    Printed on 3/10/2016 11:00:17 AM
Document: DD 2007.466536

## EXHIBIT 2-017

Branch :NAG,User :JVAN                                                    Station Id :WZOM

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of   California

County of  Orange

On __07/19/07_____ before me, ____Jared Gabriel Martinez, Notary Public____,
        _Date_                                              _Name and Title of Officer_

personally appeared    ***Ryal W Richards, Alicia M Richards***_____,
                                            _Name of Signer_

personally known to me(or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

**OPTIONAL**

**Description of Attached Document**

Title or Type of Document:  Grant Deed
Document Date: ___July 13, 2007_____    #of Pages    2
Signer(s) Other Than Named Above:

ORANGE,CA                        Page 2 of 4                Printed on 3/10/2016 11:00:17 AM
Document: DD 2007.466536

# EXHIBIT 2-018

**EXHIBIT "5"**
**PAGE 101**

Branch :NAG,User :JVAN                        Comment:                        Station Id :WZOM



(714)543-3434
www.zangrecordingservices.com

**PENALTY OF PERJURY AFFIDAVIT
(GOVERNMENT CODE 27361.7)**

I Certify under the penalty of perjury that the notary seal on the document to which this
statement is attached reads as follows:

Name of the Notary: _____Janet Gabriel_____

Date Commission expires: _____3/29/2011_____

County Where Bond is Filed: __Orange__    State of __California__

Commission Number: __1735078__    Vendor #: __NMH__


Name of the Notary: _____

Date Commission expires: _____

County Where Bond is Filed: _____    State of __California__

Commission Number: _____    Vendor #: _____


I certify under penalty and the laws of the State of California that the illegible portion
of this document to which this statement is attached reads as follows:



Place of Execution: _____Garden Grove_____    Date: __7/26/07__

Signature: _____Zang_____
_____Zang Recording Services, Inc._____

Nov.A2

ORANGE,CA                        Page 3 of 4                Printed on 3/10/2016 11:00:17 AM
Document: DD 2007.466536

# EXHIBIT 2-019

Branch :NAG,User :JVAN                    Comment:                    Station Id :WZOM

ALTA RESIDENTIAL LIMITED COVERAGE               Order No:  3369124c
JUNIOR LOAN POLICY (10/19/96)                   Reference No: 59482-12
EXPRESS TITLE POLICY                            Title Officer: Mark Hudiburg

## EXHIBIT "A"

The land referred to in this policy is situated in the State of California, County of ORANGE, City
of NEWPORT BEACH, and described as follows:

LOT 64 OF TRACT NO 1136, AS PER MAP RECORDED IN BOOK 37, PAGES 18 AND 19 OF MISCELLANEOUS
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING ALL OIL, GAS, MINERALS AND HYDROCARBON SUBSTANCES LYING IN OR UNDER SAID LAND BUT
WITHOUT THE RIGHT TO GO UPON SAID LAND TO EXPLORE FOR, DRILL OR BORE FOR OIL, GAS, MINERALS
OR HYDROCARBON SUBSTANCES AND IF THE SAME ARE EVER REMOVED IT SHALL BE DONE ONLY BY SLANT-
DRILLING FROM PROPERTY OUTSIDE THE BOUNDARIES OF THAT HEREINBEFORE DESCRIBED, AS RESERVED
IN THE DEED FROM GEORGE C. PICKERING AND OTHERS TO HARBOR INVESTMENT COMPANY, RECORDED IN
VARIOUS DEEDS OF RECORD.

APN #: 049-082-29

Page 3

ORANGE,CA                          Page 4 of 4                Printed on 3/10/2016 11:00:17 AM
Document: DD 2007.466536

# EXHIBIT 2-020

## EXHIBIT "5"
## PAGE 103

# EXHIBIT 3

## EXHIBIT 2-021

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

**STIPULATION AND ORDER:**   ☐ ON EX PARTE HEARING
☐ ON ORDER TO SHOW CAUSE
☐ ON REVIEW HEARING
☑ FOR JUDGMENT
☐ FOR JUDGMENT ON RESERVED ISSUES          Page __1__ of __11__

**Case No.** _15D009634_   _Ryal Richards_ and _Alicia Richards_
Petitioner (present) (not present) represented by Atty. _____
Respondent (present) (not present) represented by Atty. _Eugene Zed_____
Other (Department of Child Support Services) _____
Minor's Counsel _____   Other Parent/Party _____

☐ The matters set for hearing this date are continued to _____, 20___ at _____ in Dept. _____
☐ Concerning the following issues: _____
Notice is ☐ waived ☐ to be given by _____

**THE PARTIES HEREBY STIPULATE AND AGREE that:**

☑ **SPOUSAL/PARTNER SUPPORT:** (Petitioner) (Respondent) shall pay (Petitioner) (Respondent) support in the amount of $_1250_ per (WEEK) (MONTH) payable $_625_ on ____ and $_625_ on ____ of each (WEEK) (MONTH) commencing _____ and continuing until further order of the court, the remarriage of the payee, the death of either party, or _____ 20___, whichever occurs first.

☑ **CHILD SUPPORT:** (Petitioner) (Respondent) (Other Parent) shall pay (Petitioner) (Respondent) (Other Parent) child support of $_1250_ per (WEEK) (MONTH) payable $_625_ on _4th_ and $_625_ on _21st_ of each (WEEK) (MONTH) commencing _2/1/17_ and continuing until further order of the court or until the child marries, dies, is emancipated, reaches 19, or reaches 18 and is no longer a full-time high school student, whichever occurs first. Child Support must be proportional for each child. Support calculation printout is attached.
1. We agree that we are fully informed of our rights regarding child support.
2. We make this agreement freely without coercion or duress and the needs of our children will be adequately met.
3. This agreement is in the best interests of the child(ren).
4. The right to support has not been assigned to any county and no application for public assistance is pending.
5. A wage assignment shall issue.  ☐ Issuance of a Wage Assignment is stayed until such time as the payor becomes more than 10 days delinquent in payment of court ordered support.
6. There currently ☑ is  ☐ is not  an open Department of Child Support Services case.  _will be dismissed._

☐ **CUSTODY/VISITATION:** shall be ordered pursuant to ☐ the mediation agreement ☐ stipulation reached by the parties on _____ and attached hereto. Family Code § 3048 findings must be attached.

☐ **OTHER:**  ☐ Division of Property: See additional pages attached.   ☐ Stipulation to consolidate is included.

_____        _____        ☐ Counsel for Minor
Attorney for Petitioner           Attorney for Respondent            ☐ Dept of Child Support Services

### SIGNATURE OF PARTIES
We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court and may be punished by fine and imprisonment. We waive all further notice of this order.

_____        _____
Petitioner                        Respondent

**IT IS SO ORDERED** _____
Date         **EXHIBIT 2-022**    Judge/Commissioner of the Superior Court

✦For Court Use Only  519 (8/07)

0 - File
1 - Petitioner
1 - Respondent

## CONTINUATION OF STIPULATION AND ORDER

Case No. _ISD 009634_    _Ryal Richards_    and    _Hicia Richards_
                              PETITIONER                    RESPONDENT

_6-16_                    20_17_    Dept. ____    Page _2_ of _11_

Continued from Page _____

1) The Residence at 351 Catalina Drive Newport Beach shall be divided as follows: (legal description attached)

A. Respondent Alicia Richards has 3 weeks from to days date to Refinance Hor Pay the following Amounts —

i. $450,000.00 to Ryal Richards on or before July 7, 2016
ii. The 1st mortgage to First Financial
iii. The 2nd mortgage/HELOC to Schools First
iv. $5000.00 to Diana Vargas Attorney for Alimon.

B. If the house is Not Refinanced & the above sums paid by July 7, 2016, the house shall be immediately listed for Sale. The parties are ordered to sign the Exclusive Listing Agreement on or before July 8, 2016 with one of the following real estate agents—
1) Scott Singer Villa Real Estate ; Cathryn Mini or Mike Kennedy.

If either party fails to sign the listing agreement the Court Clerk is ordered to sign with 24 hour Notice, Both parties are ordered to

_____          _____
Attorney for Petitioner                              Attorney for Respondent

### SIGNATURE OF PARTIES

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court and may be punished by fine and imprisonment. We waive all further notice of this order.

_____          _____
Petitioner                                              Respondent

**IT IS SO ORDERED**

_____
Date                                    **EXHIBIT 2-023**    Judge/Commissioner of the Superior Court
For Court Use Only
4630 (R 3/03)                    *TO BE USED WITH FORMS 284 and 519 as needed.*

0 - File
1 - Petitioner
1 - Respondent

**CONTINUATION OF STIPULATION AND ORDER**

Case No. 15 D 009634 . _Byrd Richards_ _____ and _Alicia Richards_ ____

                          PETITIONER                            RESPONDENT

6-16 _____ 20 17  Dept. _____ Page 3 of 11

Continued from Page _____

cooperate with signing all documents necessary
for the sale of the Residence:

Time is of the Essence. there shall be
No delay in selling said Residence

The Petitioner shall sign any and
all documents, deeds etc. required to
be signed by him in connection with
Respondents purchase/refinance of the
Catalina property. In the event
Petitioner fails to execute any reasonable
documentation associated with Respondents
purchase/refinance of the Catalina property
the July 7, 2017 sale date shall be
extended until said required documents
are signed by the Petitioner.

In the event the Catalina property has to be sold
the proceeds shall be divided as follows:
1) Property Loan/Need
2) Atty lien Charged to that Atty's Client
3) $12,000 to Petitioner
4) Balance to Respondent
5) Any additional equity received above $12,000.00
~~sale; to be divided equally~~

_____              _____
Attorney for Petitioner              Attorney for Respondent

**SIGNATURE OF PARTIES**

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and
agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court
and may be punished by fine and imprisonment. We waive all further notice of this order.

_____              _____
         Petitioner                           Respondent

IT IS SO ORDERED

_____              _____
         Date                        Judge/Commissioner of the Superior Court

For Court Use Only          **EXHIBIT 2-024**
4530 (R 3/03)

                    TO BE USED WITH FORMS 284 and 519 as needed

0 - File
1 - Petitioner
1 - Respondent

**CONTINUATION OF STIPULATION AND ORDER**

Case No. 15D009 6311  .  Ryal Richards                    and  Alicia Richards

        PETITIONER              RESPONDENT

6- 16       20 17   Dept. _____ Page 4 of 11

Continued from Page _____

2. Each party shall bear their own attorney fees + costs.

3. Each party waives the any all claims to credits, Reimb Reimbursements including but Not limited to WATTS, Epstein, Frick 2640 etc.

4. The community debt/obligations shall be divided equally. Mr. Robinson + Mr. Zech are ordered to exchange current statements + come up with a 50-50 split taking into Account the bills in each parties name alone.

5. All personal property, including bank Account savings financial institutions, personal property household furnishing furniture + fixtures and automobiles along with all debts attached are assigned to each party.

6. The DCSS Child support case is closed + the

_____        _____
Attorney for Petitioner           Attorney for Respondent

**SIGNATURE OF PARTIES**

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court and may be punished by fine and imprisonment. We waive all further notice of this order.

_____        _____
Petitioner                    Respondent

**IT IS SO ORDERED**

_____
Date
For Court Use Only
4-630 (R 3/03)

**EXHIBIT 2-025**   Judge/Commissioner of the Superior Court

*TO BE USED WITH FORMS 284 and 519 as needed.*

**EXHIBIT "5"
PAGE 108**

0 - File
1 - Petitioner
1 - Respondent

## CONTINUATION OF STIPULATION AND ORDER

Case No. 15D009634 . __Ryal Richards__ and __Alicia Richards__
                          PETITIONER                    RESPONDENT

____6-16____            20 17    Dept. _____ Page __5__ of __11__

Continued from Page _____

hearing on ~~Jan~~ June 19th is off calendar.
The JOSC ne Contempt is Dismissed w. Prejudice
by Respondent, AllPtrs, SS, past bills
that may be claimed in arrears is
waived as part of waiving the
credits + Reimbursements.

Ryal Richards to pay Dione Vargas her portion
of her fees from ~~this~~ this funds received from
the plumbline/refinance by Respondent, or
from liquidation of the proceeds if the
property is sold: Petitioner to pay
Dione Vargas' bill in the amount of
$6000.00 or any other mutually agreeable
amount as between Ms. Vargas and Petitioner.

_____        _____
Attorney for Petitioner          Attorney for Respondent

## SIGNATURE OF PARTIES

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court and may be punished by fine and imprisonment. We waive all further notice of this order.

_____        _____
Petitioner                       Respondent

IT IS SO ORDERED

_____                                    _____
Date                             # EXHIBIT 2-026            Judge/Commissioner of the Superior Court
For Court Use Only
4630 (R 3/03)                    TO BE USED WITH FORMS 284 and 519 as needed

EXHIBIT "5"
PAGE 109

0 - File
1 - Petitioner
1 - Respondent

## CONTINUATION OF STIPULATION AND ORDER

Case No. _15D 009 634_   _Ryal Richards_  and  _Alicia Richards_

_PETITIONER_                    _RESPONDENT_

_6-16_                20_17_   Dept. _____ Page _6_ of _11_

Continued from Page _____

RE: VISITATION: existing Judgment for visitation modified as follows:

w.h. Kelly:

1) Alternating weekends from Friday at 8 pm to Sunday at 7 pm commencing 6/16/17

2) Every Tuesday from 8 pm to 9:30 PM

3) Alternating Wednesdays from 8 pm to 9:30 pm commencing 6/21/17

4) Alternating Thursdays from 6:30 pm to 9 pm commencing 6/29/17

with Michael:

Alternating weeks with one exchange on Sunday at 6 pm. Neither parent is able/able to force Michael to exercise visitation with the other parent. Neither party shall encourage the minor child not to go with the other parent.

_____      _____
Attorney for Petitioner              Attorney for Respondent

## SIGNATURE OF PARTIES

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court and may be punished by fine and imprisonment. We waive all further notice of this order.

_____      _____
Petitioner                      Respondent

**IT IS SO ORDERED**

_____      _____
Date                             Judge/Commissioner of the Superior Court
For Court Use Only
#630 (R 3/03)          TO BE USED WITH FORMS 284 and 519 as needed.

# EXHIBIT 2-027

0 - File
1 - Petitioner
1 - Respondent

**CONTINUATION OF STIPULATION AND ORDER**

Case No. ___15 D 009634___   ___Ryal Richards___ and ___Alicia Richards___

PETITIONER                          RESPONDENT

___6-16___ ___ 20_17_   Dept. _____ Page _7_ of _11_

Continued from Page _____

GAVRON WARNING: The Court based on this
agreement issues a GAVRON WARNING
to Respondent, Alicia Richards.
that the goal of the State of California is
that both parties shall become self-
supporting within a reasonable time
per 4320(e).

The legal description of the property
located at 351 Catalina Drive Newport Beach,
CA
  Lot 64 of Tract No. 1136, in the City of
  Newport Beach, County of Orange,
  State of California as per map
  recorded in Book 37, In the office of the
  County Recorder of Orange County

_____       _____
Attorney for Petitioner              Attorney for Respondent

**SIGNATURE OF PARTIES**

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court and may be punished by fine and imprisonment. We waive all further notice of this order.

_____       _____
Petitioner                            Respondent

**IT IS SO ORDERED**

_____
Date                               Judge/Commissioner of the Superior Court
For Court Use Only
÷630 (R 3/03)

# EXHIBIT 2-028

*TO BE USED WITH FORMS 284 and 519 as needed.*

[ ] May or may not pay "rent" for the property's use. The court reserves until the time o trial whether or not "rent" in the form of a reimbursement will be charged for the property's use.

[ ] [Petitioner/Respondent] shall be responsible for any fix-up or repair of the property necessary for sale. [Such repairs are limited to the following: _____.] [The parties must to agree in writing to any such repairs or fix-up.] [Only the reasonable and documented costs incurred, and not the value of labor expended by a party or party's family members, shall be charged against the community at the time of sale.]

[✓] The parties are ordered to cooperate with brokers, buyers, escrow companies, appraisers, repairmen and other involved in the sale.

[✓] The parties are ordered to promptly execute any documents necessary to effectuate this order.

[✓] The failure to cooperate in the sale, or violations of this order may result in being required to pay any loss to the community or other party from the violation, and my result in attorney's fees, monetary sanctions, and/or contempt of court.

[ ] Upon sale, the proceeds shall be handled in the following manner: First reasonable costs of sale, commission, mortgages, and other secure debts shall be paid from the proceeds. [The balance shall be equally divided between the parties.] [The balance shall be deposited into the client trust account of attorney for [petitioner/respondent] and shall remain in that account pending a written agreement between the parties as to the distribution of the proceeds or further court order.]

[✓] The court reserves jurisdiction over all aspects of this court ordered sale and over the enforcement of this order. [Given the urgency in selling the property, the court authorizes either party to make an ex-parte motion with proper ex-parte notice to carry out this order.]

**5.26 Order—Sale of Family Residence—Deferred**

See findings and conclusions no. 3.12 in the child support chapter.

**5.27-5.28 Intentionally Left Blank**

**EXHIBIT 2-029**

40

EXHIBIT "5"

PAGE 112

[ ] The parties must meet and confer and select a broker by _____ *date* _____.

[ ] The broker must meet the following criteria: The broker must be someone with a nationally recognized brokerage, who specializes in real estate in the community where the property is located, who will place the property on the multiple listing service, and has no prior relationship with either party.

[ ] [Petitioner/Respondent] is to select the broker by _____ *date* _____.

[ ] [Petitioner/Respondent] is to select the name of three brokers meeting the criteria specified by the court. They are to provide these names to the [petitioner/respondent] by 7/8/17. [Petitioner/Respondent] must then select one broker from this list by 7/8/17. see page 2

[ ] The listing price shall be:

[ ] $ 1,250,000 . [After ___ months, if the property has not sold [and the broker determines it to be advisable,] the price shall be reduced to $_____.] ce

[ ] An amount that the parties agree to in writing after consulting the broker.

[ ] Determined by [petitioner/respondent] after consulting the broker. The court reminds them of their fiduciary duty to act in the community's best interest.

[ ] Both parties shall sign the listing agreement within 1 days of its preparation.

[ ] Until the close of escrow, [petitioner/respondent] is awarded temporary exclusive use of the property. The parties shall make the property available for inspection by brokers, sales agents and prospective buyers at all reasonable times. [A lock box shall be installed if the broker requests to facilitate showing the property.] The premises shall be maintained in good and marketable condition.

[ ] All ordinary and customary expenses for maintenance of the property shall be timely paid ____% by petitioner and ____% by respondent. The parties must agree in writing as to any extraordinary expense. [For purposes of this order ordinary expenses are limited to mortgages, taxes, insurance, ordinary garden and pool maintenance, and emergency plumbing or electrical repairs.] Utilities shall be paid 0 % by petitioner and 100 % by respondent. The party occupying the property:

[ ] Will be charged "rent" for the home's use pending sale of $_____ per month to be applied as a reimbursement at the time of trial

[ ] Will not be charged any "rent" for the property's use.

**EXHIBIT 2-030**

39

EXHIBIT "5"
PAGE 113

## Orders—Property Division Orders—
## Alphabetical Order

**5.21 Atros**

[ ] The parties shall not transfer, encumber, hypothecate, conceal, or in any way dispose of any property, real or personal, whether community, quasi community, or separate, except in the usual course of business or for the necessities of life or with the other party's written consent.

[ ] The parties shall notify the other proposed extraordinary expenditures five business days in advance and shall provide an accounting of such to the court.

[ ] The parties shall not cash in, borrow against, cancel, transfer, dispose of, or change the beneficiaries of any insurance or other coverage including life, health, automobile and disability held for the benefit of the parties or any minor child.

[ ] the parties shall not incur debts or liabilities for which the other party may be held responsible, other than for necessities of life.

**5.22 Order—Equalization Payment**

To equalize the division of the community property assets and debts, [petitioner/respondent] is to pay [petitioner/respondent] the sum of $_____ payable [forthwith] [as follows: _____].

**5.23 Order—Retirement Accounts**

The court orders that the _____retirement program be divided pursuant to a Qualified Domestic Relations Order. For these purposes the date of the marriage was _____, and the date of separation was _____. Husband is to pay ____% and wife is to pay ____% of the costs of preparing such an order.

**5.24 Order—Sale of Property and Division of Proceeds (Abbreviated)**

Upon the sale of the property described as _____, after payment of broker's commissions, encumbrances, and other costs of sale, the net proceeds shall be divided equally between the parties [except that any lien or encumbrance incurred by either party alone, which is not a community obligation, shall be charged only to that party's share of the proceeds].

**5.25 Order—Sale of Real Property**

The court orders the sale of the real property located at *Catalina, Newport Bch*, ("the property")

[ ] The court orders the parties to list the property for sale by _7/7/17_ with a licensed real estate broker,

[ ] _Respondent choose one of 3 listed on page 2_
           *broker's name*

# EXHIBIT 2-031                              38

0 · File
1 · Petitioner
1 · Respondent

**CONTINUATION OF STIPULATION AND ORDER**

Case No. _15D009634_    _Ryal Richards_    and    _Alicia Richards_

PETITIONER                                                  RESPONDENT

_6-16_    20_17_    Dept. _____ Page _11_ of _11_

Continued from Page _____

CHILD SUPPORT.

As also for ADDITIONAL CHILD SUPPORT,
PETITIONER SHALL PAY FOR:

1) KELLY'S GYMNASTICS

2) HEALTH INSURANCE FOR THE MINOR CHILDREN
at reasonable or little cost through
employment. With 30 day Grace Period

Each party responsible for 1/2 of all
uncovered medical, dental orthodontia
health costs

Break down — 750.00 per month for Kelly
+ 500 per month for Michael

Parties shall equally share 1/2 the Holidays.
by mutual agreement.

Petitioner shall cooperation in Changing all utilities
into name of Respondent.

_____          _____
Attorney for Petitioner                    Attorney for Respondent

**SIGNATURE OF PARTIES**

We have read the entire stipulation and agreement. We understand it fully and request the court to make our stipulation and
agreement the Court's order. We understand that willful failure to comply with the provisions of this order may be a contempt of court
and may be punished by fine and imprisonment. We waive all further notice of this order.

_____          _____
Petitioner                                    Respondent

**IT IS SO ORDERED**

_6/16/17_                    **EXHIBIT 2-032**    Judge/Commissioner of the Superior Court
Date
For Court Use Only
4630 (R 3/03)                    *TO BE USED WITH FORMS 284 and 519 as needed*

EXHIBIT "5"
PAGE 115

| | |
|---|---|
| Petitioner/Plaintiff *Ryal Richards* | Case Number: |
| Respondent/Defendant *Alicia Richards* | *15 D 009 634* |

**FINDINGS PURSUANT TO FAMILY CODE 3048**

Attachment to ☒ Judgment  ☐ Findings and Order After Hearing  ☐ Other _____

**Pursuant to Family Code 3048, the court finds that:**

1.  This Court has jurisdiction over the minor child or children as: ☐ California is the child or children's home state ☐ no other state has assumed jurisdiction, and this state is an appropriate forum ☐ emergency.

2.  The responding party was given notice and opportunity to be heard.  Notice given was: ☐ personal service ☒ personal notice and has knowledge of the hearing ☐ service by mail ☐ no notice.

3.  Child custody and visitation rights of each party are as set forth in the attached order/judgment.

4.  The country of habitual residence of the child or children in this case is: ☒ United States ☐ other _____.

**Any violation of this custody/visitation order may subject the party in violation to civil or criminal penalties, or both.**

Court use only
[Revised 4/26/2012]

FINDINGS PURSUANT TO FAMILY CODE 3048

Page ____ of ____

# EXHIBIT 2-033

# EXHIBIT 4

# EXHIBIT 2-034

**FL-180**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
— KEVIN E. ROBINSON 88726
Law Offices of KEVIN E. ROBINSON
970 W. 17th Street, Suite D
Santa Ana, CA 92706
TELEPHONE NO.: (714) 245-0210    FAX NO. *(Optional):* (714) 973-0244
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* RYAL W. RICHARDS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange County
STREET ADDRESS: 341 The City Drive
MAILING ADDRESS: P.O. BOX 14710
CITY AND ZIP CODE: Orange, CA 922863
BRANCH NAME: Lamoreaux

MARRIAGE OR PARTNERSHIP OF
PETITIONER: RYAL W. RICHARDS

RESPONDENT: ALICIA MARIE RICHARDS

**FOR COURT USE ONLY**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

JAN 2 6 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: __K. McDONALD__, DEPUTY

**JUDGMENT**

[X] DISSOLUTION        [ ] LEGAL SEPARATION        [ ] NULLITY
  [ ] Status only
  [ ] Reserving jurisdiction over termination of marital or domestic
    partnership status
  [ ] Judgment on reserved issues
Date marital or domestic partnership status ends: JAN 2 6 2018

CASE NUMBER:
15D 009 634

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) ____ of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
  [X] Contested [ ] Agreement in court
  a. Date: June 16, 2017 and March 2, 2017    Dept: L-74    Room:
  b. Judicial officer *(name):* Honorable Linda L. Miller    [ ] Temporary Judge
  c. [X] Petitioner present in court [X] Attorney present in court *(name):* Kevin E. Robinson
  d. [X] Respondent present in court [X] Attorney present in court *(name):* Eugene Zech
  e. [ ] Claimant present in court *(name):*    [ ] Attorney present in court *(name):*
  f. [X] Other *(specify name):* Diane Vargas, Attorney for the minors

3. The court acquired jurisdiction of the respondent on *(date):* ~~1/25/2016~~ 1/15/2016
  a. [ ] The respondent was served with process.
  b. [X] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
    status of single persons
  (1) [X] on *(specify date):*  JAN 2 6 2018
  (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
  b. [ ] Judgment of legal separation is entered.
  c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

  d. [ ] This judgment will be entered nunc pro tunc as of *(date):*
  e. [ ] Judgment on reserved issues.
  f. The [ ] petitioner's [ ] respondent's former name is restored to *(specify):*
  g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
  h. [X] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
    *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the
    court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice
    of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a
    Child Support Order* (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

**JUDGMENT**

Family Code, §§ 2024, 2340,
2343, 2346
www.courts.ca.gov

[CEB] Essential
Forms

RICHARDS, RYAL W.

EXHIBIT 2-035
FOURTH PROPOSED JUDGMENT

**FL-180**

| CASE NAME *(Last name, first name of each party)*: | CASE NUMBER: |
|---|---|
| RICHARDS, RYAL and ALICIA | 15D 009 634 |

4. i. [X] The children of this marriage or domestic partnership are:

(1) [X] Name              Birthdate

     MICHAEL RYAL RICHARDS      04-24-01
     KELLY MICHELLE RICHARDS     7-14-06

(2) ☐ Parentage is established for children of this relationship born prior to the marriage or domestic partnership

j. [X] Child custody and visitation (parenting time) are ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a).

(2) ☐ *Child Custody and Visitation Order Attachment* (form FL-341).

(3) ☐ *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

(4) ☐ Previously established in another case. Case number:         Court:

k. [X] Child support is ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).

(2) ☐ *Child Support Information and Order Attachment* (form FL-342).

(3) ☐ *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

(4) ☐ Previously established in another case. Case number:         Court:

l. ☐ Spousal, domestic partner, or family support is ordered:

(1) ☐ Reserved for future determination as relates to   ☐ petitioner   ☐ respondent

(2) ☐ Jurisdiction terminated to order spousal or partner support to   ☐ petitioner   ☐ respondent

(3) ☐ As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

(4) [X] As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.

(5) ☐ Other *(specify):*

m. [X] Property division is ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement.

(2) ☐ *Property Order Attachment to Judgment* (form FL-345).

(3) ☐ Other *(specify):*

n. [X] Attorney fees and costs are ordered as set forth in the attached

(1) [X] Settlement agreement, stipulation for judgment, or other written agreement.

(2) ☐ *Attorney Fees and Costs Order* (form FL-346).

(3) ☐ Other *(specify):*

o. ☐ Other *(specify):*

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: _____                 *See pleading*

                                             JUDICIAL OFFICER

5. Number of pages attached: 22 _____     [X] SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. July 1, 2012]

CEB | Essential
ceb.com | Forms

**EXHIBIT 2-036**
(Family Law)

Page 2 of 2

RICHARDS, RYAL W.

## NOTICE OF RIGHTS AND RESPONSIBILITIES

**FL-192**

### Health-Care Costs and Reimbursement Procedures

**IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:**

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent, or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion. If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

**a.** **Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

**b.** **Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs..

Form Approved for Optional Use
Judicial Council of California
FL-192 [Rev. January 1, 2015]

CEB | Essential
ceb.com | Forms

NOTICE OF RIGHTS AND RESPONSIBILITIES
Health-Care Costs and Reimbursement Procedures

Page 1 of 2

Family Code, §§ 4062, 4063
www.courts.ca.gov

RICHARDS, RYAL W.

**EXHIBIT "5"**

**PAGE 120**

## INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER

**FL-192**

**General Information**

The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

**When a Child Support Order May Be Modified**

The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parties' tax filing status and may consider hardships, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

**Examples**

- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.

- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.

- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

**How to Change a Child Support Order**

To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

**What forms do I need?**

If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:

- FL-680, *Notice of Motion (Governmental) or FL-683 Order to Show Cause (Governmental)* and
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is not open with the local child support agency, you must fill out one of these forms:

- FL-300, *Request for Order* or
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:

- FL-150, *Income and Expense Declaration or FL-155, Financial Statement (Simplified)*

**What if I am not sure which forms to fill out?**

Talk to the family law facilitator at your court.

After you fill out the forms, file them with the court clerk and ask for a hearing date. Write the hearing date on the form.

The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:

- Form FW-001, *Request to Waive Court Fees*
- Form FW-003, *Order on Court Fee Waiver (Superior Court)*

You must serve the other parent. If the local child support agency is involved, serve it too.

This means someone 18 or over - not you - must serve the other parent copies of your filed court forms at least 16 court days before the hearing. Add 5 calendar days if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). Court days are weekdays when the court is open for business (Monday through Friday except court holidays). Calendar days include all days of the month, including weekends and holidays. To find court holidays, go to *www.courts.ca.gov/holidays.htm.*

The server must also serve blank copies of these forms:

- FL-320, *Responsive Declaration to Request for Order and FL-150, Income and Expense Declaration, or*
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

Go to your hearing and ask the judge to change the support. Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:

- FL-340, *Findings and Order After Hearing* and
- FL-342, *Child Support Information and Order Attachment*

**Need help?**

Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

---

FL-192 [Rev. January 1, 2015]

CEB | Essential
ceb.com | Forms

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
Health-Care Costs and Reimbursement Procedures

Page 2 of 2

EXHIBIT 2-038

RICHARDS, RYAL W.

**EXHIBIT "5"**
**PAGE 121**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

## ATTACHMENT TO JUDGMENT

This attachment to Judgment is based on the handwritten Stipulated Judgment filed on
June 16, 2017 and March 2, 2017.

I.   **STATISTICAL FACTS**

A.   The parties were married on July 30, 1994. *3, 1995 as amended in court 1/26/18*

B.   There are two minor children of the relationship:

1.   Michael Ryal Richards, male, date of birth 4-24-2001; and

2.   Kelly Michelle Richards, female, date of birth: 7-14-2006.

C.   Since the date of separation, each of the parties has been and shall continue

hereafter to be free from interference, authority or control by the other and each

may conduct, carry on and engage in any employment, business or trade which he

or she shall deem advisable for his or her sole and separate use and benefit

without and free from any control, restraint or interference, direct or indirect, by

the other party, in all respects.

*Date of Separation : Feb 20, 2016 (agreed in court 1/26/18*

II.   **CUSTODY AND VISITATION**

A.   **Legal Custody**

1.   The parties shall share joint legal custody of the minor children Michael R.

Richards, born 4-24-2001 and Kelly M. Richards born 7-14-2006.

Page 1 of 20
# EXHIBIT 2-039

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

2.    Neither parent shall submit the child(ren) to any psychological/psychiatric

testing or evaluation or to any extended course of medical, dental,

orthodontic, psychiatric or psychological treatment/counseling without

first obtaining the approval of the other parent.

3.    Pursuant to Family Code Section 3025, both parents shall have the same

access to psychological, medical, dental and school records pertaining to

their child(ren) and shall be permitted independently to consult with any

and all concerned professionals.  The names of both parents shall be listed

on school and extracurricular cards to be contacted in case of emergency.

4.    Each parent is to provide the other with the address and telephone number

at which the minor child(ren) reside.  A parent shall notify the other parent

if the parent plans to change the residence of the child for more than thirty

(30) days, unless there is a prior written agreement to the removal.  The

notice shall be given before the contemplated move, by mail, return receipt

requested, postage prepaid, the last  known address of the parent to be

notified.  A copy of the notice shall also be sent to that parent's counsel of

record.  To the extent feasible, the notice shall be provided within a

minimum of forty-five (45) days before the proposed change of residence

so as to allow for mediation of a new agreement concerning custody.

(Family Code §3024).

Page 2 of  20

# EXHIBIT 2-040

EXHIBIT "5"

PAGE 123

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

**B.    Physical Custody**

1.    The Parties shall share joint physical custody of the minor children.

Petitioner shall have parenting time with Kelly as follows:

(a)    Alternating weekends from Friday at 8 p.m. to Sunday at 7 p.m. commencing June 16, 2017.

(b)    Every Tuesday from 8 p.m. to 9:30 p.m.

(c)    Alternating Wednesdays from 8 p.m. to 9:30 p.m. commencing June 21, 2017.

(d)    Alternating Thursdays from 6:20 p.m. to 9:00 p.m. commencing June 29, 2017.

2.    Additional visitation as mutually agreed between the parties.

3.    Both parties shall continue with Kelly's extracurricular activities and facilitate the same to wit: girl Scouts, gymnastics and dance, and Indian Princess with Father.

4.    All exchanges of the minor child(ren) shall be peaceful and calm. The parties shall equally share transportation of the child for all exchanges.

5.    When Petitioner/Father has a larger home, the minor Kelly is encouraged to spend the night at Petitioner/Father's from Tuesday to Wednesday with a drop-off at school.

6.    Any other times not designated to Father, the minor child Kelly shall be in Respondent/Mother's physical custody.

Page 3 of 20

# EXHIBIT 2-041

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

7.    The minor child Michael shall be in Petitioner/Father's custody except for the following times with Respondent/Mother:

(a)    Alternating weeks with the exchange on Sunday at 6 p.m. Neither parent is obligated to force Michael to exercise visitation with the other parent. Neither party shall encourage the minor child not to go with the other parent.

C.    **Holidays and Special Days**

The Court shall reserve jurisdiction over the issue of holidays and special days. It is the parties' intention to work together with regards to the holidays and special days. Further, it will be as agreed between the Respondent and the minor children. It is the intention of the parties to share the holidays and special days equally.

D.    **California Family Code §3048**

1.    The basis for the Court's exercise of jurisdiction is personal jurisdiction over the parties and that California is the home state of the minor child.

2.    Both parties were given notice and an opportunity to be heard as provided by the laws of the State of California.

3.    A clear description of the custody and visitation rights of each party is herein above set forth.

4.    A violation of the custody and/or visitation Order set forth herein may subject the party in violation to civil or criminal penalties, or both.

Page 4 of 20
**EXHIBIT 2-042**

IRMO RICHARDS, Ryal W and Alicia Marie
<u>OCSC CASE NO. 15D 009 634</u>

5.    The Country of habitual residence of the minor child is the United States of America.

III.    **<u>CHILD SUPPORT</u>**

A.    Petitioner shall pay to Respondent child support of $1250.00 per month payable $625.00 on the 4th and $625 on the 20th of each month commencing 7/2/17 and continuing until further order of the court or until the child marries, dies, is emancipated, reaches 19, or reaches 18 and is no longer a full-time high school student, whichever occurs first.  Child Support is apportioned for each child as follows:

Michael R. Richards:  $500.00 per month

Kelly M. Richards: $750.00 per month

B.    As and for additional child support, the Petitioner shall pay for:

1.    The minor child Kelly's gymnastics; and

2.    Health insurance for the minor children at reasonable or little cost through his employment with a 30 day grace period.  Each party is responsible for ½ of all uncovered medical, dental, orthodontia health costs.

C.    As and for additional child support, the parties shall be equally responsible for all uninsured and/or unreimbursed hospital, medical, dental, pharmaceutical, optometric, orthodontic and psychological expenses incurred on behalf of the minor children.

D.    <u>Family Code §4063</u>

Page 5 of 20

# EXHIBIT 2-043

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    1.    See attached Notice of Rights and Responsibilities, Health Care Costs and Reimbursement Procedures.

**E.**    <u>Family Code §4065</u>

    1.    The Parties are fully informed of their rights concerning child support.

    2.    This Order is being agreed to freely without coercion or duress and the needs of the minor children will be adequately met by the stipulated amount.

    3.    The right to support has not been assigned to any county under Section 11477 of the Welfare and Institutions Code and no application for public assistance is pending.

    4.    This order is in the best interest of the minor children involved.

    5.    Pursuant to <u>Family Code</u> § 5616, in the event that there is a contract between a party receiving support and a private child support collector, the party ordered to pay support must pay the fee charged by the private child support collector. This fee must not exceed 33 1/3 percent of the total amount of past due support nor may it exceed 50 percent of any fee charges by the private child support collector. The money judgment created by this provision is in favor of the private child support collector and the party receiving support jointly.

**IV.**    <u>SPOUSAL SUPPORT</u>

    **A.**    Petitioner shall pay Respondent spousal support in the amount of $1,250.00 per

Page 6 of 20

# EXHIBIT 2-044

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

month, payable $625.00 on the 6th and $625 on the 20th of each month commencing July 1, 2017 and continuing until further order of the court, the remarriage of the payee, the death of either party, whichever occurs first.

B.      **GAVRON WARNING:**    The Court hereby issues a Gavron Warning to Respondent, Alicia Richards.  Family Code Section 4320 states that the goal of the State of California is that both parties shall become self-supporting within a reasonable time after a dissolution of marriage.  Respondent shall make reasonable  efforts to obtain employment commensurate with her abilities to contribute toward her own support.

V.      **PROPERTY DIVISION**

A.      The itemization of community property assets and liabilities referred to below has been prepared in accordance with information received from and confirmed with both Petitioner and Respondent and the values assigned to the various items have been arrived at by negotiation between the parties, from the parties' books and records and/or based upon values agreed upon between the parties.  Each party accepts each of the values assigned as being fair and equitable and representing a compromise of disputed values or an agreed upon value.

B.      The Petitioner is awarded the following assets as his sole and separate property and shall accept and assume all liabilities associated with the assets as set forth below:

1.      His clothing, jewelry and personal effects in his possession.

Page 7 of 20

# EXHIBIT 2-045

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    2.     The furniture, furnishings, appliances and collectibles in his possession.

    3.     Any and all community property interest, if any, whether determined or undetermined in the BMW automobile.

    4.     Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Ryal William Richards alone.

    5.     All bank accounts, including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Petitioner's name alone.

    6.     Any and all stocks, bonds, secured notes and/or mutual funds standing in Petitioner's name alone.

C.     The Respondent is awarded the following assets as her sole and separate property and shall accept and assume all liabilities associated with the assets as set forth below:

    1.     Her clothing, jewelry and personal effects in her possession.

    2.     The furniture, furnishings, appliances and collectibles in her possession.

    3.     Any and all community property interest, if any, whether determined or undetermined in the Ford Fusion automobile.

    4.     Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Alicia W. Richards alone.

Page 8 of 20

# EXHIBIT 2-046

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

5.    All bank accounts, including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Respondent's name alone.

6.    Any and all stocks, bonds, secured notes and/or mutual funds standing in Respondent's name alone.

D.    **Confirmation of Property:** Husband shall assign to Wife all right, title and interest in the property awarded to Wife hereunder and said property shall be Wife's separate property hereafter. Wife shall assign to Husband all right, title and interest in the property awarded to Husband hereunder and said property shall be Husband's separate property hereafter.

E.    **Liens on Assets:** Except as otherwise specifically provided, all property transferred hereunder is transferred subject to all existing encumbrances and liens thereon. The transferee of such property shall indemnify and hold harmless the other party from any claim or liability that the other party may suffer or may be required to pay on account of such encumbrances or liens. Each party represents to the other that all such liens and their amounts are accurately and specifically referred to herein. Any liens not disclosed herein shall be deemed a missed and significant liability.

F.    **Vehicle Liability:** Whether or not third parties may claim against either or both of the parties, and whether or not formalities of title have been completed, each party shall, and does release the other from any and all liability, whether primary,

Page 9 of 20
# EXHIBIT 2-047

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

derivative or vicarious, whether in tort, or in contract, or by statute, and shall hold

the other harmless from all claims of others relative to any vehicle awarded to

each party respectively regardless of the present form of title. Nothing herein

shall provide for or be interpreted as reducing the insurance coverage.

VI.    **DEBTS AND LIABILITIES**

A.    Except as otherwise provided herein, each party shall assume and hold the other

free and harmless from all debts and obligations incurred by such party during the

course of their marriage.

B.    Except as otherwise provided herein, each party shall assume the encumbrances

and liens on all property transferred to such party pursuant to this Judgment. Each

party receiving an asset subject to an encumbrance shall indemnify and hold

harmless the other party from any form of liability that the other party may suffer

or be required to pay on account of such encumbrance or lien. Any liens not

disclosed herein shall be deemed a missed and significant liability.

C.    Except as otherwise provided herein, whether or not third parties make claim

against either or both of the parties, and whether or not formalities of title have

been completed, each party shall, and does, release the other from any and all

liability, whether primary, derivative or vicarious, whether in tort, or in contract,

or by statute, and shall hold the other harmless from all claims of others relative to

any vehicle awarded to each party respectively regardless of the present form of

title. Nothing herein shall provide for or be interpreted as reducing the insurance

Page 10 of 20
## EXHIBIT 2-048

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

coverage.

D.    The Court finds that each party understands that the provisions contained herein for one party to assume the obligation(s) of the community for the benefit of the other party may not be binding on third party creditors and the creditor may retain rights to seek payment against either party. Each party understands that obligations to third party creditors and to each other may be subject to possible discharge in bankruptcy.

E.    All community debts and obligations shall be divided equally between the parties. Kevin E. Robinson on behalf of the Petitioner Ryal W. Richards and the Respondent Alicia Richards are ordered to exchange current statements and come up with a 50/50 split taking into account the bills in each parties' name alone.

F.    Petitioner shall pay and hold the Respondent harmless on the following debts, liabilities, and obligations, and shall indemnify the Respondent from any claim or liability that Respondent may suffer in connection with these debts, liabilities and obligations:

1.    Petitioner Ryal Richards to pay Diane Vargas' attorney fees from his funds received from the purchase/refinance of the house by the Respondent or from his portion of the proceeds if the property is sold. Petitioner to pay Diane Vargas' bill in the amount of $6,000.00 or any mutually agreeable amount as agreed between Ms. Vargas and Petitioner.

2.    Any and all debts, liabilities and credit card obligations incurred by the

**EXHIBIT 2-049**

**EXHIBIT "5"
PAGE 132**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

        Petitioner after the date of separation; and

3.    Any and all debts, liabilities and credit card obligations in Petitioner's name alone.

G.    Respondent shall pay and hold the Petitioner harmless on the following debts, liabilities, and obligations, and shall indemnify the Petitioner from any claim or liability that Petitioner may suffer in connection with these debts, liabilities and obligations:

1.    Any and all debts, liabilities and credit card obligations incurred by the Respondent after the date of separation; and

2.    Any and all debts, liabilities and credit card obligations in Respondent's name alone.

H.    Each of the parties warrants and represents that he/she has not incurred, since the date of separation, any indebtedness chargeable against the other.

I.    Each of the parties warrants and represents that there are no remaining obligations for which the community was liable as of the date of separation except as expressly set forth in the Judgment. In the event that hereafter it is determined that there presently exists any obligation for which the community is liable, the party who incurred such obligation shall assume such obligation and shall indemnify the other party therefrom.

J.    Neither party, since the date of separation, shall incur any indebtedness chargeable against the other or contract any debt or obligation in the name of the other. The

Page 12 of 20

# EXHIBIT 2-050

Case 8:21-bk-10635-ES    Doc 631    Filed 03/29/22    Entered 03/29/22 11:38:09    Desc
Main Document        Page 51 of 69

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

party who incurred such indebtedness or contracted such debt or obligation shall

indemnify, including, but not limited to, the payment of reasonable attorney's fees

and costs, the other party therefrom.

VII.    **CONFIRMATION OF SEPARATE PROPERTY**

A.    The Court confirms to Petitioner as his/her sole and separate property, and

Respondent shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Petitioner's separate property are confirmed to the Petitioner.

2.    All of Petitioner's personal effects which are currently in Petitioner's

possession are confirmed to the Petitioner

3.    All earnings, accumulations, assets and debts acquired in and since the

date of separation.

B.    The Court confirms to Respondent  as his/her sole and separate property, and

Petitioner shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Respondent's separate property are confirmed to the Respondent.

2.    All of Respondent's personal effects which are currently in Respondent's

Page 13 of 20

**EXHIBIT 2-051**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

possession are confirmed to the Respondent.

3.   All earnings, accumulations, assets and debts acquired in and since the

date of separation.

## VIII.   FAMILY RESIDENCE:

The parties own the residence located at 351 Catalina Drive, Newport Beach, California.

The legal description of the real property located at 351 Catalina Drive, Newport Beach

California is as follows:

Lot 64 of Tract No. 1136, in the city of Newport Beach, County of

Orange, State of California, as per map recorded in Book 37, in the

office of the County Recorder of Orange County.

Since the date of separation, Respondent has been residing at the real property. The

parties agree and the Court has ordered that:

A.   Respondent Alicia Richards has three weeks from the date of June 16, 2017 to

refinance the property and/or pay the following amounts:

I.   $450,000 to Ryal Richards on or before July 7, 2016;

ii.   The first mortgage to First Financial;

iii.   The second mortgage/HELOC to School's First.

B.   If the house is not refinanced and the above sums paid by July 7, 2017, the house

shall be immediately listed for sale. The parties are ordered to sign the Exclusive

Listing Agreement on or before July 8, 2016 with one of the following real estate

agents:

Page 14 of 20
# EXHIBIT 2-052

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    1.    Scott Singer, Villa Real Estate;

    2.    Cathryn Min; or

    3.    Mike Kennedy.

If either party fails to sign the listing agreement, the Court Clerk is ordered to sign said Exclusive Listing Agreement with 24 hour Notice.

Both parties are ordered to cooperate with signing all documents necessary for the sale of the residence.

Time is of the essence. There shall be no delay in selling said residence.

The Petitioner shall sign any and all documents, deeds, etc. required to be signed by him in connection with Respondent's purchase/refinance of the Catalina property. In the Event Petitioner fails to execute any reasonable documentation associated with Respondent's purchase/refinance of the Catalina property, the July 7, 2017 sale date can be extended until said required documents are signed by the Petitioner.

The parties are ordered to cooperate with brokers, buyers, escrow companies, appraisers, repairmen and other involved in the sale.

The parties are ordered to promptly execute any documents necessary to effectuate this order.

The failure to cooperate in the sale, or violations of this order may result in being required to pay any loss to the community or other party from the violation, and may result in attorney's fees, monetary sanctions, and/or contempt of court.

Upon sale, the proceeds shall be handled in the following manner: First reasonable costs

# EXHIBIT 2-053

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

of the sale, commission, mortgages and other secure debts including Family Law Attorney Real

Property Liens shall be paid from the proceeds. The balance shall be equally divided between

the parties.

     The Court reserves jurisdiction over all aspects of this court ordered sale and over the

enforcement of this order. Given the urgency in selling the property, the court authorizes either

party to make an ex parte motion with proper ex parte notice to carry out this order.

     Petitioner is to select the name of three brokers meeting the criteria specified by the court.

They are to provide these names to the Respondent by July 8, 2017. Respondent must then select

one broker from this list by July 8, 2017. (See list contained on page 15)

     The listing price shall be:

     $1,250,000.00. After 30 days, if the property has not sold the price shall be reduced to an

amount that the parties agree to in writing after consulting the broker.

     Both parties shall sign the listing agreement within 1 day of its preparation.

     Until the close of escrow, Respondent is awarded temporary exclusive use of the

property. The parties shall make the property available for inspection by brokers, sales agents

and prospective buyers at all reasonable times. The premises shall be maintained in good and

marketable condition.

     All ordinary and customary expenses for maintenance of the property shall be timely paid

0% by Petitioner and 100% by Respondent. The parties must agree in writing as to any

extraordinary expenses. For purposes of this order ordinary expenses are limited to mortgages,

taxes, insurance, ordinary garden and pool maintenance, and emergency plumbing or electrical

# EXHIBIT 2-054

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

repairs. Utilities shall be paid 0% by Petitioner and 100% by Respondent. The party occupying

the property will not be charged any "rent" for the property's use.

IX.   **DIVISION OF PROCEEDS:**

Upon the sale of the property located at 351 Catalina Drive, Newport Beach, California,

after payment of broker's commissions, encumbrances and other costs of sale, the net

proceeds shall be divided equally between the parties, except that any lien or

encumbrance incurred by either party alone, which is not a community obligation shall be

charged to that party's share of the proceeds.

X.   **ORDER–SALE OF REAL PROPERTY:**

The court orders the sale of the real property located at 351 Catalina Drive, Newport

Beach, California, ("the property").

The court orders the parties to list the property for sale by 7/7/17 with a licensed real

estate broker.

Respondent is to choose one of the three brokers listed on page 21.

XI.   **OTHER PROPERTY ISSUES**

A.   **Waiver of Alleged Breach of Fiduciary Duty:** The parties had various

brokerage and retirement accounts during the marriage. For purposes of this

Judgment, the parties are waiving and relinquishing any rights in bringing any

alleged breach of fiduciary duty claims against either party for the way any and all

brokerage and retirement accounts were invested throughout the marriage and

after the date of separation. This issue has been resolved in this Judgment.

Page 17 of 20

# EXHIBIT 2-055

**EXHIBIT "5"**

**PAGE 138**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

## XII.   ATTORNEY FEES

A.   Each party shall bear their own attorneys' fees and costs and shall not be

responsible for the attorneys' fees and costs of the other party.

B.   If either party fails to perform any of his or her obligations under this Stipulated

Judgment, and it thereby becomes necessary for the other to employ counsel

and/or accountants to enforce or defend the same, the prevailing party shall be

entitled to recover reasonable attorneys' fees and costs, accounting fees and other

reasonable expenses incurred in connection with the enforcement of such

obligation or defense of such actions, and the other party shall pay such

reasonable fees, costs and expenses that may be fixed by the Court.

## XIII.   OTHER ORDERS

A.   **Waiver of Rights to Reimbursement:** As part of the division of the community

property, except as may be specifically provided to the contrary in this Stipulated

Judgment, each party waives all rights to claims to credits and reimbursements for

the following:

1.   Epstein credits (*In Re Marriage of Epstein* (1979) 24 Cal.3d 76) and all

rights to reimbursement to which a party may be entitled as a result of the

payment of community obligations since the date of separation.

2.   Watts credits (*In Re Marriage of Watts* (1985) 171 CalApp. 3d 366) and

all rights to reimbursement to which a party or the community may be

entitled as a result of one party's use of community assets since separation.

EXHIBIT 2-056

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

3.  <u>Jeffries</u> credits (<u>*In Re Marriage of Jeffries*</u> (1991) 228 Cal.3d 548) and all

rights of reasonable rental value reimbursement for a party or this

community for the exclusive use of the community residence since the

date of separation.

4.  All rights to reimbursement under <u>Family Code</u> §2640, or otherwise, for

separate property contributed to the acquisition or maintenance of

community property; and

5.  All rights to reimbursement under <u>Family Code</u> §2641 or otherwise due

the community or a party for contributions made by the community or

either of the parties to the education or training of a party.

B.  Waiver or Right to Appeal: Both parties waive the right to appeal, the right to

request a Statement of Decision and the right to move for a new trial or

reconsideration, as well as the time periods in which any of the above rights may

be exercised.

Delivery of Documents of Title; Specific Performance: Each party shall

execute promptly all documents necessary and/or convenient to vest titles, estates

and beneficiaries as provided in this Judgment to effectuate its purpose and intent.

Notwithstanding the failure or refusal of either party to execute any such

documents, this Judgment shall constitute a complete transfer or conveyance of

the properties designated as being transferred, conveyed or assigned by each party.

If either party fails to execute any such document within ten (10) days after

Page 19 of 20

EXHIBIT 2-057

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

presentation of the document, the Court shall, upon ex parte application with 48

hours' notice (excluding weekends and legal holidays), and upon proper proof that

such request is in accordance with the terms or provisions of this stipulated

Judgment, authorize and direct the Clerk of the Superior Court to execute such

document on behalf of the defaulting party.

D.    Reservation of Jurisdiction:    The court shall retain jurisdiction over the issue

of the division of community property assets and obligations of both parties until

fully executed therein.

APPROVED AS TO FORM AND CONTENT:

Dated: 12-14-17

KEVIN E. ROBINSON
ATTORNEY FOR PETITIONER

Dated: _____

ALICIA MARIE RICHARDS
IN PRO PER

Dated: 12-14-17

DIANE VARGAS
ATTORNEY FOR THE MINORS

IT IS SO ORDERED

Dated: 1/25/18

LINDA LANCET MILLER
JUDGE/COMMISSIONER OF THE
ORANGE COUNTY SUPERIOR COURT

*[handwritten: Court reviewed with no objections and no further objections were filed]*

*[handwritten: other than wife filed a request for SOD on the court's m/o of 12/6/17 which simply made sure judgment conformed to the stipulations. Request denied as not supported by the law.]*

**EXHIBIT 2-058**

Page 20 of 20

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 970 W. 17th Street, Suite D, Santa Ana, CA 92706.

On December 14, 2017 I served the foregoing document(s) entitled: FOURTH PROPOSED JUDGMENT on the interested parties in this action:

☐ by placing true copies thereof in sealed envelopes addressed as stated on the attached mailing list:

☒ by placing true copies thereof enclosed in sealed envelopes addressed as follows:

ALICIA RICHARDS
In pro per
351 Catalina Drive
Newport Beach, CA 92663

Diane Vargas, Esq.
920 W 17th St Suite A
Santa Ana, CA 92706

*Attorney for the minors*
*Tel: (714)245-0550*
*email: dianevargas1@sbcglobal.net*

Dept. Of Child Support Services
County of Orange
PO Box 22099
Santa Ana, CA 92702

☒(BY MAIL) On the date noted above, I deposited in the mail at Santa Ana, California the foregoing described document(s), in a sealed envelope, with postage fully prepaid and addressed to the party(ies) as noted above.

☐(BY FACSIMILE) On the date noted above, I personally transmitted from a facsimile transmission machine whose telephone number is (714) 973-0244 the document(s) described above and an unsigned copy of this declaration to the above designated party(ies) at the facsimile transmission telephone number(s) indicated. The above described transmission was reported complete without error by a transmission report issued by the facsimile transmission machine upon which the said transmission was made and immediately followed transmission. A true and correct copy of said transmission report is attached hereto and incorporated herein by this reference.

☐(BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee, executed on _____, at Santa Ana, California.

☐(BY FEDERAL EXPRESS/OVERNIGHT MAIL) On the date noted above, I placed the document(s) listed above in a sealed FEDERAL EXPRESS packed for overnight deliver at Santa Ana, California addressed as noted above.

☒(STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐(FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

KAREN GRANOFF

# EXHIBIT 2-059

# EXHIBIT 5

## EXHIBIT 2-060

**EXHIBIT "5"**
**PAGE 143**

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

NOV 09 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: Sp. ABAZA ,DEPUTY

1  KEVIN E. ROBINSON      SBN 88726
   LAW OFFICES OF KEVIN E. ROBINSON
2  970 West 17th Street, Suite D
   Santa Ana, California 92706
3
   Tel: 714-245-0210
4  Fax: 714-973-0244
5  Attorney for Ryal W. Richards
6
7           SUPERIOR COURT OF THE STATE OF CALIFORNIA
8           COUNTY OF ORANGE, LAMOREAUX JUSTICE CENTER
9  IN RE THE MARRIAGE OF:        )  Case No. 15D 009634
                                 )
10 RYAL W. RICHARDS              )  [Proposed] ORDER RE EXCLUSIVE
                                 )  USE AND POSSESSION OF RESIDENCE
11          Petitioner           )
                                 )
12 and                           )  DATE:   November 9, 2018
                                 )  TIME:   8:30 a.m.
13 ALICIA MARIE RICHARDS         )  DEPT:   L63
                                 )
14          Respondent.          )
15
16     The hearing on the post-Judgment stay on the appeal of the Court order for the Respondent
17 Alicia Richards to sign the real estate listing agreement came on regularly for hearing:
       After reviewing the documents and the oral evidence and arguments presented by the parties;
18     GOOD CAUSE EXISTING
19     The Court hereby orders that:
20     The Petitioner Ryal W. Richards is hereby given the exclusive use, possession and control
21 of the real property located at 351 Catalina Drive, Newport Beach, California 92660.   Alicia
22 Richards shall vacate the premises within fourteen (14) days from the date of this order.   This Order
23 shall continue until the residence is sold or further order of the Court.
24 IT IS SO ORDERED.
25
26 Dated: Nov. 9, 2018
27                                      THE HONORABLE ANDRE DeLaCRUZ
                                        JUDGE OF THE ORANGE COUNTY
28                                      SUPERIOR COURT

                                    1
[Proposed] ORDER RE EXCLUSIVE USE AND POSSESSION OF RESIDENCE

EXHIBIT 2-061

*Attachment*

1

2    **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

3         I am employed in the County of Orange, State of California. I am over the age of 18 and not
4    a party to the within action; my business address is 970 W. 17th Street, Suite D, Santa Ana, CA
     92706.

5         On November 1, 2018 I served the foregoing document(s) entitled  *[Proposed] ORDER RE*
6    *EXCLUSIVE USE AND POSSESSION OF RESIDENCE*   in this action:

7         □ by placing true copies thereof in sealed envelopes addressed as stated on the attached
     mailing list:

8         ☒ by placing true copies thereof enclosed in sealed envelopes addressed as follows:

9
     ALICIA RICHARDS
10   In pro per
     351 Catalina Drive
11   Newport Beach, CA 92663

12   Via U.S. mail and Email
     Email: *richardsvsrichardsdivorce@gmail.com*
13   *alicia4richards@gmail.com*

14   ☒(BY MAIL) On the date noted above, I deposited in the mail at Santa Ana, California the
     foregoing described document(s), in a sealed envelope, with postage fully prepaid and addressed to
15   the party(ies) as noted above.

16   □(BY FACSIMILE) On the date noted above, I personally transmitted from a facsimile
     transmission machine whose telephone number is (714) 973-0244 the document(s) described above
17   and an unsigned copy of this declaration to the above designated party(ies) at the facsimile
     transmission telephone number(s) indicated.  The above described transmission was reported
18   complete without error by a transmission report issued by the facsimile transmission machine upon
     which the said transmission was made and immediately followed transmission. A true and correct
19   copy of said transmission report is attached hereto and incorporated herein by this reference.

20   ☒(BY EMAIL) I am familiar with the office practice of the Law Offices of KEVIN E.
     ROBINSON for collecting and processing documents for delivery by E-mail. Under that practice,
21   documents are emailed by the Law Offices of KEVIN E. ROBINSON personnel responsible for
     emailing; such documents are transmitted on that same day in the ordinary course of business. I
22   emailed the above referenced document to the Respondent Alicia Richards at
     *richardsvsrichardsdivorce@gmail.com* and  *alicia4richards@gmail.com*
23

24   ☒(STATE) I declare under penalty of perjury under the laws of the State of California that
     the above is true and correct.
25

26   □(FEDERAL) I declare that I am employed in the office of a member of the bar of this court
     at whose direction the service  was made.

27

28                                              KAREN GRANOFF

# EXHIBIT 2-062

# EXHIBIT 6

## EXHIBIT 2-063

1 | KEVIN E. ROBINSON       SBN 88726
    LAW OFFICES OF KEVIN E. ROBINSON
2 | 970 West 17th Street, Suite D
    Santa Ana, California 92706
3 |
    Tel: 714-245-0210
4 | Fax: 714-973-0244

5

6

7

8 |                    **UNITED STATES BANKRUPTCY COURT**

9 |                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | IN RE                                )    Case No.: 8-21-bk-10635-ES
                                         )
12 | ALICIA MARIE RICHARDS,              )    NOTICE TO CHAPTER 7 TRUSTEE,
                                         )    RICHARD MARSHACK, OF CLAIM TO
13 |                                     )    HOMESTEAD EXEMPTION FUNDS BY
                                         )    RYAL RICHARDS
14 |                                     )
                                         )
15 |                                     )
                        Debtor.          )
16 | _____ )

17 |        To the Chapter 7 Trustee Richard Marshack and his attorneys of record:

18 |        NOTICE IS HEREBY GIVEN that Ryal Richards, the fifty-percent owner of the property

19 | at 351 Catalina Drive, Newport Beach, California hereby claims the right to and demands the

20 | payment of one-half of the homestead exemption funds as claimed by the Debtor Alicia Richards.

21 | Said homestead exemption claimed by Ms. Richards was for $600,000.00. Mr. Richards claims he

22 | has the right and interest in one-half of said homestead exemption or $300,000.00 pursuant to the

23 | lawful Judgment of the Orange County Superior Court, Family Law Division, which judgment

24 | ordered that Mr. Richards was entitled to fifty (50%) percent of any and all proceeds from the sale

25 | of said home. The homestead exemption as claimed by the Debtor Alicia Richards is objected to in

26 | that any claim for more than one-half of said homestead exemption ($300,000.00) is contrary to the

27 | rights and interests of Ryal Richards.

28 |        THEREFORE, DEMAND is hereby made that the Chapter 7 Trustee forthwith release

                                        1
─────────────────────────────────────────────────────────────
           NOTICE TO CHAPTER 7 TRUSTEE, RICHARD MARSHACK, OF CLAIM TO
               HOMESTEAD EXEMPTION FUNDS BY RYAL RICHARDS

                        **EXHIBIT 2-064**

1    $300,000.00 of said homestead exemption to Ryal Richards at the close of escrow of the sale of said

2    property.

3

4    Dated: March 8, 2022                              *Kevin E. Robinson*

5                                                      KEVIN E. ROBINSON
                                                       Attorney for RYAL W. RICHARDS

6

7

8

9        I, Ryal Richards, the Creditor and Claimant in this matter, having read the Notice to Chapter

10   7 Trustee, Richard Marshack, of Claim to Homestead Exemption Funds by Ryal Richards, do hereby

11   declare under penalty of perjury under the laws of the United States of America that the statements

12   set forth in this Notice are true and correct to the best of my information and belief. I verify the

13   contents of this Notice and state that if called to testify I would competently testify to these facts.

14

15   Dated: March 8, 2022

16

17

18                                          RYAL W. RICHARDS, Claimant

19

20

21

22

23

24

25

26

27

28

                                                2

         NOTICE TO CHAPTER 7 TRUSTEE, RICHARD MARSHACK, OF CLAIM TO
           HOMESTEAD EXEMPTION FUNDS BY RYAL RICHARDS

                        **EXHIBIT 2-065**

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

970 W. 17th Street, Suite D, Santa Ana, Ca  92706

A true and correct copy of the foregoing document entitled (*specify*):  Notice of Ryal Richards' Motion for Order
Authorizing the Chapter 7 Trustee to Pay Ryal Richards his $300,000/Fifty Percent of the Homestead Exemption;
Memorandum of Points and Authorities; Declaration of Ryal W. Richards in Support Thereof

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/9/2022 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

see attached

☑  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 3/9/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

see attached

☑  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 3.9/2022 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Alicia Richards via email at :        richardsalicia007@gmail.com
                                      richardsvsrichardsdivorce@gmail.com
                                      alicia4richards@gmail.com

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States ☐ t the foregoing is true and correct.

03/09/2022    Karen Granoff                                          *Karen Granoff*
Date                    Printed Name                                  Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

# EXHIBIT 2-066F 9013-3.1.PROOF.SERVICE

**EXHIBIT "5"**
**PAGE 149**

1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):
CONTINUED:

        INTERESTED PARTY COURTESY NEF: Amanda N Ferns    aferns@fernslaw.com,
mmakalintal@fernslaw.com
        ATTORNEY FOR CREDITOR FIRST FINANCIAL CREDIT UNION: Daniel K
Fujimoto    wdk@wolffirm.com
        ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):D Edward Hays
ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;
cmendoza@marshackhays.com;
cmendoza@ecf.courtdrive.com
        ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR): Richard G Heston
rheston@hestonlaw.com, yflores@hestonlaw.com, docs@hestonlaw.com;
HestonRR41032@notify.bestcase.com, handhecf@gmail.com
        ATTORNEY FOR CREDITOR ANDREW BROWN: Christopher J Langley
chris@slclawoffice.com,
omar@slclawoffice.com; langleycr75251@notify.bestcase.com
        ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR): Tinho Mang
tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;
cmendoza@ecf.courtdrive.com
        TRUSTEE RICHARD A MARSHACK (TR): Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
        ATTORNEY FOR CREDITOR KEVIN E ROBINSON AND CREDITOR RYAL W
RICHARDS: Kevin E Robinson    robinsonlawoffice@yahoo.com
        U.S. TRUSTEE (SA): United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
        ATTORNEY FOR CREDITOR EUGENE V ZECH: Eugene V Zech
evzechlaw@aol.com

2.    TO BE SERVED VIA U.S. MAIL

Hon. Erithe A. Smith
USBC Central Dist of CA
Ronald Reagan Fed Bldg & Crths
411 West Fourth Street, Suite 4050 Crtrm 5A
Santa Ana, CA 92701

DEBTOR/SECURED CREDITOR:

Alicia Marie Richards          Alicia Marie Richards          Alicia Marie Richards
351 Catalina Drive             539 Peach Avenue               26296 Los Viveros. Unit A
Newport Beach, CA 92663        Brea, CA 92821                 Mission Viejo, CA 92691

# EXHIBIT 2-067

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
970 W. 17th Street, Suite D
Santa Ana, CA 92706

A true and correct copy of the foregoing document entitled: Ryal Richards' Joinder in the Chapter 7 Trustee's Motion for an Order Authorizing the Chapter 7 Truedss to Pay Ryal Richards his $300,000/Fifty Percent of the Homestead Exemption from the Proceeds of Sale; Memorandum of Points and Authorities; Declaration of Ryal Richards in Support Thereof will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/29/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.** <u>SERVED BY UNITED STATES MAIL</u>:
On (*date*) 3/29/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.** <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/29/2022 | Karen Granoff | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 2-068

PROOF OF SERVICE
ATTACHMENT

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:\

Amanda N Ferns    aferns@fernslaw.com , mmakalintal@fernslaw.com
Daniel K Fujimoto    wdk@wolffirm.com
Richard G Heston    rheston@hestonlaw.com , yflores@hestonlaw.com, docs@hestonlaw.com;
        HestonRR41032@notify.bestcase.com ,handhecf@gmail.com
Richard A Marshack (TR)    pkraus@marshackhays.com ,
        rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Kevin E Robinson    robinsonlawoffice@yahoo.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Eugene V Zech    evzechlaw@aol.com

**2. SERVED BY UNITED STATES MAIL**:

Hon. Erithe A. Smith
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building & Courthouse
411 West Fourth Street, Suite 5040 Crtrm 5A
Santa Ana, CA 92701

Lawrence Remsen
Alpha-5 (CIM) MH-159-L
PO Box 368
Chino, CA 91708

Alicia Marie Richards
351 Catalina Drive
Newport Beach, CA 92663

# EXHIBIT 2-069

**EXHIBIT "5"**

**PAGE 152**

# EXHIBIT 3

**EXHIBIT "5"**

**PAGE 153**

1  KEVIN E. ROBINSON        SBN 88726
   LAW OFFICES OF KEVIN E. ROBINSON
2  970 West 17th Street, Suite D
   Santa Ana, California 92706
3
   Tel: 714-245-0210
4  Fax: 714-973-0244

5

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

   IN RE                              )   CASE NO.  8-21-bk-10635-ES
11                                    )
                                      )   OPPOSITION  TO  DEBTOR  ALICIA
12 ALICIA MARIE RICHARDS,             )   RICHARDS'   OBJECTION   TO   RYAL
                                      )   RICHARDS'   JOINDER   IN   RICHARD
13                                    )   MARSHACK'S MOTION FOR AN ORDER
                                      )   AUTHORIZING TRUSTEE TO PAY RYAL
14                                    )   RICHARDS $300,000.00.
                                      )
15                                    )   Date:   May 5, 2022
                    Debtor.           )   Time:   10:30 a.m.
16 _____  )   Courtroom 5A via ZoomGov.

17        COMES NOW Ryal W. Richards and files this Opposition to Debtor Alicia Richards'

18 Objection to Ryal Richards' Joinder in Richard Marshack's Motion for an Order Authorizing Trustee

19 to Pay Ryal Richards $300,000.00.

20        As set forth in the actual Joinder, Ryal Richards is an owner of the property of 351 Catalina

21 Drive, Newport Beach, California.  The Stipulation for Order for Judgment entered on June 16, 2017

22 is exactly the same in the respect of selling the property and dividing the proceeds as the typewritten

23 Judgment entered on January 26, 2018.

24        The Debtor Ms. Richards' bald assertions that a Court Order, a Judgment or any other ruling

25 is void, does not make it so.  Especially when multiple Judges, Courts and Appellate Courts affirm

26 these same Orders and Judgments. These are the same arguments that Ms. Richards set forth in her

27 Motion to Set Aside the Stipulation and Order for Judgment that was entered on June 16, 2017,

28 heard in the Orange County Superior Court on January 26, 2018 and denied.    That matter was

                                          1
_____
        RYAL RICHARD'S OPPOSITION TO DEBTOR ALICIA RICHARDS' OBJECTION TO RYAL RICHARDS'
     JOINDER IN RICHARD **EXHIBIT 3-001**DER AUTHORIZING TRUSTEE TO PAY
                              RYAL RICHARDS $300,000.00.

1   appealed and in the appellate court opinion G055927, which is attached hereto as Exhibit 1, affirmed

2   the Court.  The Court Opinion details most of Ms. Richards' arguments to set it aside and why the

3   Motion wasn't granted.

4       The Judgment is binding.  There are not other "oral contracts" between Ms. Richards and

5   Ryal Richards.

6       The Vasquez case, of course is not binding upon this Court and it is in direct contravention

7   to the Finding of the Fourth District Court of Appeals of California in *Richards v. Richards*, Case

8   No. G055927.

9       Mr. Richards never assigned any rights to the Debtor in the Stipulation for Order for

10  Judgment of June 16, 2017.  As typically happens in dissolutions of marriage, Mr. Richards gave his,

11  at that time, wife an opportunity to refinance the property and buy-out his fifty percent (50%) equity

12  ownership.  The Judgment provided that if she was unable to refinance the property would be sold,

13  the mortgages paid off and the net proceeds divided equally.  Mr. Richards is entitled to fifty percent

14  (50%) of the net equity and fifty percent (50%) of the Homestead Exemption, both on the reasons

15  set forth in the Motion by the Trustee and the Joinder by Ryal W. Richards.  The property never was,

16  never could be, one hundred percent (100%) the Debtor's.

17      The debtor, Ms. Richards, constantly makes claims that the Stipulation and Order for

18  Judgment is stayed on appeal.  The court should be aware that because the Judgment calls for the

19  sale of real property it cannot be stayed on appeal.  California Code of Civil Procedure §917. 4

20  states:

21          "The perfecting of an appeal shall not stay enforcement of the

22          judgment or order in the trial court if the judgment or order appealed

23          from directs the sale, conveyance or delivery of possession of real

24          property which is in the possession or control of the appellant or the

25          party ordered to sell, convey or deliver possession of the property,

26          unless an undertaking in a sum fixed by the trial court is given that

27          the appellant or party ordered to sell, convey or deliver possession of

28          the property will not commit or suffer to be committed any waste

2

EXHIBIT 3-002

1    thereon and that if the judgment or order appealed from is affirmed,

2    or the appeal is withdrawn or dismissed, the appellant shall pay the

3    damage suffered by the waste and the value of the use and occupancy

4    of the property, or the part of it as to which the judgment or order is

5    affirmed, from the time of the taking of the appeal until the delivery

6    of the possession of the property.  If the judgment or order directs the

7    sale of mortgaged real property and the payment of any deficiency,

8    the undertaking shall also provide for the payment of any deficiency."

9        The Court should be aware that under the statutory scheme contained in the Code of Civil

10   Procedure §917.4  no amount of appeal stays the sale of real property.

11                          **CONCLUSION**

12       The objection filed by Ms. Richards is legally and factually incorrect.  The Court should

13   strike the same and grant the Trustee's Motion as set forth in the Joinder filed by Ryal W. Richards.

14

15   Dated:  04/26/2022

16

17                          *Kevin E. Robinson*
                            KEVIN E. ROBINSON

18

19       I, Ryal W. Richards, the Creditor and Claimant in this matter, having read Ryal Richard's

20   Opposition to Debtor Alicia Richards' Objection to Ryal Richards' Joinder in Richard Marshack's

21   Motion for an Order Authorizing Trustee to Pay Ryal Richards $300,000.00 do hereby declare under

22   penalty of perjury under the laws of the United States  that the statements set forth in this Opposition

23   are true and correct to the best of my information and belief.  I verify the contents this Opposition

24   and state that if called to testify I would competently testify to these facts.

25

26   Dated:

27                          _____
                            RYAL W. RICHARDS, Claimant

28

                                    3
_____
RYAL RICHARD'S OPPOSITION TO DEBTOR ALICIA RICHARDS' OBJECTION TO RYAL RICHARDS'
JOINDER IN RICHARD MARSHACK'S MOTION FOR AN ORDER AUTHORIZING TRUSTEE TO PAY
RYAL RICHARDS $300,000.00.

**EXHIBIT 3-003**

Case 8:21-bk-10635-ES    Doc 651    Filed 04/26/22    Entered 04/26/22 19:44:37    Desc
                    Main Document      Page 4 of 43

Exhibit "1"

**EXHIBIT 3-004**

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 1/9/2020 by Nettie De La Cruz, Deputy Clerk

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of ALICIA MARIE and RYAL W. RICHARDS. | |
| ALICIA MARIE RICHARDS, | G055927 |
| Appellant, | (Super. Ct. No. 15D009634) |
| v. | O P I N I O N |
| RYAL W. RICHARDS, | |
| Respondent. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Linda Lancet Miller, Judge.  Affirmed.

Alicia Marie Richards, in pro. per., for Appellant.

Law Offices of Kevin E. Robinson and Kevin E. Robinson for Respondent.

# EXHIBIT 3-005

In this marital dissolution action, Alicia Marie Richards (Wife) sought to set aside a stipulated judgment based on allegations of fraud and duress. The principle asset of the marriage was the family's Newport Beach residence, and Ryal W. Richards (Husband) agreed to give Wife three weeks to buy out his interest. When Wife was unable to make the pre-agreed upon payment, Husband listed the property for sale as required by the stipulated judgment. All did not proceed as planned. Wife initiated numerous legal proceedings to stop the sale.[1]

This appeal (the first of seven) concerns only the trial court's decision to deny Wife's motion to set aside the judgment pursuant to Family Code section 2122.[2] We also consider Husband's motion to dismiss the appeal on the grounds Wife accepted the benefits of the judgment, and therefore, waived the right to appeal. We conclude the appeal and the motion to dismiss lack merit. We affirm the postjudgment order.

FACTS

1. *Background Information*

Husband and Wife married in 1994 and they still dispute their official date of separation. In 2016, they were each represented by counsel when Husband filed the petition for dissolution and Wife filed a response. During a custody dispute early in the proceedings, Husband stated he could not afford the cost of a child custody evaluation

---

[1]    We denied Wife's request to file an oversized opening brief with 20,331 words. She filed an opening brief containing 13,995 words, just slightly below the maximum allowed. It appears one reason Wife was able to comply with the word count rule was because she abbreviated numerous words. For example, family law court became FLC. Minute order was shortened to MO. The excessive use of abbreviations significantly reduced the readability of the argument. We caution Wife to minimize abbreviations and consider using a simplified name or nickname to gain clarity. For example, the motion to set aside the stipulated judgments could be shortened to "Motion" rather than MTSA.

[2]    All further statutory references are to the Family Code, unless otherwise indicated.

2

# EXHIBIT 3-006

because Wife refused to work and he was struggling financially to pay for two households and four children (one in college and three minors). In March 2016, Husband sought physical custody of the children and asked the court to quickly schedule a trial on the issue of selling the residence "as it will help facilitate an early resolution of the divorce."

Approximately six months later, Husband filed a request for a hearing on selling the family residence immediately, distributing a portion of money to the parties, and holding the remainder in trust. He claimed the cost of maintaining the house and a separate residence was beyond his financial means. He asserted Wife refused to work. He estimated the home's equity was approximately $800,000, and because neither he, nor Wife, could afford to buy out the other, "the only real solution is to list and sell the house." Husband filed an ex parte application to shorten time for the hearing.

In a supporting declaration, Husband explained he was in "dire financial straights" and he was not earning enough commissions in his sales job. He was late paying the rent for his apartment and he suspected he would be asked to leave that residence. He was also in default on the first and second mortgages on the family residence. The banks sent him notices of default. Husband stated he borrowed $50,000 from his employer, who gave him an advance on his pay.

Husband noted the parties were disputing custody and had "postponed" making a decision on selling the house. Husband believed the home was worth over $1 million, but was encumbered by approximately $300,000 in loans. He was uncertain whether a lender would agree to let him refinance the home, and he claimed Wife did not make enough money with her eBay business to qualify for a loan.

In October 2016, Wife filed a memorandum asking the court to postpone ruling on whether or not to sell the house. In her declaration, Wife noted the court ordered Husband to pay the two mortgages as part of its May 12, 2016, spousal support order. She acknowledged receiving a notice of default from First Financial Credit Union

3

# EXHIBIT 3-007

EXHIBIT "5"

PAGE 160

(FFCU) holding the first mortgage on the property.  She was aware Husband had not made payments to Schools First Credit Union (SFCU), the bank holding a second mortgage.

Wife declared she would like to purchase the family residence because she had lived in the home for 22 years and the children grew up there.  She believed it was not in the family's best interests to relocate and change schools.  Wife believed she could arrange to purchase the home if given additional time.  She added there was no evidence to support Husband's claims to be financially destitute or that Wife refused to work.  Wife asserted she "address[ed]" the default situation by borrowing money and paying FFCU, to cure the default on the first mortgage.  She also made a partial payment to the SFCU to stop it from filing a notice of default.  The court set the matter for a trial on March 2, 2017.

In February 2017, Wife filed an order to show cause (OSC) regarding contempt.  She asserted Husband failed to make several payments ordered by the court in May 2016.  She attached an "affidavit of facts" showing Husband failed to make the following payments:  (1) two $1,692 mortgage payments to FFCU; (2) two $1,991 mortgage payments to FFCU; (3) seven $912.24 mortgage payments to SFCU; (4) $159.12 payment owed to DirectTV; (5) five different payments to "ATT Uverse;" and (6) ten $147 payments to Verizon.

To prepare for the hearing, Wife's counsel deposed Husband and on March 2, 2017, she lodged a transcript with the court.  She also filed a trial brief listing the prior court orders in the case.  The first order, dated February 11, 2016, gave the parties joint legal custody of the three minor children and delineated a visitation schedule.  The second order, dated May 12, 2016, based on the parties' stipulation, provided Husband would pay $800 per month in spousal support, the first and second mortgages, and various household bills (electric, water, gas, cable, internet, telephone, etc.).

4

# EXHIBIT 3-008

In her brief, Wife sought joint legal and physical custody, child support, and spousal support. She stated the family residence appraised for $1,250,000, but had only approximately $993,000 in equity due to the two mortgages. Wife wanted to buy out Husband's equity share with money from her father's trust fund. She added the family's debt of $72,779 must be divided.

In addition, Wife asserted Husband owed over $44,000 in arrears for spousal support and household expenses. Due to a disparity in income (Wife earning $1,000 per month, and Husband earning $10,000 per month), Wife requested Husband pay attorney fees of approximately $75,000. She noted her prior attorney and current counsel both had liens attached to the residence.

II. *The March 2, 2017, Stipulation*

The parties appeared with counsel for the hearing on March 2, 2017. The court met with the parties in chambers and then trailed the matter to permit the attorneys to meet and confer with their clients. The parties entered into a handwritten stipulation and order for judgment. The first two pages concerned custody and the couple's timeshare agreement regarding the minor children. The third page stated the parties intended to subpoena the trustee controlling the trust funds Wife wished to use to buy out Husband's share of the family residence. The parties stipulated the trustee would be asked to discuss the amount of the distribution and when it could be made available to Wife. The stipulation added that if Wife could buy out Husband, she would also pay the first and second mortgage or remove Husband's name from the loans.

The last two pages of the stipulation discussed that the house would be sold if the trustee indicated there was insufficient funds to buy out Husband. The parties agreed to list the house by June 1, 2017, "to take advantage of the summer market." If the trustee stated there was sufficient money for the buy out, "the court shall determine the details of the process." They agreed to attend a status conference in March 2017, to

5

# EXHIBIT 3-009

resolve the parties' claims for reimbursements.  Finally, the parties accepted the plan of

using mediation to arrange a holiday schedule with the children.

III. *The June 16, 2017, Stipulation for Judgment*

       Represented by counsel, the parties appeared for trial and participated in a

chambers conference.  On the record, Husband recited the terms of a "global stipulation."

The court declared a recess to permit the parties to memorialize in writing their

stipulation.  When they returned, the parties were sworn to testify and voir dired by their

respective counsel about the stipulation.

       Husband's counsel asked several questions about the status of the marriage

and then asked if Husband recalled reading and signing every page of the 11-page

document.  He summarized the document as follows:  "There's an [11]-page document

that we have laborious[ly] gone through for the last four-and-a-half hours trying to deal

with the house, credits, reimbursements, watts charges, 2640, tweaked the custody and

visitation a little bit, did child support, spousal support, got rid of the contempt action

pending, got rid of the department of child support services case and came to a resolution

of that [Wife] either buys you out of the house for $450,000 or its sold forthwith."

Husband stated he understood each page and wanted the court to adopt the document as

the final judgment of dissolution.

       Wife's counsel asked if Wife had read the 11-page proposed judgment

"page by page, line by line, and with the assistance of counsel understand and agree to all

the terms and conditions that are set forth therein."  Wife replied, "Yes," and gave the

same response when counsel asked if she wanted the court to enter the document as the

final judgment.

       The court asked both parties if they understood "it is a global settlement[]

[t]hat means you each made compromises."  Wife replied, "Yes."

       The court made the following observation:  "You could come out better.

You could come out worse after trial.  You could come out better, worse, or the same

# EXHIBIT 3-010

after you went to a special master on credits and reimbursements.  You could come out better or worse with respect to spousal support and attorney fee orders but you decided to call it a global compromise.  That means without an actual balance that we absolutely know, which is my job . . . , that each side gets basically the same amount on each side of the balance sheet but you've globally comprised it.  [¶] Do you understand that[?]"  Each party separately stated on the record, "Yes."

The court's minute order stated it entered the judgment of dissolution and the marriage would terminate "upon the filing of a formal judgment."  The court accepted, signed, and filed the parties' hand written stipulation.  It incorporated the stipulation by reference into the minute order.  The court ordered Husband to prepare a final order.

The first page of the global stipulation outlined the parties' agreement regarding the family residence.  Wife had three weeks (from the date of the order) to refinance or pay the following amounts:  (1) $450,000 to Husband on or before July 7, 2017; (2) the first mortgage; and (3) the second mortgage.  The stipulation clarified that if Wife did not refinance or pay the above sums by July 7th "the house shall be immediately listed for sale."  In addition the stipulation specified, "The parties are ordered to sign the exclusive listing agreement" by July 8, 2017, with one of three pre-selected real estate agents listed in the judgment.  Finally, the order stated that if either party failed to sign the listing agreement, the court clerk would be "ordered to sign with 24 hour notice."  The parties agreed to cooperate by signing all documents necessary for sale of the residence.  The order stated, "Time is of the essence.  There shall be no delay in selling said residence."  (Capitalization omitted.)  The only exception was if Husband failed to sign any documents required by Wife to purchase or refinance the property.  In such a case, the July 7th deadline would be extended until Husband signed the required documents.

7

# EXHIBIT 3-011

      The rest of the stipulation related to other issues. For example, the parties were ordered to bear their own attorney fees and costs. The parties waived their claims to credits and reimbursements. They agreed to divide community debt equally. The stipulation contained a detailed visitation schedule. The stipulation contained a *Gavron* warning[3] and child support orders.

## IV.  *Motion to Set Aside the Stipulated Judgment*

      On September 13, 2017, Wife filed a motion to vacate or set aside the stipulated judgment. Wife specified her motion to set aside the June 16, 2017, judgment was based on section 2122 [procedure to set aside marital dissolution judgments]. She claimed the stipulation was the result of "[f]raud and [d]uress." In her supporting declaration, Wife maintained she had only agreed on issues regarding the family residence, child support, spousal support, and visitation. She asserted, "I did not know that this was intended to be a complete and final decision as to our entire divorce which included issues that were not discussed [in] the settlement agreement." She did not specify what issues were included in the judgment but were not discussed.

      Wife next explained the reasons why she was unable to obtain a loan to buy out Husband. She stated Husband's failure to make mortgage payments had a negative effect on her credit. She was offered a 10 percent loan, but she felt it was "too risky." Wife explained this was the reason she initially agreed to put the house on the market and sign the listing agreement, but now she wanted to keep the house.

      Wife also discussed an oral agreement she made with Husband in August 2017. Wife explained that her father disclaimed his inheritance and agreed to give her the money to save the family home. She said Husband agreed to remove the house from the market in exchange for $50,000 ("for waiting until the [t]rust money went through"), $400,000 of trust money, and an additional $100,000 when Wife was able to refinance

---

[3]    *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*).

8

# EXHIBIT 3-012

the property.  Wife claimed she also asked Husband to agree to complete "a loan modification" to "catch up" on the loan payments.  Wife declared Husband agreed to these terms and he was breaching the contract and defrauding the court by filing a proposed judgment to sell the house.

Wife asserted Husband's counsel threatened her.  She claimed to have told Husband's counsel she did not agree to items in the proposed judgment and she planned to file a motion to set it aside on the grounds she "was coerced into signing the stipulation judgment by coercion and fraud."  Wife stated Husband's counsel filed the request for entry of judgment knowing she did not agree with it and planned to set is aside.

Wife maintained Husband concealed his failure to pay utility bills before she signed the stipulation.  He had not paid the bills for three months despite the court's support order mandating payment.  However, she did not assert the judgment would have looked materially different if she had known about the delinquent payments, or that the judgment would have been more favorable.

With respect to the issue of duress, Wife raised the following allegation: "[Husband] has manipulated this situation to his favor so that he can walk away with all of our marital estate and leave me with nothing.  I feel that he has intentionally misled me to trust in him so that he can have it all.  I also feel that I entered into this agreement under duress because I was not given adequate time to review all the debts, accounts, and consult an attorney to ensure the agreement represented my best interests.  My prior attorney who I fired shortly thereafter kept telling me to sign the agreement so that he would not be ordered to accept payments for his fees.  I told him that it wasn't fair that I had to pay all my attorney[] fees when [Husband] committed fraud by litigating a fraudulent third party claim with his mother against me.  I was coerced into signing the agreement."

Wife stated she signed the stipulated judgment "through duress and pressure" because she badly wanted "to save my house for our children and the pressure

<div align="center">9</div>

<div align="center">

# EXHIBIT 3-013

</div>

<div align="right">

**EXHIBIT "5"**

**PAGE 166**

</div>

of [Husband] and his attorney to put the house on the market." Wife asserted she believed she could pay off Husband without the help of her trust estate. She explained, "But because [Husband] failed to make the court ordered mortgage payments and support payments, trying to starve me and our 11-year old daughter out of the house, I signed the agreement."

She listed several other instances of perceived misconduct. For example, she noted Husband filed the final judgment although he knew Wife had fired her attorney. She believed he should have waited for her to find a new attorney. She claimed Husband failed to provide her with a list of debts and concealed his failure to pay household bills. She was unhappy the stipulated judgment contained information not discussed, such as the date of separation and a "Galvin Warning."[4] Wife asked the court to set aside the stipulation and set the matter for trial.

V. *Amended Declaration for Motion to Set Aside the Stipulated Judgment*

Three months later, Wife filed an amended declaration identifying the portions of the judgment she wished the court to set aside. Wife asserted she was seeking to set aside portions of both the May 2, 2017, stipulated order, and the June 16, 2017, stipulated judgment because "they were based on fraud, concealment, duress, mistake, and failure to comply with disclosure requirements and as a result created inequity." Essentially, Wife sought a redo of all the past support, child custody, and visitation orders. With respect to the family residence, Wife asserted there was a dispute as to how

---

[4]     We assume Wife is referring to a *Gavron* warning. (*Gavron, supra,* 203 Cal.App.3d 705.) The stipulated judgment contained the following advisement: "The [c]ourt hereby issues a *Gavron* Warning to [Wife]. [S]ection 4320 states that the goal of the State of California is that both parties shall become self-supporting within a reasonable time after a dissolution of marriage. [Wife] shall make reasonable efforts to obtain employment commensurate with her abilities to contribute toward her own support." A court has discretion to dispense with the warning if it determines the supported spouse in a lengthy marriage cannot reasonably be expected to earn enough money to become self-sufficient.

10

# EXHIBIT 3-014

much equity she was entitled to receive.  She discussed several instances of Husband's domestic violence, her own attorney's legal malpractice, her attorney's violations of the "professional code of ethics," and the reasons why she was unable to borrow money to buy out Husband and keep the house.  In addition, Wife alleged Husband purposely put the house into foreclosure status to take advantage of her during the dissolution lawsuit, causing her "considerable duress and pressure."  She claimed another part of Husband's "diabolical plan" was to ruin her eBay business.  Wife also sought to set aside the provisions waving credits, reimbursements, and attorney fees.  She asserted Husband should pay those fees.

On the issue of duress, Wife maintained she would not have signed the stipulation but for Husband's fraudulent actions of putting the property "into foreclosure status."  She explained the threat of foreclosure "instilled fear and distress in me which caused me to sign the stipulated judgment."  Wife argued the combination of Husband's refusal to pay support, his creation of the foreclosure threat, and schemes with his mother, created "steady pressure to the point of undue influence which exploited me to the point of overwhelming fear and duress which caused me to mistakenly sign the stipulated judgment."

Finally, Wife asserted Husband was a felon who had committed fraud in the past.  She believed Husband concealed he had a second job and he was hiding money in his mother's bank account.  Wife stated she intended to sue Husband for "torts in civil court by jury trial" and the family law court must wait until civil litigation was complete. She did not submit any evidence or discuss legal authority supporting this allegation.

Wife also submitted a memorandum of points and authorities discussing section 2122, and introducing for the first time additional grounds to set aside the judgment, i.e., Code of Civil Procedure section 473.

11

# EXHIBIT 3-015

EXHIBIT "5"

PAGE 168

VI.  *Second Amended Declaration and Third Supplemental Response*

On December 13, 2017, just a few days before the hearing scheduled for December 20, Wife filed a "supplemental declaration." Wife requested the court treat the declaration as evidence, however, the document was not signed under penalty of perjury. In this document, Wife reiterated the arguments previously raised. She added details relating to domestic violence, Husband's efforts to destroy her eBay business, and Husband's lack of parenting skills.

After the court continued the hearing to January 19, 2018, Wife filed a third supplemental response on January 16, 2018. She raised arguments pursuant to sections 2120, 2121, and 2122 and Code of Civil Procedure section 473. She repeated the same factual allegations regarding fraud and duress. She added arguments regarding Husband's failure to provide discovery and properly disclose his assets and liabilities as required by section 2107 and 2122. She alleged Husband breached his fiduciary duties and she intended to sue him. She asked the court to defer selling the family residence until the tort action was completely litigated and damages were "secured against" husband's equity in the family home. Wife also included a discussion of the children's best interests, arguing it would be unjust to enforce the stipulation.

VII.  *The Hearing & Ruling*

The hearing was continued to the end of January 2018. The court indicated it read Wife's multiple filings, despite the fact some exceeded the page limit rules. The court told Wife one of her "declarations" was not submitted under penalty of perjury, and therefore, was considered argument. The court reminded Wife the judgment gave her additional time to purchase the family home, and if she was unable to come up with the money, the property would be sold. The court noted Wife's failure to undergo due diligence to determine if she would qualify for a loan was not Husband's fault. The court referred to evidence showing Wife was aware Husband was not making mortgage payments. It explained deferred home sale cases were rare and required extreme

12

# EXHIBIT 3-016

circumstances, such as severely disabled child who must stay in the house. It rejected
Wife's request to defer the home sale until after she litigated her civil claims against
Husband, especially since Wife admitted she had not filed the lawsuit yet.

Turning to the merits of the motion, the court asked if there was any other
evidence Wife wanted to submit. The court indicated Wife had not yet established the
alleged misconduct (fraud/duress) or a mistake materially affected the outcome as
required by section 2122. The court explained Wife was extensively voir dired about the
stipulated judgment, and Wife stated on the record that she understood the agreement and
the consequences. "People compromise all the time. And just because you might later
find out that it might have been inequitable is not in and of itself a ground to set it aside."
The court asked Wife if she received her trust money. Wife replied it totaled $216,000.

After considering Wife's oral argument, the court denied the motion to set
aside the stipulated judgment on several grounds. First, the court determined the motion
was not properly served, but because Husband responded, that issue was moot.

Second, the court determined Wife's allegation of mistake under Code of
Civil Procedure section 473 was inadequate. "[T]hat you knew that the mortgage
payments were not paid and the other bills were not paid and at that you chose to waive
all of those defects, waiving and giving up credits and reimbursements[,] and any
reasonable person should have checked their ability to refinance[,] and the effect of any
lack of payments would have on their inability to refinance. In addition, the whole
argument here was you were getting money from your trust and therefore you would have
that ability to purchase in any event."

Third, the court determined Wife's claim of duress was not supported by
any evidence. "Your papers are vague about any acts caused by [Husband] that caused
your free agency to be destroyed." The court acknowledged the allegations in the
January 16, 2018, document were more detailed, but the pleading was not a declaration,

13

# EXHIBIT 3-017

EXHIBIT "5"
PAGE 170

and therefore, inadmissible evidence. It noted Wife's complaints about her own attorney cannot be attributed to Husband.

The court asked Wife about the material benefit of keeping the house. It noted Wife simply stated she did not want it to be sold. The court determined this reason did not establish a material benefit. "[T]here's no showing in any of your paper[s] that if we did anything different that you would get all that money from the house and not have to pay him anything."

The court found meritless Wife's claim to be "caught off[-]guard" and unaware the parties "were negotiating all matters." It reasoned the matter was set for trial and everyone was prepared for the proceedings before negotiations began. It noted the matter was continued to permit Wife to "get more information from the trust and to try to figure out if it was possible" to buy out Husband. The court ruled it was disingenuous for Wife to assert she did not intend the stipulated judgment to be a final decision as to the entire divorce. It added there was no evidence to support the claim of over $60,000 in support arrearages.

The court told Wife that if she determined spousal support was insufficient, or if there was a need to change custody/visitation, she may file a request to modify these orders. It ruled the need for modification was not a reason to set aside portions of the judgment. "The law does not allow the court to set aside a judgment just because somebody is unhappy" or now feels "something is inequitable." It reasoned Wife's unilateral mistake about how the delinquent mortgage payments would affect her credit cannot serve as grounds to set aside the judgment. It explained there was nothing raised in the various pleadings that would lead the court to conclude any portion of the stipulated judgment materially affected the outcome. Wife's possession of the home or receipt of one-half of the net sales proceeds of the home "does not equate to a material benefit or a loss." The court's minute order indicated that after denying Wife's motion to set aside the stipulated judgment, the court asked Husband to prepare a final judgment.

14

# EXHIBIT 3-018

DISCUSSION

Unlike most civil judgments that may be set aside only within six months of entry and on the grounds specified in Code of Civil Procedure section 473, marital dissolution judgments may be set aside under sections 2121, 2122, and 2123 for a longer period of time and on a broader array of grounds.  (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143-1146.)  Relevant to this case, section 2122 empowers a court to set aside a marital dissolution judgment if the moving party proves "[a]ctual fraud," a "mistake of law or mistake of fact," or duress.  (§ 2122, subds. (a), (c), (e).)  The court has authority to "relieve a spouse from a judgment" or any parts of the judgment "after the six-month time limit of [Code of Civil Procedure] section 473" as long as the court finds "that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief."  (§ 2121, subd. (b).)  (See *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 89-90 [moving party has burden of proof].)

Code of Civil Procedure section 473 and the Family Code statutory scheme (sections 2121 through 2123) "coexist, operating as alternative bases for relief, depending on when the application is filed."  (*In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32 (*Heggie*).)  "There is one interesting interaction between the two statutory schemes: [S]ection 2123 necessarily superimposes a per se rule on the trial court's discretion under [Code of Civil Procedure] section 473.  Section 2123 is plain that where the only reason to set aside a judgment is that it was 'inequitable when made,' the trial court is affirmatively commanded *not* to set the judgment aside under 'any' law.  Section 2123 reads: '*Notwithstanding* any other provision of this chapter, or *any other law*, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate.'  (Italics added.)  Thus to whatever degree [Code of Civil Procedure] section 473 jurisprudence might have, prior to

15

# EXHIBIT 3-019

EXHIBIT "5"

PAGE 172

the enactment of the [Family Code statutory scheme], countenanced the setting aside of a family law judgment because it was somehow 'inequitable,' that discretion has now been expressly curtailed.  [¶] Put another way, section 2123 represents a fixed legal principle that may not be substantively contravened by the trial court in considering a discretionary application for relief under section 473."  (*Heggie, supra,* 99 Cal.App.4th at p. 33, fn. omitted.)  Therefore, the court lacks authority to set aside a judgment simply because there is evidence one party benefits from a windfall, or "naked lopsidedness of the deal in hindsight" suddenly is revealed.  (*Id.* at p. 36.)

In summary, the moving party has the burden of satisfying the following three factors:  (1) facts establish one of the grounds for relief listed in section 2122 (fraud, duress, mistake, perjury etc.); (2) these facts "materially affected the original outcome" (§ 2121) in some way other than being inequitable (§ 2123); and (3) "the moving party would materially benefit" from setting aside the judgment (§ 2121).

"A judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent.  [Citation.]"  (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.)  We reverse a decision denying a motion to set aside only if there has been a clear abuse of discretion leading to an "injury sufficiently grave as to amount to a manifest miscarriage of justice.  [Citations.]"  (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682.)  Wife did not meet her burden of proof.

I. *Fraud Allegations*

The type of fraud described in section 2122, subdivision (a), includes extrinsic fraud, a traditional equitable basis for setting aside a judgment.  (*Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 832-833 (*Kuehn*).)  "Extrinsic fraud occurs where a party is deprived of the opportunity to present her claim or defense to the court, or in some manner fraudulently prevented from fully participating in the proceeding."  (*Ibid.*)

16

# EXHIBIT 3-020

EXHIBIT "5"

PAGE 173

Section 2122 also permits a judgment to be set aside due to intrinsic fraud because subdivisions (b), (e), and (f) provide perjury, mistakes of law or fact, and "failure to comply with the disclosure requirements" are additional grounds for relief. (See *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 634 ["in a litigated case the concealment or suppression of material evidence is held to constitute intrinsic fraud"]; *Kuehn, supra,* 85 Cal.App.4th at p. 833 [explaining traditional rule that distinguished extrinsic fraud from "intrinsic fraud, such as perjury, which was not a valid ground for relief"].)

Wife's discussion of fraudulent activity is lengthy. In addition to 68 pages in the opening brief, Wife created a six-page chart listing 72 different fraud allegations (in extremely small font text). Most of these allegations were asserted below in her motion, amended declarations, and supplemental responses.[5]

In a nutshell, Wife maintains she uncovered Husband's fraudulent scheme to destroy her livelihood, unfairly take away her home and assets, and leave her penniless. Wife's brief repetitively asserts Husband lied about his income, failed to disclose assets, violated court orders, and committed other misdeeds as part of a "diabolical plan" to take all the marital assets and the children.

However, the record suggests Wife was aware of most of Husband's purported scheming before she signed the global settlement, which became the stipulated judgment. In February 2017, one month before signing the stipulation, and four months before executing the global settlement, Wife filed an OSC regarding contempt based on allegations Husband failed to pay bills in violation of a prior support order. It cannot be said Wife was completely unaware of Husband's alleged misconduct. Wife's admission

---

[5]        To the extent Wife raised new issues of fraudulent activity in her appellate briefing, we cannot consider those allegations. Our review of the trial court's ruling under an abuse of discretion standard must be limited to the evidence considered by the trial court in Wife's motions and supplemental responses. This court cannot rewrite the motion to include new facts raised for the first time on appeal.

# EXHIBIT 3-021

she borrowed money to pay the mortgages confirms she suspected Husband was letting the property fall into a foreclosure status to facilitate a quicker divorce.

If we assume, for the sake of argument, Wife established external or internal fraud (or even a mistake in fact), the trial court nevertheless lacked authority to set aside the judgment. As discussed earlier, the trial court must also determine "that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (§ 2121, subd. (b), italics added.) As discussed earlier, this requirement relates to section 2123's legal principal that a trial court cannot set aside a judgment solely because it appears to be unfair or inequitable to a party, either at the time it was entered, or due to subsequent circumstances. We agree with the trial court's determination Wife failed to present evidence to establish these requirements (§§ 2121 & 2123.) It was not enough to simply establish fraudulent conduct.

With respect to the family residence, the judgment contained the outcome Wife requested in her initial declaration. She wanted to delay selling the house. The judgment provided Wife with three weeks to arrange for and find money to buy out Husband. Wife wanted to purchase the family residence for a fair price. The judgment provided favorable buy out terms where Wife was paying Husband less than his community property share.[6]

When the court asked Wife if she had additional evidence regarding how she would materially benefit from setting aside the judgment and if there were grounds for a different outcome, she replied that she and her children would benefit from keeping the house and it should not be sold. This showing was not enough. Wife needed to prove

---

[6]    Wife declared the house appraised for $1,250,000, but due to encumbrances, had approximately $993,000 in equity. Husband's half, his community property share, would be $496,500. The judgment provided Wife would pay $450,000 (a $46,500 windfall for Wife).

18

# EXHIBIT 3-022

EXHIBIT "5"

PAGE 175

Husband's alleged misconduct "materially affected the original outcome" of the stipulated judgment. In other words, Wife had the burden of establishing which terms of the stipulated judgment should have been different, as well as how those changes would result in a "material benefit" to her.

We find it very telling that Wife does not discuss the judgment's favorable terms of delaying the sale for three weeks. Rather, on appeal Wife simply argues the court should have postponed the sale until after other issues in the family law case were resolved and after she litigated a separate tort action against Husband. Although she does not articulate the point well in her briefing, we can reasonably infer Wife's position is that to maintain the status quo the stipulated judgment should omit all terms regarding the sale. Essentially, it is her contention that delaying the equitable division of the asset would have been the outcome but for Husband's misconduct.

This argument overlooks how the dispute started. At the end of 2016, Husband requested a hearing on selling the family residence immediately due to financial difficulties. Wife filed a declaration stating *she wanted to purchase the home* and she desired additional time to make the arrangements. If the parties had not reached an agreement, the court would have held a hearing to consider Husband's request and Wife's "counter memorandum." There was no possibility of a court order or judgment not addressing the division of this marital asset.

Wife argues that if Husband's fraudulent scheme had worked, he would have facilitated foreclosure proceedings and then repurchased the home from the bank at a bargain price. Wife essentially thwarted this plan by negotiating with Husband and agreeing to a global settlement/stipulated judgment giving her three weeks to purchase the property. The judgment's terms regarding the three-week postponement, as well as the agreed upon terms of sale in the event she was unable to purchase the property, both avoided foreclosure proceedings to Wife's benefit. Including terms that maintained the

19

# EXHIBIT 3-023

EXHIBIT "5"

PAGE 176

status quo or stopped the home's sale would likely have resulted in the two banks initiating foreclosure proceedings, which would not be to Wife's benefit.

Accordingly, due to the procedural history of this case, Wife could not have hoped for better terms regarding division of the family residence. She does not explain how an order maintaining the status quo would have been possible, or for that matter, been realistically in her favor.

Wife does not dispute the home was a community property asset subject to an equitable division. We can reasonably infer from the tone of her argument that Wife believes Husband's alleged misconduct during the marriage and after their separation warrants maintaining the status quo as a type of punishment. However, "Fault is simply not a relevant consideration in the legal process by which a marriage is dissolved. Recovery in no-fault dissolution proceedings 'is basically limited to half the community property and appropriate support and attorney fee orders—no hefty premiums for emotional angst.' [Citation.]" (*Diosdado v. Diosdado* (2002) 97 Cal.App.4th 470, 474.)

We also reject Wife's assertion the trial court was required to postpone division of community assets until she completed her tort action against Husband. She provides no legal authority to support this contention. The argument was based on the faulty assumption Wife would prevail in the civil action, and the award could offset any money owed to Husband. However, a family law court need not stay the dissolution action and order Husband to continue paying for two residences while Wife's civil action percolates in a different courtroom.

II. *Duress Allegations*

We appreciate Wife experienced significant pressure and intense emotional duress when she was faced with the imminent threat of foreclosure of her beloved home. She explains how Husband's default on the loans, past incidents of domestic violence, the lack of financial options, poor credit, and bad advice from her attorney were all factors creating an extremely stressful situation and that led to her mistake of signing the global

20

# EXHIBIT 3-024

settlement.  While we are sympathetic to these alleged circumstances, the type of duress she describes does not satisfy the legal definition of *contractual* duress, required to set aside the stipulated judgment.

Section 2122, subdivision (c), does not define the term duress.  Generally, "'"[d]uress . . . includes whatever destroys one's free agency and constrains [him or her] to do what is against [his or her] will, and may be exercised by threats, importunity or any species of mental coercion . . . .'"  [Citation.]  It is shown where a party 'intentionally used threats or pressure to induce action or nonaction to the other party's detriment. . . . The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing.  [Citation.]'  [Citation.]"  (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1523 (*Balcof*).)

Although duress may be a tort or a crime, most authorities view the true test as contractual.  (See *In re Marriage of Gonzalez* (1976) 57 Cal.App.3d 736, 743-744 (*Gonzalez*).)  "'"By many if not most of the modern authorities, however, the true doctrine of duress is held to be that a contract . . . obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress. . . ."'"  (*Ibid.*)  To justify setting aside a stipulated judgment, the party seeking relief must prove the duress so exercised control over her, that her will was absolutely subservient to the will of the offending party.  (*Id.* at p. 744.)  This test does not turn on the nature of the threats, but on the state of mind induced in the victim.  (*Ibid.*)  The court must take into consideration the attributes or characteristics of the party claiming duress, including her ability to resist. (*Ibid.*)

Accordingly, to prove contractual duress, Wife faced a very high hurdle of proof.  "The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing.  [Citation.]"  (*In re Marriage of Baltins* (1989) 12 Cal.App.3d

# EXHIBIT 3-025

66, 84 (*Baltins*).)  It is not enough to demonstrate Husband intentionally threatened her by his actions or words to induce her to sign the agreement, and it is not enough to show this coercion induced fear.  Wife must show the duress utterly destroyed her free will.  "It is well settled that a contract . . . may be set aside for duress only if it was ""'obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property . . . as to deprive him of the free exercise of his will.'"'  [Citations.]"  (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 499 (*Broderick*).)  Consequently, if the coerced party had mixed motives for agreeing to the contract, no duress will be found. (*Ibid.*)

For example, in the *Broderick* case, the wife, who had been the victim of past threats and domestic violence, conceded that she assigned a quitclaim deed to her husband because she wanted to leave him and needed the money.  (*Broderick, supra*, 209 Cal.App.3d at p. 499.)  She also agreed that when she signed the deed, her husband was not making threats or acting violent.  (*Ibid.*)  The court determined Wife had not proven duress.

Similarly, if time has passed between the alleged coercion and execution of a stipulated judgment, no duress will be found.  In *In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 685-686 (*Rosevear*), the court found no cognizable "duress" where the record showed that a complaining spouse's consent to a stipulated judgment was "freely, knowingly and voluntarily given," where she had three months to reflect on the agreement and obtain independent advice before signing the stipulated judgment, and had been thoroughly questioned by a settlement judge to ensure that she understood the agreement.

The passage of time rebuts the inference a party was deprived of the exercise of free agency, or lacked any reasonable alternative but to agree to what she later claimed was a coerced agreement.  (See *Rosevear, supra*, 65 Cal.App.4th at p. 686 [fact that alleged violence took place months before settlement agreement was signed rebutted

<div align="center">22</div>

# EXHIBIT 3-026

**EXHIBIT "5"**

**PAGE 179**

inference of duress].)  Thus, if the coerced party had time to reflect on the terms of the stipulation and/or obtain legal advice, but nevertheless signs an agreement she later regrets, she is not a victim of duress.  Rather, she is suffering from "'buyer's remorse.'" (*Rosevear, supra*, 65 Cal.App.4th at p. 686.)

In this case, it cannot be said the court abused its discretion in determining wife failed to present adequate evidence of contractual duress.  Wife's description of the history of domestic violence was remote and Wife did not assert Husband threatened or pressured her when she signed the stipulation or when she executed the global settlement agreement several months later.  At the time of execution, Wife was represented by counsel and was given time to investigate the availability of her father's trust fund money, obtain advice from others, and organize financing to buy out Husband's part of the home.  Wife, with the assistance of counsel, negotiated a deal with Husband to buy out his share for the compromised sum of $450,000.  As mentioned earlier, this sum appears to be less than Husband's anticipated community property share (half of $1,250,000 minus the outstanding mortgages).

Thus, Wife convinced Husband to postpone the sale and accept a lower pay out.  While Husband created pressure to take immediate action to avoid foreclosure, the stressful situation did not preclude Wife from considering her options for two months or prevent her from negotiating favorable terms regarding the house.  This was an insufficient showing Husband's conduct deprived Wife of the exercise of her free will or that she lacked any "reasonable alternative to succumbing." (*Baltins, supra*, 212 Cal.App.3d at p. 84; see also *Balcof, supra*, 141 Cal.App.4th at p. 1523.)

In *Rosevear*, a couple engaged in long-term negotiations throughout which the wife was intermittently represented by a series of attorneys.  (*Rosevear, supra*, 65 Cal.App.4th at pp. 676-679.)  The parties reached an oral agreement after a day-long settlement conference before a panel of three temporary judges.  (*Id.* at p. 679.)  That agreement was read into the record and, three months later, the wife executed the

23

# EXHIBIT 3-027

stipulated judgment. (*Id.* at pp. 679-680.) Six months later, represented by new counsel, the wife moved to set aside the stipulated judgment and settlement agreement claiming she had executed it under duress and due to mistake. (*Id.* at pp. 680-682.) The appellate court affirmed the trial court's ruling denying wife's motion to vacate. (*Id.* at pp. 686-687.) "The transcript of [the settlement judge's] voir dire at the settlement conference contains no hint of coercion or duress. To the contrary, [the judge] took extraordinary pains to ensure that [the wife's] agreement was freely, knowingly and voluntarily given. . . . [The wife] was clearly and expressly given sufficient opportunity to complain or object. If she had truly felt coerced or pressured to agree at the time of the settlement conference, surely some indication would appear in the reporter's transcript." (*Id.* at pp. 685-686.) The voir dire coupled with the fact that the wife waited three months after the settlement conference to execute the stipulated agreement "provide[d] strong evidence in support of the trial court's conclusion that [she] failed to establish . . . duress." (*Id.* at p. 686.) The court observed that when a contracting party has had ample time to reflect and obtain advice, this is likely to be evidence of garden variety "'buyer's remorse'" not duress. (*Id.* at p. 686.)

Similarly, in the case before us, Wife's voir dire does not suggest she executed the stipulation or the global settlement under duress. In addition to answering questions posed by her attorney about the agreement, the court sought clarification about whether Wife understood the global settlement was a significant compromise and she "could come out better" or worse if she went to trial. The court mentioned the settlement covered many topics the court usually evaluates and balances equally between the parties, including spousal support, credits, reimbursement, and attorney fees. The court asked each party if they understood the court did not balance these items because "you've globally compromised it." Wife responded, "Yes." When the court asked if either party had any questions, Wife simply asked, "Are we divorced? Are we free?" She also asked the court how long it would take for Husband's counsel to prepare the final judgment and

# EXHIBIT 3-028

wanted the court to impose a deadline. Such demands are not made by a person completely deprived of free will.

Finally, we conclude Wife failed to demonstrate Husband's purported threats or coercion destroyed her free will because she concedes other factors influenced her decision to sign the agreement. Specifically, Wife admits she signed the agreement because her attorney gave her bad advice. Mixed motives are insufficient to establish duress. (*Broderick, supra*, 209 Cal.App.3d at p. 499 [contracting party does not act under duress where he or she admittedly has multiple motives for entering into the agreement].)

III. *Alleged Legal Malpractice*

Wife's initial declaration asserted there was inadequate time to consult with an attorney and, at the same time, she met with an attorney who pressured her to sign the stipulation and global settlement. She suggested the court was required to set aside the judgment because her attorney, who negotiated the stipulated judgment, was negligent. We disagree. As explained in *Rosevear*, attorney negligence is not a distinct ground for setting aside a marital dissolution judgment: "[E]ven though attorney negligence will not be imputed to a client to bar an order setting aside a judgment, such an order may still only be granted if it is based on one of the five exclusive grounds specifically set forth in section 2122." (*Rosevear, supra*, 65 Cal.App.4th at p. 686.) "Attorney negligence is not itself one of these enumerated grounds for setting aside a judgment. The fact that attorney negligence is not a bar to setting aside a dissolution judgment does not transform it into a form of fraud, perjury, duress, mental incapacity, mistake, or other ground *for* setting aside a judgment." (*Ibid.*)

IV. *Alleged Court Bias*

In her briefing, Wife's mantra is that the court was obligated to address Husband's failure to comply with court orders. Wife believes an unbiased court would have imposed evidentiary sanctions after Husband refused to disclose documents, hid assets, and lied about his income. She is baffled as to why the court refused to impose

# EXHIBIT 3-029

sanctions or hold Husband in contempt. She speculates the court was biased against her because it believed Husband's claim she was a hoarder with psychological problems. While Wife acknowledges the court never made any factual findings regarding Wife's mental state, she asserts the only possible reason the court would have ignored her evidence of fraud and ruled against her was judicial bias against her.

"The operation of the due process clause in the realm of judicial impartiality . . . is primarily to protect the individual's right to a fair trial." (*People v. Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*).) "The role of a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the challenging party] a fair, as opposed to a perfect, trial. [Citation.]' [Citation.]" (*People v. Harris* (2005) 37 Cal.4th 310, 347.)

Wife forfeited any claim of judicial bias by failing to assert it below. (See *People v. Farley* (2009) 46 Cal.4th 1053, 1110; *People v. Samuels* (2005) 36 Cal.4th 96, 114.) Moreover, none of Wife's bias allegations relate to statements the court made on the record. Rather, Wife infers bias merely from the rulings made in Husband's favor. "'[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 732.)

V. *Other Due Process Concerns*

A. *Request for Attorney Fees*

Wife maintains the court ignored her request for need-based attorney fees. Her supporting record references show her "request" was made on pages 29 and 32 of her December 2017 "supplemental declaration" in support of her motion to set aside the stipulated judgments of May and June 2017. On page 32, Wife stated she "petitions the court" for attorney fees and costs pursuant to section 2032.

26

# EXHIBIT 3-030

Wife's briefing does not contain any legal analysis or legal citations to support her claim the trial court erred in failing to rule on her request for attorney fees that she buried deep within a supplemental declaration. (See *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 166 [party seeking attorney fees and costs under section 2030 must file and serve either form FL-319 or comparable declaration listing amount of fees and costs requested, attorney billing rates, notice to party, and personal declaration as to financial need].)

In addition to procedural and due process concerns with Wife's attorney fee request, it appears the court could have determined Wife abandoned the issue because she did not request a ruling during the hearing. Alternatively, the court could have recognized its obligation to uphold the stipulated judgment's attorney fee agreement. Because the trial court determined there were no valid grounds to set aside the stipulated judgment, the attorney fee provision was valid. It stated, "Each party shall their own attorney[] fees and costs and shall not be responsible for the attorney[] fees and costs of the other party." It also contained a prevailing party attorney fee provision. In other words, the court likely determined Wife waived her right to need-based attorney fees under section 2032 as part of the global settlement.

In a marital settlement agreement, parties to a dissolution proceeding or to an action relating to a dissolution judgment may contractually waive their rights to need-based attorney fee awards under sections 2030 and 2032. (See, e.g., *In re Marriage of Guilardi* (2011) 200 Cal.App.4th 770, 774-775.) Determining whether the parties intended to waive their statutory rights depends on their expressed intent in the stipulated judgment, requiring application of general rules of contract interpretation. (See generally *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439 ["Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally"].)

27

# EXHIBIT 3-031

**EXHIBIT "5"**

**PAGE 184**

Wife does not provide legal analysis or discussion regarding the issue of her contractual waiver of need-based attorney fees. Accordingly, we deem the attorney fee issue waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

B. *No Statement of Decision*

Wife maintains the court ignored her two written requests for a statement of decision. As noted by Husband, the court provided an oral statement of decision on January 26, 2018, at the end of the hearing on Wife's motion to set aside the stipulated judgment. Nothing more was required. Under section 632, the court may give an oral statement of decision if the hearing was concluded within one day or less than eight hours. (See *In Re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1717.)

C. *No Continuance & Husband's Invocation of Fifth Amendment Rights*

The following is a brief summary of the procedural history regarding these two related issues. Wife's initial motion to set aside the stipulated judgment showed the court scheduled the hearing for October 17, 2017. On that date, the court granted Wife's request for a continuance and scheduled the hearing for December 20, 2017. In November 2017, the court also continued Wife's OSC regarding contempt to December 20, 2017. Before the December 20 hearing date, Wife filed an amended declaration regarding the motion to set aside the judgment.

Meanwhile, on December 12, 2017, Husband filed an objection to Wife's request for a hearing on custody, visitation, and support. He explained Wife's OSC regarding contempt (scheduled for December 20, 2017) was a quasi-criminal action and Husband had a right not to incriminate himself by filing responses to Wife's request for a hearing on custody and support. He asserted a response would require him to provide an income and expense declaration, which would essentially waive his Fifth Amendment

28

# EXHIBIT 3-032

EXHIBIT "5"

PAGE 185

right against self-incrimination.  Husband noted Wife filed a second OSC regarding contempt, which was scheduled for January 5, 2018.

On December 13, 2017, Wife filed her third supplemental response to her motion to set aside the judgment.  On December 18, 2017, two days before the scheduled hearing, Wife filed a confusing document titled, "Further reply with alternative solution re:  [Husband's] objections to hearing on the requests for orders regarding custody, support, visitation and any other proceeding other than a motion to set aside." (Capitalization omitted.)  On appeal, she claims this document was a request for a continuance.

The document has only 11 lines.  In the first sentence, Wife offers the court "a clean solution to the problem presented by [Husband]."  She suggests that the court should hear her two OSCs regarding contempt before the motion to set aside and all other motions regarding support and attorney fees.  She explained this plan "will allow all the motions to be heard without them being impeded by the issue of [Husband] taking the Fifth Amendment."

Wife does not explain why the court should have construed her further reply as a request for a continuance.  Wife's solution of having the court consider the two OSCs before the motion to set aside the stipulated judgment did not necessarily require a continuance.  All three motions could have been heard on the same date.

On December 20, 2017, the court continued the hearing on the motion to set aside the judgment to January 19, 2018.  The two OSCs regarding contempt were continued to February 20, 2018.

On January 16, 2018, two days before the scheduled hearing, Wife filed her final supplemental response in support of the motion to set aside the judgment.  On the scheduled hearing date, the court on its own motion continued the matter to January 26, 2018.

29

# EXHIBIT 3-033

**EXHIBIT "5"**

**PAGE 186**

It appears Wife's final argument is that the court violated her right to due process by continuing the hearing date on its own motion. Wife asserts her final 27-page supplemental response, filed on January 16, 2018, informed the court she intended to call three witnesses. She asserts the court abused its discretion when it refused to grant her a continuance to present her witnesses or cross-examine Husband "who was taking the Fifth." The legal basis for this argument is unclear.

The caption of the supplemental response does not mention the need for three additional witnesses or for a hearing on a certain date. Wife does not provide a record reference to support her claim this information was contained in the 27-page supplemental response. Accordingly, we deem this issue waived. (*Badie, supra,* 67 Cal.App.4th at pp. 784-785.)

Wife asserts she objected to the continuance, however, she refers to a written objection she filed on February 7, 2018, long after the hearing on her motion to set aside the judgment. In the objection, Wife claimed she called the court clerk and said her witness was unavailable on the new hearing date (January 26, 2018). She recalled the court clerk informed her to tell the court about her witness on January 26 and ask, "if they could be heard via telephone." Wife asserted the court denied this request, which was an abuse of due process.

The reporter's transcript indicates Wife told the court "I do have a witness that can testify to the intentional putting [sic] the mortgage into foreclosure status, and he was available last week and the hearing got continued. He is available on the phone." The court stated it was unwilling to hear the witness testify on the telephone. Wife replied "or we can do a short continuance" to a date the witness was available. The court indicated this was unnecessary because Wife's primary allegation did not relate to being unaware of the foreclosure status, but rather that she did not realize the late payments would be detrimental to her credit and ability to secure a loan. Wife agreed this was her main contention. As mentioned, the court ruled Wife's fraud allegations were

30

# EXHIBIT 3-034

insufficient to set aside the judgment because she also needed to establish how those facts materially affected the outcome and how she would have materially benefitted by the relief requested.

On appeal, Wife does not suggest why the court's refusal to allow additional evidence proving fraud prejudiced her case. She does not claim this witness would have contributed evidence to the determinative issue of how the outcome would have been different and materially beneficial. Moreover, based on our review of the record, it does not appear that Wife asked the court to rule on a continuance request. There is actually no order for us to review on appeal.

D. *Refusal to Bifurcate*

Wife asserts her due process rights were violated when the court refused to "grant or deny" her request to "[b]ifurcate the real property issues pending the outcome of her torts [sic] against [Husband] in Case No. 30-2018-00986705-CU-FR-CJC." She elaborates that on December 18, 2017, she requested that the court "bifurcate the family home and order a deferred sale pending the division of assets, debts, offsets for back and present support and the outcome of the lawsuit against [Husband] based on his fraudulent scheme to obtain the family home through deceit and fraud during the divorce which created an unequal division of community property[.]"

Wife's supporting record references show her request for bifurcation was not raised in a separate motion. Rather, the request was listed as the fifth item on her December 13, 2017, "supplemental declaration in response to [the] motion to set aside stipulated judgments." (Capitalization omitted.) She wrote the following: "[Wife] is asking this [c]ourt to 'bifurcate' or divide the divorce into two parts. The divorce can be made final while the issues surrounding the disputed property division and division of debts and assets can be set for trial. Bifurcation is proffered so that [Wife] can present evidence based on [Husband's] actions, as set forth in her pleadings, will prove how [he] willfully, wantonly, and maliciously created a diabolical scheme and acted on said

# EXHIBIT 3-035

scheme to deprive [Wife] and her children of an equal division of the couples assets, namely the family home located [in] Newport Beach, California."

She asserts the family law court failed to exercise its discretion and rule on the merits of the bifurcation request. To support this allegation, Wife cites to pages 1457-1480 of the clerk's transcript. Within these 23 pages is the court's minute order, stating Husband must make several corrections to the proposed judgment based on its review of Wife's objections. Not surprisingly, this order, written seven days before Wife's bifurcation request, does not mention the issue of bifurcation. Wife's request was not before the court at that time. The rest of the cited pages contain the following documents: (1) Wife's reply to Husband's objections to having a hearing on orders relating to custody, support, and visitation; and (2) Wife's reply to Husband's objections to proofs of service. Neither of these documents prove the court failed to rule on the merits of Wife's bifurcation request.

We appreciate Wife orally requested bifurcation at the hearing on her motion to set aside the stipulated judgment. When the court asked her about the lawsuit, Wife admitted she had not yet filed a tort action against Husband. It is disingenuous for Wife on appeal to assert the court erred in refusing to consider a tort action filed *after* the court's ruling. The court need not consider speculative arguments.

Wife's argument lacks merit for the additional reason that her request to bifurcate family law issues was included in documents relating to her motion to set aside the stipulated judgment. The issues Wife wanted the court to bifurcate were resolved in the stipulated judgment. The court had no legal basis to bifurcate matters no longer pending.

For this same reason, we reject Wife's assertion the court abused its discretion by failing to consider her request for a deferred sale of the home. Sections 3801 and 3802 permit a court to defer the sale of a family home where certain conditions are met, relating to limited factual circumstances. However, in this case the court lacked

# EXHIBIT 3-036

EXHIBIT "5"
PAGE 189

jurisdiction to consider this particular issue because the fate of the family home was completely resolved by the stipulated judgment. The judgment provided Wife had three weeks to buy out Husband's share of the house, or the parties must cooperate to sell the property and divide the proceeds. After the court determined there were insufficient grounds to set aside the judgment, there was no legal basis to disturb the final judgment and revisit the issue of whether the house should be sold. "A stipulated judgment is as conclusive as to the matters in issue it determines as a judgment after trial. [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1507.) The doctrine of res judicata bars further litigation regarding the fate of the family residence.

## VI. *Disentitlement Doctrine*

Husband asserts Wife lacked standing to appeal from a judgment because she violated the trial court's order and judgment to cooperate with efforts to sell the house. This argument is somewhat paradoxical because in our record the only evidence suggesting a party violating court orders relates to Husband. The record shows two scheduled OSCs regarding contempt relating to his alleged failure to pay court-ordered utility bills, spousal support, and child support. Husband never denied that he violated the order requiring he pay two mortgages, which put the loans in default, damaged the couple's credit rating, and created a threat of foreclosure. Disentitlement is based on an equitable rationale, and we are mindful of the maxim that one who comes to court seeking equity must come with clean hands. (See *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1059.)

Husband cites authority holding the following: "'An appellate court has the inherent power, under the "disentitlement doctrine," to dismiss an appeal by a party that refuses to comply with a lower court order. [Citations.] As the Supreme Court observed . . . , "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders

33

# EXHIBIT 3-037

and processes of the courts of this state.  [Citations.]"  [¶] . . . [An] equitable rationale underl[ies] the doctrine.  "'Dismissal is not "'a penalty imposed as a punishment for criminal contempt.  It is an exercise of a state court's inherent power to use its processes to induce compliance'" with a presumptively valid order.'"  [Citation.]  'No formal judgment of contempt is required; an appellate court "may dismiss an appeal where there has been *willful disobedience or obstructive tactics*.  [Citation.]"  [Citation.]  The doctrine "is based upon fundamental equity and is not to be frustrated by technicalities." [Citation.]'  [Citation.]"  (*Blumberg v. Minthorne* (2015) 233 Cal.App.4th 1384, 1390-1391 (*Blumberg*).)

Our record does not contain any evidence Wife failed to comply with a lower court order before she filed this appeal.  Indeed, Husband does not suggest Wife acted inappropriately before filing this appeal.  We note that she has not violated any orders issued by this court.

Husband suggests evidence of more recent incidents of misconduct in the trial court warrant her dismissal.  He filed a request asking this court to take judicial notice of a court order, dated November 9, 2018, which indicates Wife violated court orders.  Without having the benefit of any supporting legal authority, Husband argues Wife should be dismissed from this appeal because "[t]hroughout this entire appellate proceeding, [Wife] has been in violation" of the trial court's orders to help sell the family residence and she "instead sought unsuccessfully to postpone any such sale."  This argument runs contrary to Husband's case authority and the holding of *Blumberg*.  The test is whether Wife sought assistance from the appellate court while standing "in an attitude of contempt."  (*Blumberg, supra,* 233 Cal.App.4th at pp. 1390-1391.)  When Wife filed this appeal, there was no evidence she had willfully disobeyed trial court orders.  Husband's argument lacks merit, and we deny his request for judicial notice.

34

# EXHIBIT 3-038

EXHIBIT "5"
PAGE 191

VII. *Motion to Dismiss*

Husband's motion to dismiss the appeal was made on the grounds Wife cannot appeal from a judgment because she benefitted from it. In summary, Husband asserts Wife cannot try to buy the property as permitted by the judgment and then later attack the validity of that same judgment. We disagree.

As a general rule, "one who *accepts* the *benefits* of a judgment cannot thereafter attack the judgment by appeal." (*Lee v. Brown* (1976) 18 Cal.3d 110, 114 (*Lee*).) The Supreme Court has repeatedly stated the rule as follows: "'The right to accept the fruits of a judgment, and the right of appeal therefrom are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these courses is, therefor, a renunciation of the other.' [Citation.]" (*Id.* at p. 114.) In other words, the acceptance of a judgment's benefits "constitutes an '. . . affirmance of the validity of the judgment against him [or her].' [Citation.]" (*Ibid.*)

"This general rule has been applied in a number of contexts. (See, e.g., *Schubert v. Reich* (1950) 36 Cal.2d 298 [appellant accepted money pursuant to an order of the court that had explicitly conditioned the granting of plaintiff's motion for a new trial on the payment to defendant of that money, which order appellant then attempted to challenge]; *Giometti v. Etienne* (1936) 5 Cal.2d 411 [appellants paid the balance due on a contract of purchase, received a conveyance of property, encumbered that property, and filed a satisfaction of judgment]; *Wilson v. Wilson* (1958) 159 Cal.App.2d 330 [appellant accepted the benefits of a divorce decree and then sought to appeal the portion of the decree imposing obligations upon him] . . . .)" (*Lee, supra,* 18 Cal.3d at pp. 114-115.) "'Although the acceptance must be clear, unmistakable, and unconditional [citation], acceptance of even a part of the benefit of a judgment or order will ordinarily preclude an appeal from the portion remaining. [Citation.]' [Citation.]" (*Satchmed Plaza Owners Assn. v. UWMC Hospital Corp.* (2008) 167 Cal.App.4th 1034, 1041-1042 (*Satchmed Plaza Owners*).)

35

# EXHIBIT 3-039

**EXHIBIT "5"**

**PAGE 192**

"'As is so often the case, however, application of the rule has generated a number of equitable exceptions.' [Citation.]  For one, 'a waiver will be implied [only] where there is *voluntary compliance* with a judgment . . . .' [Citation.]  'Thus where compliance arises under compulsion of risk or forfeiture, a waiver will not be implied. [Citations.]' [Citation.]  For another, 'one may appeal from a portion of a severable and independent judgment while accepting the benefits of the unaffected remainder of the judgment. [Citations.]' [Citation.]" (*Satchmed Plaza Owners, supra,* 167 Cal.App.4th at p. 1042.)  Wife maintains both that she acted under compulsion in an attempt to purchase the family home and that portions of the judgment were severable, such as the inclusion of terms unrelated to the home and terms not previously discussed.

We reject Husband's argument for a different reason.  Wife did not need the judgment to investigate lenders or seek financing.  Ultimately, she was unable to find enough money to take advantage of the benefit offered to her by the judgment.  A clear acceptance would have taken place if Wife purchased the home and then sought to set aside other portions of the judgment, such as the spousal/child support or the *Gavron* warning.  Accordingly, we conclude Wife did not waive her right to appeal.  We deny the motion to dismiss.

# EXHIBIT 3-040

DISPOSITION

We affirm the postjudgment order.  We deny the request for judicial notice and the motion to dismiss.  In the interests of justice, each party shall bear their own costs on appeal.


O'LEARY, P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.

37

# EXHIBIT 3-041

EXHIBIT "5"

PAGE 194

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
970 W. 17th Street, Suite D
Santa Ana, CA 92706

A true and correct copy of the foregoing document entitled: Opposition to Debtor Alicia Richards' Objectoin to Ryal Richards' Joinder in Richard Marshack's Motion for an Order Authorizing the Trustee to Pay Ryal Richards $300,000.00 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 04/26/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

XX  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) _____ I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 04/26/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

ALICIA MARIE RICHARDS via email to: richardsalicia007@gmail.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/26/2022 | Karen Granoff | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                               Page 9                               F 4001-1.RFS.NONBK.MOTION

# EXHIBIT 3-042

**EXHIBIT "5"
PAGE 195**

PROOF OF SERVICE
ATTACHMENT

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:\

Amanda N Ferns    aferns@fernslaw.com , mmakalintal@fernslaw.com
Daniel K Fujimoto    wdk@wolffirm.com
Richard G Heston    rheston@hestonlaw.com , yflores@hestonlaw.com, docs@hestonlaw.com;
    HestonRR41032@notify.bestcase.com ,handhecf@gmail.com
Richard A Marshack (TR)    pkraus@marshackhays.com ,
    rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Kevin E Robinson    robinsonlawoffice@yahoo.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Eugene V Zech    evzechlaw@aol.com

# EXHIBIT 3-043

**EXHIBIT "5"**
**PAGE 196**

# EXHIBIT 4

KEVIN E. ROBINSON      SBN 88726
LAW OFFICES OF KEVIN E. ROBINSON
970 West 17th Street, Suite D
Santa Ana, California 92706

Tel: 714-245-0210
Fax: 714-973-0244

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE | ) Case No.: 8-21-bk-10635-ES |
| | ) |
| | ) REPLY DECLARATION OF KEVIN |
| ALICIA MARIE RICHARDS, | ) ROBINSON TO DEBTOR'S OBJECTION TO |
| | ) RYAL RICHARDS' JOINDER IN RICHARD |
| | ) MARSHACK'S MOTION FOR AN ORDER |
| | ) AUTHORIZING TRUSTEE TO PAY RYAL |
| | ) RICHARDS $300,000.00. |
| | ) |
| | ) Date:   May 5, 2022 |
| Debtor. | ) Time:   10:30 a.m. |
| | ) Courtroom 5A via ZoomGov. |

I, KEVIN E. ROBINSON, declare as follows:

1.      If called as a witness I could and would competently testify to the following facts of my own personal knowledge except where stated as relying on information and belief.  I offer this declaration in lieu of direct testimony pursuant to CCP Sections 98, 2009 and 2015.5;  *Reifler v. Superior Court* (1974) 39 C.A. 3d 479, and *Marriage of Stevenot* (1984) 154 C.A. 3d 1051.

2.      I am the attorney of record for Ryal Richards in the Superior Court of the State of California Dissolution of Marriage matter entitled Ryal W. Richards vs. Alicia Marie Richards, Orange County Superior Court Case No. 15D009634.

3.      I have been Ryal W. Richards' attorney of record since the filing of the Petition for Dissolution of Marriage through and including today and all of the post-judgment matters.  I was present for all of the court proceedings and I make this Declaration of my own personal knowledge

1

REPLY DECLARATION OF KEVIN ROBINSON TO DEBTOR'S OBJECTION TO RYAL RICHARDS' JOINDER IN
RICHARD MARSHACK'S MOTION FOR AN ORDER AUTHORIZING TRUSTEE TO PAY RYAL RICHARDS

EXHIBIT 4-001

1    of the  matters contained herein which occurred in the Orange County Superior Court Dissolution

2    matter.

3         4.    The residence at 351 Catalina Drive, Newport Beach, California is community

4    property.  Attached hereto labeled Exhibit "1" and incorporated hereat as though fully set forth is

5    a true and correct copy of the Judgment of Dissolution entered on January 26, 2018.

6         5.    The Judgment ordered that the property be sold and the net proceeds divided equally.

7         6.    As set forth in the Joinder to the Trustee's Motion  the homestead exemption (which

8    is also claimed by Ryal Richards) is part of those net proceeds and thus 50 percent of the homestead

9    exemption proceeds belong to Ryal Richards.  Since the residence wasn't partitioned, it was ordered

10   to be sold as community property, then the proceeds divided. That had not occurred when Alicia

11   Richards filed bankruptcy and the homestead exemption remained community property

12        7.    Now that it has been liquidated, the final judgment of the State of California, Orange

13   County Superior Court  Family law divisoin  that is now over four years old provides that the

14   community property is to be divided equally and when that occurs, each party's share will become

15   his/her separate property. Since the homestead exemption was allowed, the proceeds of the sale of

16   the homestead are not property of the estate any longer and are subject to the terms of the divorce

17   judgment, which required the property be divided equally. Debtor has received her half;  now Ryal

18   Richards should receive his half.  See Green v. Green (In re Green), 140 Cal. Rptr. 3d 915, 918 (Cal.

19   Ct. App. 2012) (""The characterization of property as community or separate determines its division

20   upon dissolution of marriage. Each spouse owns a one-half interest in all community property.

21   ([Fam.Code,] § 751.) In general, community property is divided equally in the aggregate when the

22   marriage ends. ( [Fam.Code,] § 2550; see [Fam.Code,] §§ 2600–2604.) However, separate property

23   is not subject to a similar division, and belongs only to the owner spouse. ( [Fam.Code,] § 752.)" (In

24   re Marriage of Benson (2005) 36 Cal.4th 1096, 1102, 32 Cal.Rptr.3d 471, 116 P.3d 1152.)")

25        8.    To be absolutely clear Ryal Richards -- a party with interest in the proceeds of the sale

26   of the property of the estate, asks this court, the United States Bankruptcy Court, to order Richard

27   Marshack, the Chapter 7 Trustee, to pay $300,000 directly to Ryal Richards as a portion of his one-

28   half of the homestead exemption funds and Mr. Richards' entitlement to the proceeds of the Catalina

<center>2</center>

<center>REPLY DECLARATION OF KEVIN ROBINSON TO DEBTOR'S OBJECTION TO RYAL RICHARDS' JOINDER IN
RICHARD MARSHACK'S MOTION FOR AN ORDER AUTHORIZING TRUSTEE TO PAY RYAL RICHARDS</center>

<center>**EXHIBIT 4-002**</center>

1   residence.  The Court having already granted the homestead exemption and the court reserving one-

2   half of it for later disposition upon a proper Motion, Mr. Richards is now presenting said Motion in

3   conjunction with the Chapter 7 Trustee asking for the release of those funds forthwith.

4           I, Kevin E. Robinson, declare under the penalty of perjury under the laws of the United States

5   that the foregoing is true and correct.

6   Dated:  April 28, 2022

7                                                    _Kevin E. Robinson_____

8                                                    KEVIN E. ROBINSON, Declarant
                                                     ATTORNEY FOR RYAL W. RICHARDS

9

10          I, Ryal W. Richards, the Creditor and Claimant in this matter, having read the Reply

11  Declaration of Kevin Robinson to Debtor's Objection to Ryal Richards' Joinder in Richard

12  Marshack's Motion for an Order Authorizing Trustee to Pay Ryal Richards $300,000.00, hereby

13  declare under penalty of perjury under the laws of the United States  that the statements set forth in

14  this Reply to Debtor's Objection to Joinder in the Trustee's Motion are true and correct to the best

15  of my information and belief.  I verify the contents of this Reply to Debtor's Objection to Ryal

16  Richards' Joinder in Richard Marshack's Motion for an Order Authorizing Trustee to Pay Ryal

17  Richards $300,000.00 and state that if called to testify I would competently testify to these facts.

18

19  Dated:  April 28, 2022

20                                                   _____

21                                                   RYAL W. RICHARDS, Claimant

22

23

24

25

26

27

28

                                                 3
        REPLY DECLARATION OF KEVIN ROBINSON TO DEBTOR'S OBJECTION TO RYAL RICHARDS' JOINDER IN
        RICHARD MARSHACK'S MOTION FOR AN ORDER AUTHORIZING TRUSTEE TO PAY RYAL RICHARDS
                                    $300,000.00
        **EXHIBIT 4-003**

# Exhibit "1"

**EXHIBIT 4-004**

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY (name, State Bar number, and address):
KEVIN E. ROBINSON 88726
Law Offices of KEVIN E. ROBINSON
970 W. 17th Street, Suite D
Santa Ana, CA 92706
TELEPHONE NO.: (714) 245-0210      FAX NO. (Optional): (714) 973-0244
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): RYAL W. RICHARDS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Orange County
STREET ADDRESS: 341 The City Drive
MAILING ADDRESS: P.O. BOX 14710
CITY AND ZIP CODE: Orange, CA 922863
BRANCH NAME: Lamoreaux

MARRIAGE OR PARTNERSHIP OF
PETITIONER: RYAL W. RICHARDS
RESPONDENT: ALICIA MARIE RICHARDS

**FOR COURT USE ONLY**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

JAN 2 6 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: K. McDONALD , DEPUTY

| JUDGMENT | | |
|---|---|---|
| [X] DISSOLUTION | [ ] LEGAL SEPARATION | [ ] NULLITY |

[ ] Status only
[ ] Reserving jurisdiction over termination of marital or domestic partnership status
[ ] Judgment on reserved issues
Date marital or domestic partnership status ends: JAN 2 6 2018

CASE NUMBER:
15D 009 634

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders. The restraining orders are contained on page(s) ___ of the attachment. They expire on (date):

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
[X] Contested   [ ] Agreement in court
a. Date: June 16, 2017 and March 2, 2017   Dept.: L-74   Room:
b. Judicial officer (name): Honorable Linda L. Miller   [ ] Temporary Judge
c. [X] Petitioner present in court   [X] Attorney present in court (name): Kevin E. Robinson
d. [X] Respondent present in court   [X] Attorney present in court (name): Eugene Zech
e. [ ] Claimant present in court (name):   [ ] Attorney present in court (name):
f. [X] Other (specify name): Diane Vargas, Attorney for the minors

3. The court acquired jurisdiction of the respondent on (date): ~~1/25/2016~~ 1/15/2016 (corr)
a. [ ] The respondent was served with process.
b. [X] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
(1) [X] on (specify date): JAN 2 6 2018
(2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
b. [ ] Judgment of legal separation is entered.
c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

d. [ ] This judgment will be entered nunc pro tunc as of (date):
e. [ ] Judgment on reserved issues.
f. The [ ] petitioner's [ ] respondent's former name is restored to (specify):
g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
h. [X] This judgment contains provisions for child support or family support. Each party must complete and file with the court a Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]

CEB Essential Forms
ceb.com

**JUDGMENT**
**EXHIBIT 4-005**
FOURTH PROPOSED JUDGMENT

Page 1 of 2

Family Code, §§ 2024, 2340, 2343, 2346
www.courts.ca.gov

RICHARDS, RYAL W.

**EXHIBIT "5"**
**PAGE 202**

FL-180

| CASE NAME (Last name, first name of each party): | CASE NUMBER: |
|---|---|
| RICHARDS, RYAL and ALICIA | 15D 009 634 |

4. i. [X] The children of this marriage or domestic partnership are:

   (1) [X]  Name                                 Birthdate

         MICHAEL RYAL RICHARDS       04-24-01

         KELLY MICHELLE RICHARDS     7-14-06

   (2) ☐  Parentage is established for children of this relationship born prior to the marriage or domestic partnership

 j. [X] Child custody and visitation (parenting time) are ordered as set forth in the attached

   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the information
       required by Family Code section 3048(a).

   (2) ☐ *Child Custody and Visitation Order Attachment* (form FL-341).

   (3) ☐ *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

   (4) ☐ Previously established in another case. Case number:             Court:

 k. [X] Child support is ordered as set forth in the attached

   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations
       required by Family Code section 4065(a).

   (2) ☐ *Child Support Information and Order Attachment* (form FL-342).

   (3) ☐ *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

   (4) ☐ Previously established in another case. Case number:             Court:

 l. [X] Spousal, domestic partner, or family support is ordered:

   (1) ☐ Reserved for future determination as relates to  ☐ petitioner  ☐ respondent

   (2) ☐ Jurisdiction terminated to order spousal or partner support to  ☐ petitioner  ☐ respondent

   (3) ☐ As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

   (4) [X] As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.

   (5) ☐ Other *(specify):*

 m.[X] Property division is ordered as set forth in the attached

   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement.

   (2) ☐ *Property Order Attachment to Judgment* (form FL-345).

   (3) ☐ Other *(specify):*

 n. [X] Attorney fees and costs are ordered as set forth in the attached

   (1) [X] Settlement agreement, stipulation for judgment, or other written agreement.

   (2) ☐ *Attorney Fees and Costs Order* (form FL-346).

   (3) ☐ Other *(specify):*

 o. ☐ Other *(specify):*

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's
provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: ____                              *See pleading*

                                        JUDICIAL OFFICER

5. Number of pages attached: 22              [X] SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or
domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration,
survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the
rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should
review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to
determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the
debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. July 1, 2012]

CEB | Essential
ceb.com | [J] Forms

**EXHIBIT 4-006**

*(Family Law)*

Page 2 of 2

RICHARDS, RYAL W.

**EXHIBIT "5"**

**PAGE 203**

**FL-192**

## NOTICE OF RIGHTS AND RESPONSIBILITIES

### Health-Care Costs and Reimbursement Procedures

**IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:**

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent, or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion. If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

**a. Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

**b. Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs..

Form Approved for Optional Use
Judicial Council of California
FL-192 [Rev. January 1, 2013]

CEB | Essential
ceb.com | Forms

NOTICE OF RIGHTS AND RESPONSIBILITIES
Health-Care Costs and Reimbursement Procedures

Page 1 of 2

Family Code, §§ 4062, 4063
www.courts.ca.gov

RICHARDS, RYAL W.

**EXHIBIT "5"**

**PAGE 204**

## INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER

FL-192

**General Information**

The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

**When a Child Support Order May Be Modified**

The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parties' tax filing status and may consider hardships, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

**Examples**

- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.

- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.

- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

**How to Change a Child Support Order**

To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

**What forms do I need?**

If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:

- FL-680, *Notice of Motion (Governmental)* or FL-683 *Order to Show Cause (Governmental)* and
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is not open with the local child support agency, you must fill out one of these forms:

- FL-300, *Request for Order* or
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:

- FL-150, *Income and Expense Declaration* or FL-155, *Financial Statement (Simplified)*

**What if I am not sure which forms to fill out?**

Talk to the family law facilitator at your court.

After you fill out the forms, file them with the court clerk and ask for a hearing date. Write the hearing date on the form.

The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:

- Form FW-001, *Request to Waive Court Fees*
- Form FW-003, *Order on Court Fee Waiver (Superior Court)*

You must serve the other parent. If the local child support agency is involved, serve it too.

This means someone 18 or over - not you - must serve the other parent copies of your filed court forms at least 16 court days before the hearing. Add 5 calendar days if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). Court days are weekdays when the court is open for business (Monday through Friday except court holidays). Calendar days include all days of the month, including weekends and holidays. To find court holidays, go to *www.courts.ca.gov/holidays.htm.*

The server must also serve blank copies of these forms:

- FL-320, *Responsive Declaration to Request for Order* and FL-150, *Income and Expense Declaration,* or
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

Go to your hearing and ask the judge to change the support. Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:

- FL-340, *Findings and Order After Hearing* and
- FL-342, *Child Support Information and Order Attachment*

**Need help?**

Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

FL-192 [Rev. January 1, 2015]

CEB | Essential Forms

NOTICE OF RIGHTS AND RESPONSIBILITIES
Health-Care Costs and Reimbursement Procedures

Page 2 of 2

EXHIBIT 4-008

RICHARDS, RYAL W.

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

## ATTACHMENT TO JUDGMENT

This attachment to Judgment is based on the handwritten Stipulated Judgment filed on

June 16, 2017 and March 2, 2017.

I.    STATISTICAL FACTS

A.    The parties were married on July 30, 1994. *31, 1995 as amended in court 1/26/18*

B.    There are two minor children of the relationship:

1.    Michael Ryal Richards, male, date of birth 4-24-2001; and

2.    Kelly Michelle Richards, female, date of birth: 7-14-2006.

C.    Since the date of separation, each of the parties has been and shall continue

hereafter to be free from interference, authority or control by the other and each

may conduct, carry on and engage in any employment, business or trade which he

or she shall deem advisable for his or her sole and separate use and benefit

without and free from any control, restraint or interference, direct or indirect, by

the other party, in all respects.

*Date of Separation: Feb 20, 2016 (agreed in court 1/26/18*

II.    CUSTODY AND VISITATION

A.    Legal Custody

1.    The parties shall share joint legal custody of the minor children Michael R.

Richards, born 4-24-2001 and Kelly M. Richards born 7-14-2006.

Page 1 of 20

# EXHIBIT 4-009

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

2.    Neither parent shall submit the child(ren) to any psychological/psychiatric testing or evaluation or to any extended course of medical, dental, orthodontic, psychiatric or psychological treatment/counseling without first obtaining the approval of the other parent.

3.    Pursuant to Family Code Section 3025, both parents shall have the same access to psychological, medical, dental and school records pertaining to their child(ren) and shall be permitted independently to consult with any and all concerned professionals. The names of both parents shall be listed on school and extracurricular cards to be contacted in case of emergency.

4.    Each parent is to provide the other with the address and telephone number at which the minor child(ren) reside. A parent shall notify the other parent if the parent plans to change the residence of the child for more than thirty (30) days, unless there is a prior written agreement to the removal. The notice shall be given before the contemplated move, by mail, return receipt requested, postage prepaid, the last  known address of the parent to be notified. A copy of the notice shall also be sent to that parent's counsel of record. To the extent feasible, the notice shall be provided within a minimum of forty-five (45) days before the proposed change of residence so as to allow for mediation of a new agreement concerning custody. (Family Code §3024).

Page 2 of  20

# EXHIBIT 4-010

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

B.    **Physical Custody**

1.    The Parties shall share joint physical custody of the minor children.

Petitioner shall have parenting time with Kelly as follows:

(a)    Alternating weekends from Friday at 8 p.m. to Sunday at 7 p.m. commencing June 16, 2017.

(b)    Every Tuesday from 8 p.m. to 9:30 p.m.

(c)    Alternating Wednesdays from 8 p.m. to 9:30 p.m. commencing June 21, 2017.

(d)    Alternating Thursdays from 6:20 p.m. to 9:00 p.m. commencing June 29, 2017.

2.    Additional visitation as mutually agreed between the parties.

3.    Both parties shall continue with Kelly's extracurricular activities and facilitate the same to wit: girl Scouts, gymnastics and dance, and Indian Princess with Father.

4.    All exchanges of the minor child(ren) shall be peaceful and calm. The parties shall equally share transportation of the child for all exchanges.

5.    When Petitioner/Father has a larger home, the minor Kelly is encouraged to spend the night at Petitioner/Father's from Tuesday to Wednesday with a drop-off at school.

6.    Any other times not designated to Father, the minor child Kelly shall be in Respondent/Mother's physical custody.

Page 3 of 20

# EXHIBIT 4-011

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

7.    The minor child Michael shall be in Petitioner/Father's custody except

for the following times with Respondent/Mother:

(a)    Alternating weeks with the exchange on Sunday at 6 p.m. Neither

parent is obligated to force Michael to exercise visitation with the

other parent. Neither party shall encourage the minor child not to

go with the other parent.

C.    **Holidays and Special Days**

The Court shall reserve jurisdiction over the issue of holidays and special days. It

is the parties' intention to work together with regards to the holidays and special

days. Further, it will be as agreed between the Respondent and the minor

children.  It is the intention of the parties to share the holidays and special days

equally.

D.    **California Family Code §3048**

1.    The basis for the Court's exercise of jurisdiction is personal jurisdiction

over the parties and that California is the home state of the minor child.

2.    Both parties were given notice and an opportunity to be heard as provided

by the laws of the State of California.

3.    A clear description of the custody and visitation rights of each party is

herein above set forth.

4.    A violation of the custody and/or visitation Order set forth herein may

subject the party in violation to civil or criminal penalties, or both.

Page 4 of 20

# EXHIBIT 4-012

**EXHIBIT "5"**

**PAGE 209**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    5.    The Country of habitual residence of the minor child is the United States

of America.

III.  **CHILD SUPPORT**

A.    Petitioner shall pay to Respondent child support of $1250.00 per month payable

$625.00 on the 4th and $625 on the 20th of each month commencing 7/2/17 and

continuing until further order of the court or until the child marries, dies, is

emancipated, reaches 19, or reaches 18 and is no longer a full-time high school

student, whichever occurs first.  Child Support is apportioned for each child as

follows:

        Michael R. Richards:  $500.00 per month

        Kelly M. Richards:  $750.00 per month

B.    As and for additional child support, the Petitioner shall pay for:

    1.    The minor child Kelly's gymnastics; and

    2.    Health insurance for the minor children at reasonable or little cost through

his employment with a 30 day grace period.  Each party is responsible for

½ of all uncovered medical, dental, orthodontia health costs.

C.    As and for additional child support, the parties shall be equally responsible for all

uninsured and/or unreimbursed hospital, medical, dental, pharmaceutical,

optometric, orthodontic and psychological expenses incurred on behalf of the

minor children.

D.    Family Code §4063

# EXHIBIT 4-013

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

   1.    See attached Notice of Rights and Responsibilities, Health Care Costs and

         Reimbursement Procedures.

E.    Family Code §4065

   1.    The Parties are fully informed of their rights concerning child support.

   2.    This Order is being agreed to freely without coercion or duress and the

         needs of the minor children will be adequately met by the stipulated

         amount.

   3.    The right to support has not been assigned to any county under Section

         11477 of the Welfare and Institutions Code and no application for public

         assistance is pending.

   4.    This order is in the best interest of the minor children involved.

   5.    Pursuant to Family Code § 5616, in the event that there is a contract

         between a party receiving support and a private child support collector, the

         party ordered to pay support must pay the fee charged by the private child

         support collector. This fee must not exceed 33 1/3 percent of the total

         amount of past due support nor may it exceed 50 percent of any fee

         charges by the private child support collector. The money judgment

         created by this provision is in favor of the private child support collector

         and the party receiving support jointly.

IV.   SPOUSAL SUPPORT

A.    Petitioner shall pay Respondent spousal support in the amount of $1,250.00 per

# EXHIBIT 4-014

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

month, payable $625.00 on the 6th and $625 on the 20th of each month

commencing July 1, 2017 and continuing until further order of the court, the

remarriage of the payee, the death of either party, whichever occurs first.

B.    **GAVRON WARNING:**    The Court hereby issues a Gavron Warning to

Respondent, Alicia Richards.  Family Code Section 4320 states that the goal of

the State of California is that both parties shall become self-supporting within a

reasonable time after a dissolution of marriage.  Respondent shall make

reasonable  efforts to obtain employment commensurate with her abilities to

contribute toward her own support.

V.    **PROPERTY DIVISION**

A.    The itemization of community property assets and liabilities referred to below has

been prepared in accordance with information received from and confirmed with

both Petitioner and Respondent and the values assigned to the various items have

been arrived at by negotiation between the parties, from the parties' books and

records and/or based upon values agreed upon between the parties.  Each party

accepts each of the values assigned as being fair and equitable and representing a

compromise of disputed values or an agreed upon value.

B.    The Petitioner is awarded the following assets as his sole and separate property

and shall accept and assume all liabilities associated with the assets as set forth

below:

1.    His clothing, jewelry and personal effects in his possession.

Page 7 of 20

# EXHIBIT 4-015

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

2.  The furniture, furnishings, appliances and collectibles in his possession.

3.  Any and all community property interest, if any, whether determined or undetermined in the BMW automobile.

4.  Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Ryal William Richards alone.

5.  All bank accounts, including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Petitioner's name alone.

6.  Any and all stocks, bonds, secured notes and/or mutual funds standing in Petitioner's name alone.

C.  The Respondent is awarded the following assets as her sole and separate property and shall accept and assume all liabilities associated with the assets as set forth below:

1.  Her clothing, jewelry and personal effects in her possession.

2.  The furniture, furnishings, appliances and collectibles in her possession.

3.  Any and all community property interest, if any, whether determined or undetermined in the Ford Fusion automobile.

4.  Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Alicia W. Richards alone.

Page 8 of 20

# EXHIBIT 4-016

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

5.     All bank accounts,  including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Respondent's name alone.

6.     Any and all stocks, bonds, secured notes and/or mutual funds standing in Respondent's name alone.

D.     **Confirmation of Property**: Husband shall assign to Wife all right, title and interest in the property awarded to Wife hereunder and said property shall be Wife's separate property hereafter.  Wife shall assign to Husband  all right, title and interest in the property awarded to Husband  hereunder and said property shall be Husband's separate property hereafter.

E.     **Liens on Assets:**   Except as otherwise specifically provided, all property transferred hereunder is transferred subject to all existing encumbrances and liens thereon. The transferee of such property shall indemnify and hold harmless the other party from any claim or liability that the other party may suffer or may be required to pay on account of such encumbrances or liens. Each party represents to the other that all such liens and their amounts are accurately and specifically referred to herein. Any liens not disclosed herein shall be deemed a missed and significant liability.

F.     **Vehicle Liability:**   Whether or not third parties may claim against either or both of the parties, and whether or not formalities of title have been completed, each party shall, and does release the other from any and all liability, whether primary,

Page 9 of 20

# EXHIBIT 4-017

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

derivative or vicarious, whether in tort, or in contract, or by statute, and shall hold

the other harmless from all claims of others relative to any vehicle awarded to

each party respectively regardless of the present form of title.  Nothing herein

shall provide for or be interpreted as reducing the insurance coverage.

VI.   **DEBTS AND LIABILITIES**

A.   Except as otherwise provided herein, each party shall assume and hold the other

free and harmless from all debts and obligations incurred by such party during the

course of their marriage.

B.   Except as otherwise provided herein, each party shall assume the encumbrances

and liens on all property transferred to such party pursuant to this Judgment.  Each

party receiving an asset subject to an encumbrance shall indemnify and hold

harmless the other party from any form of liability that the other party may suffer

or be required to pay on account of such encumbrance or lien.  Any liens not

disclosed herein shall be deemed a missed and significant liability.

C.   Except as otherwise provided herein, whether or not third parties make claim

against either or both of the parties, and whether or not formalities of title have

been completed, each party shall, and does, release the other from any and all

liability, whether primary, derivative or vicarious, whether in tort, or in contract,

or by statute, and shall hold the other harmless from all claims of others relative to

any vehicle awarded to each party respectively regardless of the present form of

title. Nothing herein shall provide for or be interpreted as reducing the insurance

Page 10 of 20

# EXHIBIT 4-018

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

coverage.

D.    The Court finds that each party understands that the provisions contained herein

for one party to assume the obligation(s) of the community for the benefit of the

other party may not be binding on third party creditors and the creditor may retain

rights to seek payment against either party. Each party understands that

obligations to third party creditors and to each other may be subject to possible

discharge in bankruptcy.

E.    All community debts and obligations shall be divided equally between the parties.

Kevin E. Robinson on behalf of the Petitioner Ryal W. Richards and the

Respondent Alicia Richards are ordered to exchange current statements and come

up with a 50/50 split taking into account the bills in each parties' name alone.

F.    Petitioner shall pay and hold the Respondent harmless on the following debts,

liabilities, and obligations, and shall indemnify the Respondent from any claim or

liability that Respondent may suffer in connection with these debts, liabilities and

obligations:

1.    Petitioner Ryal Richards to pay Diane Vargas' attorney fees from his funds

received from the purchase/refinance of the house by the Respondent or

from his portion of the proceeds if the property is sold. Petitioner to pay

Diane Vargas' bill in the amount of $6,000.00 or any mutually agreeable

amount as agreed between Ms. Vargas and Petitioner.

2.    Any and all debts, liabilities and credit card obligations incurred by the

Page 11 of 20

# EXHIBIT 4-019

**EXHIBIT "5"**

**PAGE 216**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

        Petitioner after the date of separation; and

3.    Any and all debts, liabilities and credit card obligations in Petitioner's name alone.

G.    Respondent shall pay and hold the Petitioner harmless on the following debts, liabilities, and obligations, and shall indemnify the Petitioner from any claim or liability that Petitioner may suffer in connection with these debts, liabilities and obligations:

1.    Any and all debts, liabilities and credit card obligations incurred by the Respondent after the date of separation; and

2.    Any and all debts, liabilities and credit card obligations in Respondent's name alone.

H.    Each of the parties warrants and represents that he/she has not incurred, since the date of separation, any indebtedness chargeable against the other.

I.    Each of the parties warrants and represents that there are no remaining obligations for which the community was liable as of the date of separation except as expressly set forth in the Judgment.  In the event that hereafter it is determined that there presently exists any obligation for which the community is liable, the party who incurred such obligation shall assume such obligation and shall indemnify the other party therefrom.

J.    Neither party, since the date of separation, shall incur any indebtedness chargeable against the other or contract any debt or obligation in the name of the other.  The

Page 12 of 20

# EXHIBIT 4-020

EXHIBIT "5"
PAGE 217

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

party who incurred such indebtedness or contracted such debt or obligation shall

indemnify, including, but not limited to, the payment of reasonable attorney's fees

and costs, the other party therefrom.

VII.    **CONFIRMATION OF SEPARATE PROPERTY**

A.    The Court confirms to Petitioner as his/her sole and separate property, and

Respondent shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Petitioner's separate property are confirmed to the Petitioner.

2.    All of Petitioner's personal effects which are currently in Petitioner's

possession are confirmed to the Petitioner

3.    All earnings, accumulations, assets and debts acquired in and since the

date of separation.

B.    The Court confirms to Respondent  as his/her sole and separate property, and

Petitioner shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Respondent's separate property are confirmed to the Respondent.

2.    All of Respondent's personal effects which are currently in Respondent's

**EXHIBIT 4-021**

Page 13 of 20

**EXHIBIT "5"**

**PAGE 218**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    possession are confirmed to the Respondent.

  3.  All earnings, accumulations, assets and debts acquired in and since the

    date of separation.

VIII. **FAMILY RESIDENCE:**

    The parties own the residence located at 351 Catalina Drive, Newport Beach, California.

The legal description of the real property located at 351 Catalina Drive, Newport Beach

California is as follows:

    Lot 64 of Tract No. 1136, in the city of Newport Beach, County of

    Orange, State of California, as per map recorded in Book 37, in the

    office of the County Recorder of Orange County.

    Since the date of separation, Respondent has been residing at the real property.  The

parties agree and the Court has ordered that:

  A.  Respondent Alicia Richards has three weeks from the date of June 16, 2017 to

    refinance the property and/or pay the following amounts:

    I.  $450,000 to Ryal Richards on or before July 7, 2016;

    ii.  The first mortgage to First Financial;

    iii.  The second mortgage/HELOC to School's First.

  B.  If the house is not refinanced and the above sums paid by July 7, 2017, the house

    shall be immediately listed for sale.  The parties are ordered to sign the Exclusive

    Listing Agreement on or before July 8, 2016 with one of the following real estate

    agents:

Page 14 of 20

# EXHIBIT 4-022

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    1.   Scott Singer, Villa Real Estate;

    2.   Cathryn Min; or

    3.   Mike Kennedy.

If either party fails to sign the listing agreement, the Court Clerk is ordered to sign said Exclusive Listing Agreement with 24 hour Notice.

Both parties are ordered to cooperate with signing all documents necessary for the sale of the residence.

Time is of the essence.  There shall be no delay in selling said residence.

The Petitioner shall sign any and all documents, deeds, etc. required to be signed by him in connection with Respondent's purchase/refinance of the Catalina property.  In the Event Petitioner fails to execute any reasonable documentation associated with Respondent's purchase/refinance of the Catalina property, the July 7, 2017 sale date can be extended until said required documents are signed by the Petitioner.

The parties are ordered to cooperate with brokers, buyers, escrow companies, appraisers, repairmen and other involved in the sale.

The parties are ordered to promptly execute any documents necessary to effectuate this order.

The failure to cooperate in the sale, or violations of this order may result in being required to pay any loss to the community or other party from the violation, and may result in attorney's fees, monetary sanctions, and/or contempt of court.

Upon sale, the proceeds shall be handled in the following manner: First reasonable costs

# EXHIBIT 4-023

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

of the sale, commission, mortgages and other secure debts including Family Law Attorney Real

Property Liens shall be paid from the proceeds. The balance shall be equally divided between

the parties.

The Court reserves jurisdiction over all aspects of this court ordered sale and over the

enforcement of this order. Given the urgency in selling the property, the court authorizes either

party to make an ex parte motion with proper ex parte notice to carry out this order.

Petitioner is to select the name of three brokers meeting the criteria specified by the court.

They are to provide these names to the Respondent by July 8, 2017. Respondent must then select

one broker from this list by July 8, 2017. (See list contained on page 15)

The listing price shall be:

$1,250,000.00. After 30 days, if the property has not sold the price shall be reduced to an

amount that the parties agree to in writing after consulting the broker.

Both parties shall sign the listing agreement within 1 day of its preparation.

Until the close of escrow, Respondent is awarded temporary exclusive use of the

property. The parties shall make the property available for inspection by brokers, sales agents

and prospective buyers at all reasonable times. The premises shall be maintained in good and

marketable condition.

All ordinary and customary expenses for maintenance of the property shall be timely paid

0% by Petitioner and 100% by Respondent. The parties must agree in writing as to any

extraordinary expenses.  For purposes of this order ordinary expenses are limited to mortgages,

taxes, insurance, ordinary garden and pool maintenance, and emergency plumbing or electrical

Page 16 of 20

# EXHIBIT 4-024

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

repairs. Utilities shall be paid 0% by Petitioner and 100% by Respondent. The party occupying

the property will not be charged any "rent" for the property's use.

IX.    **DIVISION OF PROCEEDS:**

Upon the sale of the property located at 351 Catalina Drive, Newport Beach, California,

after payment of broker's commissions, encumbrances and other costs of sale, the net

proceeds shall be divided equally between the parties, except that any lien or

encumbrance incurred by either party alone, which is not a community obligation shall be

charged to that party's share of the proceeds.

X.    **ORDER–SALE OF REAL PROPERTY:**

The court orders the sale of the real property located at 351 Catalina Drive, Newport

Beach, California, ("the property").

The court orders the parties to list the property for sale by 7/7/17 with a licensed real

estate broker.

Respondent is to choose one of the three brokers listed on page 21.

XI.    **OTHER PROPERTY ISSUES**

A.    **Waiver of Alleged Breach of Fiduciary Duty:** The parties had various

brokerage and retirement accounts during the marriage. For purposes of this

Judgment, the parties are waiving and relinquishing any rights in bringing any

alleged breach of fiduciary duty claims against either party for the way any and all

brokerage and retirement accounts were invested throughout the marriage and

after the date of separation. This issue has been resolved in this Judgment.

# EXHIBIT 4-025

Page 17 of 29

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

XII.    **ATTORNEY FEES**

    A.    Each party shall bear their own attorneys' fees and costs and shall not be responsible for the attorneys' fees and costs of the other party.

    B.    If either party fails to perform any of his or her obligations under this Stipulated Judgment, and it thereby becomes necessary for the other to employ counsel and/or accountants to enforce or defend the same, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, accounting fees and other reasonable expenses incurred in connection with the enforcement of such obligation or defense of such actions, and the other party shall pay such reasonable fees, costs and expenses that may be fixed by the Court.

XIII.    **OTHER ORDERS**

    A.    Waiver of Rights to Reimbursement: As part of the division of the community property, except as may be specifically provided to the contrary in this Stipulated Judgment, each party waives all rights to claims to credits and reimbursements for the following:

        1.    Epstein credits (*In Re Marriage of Epstein* (1979) 24 Cal.3d 76) and all rights to reimbursement to which a party may be entitled as a result of the payment of community obligations since the date of separation.

        2.    Watts credits (*In Re Marriage of Watts* (1985) 171 CalApp. 3d 366) and all rights to reimbursement to which a party or the community may be entitled as a result of one party's use of community assets since separation.

Page 18 of 20

# EXHIBIT 4-026

**EXHIBIT "5"**
**PAGE 223**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

3.    *Jeffries* credits (*In Re Marriage of Jeffries* (1991) 228 Cal.3d 548) and all

rights of reasonable rental value reimbursement for a party or this

community for the exclusive use of the community residence since the

date of separation.

4.    All rights to reimbursement under Family Code §2640, or otherwise, for

separate property contributed to the acquisition or maintenance of

community property; and

5.    All rights to reimbursement under Family Code §2641 or otherwise due

the community or a party for contributions made by the community or

either of the parties to the education or training of a party.

B.    Waiver or Right to Appeal: Both parties waive the right to appeal, the right to

request a Statement of Decision and the right to move for a new trial or

reconsideration, as well as the time periods in which any of the above rights may

be exercised.

Delivery of Documents of Title; Specific Performance: Each party shall

execute promptly all documents necessary and/or convenient to vest titles, estates

and beneficiaries as provided in this Judgment to effectuate its purpose and intent.

Notwithstanding the failure or refusal of either party to execute any such

documents, this Judgment shall constitute a complete transfer or conveyance of

the properties designated as being transferred, conveyed or assigned by each party.

If either party fails to execute any such document within ten (10) days after

Page 19 of 20

# EXHIBIT 4-027

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    presentation of the document, the Court shall, upon ex parte application with 48

hours' notice (excluding weekends and legal holidays), and upon proper proof that

such request is in accordance with the terms or provisions of this stipulated

Judgment, authorize and direct the Clerk of the Superior Court to execute such

document on behalf of the defaulting party.

D.    **Reservation of Jurisdiction:**  The court shall retain jurisdiction over the issue

of the division of community property assets and obligations of both parties until

fully executed therein.

APPROVED AS TO FORM AND CONTENT:

Dated: 12-14-17

KEVIN E. ROBINSON
ATTORNEY FOR PETITIONER

Dated: _____

ALICIA MARIE RICHARDS
IN PRO PER

Dated: 12-14-17

DIANE VARGAS
ATTORNEY FOR THE MINORS

IT IS SO ORDERED

Dated: 1/25/18

LINDA LANCET MILLER
JUDGE/COMMISSIONER OF THE
ORANGE COUNTY SUPERIOR COURT

*Court reviewed*
*incon ference with*
*M/O 12/6/17 and*
*no further objections*
*were filed*

*other than w/c filed*
*a request for SOD on the court's M/O*
*of 12/6/17 which simply made sure*
*Judgment conformed to the stipulations.*
*Request denied as not*
*supported by the law.*

Page 20 of 20

**EXHIBIT 4-028**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 970 W. 17th Street, Suite D, Santa Ana, CA 92706.

On December 14, 2017 I served the foregoing document(s) entitled: FOURTH PROPOSED JUDGMENT   on the interested parties in this action:

☐ by placing true copies thereof in sealed envelopes addressed as stated on the attached mailing list:

☒ by placing true copies thereof enclosed in sealed envelopes addressed as follows:

ALICIA RICHARDS
In pro per
351 Catalina Drive
Newport Beach, CA 92663

Diane Vargas, Esq.
920 W 17th St Suite A
Santa Ana, CA 92706

Dept. Of Child Support Services
County of Orange
PO Box 22099
Santa Ana, CA 92702

*Attorney for the minors*
*Tel: (714)245-0550*
*email: dianevargas1@sbcglobal.net*

☒(BY MAIL) On the date noted above, I deposited in the mail at Santa Ana, California the foregoing described document(s), in a sealed envelope, with postage fully prepaid and addressed to the party(ies) as noted above.

☐(BY FACSIMILE) On the date noted above, I personally transmitted from a facsimile transmission machine whose telephone number is (714) 973-0244 the document(s) described above and an unsigned copy of this declaration to the above designated party(ies) at the facsimile transmission telephone number(s) indicated.   The above described transmission was reported complete without error by a transmission report issued by the facsimile transmission machine upon which the said transmission was made and immediately followed transmission.   A true and correct copy of said transmission report is attached hereto and incorporated herein by this reference.

☐(BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee, executed on _____, at Santa Ana, California.

☐(BY FEDERAL EXPRESS/OVERNIGHT MAIL)  On the date noted above, I placed the document(s) listed above in a sealed FEDERAL EXPRESS packed for overnight deliver at Santa Ana, California addressed as noted above.

☒(STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐(FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service  was made.

KAREN GRANOFF

# EXHIBIT 4-029

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
970 W. 17th Street, Suite D
Santa Ana, CA 92706

A true and correct copy of the foregoing document entitled:  Reply Declaration of Kevin Robinson to Debtor's Objection to
Ryal Richards' Joinder in Richard Marshack's Motion for an Order Authorizing the Trustee to Pay Ryal Richards
$300,000.00   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR
5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
04/28/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

XX   Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) _____ I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for
each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 04/28/2022, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

ALICIA MARIE RICHARDS via email to:  richardsalicia007@gmail.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 04/28/2022 | Karen Granoff | |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 4-030

**EXHIBIT "5"**
**PAGE 227**

PROOF OF SERVICE
ATTACHMENT

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:\

Amanda N Ferns      aferns@fernslaw.com , mmakalintal@fernslaw.com
Daniel K Fujimoto      wdk@wolffirm.com
Richard G Heston      rheston@hestonlaw.com , yflores@hestonlaw.com, docs@hestonlaw.com;
    HestonRR41032@notify.bestcase.com ,handhecf@gmail.com
Richard A Marshack (TR)      pkraus@marshackhays.com ,
    rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Kevin E Robinson      robinsonlawoffice@yahoo.com
United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov
Eugene V Zech      evzechlaw@aol

# EXHIBIT 4-031

# EXHIBIT 5

D. EDWARD HAYS, #162507
ehays@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, CA 92620
Tel: (949) 333-7777
Fax: (949) 333-7778

General Counsel for Chapter 7 Trustee,
RICHARD A. MARSHACK

In Association With,

RICHARD G. HESTON, Bar No. 90738
HALLI B. HESTON, Bar No. 90737
BENJAMIN R. HESTON, Bar No. 297798
HESTON & HESTON, Attorneys at Law
19700 Fairchild Road, Suite 280
Irvine, California 92612-2528
(949) 222-1041 Voice
(949) 222-1043 FAX
rheston@hestonlaw.com

Special Counsel for Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ALICIA MARIE RICHARDS,<br><br>      Debtor. | Case No. 8:21-BK-10635-ES<br><br>Chapter 7<br><br>REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR ORDER AUTHORIZING TRUSTEE TO PAY TO RYAL RICHARDS $300,000 FROM PROCEEDS OF SALE OF HOMESTEAD EXEMPTION, OR IN THE ALTERNATIVE, TO INTERPLEAD THE HOMESTEAD PROCEEDS IN THE ORANGE COUNTY SUPERIOR COURT; REQUEST FOR JUDICIAL NOTICE<br><br>Date:    May 5, 2022<br>Time:   10:30 a.m.<br>Ctrm:   5A |

/ / /

/ / /

**EXHIBIT 5-001**
REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

1  TO THE HONORABLE ERITHE A. SMITH  UNITED STATES BANKRUPTCY COURT

2  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED

3  PARTIES:

4      Chapter 7 Trustee, RICHARD A. MARSHACK, files this Reply to the Opposition filed by

5  Debtor, ALICIA MARIE RICHARDS, to Trustee's Motion for Order Authorizing Trustee to Pay to

6  Ryal Richards $300,000 From Proceeds of Sale of Homestead Exemption, or in the Alternative, to

7  Interplead the Homestead Proceeds in the Orange County Superior Court, as follows:

8  **1. Summary of Reply**

9      A Chapter 7 trustee "shall dispose of any property in which an entity other than the estate has

10  an interest" after notice and a hearing. 11 U.S.C. § 725. In this case, the family court entered a

11  Judgment prior to bankruptcy in January 2018 which provided that the residential real property

12  located at 351 Catalina Drive, Newport Beach ("Property") was community property to be sold with

13  the proceeds split equally between Debtor and her former spouse, Ryal Richards. This judgment is

14  final after Debtor's appeal and separate motions to set aside were unsuccessful. There is also no stay

15  in effect with regard to the enforceability of this Judgment.

16      When Debtor's claimed homestead exemption became final, $600,000 of proceeds ceased to

17  be property of the estate. One-half of this amount was immediately paid to Debtor upon the closing

18  of escrow. Trustee believes that full faith and credit must be given to the Judgment and the proper

19  party to receive the remaining $300,000 is Ryal Richards. While Debtor does not accept the validity

20  of the Judgment, she has so far been unsuccessful in setting it aside or obtaining a stay. By this

21  Motion, Trustee does not seek to have this Court determine the character of the Property or its

22  proceeds. Instead, Trustee merely seeks an order approving his release of the funds to Mr. Richards

23  pursuant to the existing, final, and unstayed Judgment of the family court.

24  **2. The Court of Appeal Rejected Debtor's Collateral Attack by Motion to Vacate**

25  **the Judgment.**

26      Attached to the request for judicial notice ("RJN") as Exhibit 1 is a true and correct copy of

27  the Judgment entered by the family court. The provision requiring the property to be sold and the

28

**EXHIBIT 5-002**

REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

1    proceeds split between Alicia Richards and Ryal Richards is on page 17 of 20, Exhibit 1, pg. 32.

2        Attached to the RJN as Exhibit 2 is a true and correct copy of the 37-page decision of the

3    California Court of Appeal for the Fourth Appellate District, Division Three, filed on January 9,

4    2020. In its decision, the appellate court affirmed the trial court's order denying Debtor's motion to

5    vacate the Judgment. As observed in the introductory paragraphs, the court noted that: "This appeal

6    (the first of seven) concerns only the trial court's decision to deny A wife's motion to set aside the

7    judgment pursuant to Family Code section 2122. [Footnote omitted.] We also consider Husband's

8    motion to dismiss the appeal on the grounds wife accepted the benefits of the judgment, and

9    therefore will waived the right to appeal. We conclude the appeal and the motion to dismiss lack

10    merit. We affirm the post judgment order."

11

12        In its opinion, the court examined each and every argument made by Debtor to vacate the

13    Judgment (to which she had stipulated). It is noteworthy that the court rejected Debtor's assertion

14    that the trial court had abused its discretion by not considering her request for a deferred sale

15    pursuant to California Family Code §§3801 and 3802,[1] based upon the finality of the Judgment. At

16    pages 32-33 of the decision, the appellate court noted,

17

18            'However, in this case, the court lacks jurisdiction to consider this particular issue
            because the fate of the family home was completely resolved by the stipulated judgment. The

19        judgment provided Wife had three weeks buyout Husband's share of the house, or the parties
        must cooperate to sell the property and divide the proceeds. After the court determined there

20        were insufficient grounds to set aside the judgment, there was no legal basis to disturb the final
        judgment and revisit the issue of whether the house should be sold. "A stipulated judgment is

21        as conclusive as to the matters in issue it determines as a judgment after trial. [Citation.]"
        (Sargon Enterprises, Inc. v. University of Southern California (2013) 215 Cal. App.4th 1495,

22        1507.) The doctrine of res judicata bars further litigation regarding the fate of the family
        residence.'

23

24

25

26

_____

27    [1]Family Code Section 3802(a) provides: "If the court determines pursuant to Section 3801 that it is
    economically feasible to consider ordering a deferred sale of the family home, the court may grant a deferred

28    sale of home order to a custodial parent if the court determines that the order is necessary in order to minimize
    the adverse impact of dissolution of marriage or legal separation of the parties on the child."

EXHIBIT 5-003

REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

EXHIBIT "5"

PAGE 232

1   The Judgment was entered in the Family Court on January 26, 2018, based upon the prior

2   stipulation reached between Debtor and her former husband, Ryal Richards. While Debtor appealed,

3   and attempted to collaterally attack the Judgment with multiple motions to set it aside, the Judgment

4   was affirmed on appeal and is now final. The doctrines of Rooker-Feldman, claim preclusion, and

5   issue preclusion prevent Debtor from attempting to relitigate these issues before this Court.

6   **3. The Court of Appeal Rejected Debtor's Claim the Judgment was Void and**

7   **Not Final**

8   Debtor has persisted in challenging the binding effect of the Judgment, characterizing it as

9   "void." Debtor's insistence on the Judgment being void is based almost entirely upon the fact that

10  the family court entered it based upon the parties' written stipulation, notwithstanding the fact that

11  Debtor had objected to the form and content of the written Judgment of Dissolution later prepared by

12  counsel for Ryal Richards.

13  Yet, these arguments were raised by Debtor in her appeals, and consistently rejected by the

14  Court of Appeal. While Debtor may not accept the finality of the Judgment and the related decisions

15  of the state courts, this Court is bound to give effect to final judgments of state courts. In fact, the

16  Rooker-Feldman doctrine specifically prohibits Debtor from seeking to have this Court relitigate the

17  issues which have already been resolved by the state courts. This is especially true when the

18  Judgment arises in the context of domestic relations proceedings, which are exclusively the province

19  of the state courts.[2] *See, In re Audre, Inc.*, 216 B.R. 19, 26 (B.A.P. 9th Cir. 1997) ("The Ninth

20  Circuit has held that under the Rooker-Feldman doctrine, the federal district court, as a court of

21  original jurisdiction, has no authority to review the final determinations of a state court in judicial

22  proceedings. *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986). The federal

23  district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction

24  over state court decisions. *Dubinka v. Judges of Superior Court of State of Cal. for County of Los*

25

26  _____

27  [2] *In re Audre, Inc.*, 216 B.R. 19, 26 (B.A.P. 9th Cir. 1997) "The Rooker-Feldman doctrine, established by two Supreme Court decisions handed down sixty years apart, provides that a federal district court lacks the jurisdiction to hear a collateral attack on a state court judgment or to review final determinations of state court

28  decisions. *See, Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)."

**EXHIBIT 5-004**

REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**EXHIBIT "5"**

**PAGE 233**

*Angeles*, 23 F.3d 218, 221 (9th Cir. 1994).").

## 4. Debtor has Misleadingly Quoted an Appellate Decision to Suggest it Dealt with the Divorce Case.

Not only has Debtor ignored the existence of the final Judgment, but she has gone so far as to include a quote in her objection from the decision in *Vasquez v. Vasquez*, (1952) 109 Cal.App. 2d 280, inserting between brackets language suggesting that the appellate decision in that case, somehow addressed the extent of the interest of Ryal Richards in this case. The *Vasquez* decision of 1952, however, predated the entry of the Judgment by 66 years. Including such a reference to Mr. Richards in a published decision of the Court of Appeals borders upon an intentional attempt to mislead the Court, and certainly should not be countenanced.

## 5. The Judgment Did Not Divest Either Party Of His Or Her Interest In The Property. Instead, It Ordered The Property Sold And The Proceeds Split Equally.

Building upon the flawed notion that the Judgment is "void," notwithstanding its affirmance on appeal, Debtor next argues that the stipulation upon which the Judgment was entered had the effect of divesting Ryal Richards of any ownership interest in the Property. Yet, the stipulation contains no such language. In fact, in the stipulation which Debtor attached to her objections as Exhibit A, commencing at page 21 of the Objection, reads as follows:

*"The residence at 351 Catalina Drive, Newport Beach, shall be divided as follows:*

*[legal description attached]*

*A. Respondent Alicia Richards has 3 weeks from today's date to refinance &/or pay the following amounts-*

*i. $450,000.00 to Ryal Richards on or before July 7, 2016*

*ii. The 1st mortgage to First Financial*

*iii. The 2nd mortgage/HELOC to Schools First.*

*B. If the house is not refinanced + in the above sums paid by July 7, 2016, the house shall be immediately listed for sale."*

**EXHIBIT 5-005**
REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**EXHIBIT "5"**

**PAGE 234**

1  Thus, nowhere within the stipulation for entry of a judgment does it order that the Property

2  be awarded to Debtor with the interest of Ryal Richards being extinguished. Instead, the exempt

3  proceeds are property subject to equal division under the Judgment.

4  **6. The Issue Is Not Whether Ryal Richards Would Be Entitled To Claim A**

5  **Homestead (Even Though He Could Protect His Share Of The Exemption**

6  **Proceeds).**

7  Debtor then incorrectly argues that because Mr. Richards has no further interest in the

8  Property and because he had not resided there for more than four years, he has no basis upon which

9  to assert a homestead. This argument is both a red-herring and incorrect as a matter of law.

10  First, the issue is not whether Ryal Richards could claim a homestead exemption. Instead,

11  Ms. Richards' claimed homestead exemption under the "automatic" homestead sections (Code of

12  Civil Procedure, Part 2, Title 9, Division 2, Chapter 4, Article 4, §§ 704.710-704.850) was allowed

13  and constitutes proceeds of the property subject to equal division. Second, Mr. Richards in fact

14  would be entitled to claim an exemption (should he need such protection from his creditors) because

15  such a right continues until community property is divided and awarded to one spouse as their sole

16  and separate property.

17  "Homestead" means the principal dwelling (1) in which the judgment debtor or
18  judgment debtor's spouse resided on the date the judgment creditor's lien attached to
   the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse
19  resided continuously thereafter until the date of the court determination that the
   dwelling is a homestead.

20  CCP § 704.710(c).

21  If a judgment debtor is not currently residing in the homestead, but his or her
   separated or former spouse continues to reside in or exercise control over possession
22  of the homestead, that judgment debtor continues to be entitled to an exemption under
   this article until entry of judgment or other legally enforceable agreement dividing the
23  community property between the judgment debtor and the separated or former
   spouse, or until a later time period as specified by court order. Notwithstanding
24  subdivision (d) of Section 704.710, for purposes of this article, "spouse" may include
   a separated or former spouse consistent with this subdivision.

25

26  CCP §704.720(d).

27  In other words, the right to claim a homestead exists without regard to occupancy so long as

28  the judgment debtor or his or her former spouse continue to occupy or control the dwelling.

EXHIBIT 5-006
REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

EXHIBIT "5"

PAGE 235

1    Debtor has cited no authority for the propositions (a) that a homestead exemption in the

2  proceeds of sale of a community property residence is anything other than community property, and

3  (b) that "out spouse" who has not been residing in the residence with the debtor spouse loses their

4  right to their court-ordered equal share of sales proceeds subject to a homestead exemption.

5  **7.  Debtor's Bad-Faith Claims That The Judgment Is Not Final Have Previously**

6      **Been Rebuked By The State Court**

7    The crux of Debtor's opposition is that the Judgment is not final. This argument, however, is

8  patently flawed and misrepresents that somehow the Judgment entered upon the stipulation of Alicia

9  and Ryal Richards some four years ago is not dispositive.

10    And as pointed out in the opposition filed by Mr. Richards, that judgment was appealed and

11  long ago affirmed and became final. Rather than forthrightly concede in her arguments to this Court

12  that there exists a final judgment ordering the sale and equal division of the proceeds of the Property

13  (now limited to that portion of the proceeds subject to the homestead exemption), Debtor has

14  persisted in her pattern of denial, mischaracterization, and outright attempts to mislead the Court.

15    It should be noted that this is not a pattern of behavior or a form of litigation tactic

16  unpracticed by Debtor. In fact, it is exactly this repeated tactic that previously led to her being

17  declared a vexatious litigant in the Family Court.

18    Attached as to the RJN as Exhibit 3 is a transcript of proceedings that took place on October

19  23, 2020, before the Hon. Andre de la Cruz, Judge of the Orange County Superior Court. On that

20  date, the Family Court first dealt with the meritless claim of exemption that Debtor had filed on

21  behalf of her adult son, Jonathan, in an effort to impede enforcement of the orders issued by the

22  Family Court for the purpose of delivering possession of the property pursuant to the Judgment. The

23  Family Court next addressed the issue of deeming Debtor to be a vexatious litigant pursuant to

24  California Code of Civil Procedure § 391.2.

25    At the outset of the hearing, the Court first addressed the fact that Debtor, having obtain

26  multiple continuances of the hearing, had once again failed to appear, instead advising the clerk that

27  she had been exposed to someone with Covid-19, an excuse that she had tendered previously, but

28

**EXHIBIT 5-007**

REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**EXHIBIT "5"**

**PAGE 236**

1 had failed to corroborate with any evidence to support the claim. Although counsel for Ryal

2 Richards indicated a willingness to await the possible arrival of Debtor, Judge de la Cruz indicated

3 that he found the excuse to be lacking in credibility and part of a pattern of delay. (See attached

4 Reporter's Transcript at page 1, line 6 through page 3, line 11.)

5     After denying the claim of exemption filed by Debtor on behalf of her adult son, Judge de la

6 Cruz proceeded with the determination of whether Debtor constituted a vexatious litigant. While the

7 Transcript merits full consideration, selective highlights demonstrate that the conduct of Debtor in

8 the Family Court that resulted in her being declared a vexatious litigant has been the strategy that she

9 has pursued before this Court. Examples include:

10
11
- "To be very clear, this Court has never deemed anyone a vexatious litigant the entire time the court has been open, in this seat.… This Court prides itself in dispensing justice in an even-handed and fair manner." (Reporter's Transcript at page 8, lines 8 through 16.)

12

13
14
15
- "The instant case is truly an extraordinary case that has resulted in filing levels that are completely unprecedented, unwarranted, and only serve to cause delay and confusion. Among the thousands of cases in this Court's inventory of cases, this case sticks out as needing a substantial amount of the Court's time to untangle the mess of filings attributable to Mrs. Richards." (Reporters Transcript at page 8, lines 17 through 23.)

16

17
18
19
20
- "Over two years ago, Mrs. Richards struck a deal and entered into a stipulated judgment; that stipulated judgment has now been affirmed by the District Court of Appeals. However, since that date, Mrs. Richards has filed close to 100 separate docket entries. Many of her filings span dozens upon dozens of pages that are largely copy and paste jobs, repetitive, unintelligible, and otherwise a complete waste of the Court's time in having to review and analyze these filings in search of any plausible legal argument that Mrs. Richards raises." (See Reporters Transcript at page 8, line 26 through page 9, line 8.)

21
22
23
24
- "In addition to this case, Mrs. Richards has initiated a separate civil proceeding against her former husband, a bankruptcy proceeding, to prevent this case from progressing. At last count, over ten separate appeals to the District Court of Appeals and now, most recently, multiple efforts to remove this case to the U.S. District Court for the Central District of California who, predictably, remanded this case back to the Superior Court for further proceedings." (Reporters Transcript at page 9, lines 9 through 16.)

25
26
27
- "Additionally, over the course of these years, this Court has warned Mrs. Richards on at least four occasions that if her historical practice of superfluous and unwarranted filings did not cease, this Court would have no option other than to deem her vexatious litigant.

28

**EXHIBIT 5-008**
REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**EXHIBIT "5"**

**PAGE 237**

1  It is now abundantly clear that all of these warnings have not been observed. Not only have
2  her frivolous filings affected this Court's ability to execute on the judgment, but Mrs.
   Richards has also affected multiple other courts up and down the state as previously stated,
3  maintaining her rampage of abusing the legal process in a civil courtroom, tort claims against
   husband, a bankruptcy courtroom, a federal bankruptcy court, the court of appeals, who has
4  now received ten appeals from this case, all of which have affirmed the lower court save for
   the amount of sanctions pursuant to a prior sanctions order, a federal court, and State Bar
5  complaints of opposing counsel.

6  It's almost as if the respondent simply ponders what Avenue of the judicial process to exploit
7  next and pursues that option to delay matters even further.

8  All of these games will no longer be tolerated by this Court and the Court will deem her a
   clear and unequivocal vexatious litigant." (Reporters transcript at page 10, line 16 through
9  page 11, line 12.)

10  As this Court's docket rapidly approaches the 700-docket entry mark in little over a year of

11  litigation in this, Debtor's second bankruptcy in a matter of less than two years, it is increasingly

12  clear that the vexatious litigation strategies Debtor pursued in the Family Court have become nothing

13  more than the model for creating confusion, delay, and needless costs and expenses in this voluntary

14  Chapter 7 proceeding.

15  But more importantly, it reveals that in her unabated rampage to block the judicial process,

16  Debtor has demonstrated a willingness to mislead the Court, just as she has done by maintaining that

17  the Judgment of the Family Court that ordered the sale and equal division of the proceeds of the

18  Property, was anything but final. That is simply untrue.

19  The clash of ideas that is the hallmark of the American judicial system was never intended to

20  be a rehashing of misrepresentations. Truth is the cornerstone of the judicial system and, in the

21  absence of truth, injustice results. Debtor's continued and unabated litigation raising meritless

22  positions and refusing to follow this Court's orders have likely turned a surplus case into a case

23  where either administrative or unsecured creditors will not be paid in full.

24  / / /

25  / / /

26  / / /

27  / / /

28

**EXHIBIT 5-009**

REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**8.  Conclusion**

1

Debtor has gone to great lengths to obfuscate the facts and applicable law, and to create the
impression that this court cannot extend full faith and credit to the provisions of the Judgment. But,
the facts and the law are relatively simple and clear. There is a final Judgment entered by the family
court which was affirmed on appeal that provides that the former spouses are each entitled to an
equal share of the sales proceeds.

Because Trustee is in possession of $300,000 that is not property of the estate, good cause
exists to grant the motion and authorize him to pay such funds to Ryal Richards. Alternatively,
should the Court determine that any uncertainty exist with regard to interpreting the family court's
Judgment, Trustee requests authority to interplead the remaining $300,000 of the proceeds. Trustee
did not ask to interplead the funds as the primary relief requested in this Motion because it would
appear to give Debtor a stay regarding the enforcement of a final Judgment where no such stay has
been issued by the state court. Debtor has already received her half of the homestead proceeds. It
appears that the proper result in this case is for Trustee to pay the balance of the homestead proceeds
to Ryal Richards so that he may receive his share of the proceeds pursuant to the Judgment.


Dated:  April 28, 2022

HESTON & HESTON
Attorneys at Law

Special Counsel to Trustee

In Association With,

MARSHACK HAYS LLP


By:  _/s/ D. Edward Hays_
D. EDWARD HAYS
General Counsel to Trustee

**EXHIBIT 5-010**
REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**EXHIBIT "5"**

**PAGE 239**

## REQUEST FOR JUDICIAL NOTICE

Richard A. Marshack, the duly-appointed and acting chapter 7 trustee ("Trustee") of the bankruptcy estate ("Estate") of Alicia Marie Richards ("Debtor"), hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the following documents to be considered in connection with Reply to Debtor's Opposition to Motion for Order Authorizing Trustee to Pay to Ryal Richards $300,000 from Proceeds of Sale of Homestead Exemption, or in the Alternative, to Interplead the Homestead Proceeds in the Orange County Superior Court:

| EXHIBIT | JUDICIALLY NOTICED DOCUMENTS |
|---------|------------------------------|
| 1. | A true and correct copy of the Judgment entered by the family court is attached as Exhibit 1. |
| 2. | A true and correct copy of the 37-page decision of the California Court of Appeal for the Fourth Appellate District, Division Three, filed on January 9, 2020 is attached as Exhibit 2. |
| 3. | A true and correct copy of the transcript of proceedings that took place on October 23, 2020, before the Hon. Andre de la Cruz, Judge of the Orange County Superior Court is attached as Exhibit 3. |

Dated: April 28, 2022

HESTON & HESTON
Attorneys at Law

Special Counsel to Trustee

In Association With,

MARSHACK HAYS LLP

By:    _/s/ D. Edward Hays_____
        D. EDWARD HAYS
        General Counsel to Trustee

EXHIBIT "5"-011
REPLY TO DEBTOR'S OPPOSITION

4889-9602-1790V.2-1015-148

**EXHIBIT "1"**

**EXHIBIT 5-012**

FL-180

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
KEVIN E. ROBINSON 88726
Law Offices of KEVIN E. ROBINSON
970 W. 17th Street, Suite D
Santa Ana, CA 92706
TELEPHONE NO.: (714) 245-0210    FAX NO. *(Optional):* (714) 973-0244
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* RYAL W. RICHARDS

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Orange County
STREET ADDRESS: 341 The City Drive
MAILING ADDRESS: P.O. BOX 14710
CITY AND ZIP CODE: Orange, CA 922863
BRANCH NAME: Lamoreaux

**MARRIAGE OR PARTNERSHIP OF**
PETITIONER: RYAL W. RICHARDS
RESPONDENT: ALICIA MARIE RICHARDS

FOR COURT USE ONLY

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
LAMOREAUX JUSTICE CENTER

JAN 2 6 2018

DAVID H. YAMASAKI, Clerk of the Court

BY: K. McDONALD    DEPUTY

CASE NUMBER:
15D 009 634

**JUDGMENT**
[X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY
[X] Status only
[ ] Reserving jurisdiction over termination of marital or domestic
partnership status
[ ] Judgment on reserved issues
Date marital or domestic partnership status ends: JAN 2 6 2018

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
The restraining orders are contained on page(s) _____ of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
[X] Contested [ ] Agreement in court
a. Date: June 16, 2017 and March 2, 2017    Dept: L-74    Room:
b. Judicial officer *(name):* Honorable Linda L. Miller    [ ] Temporary Judge
c. [X] Petitioner present in court    [X] Attorney present in court *(name):* Kevin E. Robinson
d. [X] Respondent present in court    [X] Attorney present in court *(name):* Eugene Zech
e. [ ] Claimant present in court *(name):*    [ ] Attorney present in court *(name):*
f. [X] Other *(specify name):* Diane Vargas, Attorney for the minors

3. The court acquired jurisdiction of the respondent on *(date):* ~~1/25/2016~~ 1/15/2016
a. [ ] The respondent was served with process.
b. [X] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**
4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
status of single persons
(1) [X] on *(specify date):* JAN 2 6 2018
(2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
b. [ ] Judgment of legal separation is entered.
c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

d. [ ] This judgment will be entered nunc pro tunc as of *(date):*
e. [ ] Judgment on reserved issues.
f. The [ ] petitioner's [ ] respondent's former name is restored to *(specify):*
g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the
court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice
of Rights and Responsibilities—Health-Care Costs and Reimbursement Procedures and Information Sheet on Changing a
Child Support Order (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. July 1, 2012]
CEB® | Essential
ceb.com | JILForms

**JUDGMENT**
(Family Law)
FOURTH PROPOSED JUDGMENT

Family Code, §§ 2024, 2340, 2343, 2346
www.courts.ca.gov

Page 1 of 2

RICHARDS, RYAL W.

# EXHIBIT 5-013

EXHIBIT "1"
PAGE 11

EXHIBIT "5"
PAGE 242

FL-180

| CASE NAME (Last name, first name of each party):<br>RICHARDS, RYAL and ALICIA | CASE NUMBER:<br>15D 009 634 |
|---|---|

4.  i.  ☒  The children of this marriage or domestic partnership are:

    (1) ☒  Name                                    Birthdate

        MICHAEL RYAL RICHARDS        04-24-01

        KELLY MICHELLE RICHARDS    7-14-06

    (2) ☐  Parentage is established for children of this relationship born prior to the marriage or domestic partnership

j. ☒  Child custody and visitation (parenting time) are ordered as set forth in the attached

    (1) ☒  Settlement agreement, stipulation for judgment, or other written agreement which contains the information required by Family Code section 3048(a).

    (2) ☐  *Child Custody and Visitation Order Attachment* (form FL-341).

    (3) ☐  *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

    (4) ☐  Previously established in another case. Case number:            Court:

k. ☒  Child support is ordered as set forth in the attached

    (1) ☒  Settlement agreement, stipulation for judgment, or other written agreement which contains the declarations required by Family Code section 4065(a).

    (2) ☐  *Child Support Information and Order Attachment* (form FL-342).

    (3) ☐  *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

    (4) ☐  Previously established in another case. Case number:            Court:

l. ☐  Spousal, domestic partner, or family support is ordered:

    (1) ☐  Reserved for future determination as relates to ☐ petitioner ☐ respondent

    (2) ☐  Jurisdiction terminated to order spousal or partner support to ☐ petitioner ☐ respondent

    (3) ☐  As set forth in the attached *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

    (4) ☒  As set forth in the attached settlement agreement, stipulation for judgment, or other written agreement.

    (5) ☐  Other (specify):

m. ☒  Property division is ordered as set forth in the attached

    (1) ☒  Settlement agreement, stipulation for judgment, or other written agreement.

    (2) ☐  *Property Order Attachment to Judgment* (form FL-345).

    (3) ☐  Other (specify):

n. ☐  Attorney fees and costs are ordered as set forth in the attached

    (1) ☐  Settlement agreement, stipulation for judgment, or other written agreement.

    (2) ☐  *Attorney Fees and Costs Order* (form FL-346).

    (3) ☐  Other (specify):

o. ☐  Other (specify):

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions. Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: _____                          *See pleading*

                                                 JUDICIAL OFFICER

5. Number of pages attached: 22               ☒  SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar property interest. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

| FL-180 [Rev. July 1, 2013]<br>CEB │ Essential<br>ceb.com │ jd Forms | **JUDGMENT**<br>(Family Law)          RICHARDS, RYAL W. | Page 2 of 2 |

# EXHIBIT 5-014

**EXHIBIT "1"**
**PAGE 12**

**EXHIBIT "5"**
**PAGE 243**

**NOTICE OF RIGHTS AND RESPONSIBILITIES**

**Health-Care Costs and Reimbursement Procedures**

FL-192

**IF YOU HAVE A CHILD SUPPORT ORDER THAT INCLUDES A PROVISION FOR THE
REIMBURSEMENT OF A PORTION OF THE CHILD'S OR CHILDREN'S HEALTH-CARE COSTS
AND THOSE COSTS ARE NOT PAID BY INSURANCE, THE LAW SAYS:**

**1. Notice.** You must give the other parent an itemized statement of the charges that have been billed for any health-care costs not paid by insurance. You must give this statement to the other parent within a reasonable time, but no more than 30 days after those costs were given to you.

**2. Proof of full payment.** If you have already paid all of the uninsured costs, you must (1) give the other parent proof that you paid them and (2) ask for reimbursement for the other parent's court-ordered share of those costs.

**3. Proof of partial payment.** If you have paid only your share of the uninsured costs, you must (1) give the other parent proof that you paid your share, (2) ask that the other parent pay his or her share of the costs directly to the health-care provider, and (3) give the other parent the information necessary for that parent to be able to pay the bill.

**4. Payment by notified parent.** If you receive notice from a parent that an uninsured health-care cost has been incurred, you must pay your share of that cost within the time the court orders; or if the court has not specified a period of time, you must make payment (1) within 30 days from the time you were given notice of the amount due, (2) according to any payment schedule set by the health-care provider, (3) according to a schedule agreed to in writing by you and the other parent, or (4) according to a schedule adopted by the court.

**5. Disputed charges.** If you dispute a charge, you may file a motion in court to resolve the dispute, but only if you pay that charge before filing your motion. If you claim that the other party has failed to reimburse you for a payment, or the other party has failed to make a payment to the provider after proper notice has been given, you may file a motion in court to resolve the dispute. The court will presume that if uninsured costs have been paid, those costs were reasonable. The court may award attorney fees and costs against a party who has been unreasonable.

**6. Court-ordered insurance coverage.** If a parent provides health-care insurance as ordered by the court, that insurance must be used at all times to the extent that it is available for health-care costs.

**a. Burden to prove.** The party claiming that the coverage is inadequate to meet the child's needs has the burden of proving that to the court.

**b. Cost of additional coverage.** If a parent purchases health-care insurance in addition to that ordered by the court, that parent must pay all the costs of the additional coverage. In addition, if a parent uses alternative coverage that costs more than the coverage provided by court order, that parent must pay the difference.

**7. Preferred health providers.** If the court-ordered coverage designates a preferred health-care provider, that provider must be used at all times consistent with the terms of the health insurance policy. When any party uses a health-care provider other than the preferred provider, any health-care costs that would have been paid by the preferred health provider if that provider had been used must be the sole responsibility of the party incurring those costs..

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
FL-192 [Rev. January 1, 2011]

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
**Health-Care Costs and Reimbursement Procedures**

Family Code, §§ 4062, 4063
www.courts.ca.gov

CEB | Essential Forms

RICHARDS, RYAL W.

# EXHIBIT 5-015

**EXHIBIT "1"**
**PAGE 13**

**EXHIBIT "5"**
**PAGE 244**

FL-192

## INFORMATION SHEET ON CHANGING A CHILD SUPPORT ORDER

**General Information**

The court has just made a child support order in your case. This order will remain the same unless a party to the action requests that the support be changed (modified). An order for child support can be modified only by filing a motion to change child support and serving each party involved in your case. If both parents and the local child support agency (if it is involved) agree on a new child support amount, you can complete, have all parties sign, and file with the court a *Stipulation to Establish or Modify Child Support and Order* (form FL-350) or *Stipulation and Order (Governmental)* (form FL-625).

**When a Child Support Order May Be Modified**

The court takes several things into account when ordering the payment of child support. First, the number of children is considered. Next, the net incomes of both parents are determined, along with the percentage of time each parent has physical custody of the children. The court considers both parents' tax filing status and may consider hardships, such as a child of another relationship. An existing order for child support may be modified when the net income of one of the parents changes significantly, the parenting schedule changes significantly, or a new child is born.

**Examples**

- You have been ordered to pay $500 per month in child support. You lose your job. You will continue to owe $500 per month, plus 10 percent interest on any unpaid support, unless you file a motion to modify your child support to a lower amount and the court orders a reduction.

- You are currently receiving $300 per month in child support from the other parent, whose net income has just increased substantially. You will continue to receive $300 per month unless you file a motion to modify your child support to a higher amount and the court orders an increase.

- You are paying child support based upon having physical custody of your children 30 percent of the time. After several months it turns out that you actually have physical custody of the children 50 percent of the time. You may file a motion to modify child support to a lower amount.

**How to Change a Child Support Order**

To change a child support order, you must file papers with the court. *Remember:* You must follow the order you have now.

**What forms do I need?**

If you are asking to change a child support order open with the local child support agency, you must fill out one of these forms:

- FL-680, *Notice of Motion (Governmental)* or FL-683 *Order to Show Cause (Governmental)* and
- FL-684, *Request for Order and Supporting Declaration (Governmental)*

If you are asking to change a child support order that is not open with the local child support agency, you must fill out one of these forms:

- FL-300, *Request for Order* or
- FL-390, *Notice of Motion and Motion for Simplified Modification of Order for Child, Spousal, or Family Support*

You must also fill out one of these forms:

- FL-150, *Income and Expense Declaration or FL-155, Financial Statement (Simplified)*

**What if I am not sure which forms to fill out?**

Talk to the family law facilitator at your court.

After you fill out the forms, file them with the court clerk and ask for a hearing date. Write the hearing date on the form.

The clerk will ask you to pay a filing fee. If you cannot afford the fee, fill out these forms, too:

- Form FW-001, *Request to Waive Court Fees*
- Form FW-003, *Order on Court Fee Waiver (Superior Court)*

You must serve the other parent. If the local child support agency is involved, serve it too.

This means someone 18 or over - not you - must serve the other parent copies of your filed court forms at least 16 court days before the hearing. Add 5 calendar days if you serve by mail within California (see Code of Civil Procedure section 1005 for other situations). Court days are weekdays when the court is open for business (Monday through Friday except court holidays). Calendar days include all days of the month, including weekends and holidays. To find court holidays, go to *www.courts.ca.gov/holidays.htm*.

The server must also serve blank copies of these forms:

- FL-320, *Responsive Declaration to Request for Order and FL-150, Income and Expense Declaration, or*
- FL-155, *Financial Statement (Simplified)*

Then the server fills out and signs a *Proof of Service* (form FL-330 or FL-335). Take this form to the clerk and file it.

Go to your hearing and ask the judge to change the support. Bring your tax returns from the last two years and your last two months' pay stubs. The judge will look at your information, listen to both parents, and make an order. After the hearing, fill out:

- FL-340, *Findings and Order After Hearing* and
- FL-342, *Child Support Information and Order Attachment*

**Need help?**

Contact the family law facilitator in your county or call your county's bar association and ask for an experienced family lawyer.

---

FL-192 [Rev. January 1, 2015]

CEB | Essential | Forms

**NOTICE OF RIGHTS AND RESPONSIBILITIES**
Health-Care Costs and Reimbursement Procedures

Page 2 of 2

RICHARDS, RYAL W.

# EXHIBIT 5-016

EXHIBIT "1"
PAGE 14

EXHIBIT "5"
PAGE 245

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

## ATTACHMENT TO JUDGMENT

This attachment to Judgment is based on the handwritten Stipulated Judgment filed on

June 16, 2017 and March 2, 2017.

I. __STATISTICAL FACTS__

    A.    The parties were married on July 30, 1994. *31, 1995 as amended in court 1/26/18*

    B.    There are two minor children of the relationship:

        1.    Michael Ryal Richards, male, date of birth 4-24-2001; and

        2.    · Kelly Michelle Richards, female, date of birth: 7-14-2006.

    C.    Since the date of separation, each of the parties has been and shall continue

        hereafter to be free from interference, authority or control by the other and each

        may conduct, carry on and engage in any employment, business or trade which he

        or she shall deem advisable for his or her sole and separate use and benefit

        without and free from any control, restraint or interference, direct or indirect, by

        the other party, in all respects. *Date of Separation: Feb 20, 2016 (agreed in court 1/26/18)*

II. __CUSTODY AND VISITATION__

    A.    Legal Custody

        1.    The parties shall share joint legal custody of the minor children Michael R.

        Richards, born 4-24-2001 and Kelly M. Richards born 7-14-2006.

Page 1 of 20

# EXHIBIT 5-017

**EXHIBIT "1"
PAGE 15**

**EXHIBIT "5"
PAGE 246**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

2.    Neither parent shall submit the child(ren) to any psychological/psychiatric

testing or evaluation or to any extended course of medical, dental,

orthodontic, psychiatric or psychological treatment/counseling without

first obtaining the approval of the other parent.

3.    Pursuant to Family Code Section 3025, both parents shall have the same

access to psychological, medical, dental and school records pertaining to

their child(ren) and shall be permitted independently to consult with any

and all concerned professionals.  The names of both parents shall be listed

on school and extracurricular cards to be contacted in case of emergency.

4.    Each parent is to provide the other with the address and telephone number

at which the minor child(ren) reside.  A parent shall notify the other parent

if the parent plans to change the residence of the child for more than thirty

(30) days, unless there is a prior written agreement to the removal.  The

notice shall be given before the contemplated move, by mail, return receipt

requested, postage prepaid, the last  known address of the parent to be

notified.  A copy of the notice shall also be sent to that parent's counsel of

record.  To the extent feasible, the notice shall be provided within a

minimum of forty-five (45) days before the proposed change of residence

so as to allow for mediation of a new agreement concerning custody.

(Family Code §3024).

Page 2 of  20

# EXHIBIT 5-018

**EXHIBIT "1"**
**PAGE 16**

**EXHIBIT "5"**
**PAGE 247**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

**B.      Physical Custody**

1.      The Parties shall share joint physical custody of the minor children.

Petitioner shall have parenting time with Kelly as follows:

(a)      Alternating weekends from Friday at 8 p.m. to Sunday at 7 p.m.
commencing June 16, 2017.

(b)      Every Tuesday from 8 p.m. to 9:30 p.m.

(c)      Alternating Wednesdays from 8 p.m. to 9:30 p.m. commencing
June 21, 2017.

(d)      Alternating Thursdays from 6:20 p.m. to 9:00 p.m. commencing
June 29, 2017.

2.      Additional visitation as mutually agreed between the parties.

3.      Both parties shall continue with Kelly's extracurricular activities and
facilitate the same to wit: girl Scouts, gymnastics and dance, and Indian
Princess with Father.

4.      All exchanges of the minor child(ren) shall be peaceful and calm. The
parties shall equally share transportation of the child for all exchanges.

5.      When Petitioner/Father has a larger home, the minor Kelly is encouraged
to spend the night at Petitioner/Father's from Tuesday to Wednesday with
a drop-off at school.

6.      Any other times not designated to Father, the minor child Kelly shall be in
Respondent/Mother's physical custody.

Page 3 of 20

# EXHIBIT 5-019

**EXHIBIT "1"**
**PAGE 17**

**EXHIBIT "5"**
**PAGE 248**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO.  15D 009 634

7.    The minor child Michael shall be in Petitioner/Father's custody except
for the following times with Respondent/Mother:

(a)    Alternating weeks with the exchange on Sunday at 6 p.m.  Neither
parent is obligated to force Michael to exercise visitation with the
other parent.  Neither party shall encourage the minor child not to
go with the other parent.

C.    **Holidays and Special Days**
The Court shall reserve jurisdiction over the issue of holidays and special days.  It
is the parties' intention to work together with regards to the holidays and special
days.  Further, it will be as agreed between the Respondent and the minor
children.    It is the intention of the parties to share the holidays and special days
equally.

D.    **California Family Code §3048**

1.    The basis for the Court's exercise of jurisdiction is personal jurisdiction
over the parties and that California is the home state of the minor child.

2.    Both parties were given notice and an opportunity to be heard as provided
by the laws of the State of California.

3.    A clear description of the custody and visitation rights of each party is
herein above set forth.

4.    A violation of the custody and/or visitation Order set forth herein may
subject the party in violation to civil or criminal penalties, or both.

Page 4 of 20

# EXHIBIT 5-020

EXHIBIT "1"
PAGE 18

EXHIBIT "5"
PAGE 249

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO.  15D 009 634

5.    The Country of habitual residence of the minor child is the United States of America.

III.    **CHILD SUPPORT**

A.    Petitioner shall pay to Respondent child support of $1250.00 per month payable $625.00 on the 4th and $625 on the 20th of each month commencing 7/2/17 and continuing until further order of the court or until the child marries, dies, is emancipated, reaches 19, or reaches 18 and is no longer a full-time high school student, whichever occurs first.  Child Support is apportioned for each child as follows:

Michael R. Richards:  $500.00 per month

Kelly M. Richards: $750.00 per month

B.    As and for additional child support, the Petitioner shall pay for:

1.    The minor child Kelly's gymnastics; and

2.    Health insurance for the minor children at reasonable or little cost through his employment with a 30 day grace period.  Each party is responsible for ½ of all uncovered medical, dental, orthodontia health costs.

C.    As and for additional child support, the parties shall be equally responsible for all uninsured and/or unreimbursed hospital, medical, dental, pharmaceutical, optometric, orthodontic and psychological expenses incurred on behalf of the minor children.

D.    Family Code §4063

Page 5 of  20

# EXHIBIT 5-021

**EXHIBIT "1"**
**PAGE 19**

**EXHIBIT "5"**
**PAGE 250**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    1.    See attached Notice of Rights and Responsibilities, Health Care Costs and Reimbursement Procedures.

   E.   Family Code §4065

    1.    The Parties are fully informed of their rights concerning child support.

    2.    This Order is being agreed to freely without coercion or duress and the needs of the minor children will be adequately met by the stipulated amount.

    3.    The right to support has not been assigned to any county under Section 11477 of the Welfare and Institutions Code and no application for public assistance is pending.

    4.    This order is in the best interest of the minor children involved.

    5.    Pursuant to Family Code § 5616, in the event that there is a contract between a party receiving support and a private child support collector, the party ordered to pay support must pay the fee charged by the private child support collector. This fee must not exceed 33 1/3 percent of the total amount of past due support nor may it exceed 50 percent of any fee charges by the private child support collector. The money judgment created by this provision is in favor of the private child support collector and the party receiving support jointly.

IV.   SPOUSAL SUPPORT

   A.   Petitioner shall pay Respondent spousal support in the amount of $1,250.00 per

Page 6 of 20

# EXHIBIT 5-022

EXHIBIT "1"
PAGE 20

EXHIBIT "5"
PAGE 251

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

month, payable $625.00 on the 6th and $625 on the 20th of each month

commencing July 1, 2017 and continuing until further order of the court, the

remarriage of the payee, the death of either party, whichever occurs first.

B.    **GAVRON WARNING:**    The Court hereby issues a Gavron Warning to

Respondent, Alicia Richards.  Family Code Section 4320 states that the goal of

the State of California is that both parties shall become self-supporting within a

reasonable time after a dissolution of marriage.  Respondent shall make

reasonable efforts to obtain employment commensurate with her abilities to

contribute toward her own support.

V.    **PROPERTY DIVISION**

A.    The itemization of community property assets and liabilities referred to below has

been prepared in accordance with information received from and confirmed with

both Petitioner and Respondent and the values assigned to the various items have

been arrived at by negotiation between the parties, from the parties' books and

records and/or based upon values agreed upon between the parties.  Each party

accepts each of the values assigned as being fair and equitable and representing a

compromise of disputed values or an agreed upon value.

B.    The Petitioner is awarded the following assets as his sole and separate property

and shall accept and assume all liabilities associated with the assets as set forth

below:

1.    His clothing, jewelry and personal effects in his possession.

Page 7 of 20

# EXHIBIT 5-023

**EXHIBIT "1"**
**PAGE 21**

**EXHIBIT "5"**
**PAGE 252**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

2. The furniture, furnishings, appliances and collectibles in his possession.

3. Any and all community property interest, if any, whether determined or undetermined in the BMW automobile.

4. Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Ryal William Richards alone.

5. All bank accounts, including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Petitioner's name alone.

6. Any and all stocks, bonds, secured notes and/or mutual funds standing in Petitioner's name alone.

C. The Respondent is awarded the following assets as her sole and separate property and shall accept and assume all liabilities associated with the assets as set forth below:

1. Her clothing, jewelry and personal effects in her possession.

2. The furniture, furnishings, appliances and collectibles in her possession.

3. Any and all community property interest, if any, whether determined or undetermined in the Ford Fusion automobile.

4. Any and all community property interest, if any, whether determined or undetermined in any life insurance, retirement accounts, pensions, IRAs, 401K Sep, etc. standing in the name of Alicia W. Richards alone.

Page 8 of 20

# EXHIBIT 5-024

**EXHIBIT "1"**
**PAGE 22**

**EXHIBIT "5"**
**PAGE 253**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

5.    All bank accounts,  including but not limited to checking, savings, CD's, money market and credit union or other deposit accounts in Respondent's name alone.

6.    Any and all stocks, bonds, secured notes and/or mutual funds standing in Respondent's name alone.

D.    **Confirmation of Property:** Husband shall assign to Wife all right, title and interest in the property awarded to Wife hereunder and said property shall be Wife's separate property hereafter.  Wife shall assign to Husband  all right, title and interest in the property awarded to Husband  hereunder and said property shall be Husband's separate property hereafter.

E.    **Liens on Assets:**   Except as otherwise specifically provided, all property transferred hereunder is transferred subject to all existing encumbrances and liens thereon.  The transferee of such property shall indemnify and hold harmless the other party from any claim or liability that the other party may suffer or may be required to pay on account of such encumbrances or liens.  Each party represents to the other that all such liens and their amounts are accurately and specifically referred to herein.  Any liens not disclosed herein shall be deemed a missed and significant liability.

F.    **Vehicle Liability:**  Whether or not third parties may claim against either or both of the parties, and whether or not formalities of title have been completed, each party shall, and does release the other from any and all liability, whether primary,

Page 9 of  20

# EXHIBIT 5-025

**EXHIBIT "1"**
**PAGE 23**

**EXHIBIT "5"**
**PAGE 254**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

derivative or vicarious, whether in tort, or in contract, or by statute, and shall hold

the other harmless from all claims of others relative to any vehicle awarded to

each party respectively regardless of the present form of title.  Nothing herein

shall provide for or be interpreted as reducing the insurance coverage.

VI.    **DEBTS AND LIABILITIES**

A.    Except as otherwise provided herein, each party shall assume and hold the other

free and harmless from all debts and obligations incurred by such party during the

course of their marriage.

B.    Except as otherwise provided herein, each party shall assume the encumbrances

and liens on all property transferred to such party pursuant to this Judgment.  Each

party receiving an asset subject to an encumbrance shall indemnify and hold

harmless the other party from any form of liability that the other party may suffer

or be required to pay on account of such encumbrance or lien.  Any liens not

disclosed herein shall be deemed a missed and significant liability.

C.    Except as otherwise provided herein, whether or not third parties make claim

against either or both of the parties, and whether or not formalities of title have

been completed, each party shall, and does, release the other from any and all

liability, whether primary, derivative or vicarious, whether in tort, or in contract,

or by statute, and shall hold the other harmless from all claims of others relative to

any vehicle awarded to each party respectively regardless of the present form of

title.  Nothing herein shall provide for or be interpreted as reducing the insurance

Page 10 of  20

# EXHIBIT 5-026

EXHIBIT "1"
PAGE 24

EXHIBIT "5"
PAGE 255

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

coverage.

D.     The Court finds that each party understands that the provisions contained herein

for one party to assume the obligation(s) of the community for the benefit of the

other party may not be binding on third party creditors and the creditor may retain

rights to seek payment against either party.  Each party understands that

obligations to third party creditors and to each other may be subject to possible

discharge in bankruptcy.

E.     All community debts and obligations shall be divided equally between the parties.

Kevin E. Robinson on behalf of the Petitioner Ryal W. Richards and the

Respondent Alicia Richards are ordered to exchange current statements and come

up with a 50/50 split taking into account the bills in each parties' name alone.

F.     Petitioner shall pay and hold the Respondent harmless on the following debts,

liabilities, and obligations, and shall indemnify the Respondent from any claim or

liability that Respondent may suffer in connection with these debts, liabilities and

obligations:

1.     Petitioner Ryal Richards to pay Diane Vargas' attorney fees from his funds

received from the purchase/refinance of the house by the Respondent or

from his portion of the proceeds if the property is sold.  Petitioner to pay

Diane Vargas' bill in the amount of $6,000.00 or any mutually agreeable

amount as agreed between Ms. Vargas and Petitioner.

2.     Any and all debts, liabilities and credit card obligations incurred by the

Page 11 of 20

# EXHIBIT 5-027

EXHIBIT "1"
PAGE 25

EXHIBIT "5"
PAGE 256

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

Petitioner after the date of separation; and

3.    Any and all debts, liabilities and credit card obligations in Petitioner's

name alone.

G.    Respondent shall pay and hold the Petitioner harmless on the following debts,

liabilities, and obligations, and shall indemnify the Petitioner from any claim or

liability that Petitioner may suffer in connection with these debts, liabilities and

obligations:

1.    Any and all debts, liabilities and credit card obligations incurred by the

Respondent after the date of separation; and

2.    Any and all debts, liabilities and credit card obligations in Respondent's

name alone.

H.    Each of the parties warrants and represents that he/she has not incurred, since the

date of separation, any indebtedness chargeable against the other.

I.    Each of the parties warrants and represents that there are no remaining obligations

for which the community was liable as of the date of separation except as

expressly set forth in the Judgment.  In the event that hereafter it is determined

that there presently exists any obligation for which the community is liable, the

party who incurred such obligation shall assume such obligation and shall

indemnify the other party therefrom.

J.    Neither party, since the date of separation, shall incur any indebtedness chargeable

against the other or contract any debt or obligation in the name of the other.  The

Page 12 of 20

# EXHIBIT 5-028

EXHIBIT "1"
PAGE 26

EXHIBIT "5"
PAGE 257

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

party who incurred such indebtedness or contracted such debt or obligation shall

indemnify, including, but not limited to, the payment of reasonable attorney's fees

and costs, the other party therefrom.

VII.    **CONFIRMATION OF SEPARATE PROPERTY**

A.    The Court confirms to Petitioner as his/her sole and separate property, and

Respondent shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Petitioner's separate property are confirmed to the Petitioner.

2.    All of Petitioner's personal effects which are currently in Petitioner's

possession are confirmed to the Petitioner

3.    All earnings, accumulations, assets and debts acquired in and since the

date of separation.

B.    The Court confirms to Respondent  as his/her sole and separate property, and

Petitioner shall waive any claim in and to the following items of property and

interests:

1.    All personal items of clothing, jewelry and gifts and those items received

prior to the date of marriage or after the date of separation which are

Respondent's separate property are confirmed to the Respondent.

2.    All of Respondent's personal effects which are currently in Respondent's

Page 13 of  20

# EXHIBIT 5-029

**EXHIBIT "1"**
**PAGE 27**

**EXHIBIT "5"**
**PAGE 258**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

       possession are confirmed to the Respondent.

3.    All earnings, accumulations, assets and debts acquired in and since the

    date of separation.

VIII.   **FAMILY RESIDENCE:**

    The parties own the residence located at 351 Catalina Drive, Newport Beach, California.

The legal description of the real property located at 351 Catalina Drive, Newport Beach

California is as follows:

    Lot 64 of Tract No. 1136, in the city of Newport Beach, County of

    Orange, State of California, as per map recorded in Book 37, in the

    office of the County Recorder of Orange County.

    Since the date of separation, Respondent has been residing at the real property.  The

parties agree and the Court has ordered that:

A.    Respondent Alicia Richards has three weeks from the date of June 16, 2017 to

    refinance the property and/or pay the following amounts:

i.    $450,000 to Ryal Richards on or before July 7, 2016;

ii.    The first mortgage to First Financial;

iii.    The second mortgage/HELOC to School's First.

B.    If the house is not refinanced and the above sums paid by July 7, 2017, the house

    shall be immediately listed for sale.  The parties are ordered to sign the Exclusive

    Listing Agreement on or before July 8, 2016 with one of the following real estate

    agents:

# EXHIBIT 5-030

**EXHIBIT "1"**
**PAGE 28**

**EXHIBIT "5"**
**PAGE 259**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

    1.    Scott Singer, Villa Real Estate;

    2.    Cathryn Min; or

    3.    Mike Kennedy.

If either party fails to sign the listing agreement, the Court Clerk is ordered to sign said Exclusive Listing Agreement with 24 hour Notice.

Both parties are ordered to cooperate with signing all documents necessary for the sale of the residence.

Time is of the essence. There shall be no delay in selling said residence.

The Petitioner shall sign any and all documents, deeds, etc. required to be signed by him in connection with Respondent's purchase/refinance of the Catalina property. In the Event Petitioner fails to execute any reasonable documentation associated with Respondent's purchase/refinance of the Catalina property, the July 7, 2017 sale date can be extended until said required documents are signed by the Petitioner.

The parties are ordered to cooperate with brokers, buyers, escrow companies, appraisers, repairmen and other involved in the sale.

The parties are ordered to promptly execute any documents necessary to effectuate this order.

The failure to cooperate in the sale, or violations of this order may result in being required to pay any loss to the community or other party from the violation, and may result in attorney's fees, monetary sanctions, and/or contempt of court.

Upon sale, the proceeds shall be handled in the following manner: First reasonable costs

Page 15 of 20

# EXHIBIT 5-031

EXHIBIT "1"
PAGE 29

EXHIBIT "5"
PAGE 260

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

of the sale, commission, mortgages and other secure debts including Family Law Attorney Real

Property Liens shall be paid from the proceeds. The balance shall be equally divided between

the parties.

The Court reserves jurisdiction over all aspects of this court ordered sale and over the

enforcement of this order. Given the urgency in selling the property, the court authorizes either

party to make an ex parte motion with proper ex parte notice to carry out this order.

Petitioner is to select the name of three brokers meeting the criteria specified by the court.

They are to provide these names to the Respondent by July 8, 2017. Respondent must then select

one broker from this list by July 8, 2017. (See list contained on page 15)

The listing price shall be:

$1,250,000.00. After 30 days, if the property has not sold the price shall be reduced to an

amount that the parties agree to in writing after consulting the broker.

Both parties shall sign the listing agreement within 1 day of its preparation.

Until the close of escrow, Respondent is awarded temporary exclusive use of the

property. The parties shall make the property available for inspection by brokers, sales agents

and prospective buyers at all reasonable times. The premises shall be maintained in good and

marketable condition.

All ordinary and customary expenses for maintenance of the property shall be timely paid

0% by Petitioner and 100% by Respondent. The parties must agree in writing as to any

extraordinary expenses. For purposes of this order ordinary expenses are limited to mortgages,

taxes, insurance, ordinary garden and pool maintenance, and emergency plumbing or electrical

Page 16 of 20

# EXHIBIT 5-032

**EXHIBIT "1"**
**PAGE 30**

**EXHIBIT "5"**
**PAGE 261**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO.  15D 009 634

repairs.  Utilities shall be paid 0% by Petitioner and 100% by Respondent.  The party occupying

the property will not be charged any "rent" for the property's use.

IX.    **DIVISION OF PROCEEDS:**

    Upon the sale of the property located at 351 Catalina Drive, Newport Beach, California,

after payment of broker's commissions, encumbrances and other costs of sale, the net

proceeds shall be divided equally between the parties, except that any lien or

encumbrance incurred by either party alone, which is not a community obligation shall be

charged to that party's share of the proceeds.

X.    **ORDER–SALE OF REAL PROPERTY:**

    The court orders the sale of the real property located at 351 Catalina Drive, Newport

Beach, California, ("the property").

    The court orders the parties to list the property for sale by 7/7/17 with a licensed real

estate broker.

    Respondent is to choose one of the three brokers listed on page 21.

XI.    **OTHER PROPERTY ISSUES**

    A.    **Waiver of Alleged Breach of Fiduciary Duty:** The parties had various

    brokerage and retirement accounts during the marriage.  For purposes of this

    Judgment, the parties are waiving and relinquishing any rights in bringing any

    alleged breach of fiduciary duty claims against either party for the way any and all

    brokerage and retirement accounts were invested throughout the marriage and

    after the date of separation.  This issue has been resolved in this Judgment.

Page 17 of 20

# EXHIBIT 5-033

**EXHIBIT "1"**
**PAGE 31**

**EXHIBIT "5"**
**PAGE 262**

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO.  15D 009 634

XII.  **ATTORNEY FEES**

    A.    Each party shall bear their own attorneys' fees and costs and shall not be responsible for the attorneys' fees and costs of the other party.

    B.    If either party fails to perform any of his or her obligations under this Stipulated Judgment, and it thereby becomes necessary for the other to employ counsel and/or accountants to enforce or defend the same, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs, accounting fees and other reasonable expenses incurred in connection with the enforcement of such obligation or defense of such actions, and the other party shall pay such reasonable fees, costs and expenses that may be fixed by the Court.

XIII.  **OTHER ORDERS**

    A.    Waiver of Rights to Reimbursement: As part of the division of the community property, except as may be specifically provided to the contrary in this Stipulated Judgment, each party waives all rights to claims to credits and reimbursements for the following:

        1.    Epstein credits (*In Re Marriage of Epstein* (1979) 24 Cal.3d 76) and all rights to reimbursement to which a party may be entitled as a result of the payment of community obligations since the date of separation.

        2.    Watts credits (*In Re Marriage of Watts* (1985) 171 CalApp. 3d 366) and all rights to reimbursement to which a party or the community may be entitled as a result of one party's use of community assets since separation.

Page 18 of 20

# EXHIBIT 5-034

EXHIBIT "1"
PAGE 32

EXHIBIT "5"
PAGE 263

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO.  15D 009 634

3.    Jeffries credits (*In Re Marriage of Jeffries* (1991) 228 Cal.3d 548) and all
rights of reasonable rental value reimbursement for a party or this
community for the exclusive use of the community residence since the
date of separation.

4.    All rights to reimbursement under Family Code  §2640, or otherwise, for
separate property contributed to the acquisition or maintenance of
community property; and

5.    All rights to reimbursement under Family Code  §2641 or otherwise due
the community or a party for contributions made by the community or
either of the parties to the education or training of a party.

B.    Waiver or Right to Appeal: Both parties waive the right to appeal, the right to
request a Statement of Decision and the right to move for a new trial or
reconsideration, as well as the time periods in which any of the above rights may
be exercised.

Delivery of Documents of Title; Specific Performance: Each party shall
execute promptly all documents necessary and/or convenient to vest titles, estates
and beneficiaries as provided in this Judgment to effectuate its purpose and intent.
Notwithstanding the failure or refusal of either party to execute any such
documents, this Judgment shall constitute a complete transfer or conveyance of
the properties designated as being transferred, conveyed or assigned by each party.
If either party fails to execute any such document within ten (10) days after

Page 19 of  20

# EXHIBIT 5-035

EXHIBIT "1"
PAGE 33

EXHIBIT "5"
PAGE 264

IRMO RICHARDS, Ryal W and Alicia Marie
OCSC CASE NO. 15D 009 634

presentation of the document, the Court shall, upon ex parte application with 48

hours' notice (excluding weekends and legal holidays), and upon proper proof that

such request is in accordance with the terms or provisions of this stipulated

Judgment, authorize and direct the Clerk of the Superior Court to execute such

document on behalf of the defaulting party.

D.    **Reservation of Jurisdiction:**    The court shall retain jurisdiction over the issue

of the division of community property assets and obligations of both parties until

fully executed therein.

APPROVED AS TO FORM AND CONTENT:

Dated: 12-14-17

KEVIN E. ROBINSON
ATTORNEY FOR PETITIONER

Dated: _____

ALICIA MARIE RICHARDS
IN PRO PER

Dated: 12-14-17

DIANE VARGAS
ATTORNEY FOR THE MINORS

IT IS SO ORDERED
Dated: 1/26/18

LINDA LANCET MILLER
JUDGE/COMMISSIONER OF THE
ORANGE COUNTY SUPERIOR COURT

Court reviewed with
non-appearance and
m/o 12/14/17 and
no further objection
were filed

other than wife filed
a request for SOD on the court's m/o
of 12/6/17 which simply made sure
judgment conformed to the stipulated
Request denied as not
supported by the law.

Page 20 of 20

# EXHIBIT 5-036

1          PROOF OF SERVICE

2    STATE OF CALIFORNIA, COUNTY OF ORANGE

3         I am employed in the County of Orange, State of California. I am over the age of 18 and not
     a party to the within action; my business address is 970 W. 17th Street, Suite D, Santa Ana, CA
4    92706.

5         On December 14, 2017 I served the foregoing document(s) entitled: FOURTH PROPOSED
     JUDGMENT   on the interested parties in this action:
6
          ☐ by placing true copies thereof in sealed envelopes addressed as stated on the attached
7    mailing list:

8         ☒ by placing true copies thereof enclosed in sealed envelopes addressed as follows:

9    ALICIA RICHARDS              Diane Vargas, Esq.
     In pro per                   920 W 17th St Suite A
10   351 Catalina Drive           Santa Ana, CA 92706
     Newport Beach, CA 92663
11                                Attorney for the minors
     Dept. Of Child Support Services    Tel: (714) 245-0550
12   County of Orange            email: dianevargas1@sbcglobal.net
     PO Box 22099
13   Santa Ana, CA 92702

14
          ☒(BY MAIL) On the date noted above, I deposited in the mail at Santa Ana, California the
15   foregoing described document(s), in a sealed envelope, with postage fully prepaid and addressed to
     the party(ies) as noted above.
16
          ☐(BY FACSIMILE) On the date noted above, I personally transmitted from a facsimile
17   transmission machine whose telephone number is (714) 973-0244 the document(s) described above
     and an unsigned copy of this declaration to the above designated party(ies) at the facsimile
18   transmission telephone number(s) indicated.  The above described transmission was reported
     complete without error by a transmission report issued by the facsimile transmission machine upon
19   which the said transmission was made and immediately followed transmission.  A true and correct
     copy of said transmission report is attached hereto and incorporated herein by this reference.
20
          ☐(BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices
21   of the addressee, executed on _____, at Santa Ana, California.

22        ☐(BY FEDERAL EXPRESS/OVERNIGHT MAIL)  On the date noted above, I placed the
     document(s) listed above in a sealed FEDERAL EXPRESS packed for overnight deliver at Santa
23   Ana, California addressed as noted above.

24        ☒(STATE) I declare under penalty of perjury under the laws of the State of California that
     the above is true and correct.
25
          ☐(FEDERAL) I declare that I am employed in the office of a member of the bar of this court
26   at whose direction the service  was made.

27
                                    KAREN GRANOFF
28

# EXHIBIT 5-037

EXHIBIT "1"
PAGE 35

EXHIBIT "5"
PAGE 266

**EXHIBIT "2"**

**EXHIBIT 5-038**

● Warning
As of: April 28, 2022 11:54 PM Z

## *Richards v. Richards (In re Richards)*

Court of Appeal of California, Fourth Appellate District, Division Three

January 9, 2020, Opinion Filed

G055927

**Reporter**
2020 Cal. App. Unpub. LEXIS 146 *; 2020 WL 104357

In re Marriage of ALICIA MARIE and RYAL W. RICHARDS.ALICIA MARIE RICHARDS, Appellant, v. RYAL W. RICHARDS, Respondent.

**Notice:** NOT TO BE PUBLISHED IN OFFICIAL REPORTS. *CALIFORNIA RULES OF COURT, RULE 8.1115(a),* PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY *RULE 8.1115(b).* THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF *RULE 8.1115.*

**Subsequent History:** Decision reached on appeal by, Remanded by *Richards v. Richards (In re Richards), 2020 Cal. App. Unpub. LEXIS 166, 2020 WL 108404 (Cal. App. 4th Dist., Jan. 9, 2020)*

Review denied by, Stay denied by *Marriage of Richards, 2020 Cal. LEXIS 1510 (Cal., Feb. 26, 2020)*

Decision reached on appeal by, Request denied by *Richards v. Richards (In re Marriage of Richards), 2020 Cal. App. Unpub. LEXIS 3069, 2020 WL 2520159 (Cal. App. 4th Dist., May 18, 2020)*

Remanded by *Richards v. Richards, 2020 U.S. Dist. LEXIS 160426, 2020 WL 5236926 (C.D. Cal., Sept. 1, 2020)*

Decision reached on appeal by, Request denied by *In re Marriage of Marie & Richards, 2020 Cal. App. Unpub. LEXIS 6560, 2020 WL 5902889 (Cal. App. 4th Dist., Oct. 6, 2020)*

Remanded by *Richards v. Richards, 2020 U.S. Dist. LEXIS 196258 (C.D. Cal., Oct. 22, 2020)*

Remanded by *Richards v. Richards, 2020 U.S. Dist. LEXIS 202030, 2020 WL 6364484 (C.D. Cal., Oct. 29, 2020)*

Review denied by *Marriage of Richards, 2020 Cal. LEXIS 8184 (Cal., Nov. 24, 2020)*

Remanded by *Richards v. Richards, 2021 U.S. Dist. LEXIS 15137 (C.D. Cal., Jan. 18, 2021)*

**Prior History:** [*1] Appeal from a postjudgment order of the Superior Court of Orange County, No. 15D009634, Linda Lancet Miller, Judge.

**Disposition:** Affirmed.

## Core Terms

duress, stipulated judgment, parties, attorney's fees, declaration, family residence, buyout, contempt, mortgage, custody, court order, bifurcation, foreclosure, terms, grounds, waived, global settlement, trial court, asserts, marital, spousal support, family home, allegations, continuance, divorce, replied, dissolution judgment, mortgage payment, supplemental, inequitable

**Counsel:** Alicia Marie Richards, pro per, for Appellant.

Law Offices of Kevin E. Robinson and Kevin E. Robinson for Respondent.

**Judges:** O'LEARY, P. J.; THOMPSON, J., GOETHALS, J. concurred.

**Opinion by:** O'LEARY, P. J.

## Opinion

In this marital dissolution action, Alicia Marie Richards (Wife) sought to set aside a stipulated judgment based on allegations of fraud and duress. The principle asset of the marriage was the family's Newport Beach residence, and Ryal W. Richards (Husband) agreed to

**EXHIBIT 5-039**

2020 Cal. App. Unpub. LEXIS 146, *1

give Wife three weeks to buy out his interest. When Wife was unable to make the pre-agreed upon payment, Husband listed the property for sale as required by the stipulated judgment. All did not proceed as planned. Wife initiated numerous legal proceedings to stop the sale.[1]

This appeal (the first of seven) concerns only the trial court's decision to deny Wife's motion to set aside the judgment pursuant to *Family Code section 2122*.[2] We also consider Husband's motion to dismiss the appeal on the grounds Wife accepted the benefits of the judgment, and therefore, waived the right to appeal. We conclude the appeal and the motion to dismiss lack merit. [*2]  We affirm the postjudgment order.

FACTS

I. *Background Information*

Husband and Wife married in 1994 and they still dispute their official date of separation. In 2016, they were each represented by counsel when Husband filed the petition for dissolution and Wife filed a response. During a custody dispute early in the proceedings, Husband stated he could not afford the cost of a child custody evaluation because Wife refused to work and he was struggling financially to pay for two households and four children (one in college and three minors). In March 2016, Husband sought physical custody of the children and asked the court to quickly schedule a trial on the issue of selling the residence "as it will help facilitate an early resolution of the divorce."

Approximately six months later, Husband filed a request for a hearing on selling the family residence immediately, distributing a portion of money to the parties, and holding the remainder in trust. He claimed the cost of maintaining the house and a separate

residence was beyond his financial means. He asserted Wife refused to work. He estimated the home's equity was approximately $800,000, and because neither he, nor Wife, could afford to [*3]  buy out the other, "the only real solution is to list and sell the house." Husband filed an ex parte application to shorten time for the hearing.

In a supporting declaration, Husband explained he was in "dire financial straights" and he was not earning enough commissions in his sales job. He was late paying the rent for his apartment and he suspected he would be asked to leave that residence. He was also in default on the first and second mortgages on the family residence. The banks sent him notices of default. Husband stated he borrowed $50,000 from his employer, who gave him an advance on his pay.

Husband noted the parties were disputing custody and had "postponed" making a decision on selling the house. Husband believed the home was worth over $1 million, but was encumbered by approximately $300,000 in loans. He was uncertain whether a lender would agree to let him refinance the home, and he claimed Wife did not make enough money with her eBay business to qualify for a loan.

In October 2016, Wife filed a memorandum asking the court to postpone ruling on whether or not to sell the house. In her declaration, Wife noted the court ordered Husband to pay the two mortgages as part of its [*4]  May 12, 2016, spousal support order. She acknowledged receiving a notice of default from First Financial Credit Union (FFCU) holding the first mortgage on the property. She was aware Husband had not made payments to Schools First Credit Union (SFCU), the bank holding a second mortgage.

Wife declared she would like to purchase the family residence because she had lived in the home for 22 years and the children grew up there. She believed it was not in the family's best interests to relocate and change schools. Wife believed she could arrange to purchase the home if given additional time. She added there was no evidence to support Husband's claims to be financially destitute or that Wife refused to work. Wife asserted she "address[ed]" the default situation by borrowing money and paying FFCU, to cure the default on the first mortgage. She also made a partial payment to the SFCU to stop it from filing a notice of default. The court set the matter for a trial on March 2, 2017.

In February 2017, Wife filed an order to show cause (OSC) regarding contempt. She asserted Husband failed to make several payments ordered by the court in

---

[1] We denied Wife's request to file an oversized opening brief with 20,331 words. She filed an opening brief containing 13,995 words, just slightly below the maximum allowed. It appears one reason Wife was able to comply with the word count rule was because she abbreviated numerous words. For example, family law court became FLC. Minute order was shortened to MO. The excessive use of abbreviations significantly reduced the readability of the argument. We caution Wife to minimize abbreviations and consider using a simplified manner or nickname to gain clarity. For example, the motion to set aside the stipulated judgments could be shortened to "Motion" rather than MTSA.

[2] All further statutory references are to the Family Code, unless otherwise indicated.

# EXHIBIT 5-040

EXHIBIT "2"

PAGE 37

EXHIBIT "5"

PAGE 269

2020 Cal. App. Unpub. LEXIS 146, *4

May 2016. She attached an "affidavit of facts" showing Husband [*5] failed to make the following payments: (1) two $1,692 mortgage payments to FFCU; (2) two $1,991 mortgage payments to FFCU; (3) seven $912.24 mortgage payments to SFCU; (4) $159.12 payment owed to DirectTV; (5) five different payments to "ATT Uverse;" and (6) ten $147 payments to Verizon.

To prepare for the hearing, Wife's counsel deposed Husband and on March 2, 2017, she lodged a transcript with the court. She also filed a trial brief listing the prior court orders in the case. The first order, dated February 11, 2016, gave the parties joint legal custody of the three minor children and delineated a visitation schedule. The second order, dated May 12, 2016, based on the parties' stipulation, provided Husband would pay $800 per month in spousal support, the first and second mortgages, and various household bills (electric, water, gas, cable, internet, telephone, etc.).

In her brief, Wife sought joint legal and physical custody, child support, and spousal support. She stated the family residence appraised for $1,250,000, but had only approximately $993,000 in equity due to the two mortgages. Wife wanted to buy out Husband's equity share with money from her father's trust fund. She added [*6] the family's debt of $72,779 must be divided.

In addition, Wife asserted Husband owed over $44,000 in arrears for spousal support and household expenses. Due to a disparity in income (Wife earning $1,000 per month, and Husband earning $10,000 per month), Wife requested Husband pay attorney fees of approximately $75,000. She noted her prior attorney and current counsel both had liens attached to the residence.

II. *The March 2, 2017, Stipulation*

The parties appeared with counsel for the hearing on March 2, 2017. The court met with the parties in chambers and then trailed the matter to permit the attorneys to meet and confer with their clients. The parties entered into a handwritten stipulation and order for judgment. The first two pages concerned custody and the couple's timeshare agreement regarding the minor children. The third page stated the parties intended to subpoena the trustee controlling the trust funds Wife wished to use to buy out Husband's share of the family residence. The parties stipulated the trustee would be asked to discuss the amount of the distribution and when it could be made available to Wife. The stipulation added that if Wife could buy out Husband, she would also [*7] pay the first and second mortgage or remove Husband's name from the loans.

The last two pages of the stipulation discussed that the house would be sold if the trustee indicated there was insufficient funds to buy out Husband. The parties agreed to list the house by June 1, 2017, "to take advantage of the summer market." If the trustee stated there was sufficient money for the buy out, "the court shall determine the details of the process." They agreed to attend a status conference in March 2017, to resolve the parties' claims for reimbursements. Finally, the parties accepted the plan of using mediation to arrange a holiday schedule with the children.

III. *The June 16, 2017, Stipulation for Judgment*

Represented by counsel, the parties appeared for trial and participated in a chambers conference. On the record, Husband recited the terms of a "global stipulation." The court declared a recess to permit the parties to memorialize in writing their stipulation. When they returned, the parties were sworn to testify and voir dired by their respective counsel about the stipulation.

Husband's counsel asked several questions about the status of the marriage and then asked if Husband recalled reading [*8] and signing every page of the 11-page document. He summarized the document as follows: "There's an [11]-page document that we have laborious[ly] gone through for the last four-and-a-half hours trying to deal with the house, credits, reimbursements, watts charges, 2640, tweaked the custody and visitation a little bit, did child support, spousal support, got rid of the contempt action pending, got rid of the department of child support services case and came to a resolution of that [Wife] either buys you out of the house for $450,000 or its sold forthwith." Husband stated he understood each page and wanted the court to adopt the document as the final judgment of dissolution.

Wife's counsel asked if Wife had read the 11-page proposed judgment "page by page, line by line, and with the assistance of counsel understand and agree to all the terms and conditions that are set forth therein." Wife replied, "Yes," and gave the same response when counsel asked if she wanted the court to enter the document as the final judgment.

The court asked both parties if they understood "it is a global settlement[] [t]hat means you each made compromises." Wife replied, "Yes."

The court made the following observation: [*9] "You could come out better. You could come out worse after trial. You could come out better, worse, or the same

# EXHIBIT 5-041

EXHIBIT "2"
PAGE 38

EXHIBIT "5"
PAGE 270

2020 Cal. App. Unpub. LEXIS 146, *9

after you went to a special master on credits and reimbursements. You could come out better or worse with respect to spousal support and attorney fee orders but you decided to call it a global compromise. That means without an actual balance that we absolutely know, which is my job . . ., that each side gets basically the same amount on each side of the balance sheet but you've globally comprised it. [¶] Do you understand that[?]" Each party separately stated on the record, "Yes."

The court's minute order stated it entered the judgment of dissolution and the marriage would terminate "upon the filing of a formal judgment." The court accepted, signed, and filed the parties' hand written stipulation. It incorporated the stipulation by reference into the minute order. The court ordered Husband to prepare a final order.

The first page of the global stipulation outlined the parties' agreement regarding the family residence. Wife had three weeks (from the date of the order) to refinance or pay the following amounts: (1) $450,000 to Husband on or before July 7, 2017; (2) the first [*10] mortgage; and (3) the second mortgage. The stipulation clarified that if Wife did not refinance or pay the above sums by July 7th "the house shall be immediately listed for sale." In addition the stipulation specified, "The parties are ordered to sign the exclusive listing agreement" by July 8, 2017, with one of three pre-selected real estate agents listed in the judgment. Finally, the order stated that if either party failed to sign the listing agreement, the court clerk would be "ordered to sign with 24 hour notice." The parties agreed to cooperate by signing all documents necessary for sale of the residence. The order stated, "Time is of the essence. There shall be no delay in selling said residence." (Capitalization omitted.) The only exception was if Husband failed to sign any documents required by Wife to purchase or refinance the property. In such a case, the July 7th deadline would be extended until Husband signed the required documents.

The rest of the stipulation related to other issues. For example, the parties were ordered to bear their own attorney fees and costs. The parties waived their claims to credits and reimbursements. They agreed to divide community debt equally. [*11] The stipulation contained a detailed visitation schedule. The stipulation contained a *Gavron* warning[3] and child support orders.

IV. *Motion to Set Aside the Stipulated Judgment*

On September 13, 2017, Wife filed a motion to vacate or set aside the stipulated judgment. Wife specified her motion to set aside the June 16, 2017, judgment was based on *section 2122* [procedure to set aside marital dissolution judgments]. She claimed the stipulation was the result of "[f]raud and [d]uress." In her supporting declaration, Wife maintained she had only agreed on issues regarding the family residence, child support, spousal support, and visitation. She asserted, "I did not know that this was intended to be a complete and final decision as to our entire divorce which included issues that were not discussed [in] the settlement agreement." She did not specify what issues were included in the judgment but were not discussed

Wife next explained the reasons why she was unable to obtain a loan to buy out Husband. She stated Husband's failure to make mortgage payments had a negative effect on her credit. She was offered a 10 percent loan, but she felt it was "too risky." Wife explained this was the reason she initially [*12] agreed to put the house on the market and sign the listing agreement, but now she wanted to keep the house.

Wife also discussed an oral agreement she made with Husband in August 2017. Wife explained that her father disclaimed his inheritance and agreed to give her the money to save the family home. She said Husband agreed to remove the house from the market in exchange for $50,000 ("for waiting until the [t]rust money went through"), $400,000 of trust money, and an additional $100,000 when Wife was able to refinance the property. Wife claimed she also asked Husband to agree to complete "a loan modification" to "catch up" on the loan payments. Wife declared Husband agreed to these terms and he was breaching the contract and defrauding the court by filing a proposed judgment to sell the house.

Wife asserted Husband's counsel threatened her. She claimed to have told Husband's counsel she did not agree to items in the proposed judgment and she planned to file a motion to set it aside on the grounds she "was coerced into signing the stipulation judgment by coercion and fraud." Wife stated Husband's counsel filed the request for entry of judgment knowing she did not agree with it and planned [*13] to set is aside.

Wife maintained Husband concealed his failure to pay utility bills before she signed the stipulation. He had not paid the bills for three months despite the court's support order mandating payment. However, she did not

[3] *In re Marriage of Gavron (1988) 203 Cal.App.3d 705, 250 Cal. Rptr. 148* (*Gavron*).

# EXHIBIT 5-042

**EXHIBIT "2"**
**PAGE 39**

**EXHIBIT "5"**
**PAGE 271**

2020 Cal. App. Unpub. LEXIS 146, *13

assert the judgment would have looked materially different if she had known about the delinquent payments, or that the judgment would have been more favorable.

With respect to the issue of duress, Wife raised the following allegation: "[Husband] has manipulated this situation to his favor so that he can walk away with all of our marital estate and leave me with nothing. I feel that he has intentionally misled me to trust in him so that he can have it all. I also feel that I entered into this agreement under duress because I was not given adequate time to review all the debts, accounts, and consult an attorney to ensure the agreement represented my best interests. My prior attorney who I fired shortly thereafter kept telling me to sign the agreement so that he would not be ordered to accept payments for his fees. I told him that it wasn't fair that I had to pay all my attorney[] fees when [Husband] committed fraud by litigating a fraudulent third party [*14] claim with his mother against me. I was coerced into signing the agreement."

Wife stated she signed the stipulated judgment "through duress and pressure" because she badly wanted "to save my house for our children and the pressure of [Husband] and his attorney to put the house on the market." Wife asserted she believed she could pay off Husband without the help of her trust estate. She explained, "But because [Husband] failed to make the court ordered mortgage payments and support payments, trying to starve me and our 11-year old daughter out of the house, I signed the agreement."

She listed several other instances of perceived misconduct. For example, she noted Husband filed the final judgment although he knew Wife had fired her attorney. She believed he should have waited for her to find a new attorney. She claimed Husband failed to provide her with a list of debts and concealed his failure to pay household bills. She was unhappy the stipulated judgment contained information not discussed, such as the date of separation and a "Galvin Warning."[4] Wife

asked the court to set aside the stipulation and set the matter for trial.

V. *Amended Declaration for Motion to Set Aside the [*15] Stipulated Judgment*

Three months later, Wife filed an amended declaration identifying the portions of the judgment she wished the court to set aside. Wife asserted she was seeking to set aside portions of both the May 2, 2017, stipulated order, and the June 16, 2017, stipulated judgment because "they were based on fraud, concealment, duress, mistake, and failure to comply with disclosure requirements and as a result created inequity." Essentially, Wife sought a redo of all the past support, child custody, and visitation orders. With respect to the family residence, Wife asserted there was a dispute as to how much equity she was entitled to receive. She discussed several instances of Husband's domestic violence, her own attorney's legal malpractice, her attorney's violations of the "professional code of ethics," and the reasons why she was unable to borrow money to buy out Husband and keep the house. In addition, Wife alleged Husband purposely put the house into foreclosure status to take advantage of her during the dissolution lawsuit, causing her "considerable duress and pressure." She claimed another part of Husband's "diabolical plan" was to ruin her eBay business. Wife also sought [*16] to set aside the provisions waving credits, reimbursements, and attorney fees. She asserted Husband should pay those fees.

On the issue of duress, Wife maintained she would not have signed the stipulation but for Husband's fraudulent actions of putting the property "into foreclosure status." She explained the threat of foreclosure "instilled fear and distress in me which caused me to sign the stipulated judgment." Wife argued the combination of Husband's refusal to pay support, his creation of the foreclosure threat, and schemes with his mother, created "steady pressure to the point of undue influence which exploited me to the point of overwhelming fear and duress which caused me to mistakenly sign the stipulated judgment."

Finally, Wife asserted Husband was a felon who had committed fraud in the past. She believed Husband concealed he had a second job and he was hiding money in his mother's bank account. Wife stated she intended to sue Husband for "torts in civil court by jury

---

[4] We assume Wife is referring to a *Gavron* warning. (*Gavron, supra, 203 Cal.App.3d 705.*) The stipulated judgment contained the following advisement: "The [c]ourt hereby issues a *Gavron* Warning to [Wife], [S]ection 4320 states that the goal of the State of California is that both parties shall become self-supporting within a reasonable time after a dissolution of marriage. [Wife] shall make reasonable efforts to obtain employment commensurate with her abilities to contribute toward her own support." A court has discretion to dispense

with the warning if it determines the supported spouse in a lengthy marriage cannot reasonably be expected to earn enough money to become self-sufficient.

# EXHIBIT 5-043

EXHIBIT "2"
PAGE 40

EXHIBIT "5"
PAGE 272

Page 6 of 16

2020 Cal. App. Unpub. LEXIS 146, *16

trial" and the family law court must wait until civil litigation was complete. She did not submit any evidence or discuss legal authority supporting this allegation.

Wife also submitted a memorandum of points and [*17] authorities discussing *section 2122*, and introducing for the first time additional grounds to set aside the judgment, i.e., *Code of Civil Procedure section 473*.

### VI. Second Amended Declaration and Third Supplemental Response

On December 13, 2017, just a few days before the hearing scheduled for December 20, Wife filed a "supplemental declaration." Wife requested the court treat the declaration as evidence, however, the document was not signed under penalty of perjury. In this document, Wife reiterated the arguments previously raised. She added details relating to domestic violence, Husband's efforts to destroy her eBay business, and Husband's lack of parenting skills.

After the court continued the hearing to January 19, 2018, Wife filed a third supplemental response on January 16, 2018. She raised arguments pursuant to *sections 2120, 2121, and 2122 and Code of Civil Procedure section 473*. She repeated the same factual allegations regarding fraud and duress. She added arguments regarding Husband's failure to provide discovery and properly disclose his assets and liabilities as required by *section 2107* and *2122*. She alleged Husband breached his fiduciary duties and she intended to sue him. She asked the court to defer selling the family residence until the tort action was completely litigated and damages [*18] were "secured against" husband's equity in the family home. Wife also included a discussion of the children's best interests, arguing it would be unjust to enforce the stipulation.

### VII. The Hearing & Ruling

The hearing was continued to the end of January 2018. The court indicated it read Wife's multiple filings, despite the fact some exceeded the page limit rules. The court told Wife one of her "declarations" was not submitted under penalty of perjury and, therefore, was considered argument. The court reminded Wife the judgment gave her additional time to purchase the family home, and if she was unable to come up with the money, the property would be sold. The court noted Wife's failure to undergo due diligence to determine if she would qualify for a loan was not Husband's fault. The court referred to evidence showing Wife was aware Husband was not

making mortgage payments. It explained deferred home sale cases were rare and required extreme circumstances, such as severely disabled child who must stay in the house. It rejected Wife's request to defer the home sale until after she litigated her civil claims against Husband, especially since Wife admitted she had not filed the lawsuit [*19] yet.

Turning to the merits of the motion, the court asked if there was any other evidence Wife wanted to submit. The court indicated Wife had not yet established the alleged misconduct (fraud/duress) or a mistake materially affected the outcome as required by *section 2122*. The court explained Wife was extensively voir dired about the stipulated judgment, and Wife stated on the record that she understood the agreement and the consequences. "People compromise all the time. And just because you might later find out that it might have been inequitable is not in and of itself a ground to set it aside." The court asked Wife if she received her trust money. Wife replied it totaled $216,000.

After considering Wife's oral argument, the court denied the motion to set aside the stipulated judgment on several grounds. First, the court determined the motion was not properly served, but because Husband responded, that issue was moot.

Second, the court determined Wife's allegation of mistake under *Code of Civil Procedure section 473* was inadequate. "[T]hat you knew that the mortgage payments were not paid and the other bills were not paid and at that you chose to waive all of those defects, waiving and giving up credits and reimbursements[,] and [*20] any reasonable person should have checked their ability to refinance[,] and the effect of any lack of payments would have on their inability to refinance. In addition, the whole argument here was you were getting money from your trust and therefore you would have that ability to purchase in any event."

Third, the court determined Wife's claim of duress was not supported by any evidence. "Your papers are vague about any acts caused by [Husband] that caused your free agency to be destroyed." The court acknowledged the allegations in the January 16, 2018, document were more detailed, but the pleading was not a declaration, and, therefore, inadmissible evidence. It noted Wife's complaints about her own attorney cannot be attributed to Husband.

The court asked Wife about the material benefit of keeping the house. It noted Wife simply stated she did not want it to be sold. The court determined this reason

# EXHIBIT 5-044

EXHIBIT "2"
PAGE 41

EXHIBIT "5"
PAGE 273

2020 Cal. App. Unpub. LEXIS 146, *20

did not establish a material benefit. "[T]here's no showing in any of your paper[s] that if we did anything different than you would get all that money from the house and not have to pay him anything."

The court found meritless Wife's claim to be "caught off[-]guard and unaware the parties [*21] "were negotiating all matters." It reasoned the matter was set for trial and everyone was prepared for the proceedings before negotiations began. It noted the matter was continued to permit Wife to "get more information from the trust and to try to figure out if it was possible" to buy out Husband. The court ruled it was disingenuous for Wife to assert she did not intend the stipulated judgment to be a final decision as to the entire divorce. It added there was no evidence to support the claim of over $60,000 in support arrearages.

The court told Wife that if she determined spousal support was insufficient, or if there was a need to change custody/visitation, she may file a request to modify these orders. It ruled the need for modification was not a reason to set aside portions of the judgment. "The law does not allow the court to set aside a judgment just because somebody is unhappy" or now feels "something is inequitable." It reasoned Wife's unilateral mistake about how the delinquent mortgage payments would affect her credit cannot serve as grounds to set aside the judgment. It explained there was nothing raised in the various pleadings that would lead the court to conclude any portion [*22] of the stipulated judgment materially affected the outcome. Wife's possession of the home or receipt of one-half of the net sales proceeds of the home "does not equate to a material benefit or a loss." The court's minute order indicated that after denying Wife's motion to set aside the stipulated judgment, the court asked Husband to prepare a final judgment.

DISCUSSION

Unlike most civil judgments that may be set aside only within six months of entry and on the grounds specified in *Code of Civil Procedure section 473*, marital dissolution judgments may be set aside under *sections 2121*, *2122*, and *2123* for a longer period of time and on a broader array of grounds. (*Rubenstein v. Rubenstein (2000) 81 Cal.App.4th 1131, 1143-1146, 97 Cal. Rptr. 2d 707*.) Relevant to this case, *section 2122* empowers a court to set aside a marital dissolution judgment if the moving party proves "[a]ctual fraud," a "mistake of law or mistake of fact," or duress. (*§ 2122, subds. (a), (c), (e)*.) The court has authority to "relieve a spouse from a judgment" or any parts of the judgment "after the six-

month time limit of [*Code of Civil Procedure] section 473*" as long as the court finds "that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (*§ 2121, subd. (b)*.) (See *In re Marriage of Kieturakis (2006) 138 Cal.App.4th 56, 89-90, 41 Cal. Rptr. 3d 119* [moving party has burden of proof].)

*Code of Civil Procedure section 473* and the Family Code [*23] statutory scheme (*sections 2121 through 2123*) "coexist, operating as alternative bases for relief, depending on when the application is filed." (*In re Marriage of Heggie (2002) 99 Cal.App.4th 28, 32, 120 Cal. Rptr. 2d 707 (Heggie)*.) "There is one interesting interaction between the two statutory schemes: [S]ection 2123 necessarily superimposes a per se rule on the trial court's discretion under [*Code of Civil Procedure] section 473*. *Section 2123* is plain that where the only reason to set aside a judgment is that it was 'inequitable when made,' the trial court is affirmatively commanded *not* to set the judgment aside under 'any' law. *Section 2123* reads: '*Notwithstanding* any other provision of this chapter, or *any other law*, a judgment may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the division of assets or liabilities to become inequitable, or the support to become inadequate.' (Italics added.) Thus to whatever degree [*Code of Civil Procedure] section 473* jurisprudence might have, prior to the enactment of the [Family Code statutory scheme], countenanced the setting aside of a family law judgment because it was somehow 'inequitable,' that discretion has now been expressly curtailed. [¶] Put another way, *section 2123* represents a fixed legal principle that may not be substantively contravened by the trial [*24] court in considering a discretionary application for relief under *section 473*." (*Heggie, supra, 99 Cal.App.4th at p. 33*, fn. omitted.) Therefore, the court lacks authority to set aside a judgment simply because there is evidence one party benefits from a windfall, or "naked lopsidedness of the deal in hindsight" suddenly is revealed. (*Id. at p. 36*.)

In summary, the moving party has the burden of satisfying the following three factors: (1) facts establish one of the grounds for relief listed in *section 2122* (fraud, duress, mistake, perjury etc.); (2) these facts "materially affected the original outcome" (*§ 2121*) in some way other than being inequitable (*§ 2123*); and (3) "the moving party would materially benefit" from setting aside the judgment (*§ 2121*).

# EXHIBIT 5-045

EXHIBIT "2"
PAGE 42

EXHIBIT "5"
PAGE 274

2020 Cal. App. Unpub. LEXIS 146, *24

"A judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent. [Citation.]" (*In re Marriage of Gray (2002) 103 Cal.App.4th 974, 977-978, 127 Cal. Rptr. 2d 271*.) We reverse a decision denying a motion to set aside only if there has been a clear abuse of discretion leading to an "injury sufficiently grave as to amount to a manifest miscarriage of justice. [Citations.]" (*In re Marriage of Rosevear (1998) 65 Cal.App.4th 673, 682, 76 Cal. Rptr. 2d 691*.) Wife did not meet her burden of proof.

I. *Fraud Allegations*

The type of fraud described in *section 2122, subdivision (a)*, includes extrinsic fraud, a traditional [*25] equitable basis for setting aside a judgment. (*Kuehn v. Kuehn (2000) 85 Cal.App.4th 824, 832-833, 102 Cal. Rptr. 2d 743* (*Kuehn*).) "Extrinsic fraud occurs where a party is deprived of the opportunity to present her claim or defense to the court, or in some manner fraudulently prevented from fully participating in the proceeding." (*Ibid.*)

*Section 2122* also permits a judgment to be set aside due to intrinsic fraud because subdivisions (b), (e), and (f) provide perjury, mistakes of law or fact, and "failure to comply with the disclosure requirements" are additional grounds for relief. (See *Kachig v. Boothe (1971) 22 Cal.App.3d 626, 634, 99 Cal. Rptr. 393* ["in a litigated case the concealment or suppression of material evidence is held to constitute intrinsic fraud"]; *Kuehn, supra, 85 Cal.App.4th at p. 833* [explaining traditional rule that distinguished extrinsic fraud from "intrinsic fraud, such as perjury, which was not a valid ground for relief"].)

Wife's discussion of fraudulent activity is lengthy. In addition to 68 pages in the opening brief, Wife created a six-page chart listing 72 different fraud allegations (in extremely small font text). Most of these allegations were asserted below in her motion, amended declarations, and supplemental responses.[5]

In a nutshell, Wife maintains she uncovered Husband's fraudulent scheme to destroy her livelihood, unfairly

---

[5] To the extent Wife raised new issues of fraudulent activity in her appellate briefing, we cannot consider those allegations. Our review of the trial court's ruling under an abuse of discretion standard must be limited to the evidence considered by the trial court in Wife's motions and supplemental responses. This court cannot rewrite the motion to include new facts raised for the first time on appeal.

take away [*26] her home and assets, and leave her penniless. Wife's brief repetitively asserts Husband lied about his income, failed to disclose assets, violated court orders, and committed other misdeeds as part of a "diabolical plan" to take all the marital assets and the children.

However, the record suggests Wife was aware of most of Husband's purported scheming before she signed the global settlement, which became the stipulated judgment. In February 2017, one month before signing the stipulation, and four months before executing the global settlement, Wife filed an OSC regarding contempt based on allegations Husband failed to pay bills in violation of a prior support order. It cannot be said Wife was completely unaware of Husband's alleged misconduct. Wife's admission she borrowed money to pay the mortgages confirms she suspected Husband was letting the property fall into a foreclosure status to facilitate a quicker divorce.

If we assume, for the sake of argument, Wife established external or internal fraud (or even a mistake in fact), the trial court nevertheless lacked authority to set aside the judgment. As discussed earlier, the trial court must also determine "that the facts alleged as the [*27] grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." (*§ 2121, subd. (b)*, italics added.) As discussed earlier, this requirement relates to *section 2123*'s legal principal that a trial court cannot set aside a judgment solely because it appears to be unfair or inequitable to a party, either at the time it was entered, or due to subsequent circumstances. We agree with the trial court's determination Wife failed to present evidence to establish these requirements (*§§ 2121 & 2123*.) It was not enough to simply establish fraudulent conduct.

With respect to the family residence, the judgment contained the outcome Wife requested in her initial declaration. She wanted to delay selling the house. The judgment provided Wife with three weeks to arrange for and find money to buy out Husband. Wife wanted to purchase the family residence for a fair price. The judgment provided favorable buy out terms where Wife was paying Husband less than his community property share.[6]

---

[6] Wife declared the house appraised for $1,250,000, but due to encumbrances, had approximately $993,000 in equity. Husband's half, his community property share, would be $496,500. The judgment provided Wife would pay $450,000 (a

# EXHIBIT 5-046

**EXHIBIT "2"**

**PAGE 43**

**EXHIBIT "5"**

**PAGE 275**

2020 Cal. App. Unpub. LEXIS 146, *27

When the court asked Wife if she had additional evidence regarding how she would materially benefit from setting aside the judgment and if there were grounds for a different outcome, [*28] she replied that she and her children would benefit from keeping the house and it should not be sold. This showing was not enough. Wife needed to prove Husband's alleged misconduct "materially affected the original outcome" of the stipulated judgment. In other words, Wife had the burden of establishing which terms of the stipulated judgment should have been different, as well as how those changes would result in a "material benefit" to her.

We find it very telling that Wife does not discuss the judgment's favorable terms of delaying the sale for three weeks. Rather, on appeal Wife simply argues the court should have postponed the sale until after other issues in the family law case were resolved and after she litigated a separate tort action against Husband. Although she does not articulate the point well in her briefing, we can reasonably infer Wife's position is that to maintain the status quo the stipulated judgment should omit all terms regarding the sale. Essentially, it is her contention that delaying the equitable division of the asset would have been the outcome but for Husband's misconduct.

This argument overlooks how the dispute started. At the end of 2016, Husband requested [*29] a hearing on selling the family residence immediately due to financial difficulties. Wife filed a declaration stating *she wanted to purchase the home* and she desired additional time to make the arrangements. If the parties had not reached an agreement, the court would have held a hearing to consider Husband's request and Wife's "counter memorandum." There was no possibility of a court order or judgment not addressing the division of this marital asset.

Wife argues that if Husband's fraudulent scheme had worked, he would have facilitated foreclosure proceedings and then repurchased the home from the bank at a bargain price. Wife essentially thwarted this plan by negotiating with Husband and agreeing to a global settlement/stipulated judgment giving her three weeks to purchase the property. The judgment's terms regarding the three-week postponement, as well as the agreed upon terms of sale in the event she was unable to purchase the property, both avoided foreclosure proceedings to Wife's benefit. Including terms that maintained the status quo or stopped the home's sale

$46,500 windfall for Wife).

would likely have resulted in the two banks initiating foreclosure proceedings, which would not be to Wife's benefit. [*30]

Accordingly, due to the procedural history of this case, Wife could not have hoped for better terms regarding division of the family residence. She does not explain how an order maintaining the status quo would have been possible, or for that matter, been realistically in her favor.

Wife does not dispute the home was a community property asset subject to an equitable division. We can reasonably infer from the tone of her argument that Wife believes Husband's alleged misconduct during the marriage and after their separation warrants maintaining the status quo as a type of punishment. However, "Fault is simply not a relevant consideration in the legal process by which a marriage is dissolved. Recovery in no-fault dissolution proceedings 'is basically limited to half the community property and appropriate support and attorney fee orders—no hefty premiums for emotional angst.' [Citation.]" (*Diosdado v. Diosdado (2002) 97 Cal.App.4th 470, 474, 118 Cal. Rptr. 2d 494.*)

We also reject Wife's assertion the trial court was required to postpone division of community assets until she completed her tort action against Husband. She provides no legal authority to support this contention. The argument was based on the faulty assumption Wife would prevail in the civil action, [*31] and the award could offset any money owed to Husband. However, a family law court need not stay the dissolution action and order Husband to continue paying for two residences while Wife's civil action percolates in a different courtroom.

## II. Duress Allegations

We appreciate Wife experienced significant pressure and intense emotional duress when she was faced with the imminent threat of foreclosure of her beloved home. She explains how Husband's default on the loans, past incidents of domestic violence, the lack of financial options, poor credit, and bad advice from her attorney were all factors creating an extremely stressful situation and that led to her mistake of signing the global settlement. While we are sympathetic to these alleged circumstances, the type of duress she describes does not satisfy the legal definition of *contractual* duress, required to set aside the stipulated judgment.

*Section 2122, subdivision (c),* does not define the term duress. Generally, "'"[d]uress . . . includes whatever

# EXHIBIT 5-047

EXHIBIT "2"
PAGE 44

EXHIBIT "5"
PAGE 276

2020 Cal. App. Unpub. LEXIS 146, *31

destroys one's free agency and constrains [him or her] to do what is against [his or her] will, and may be exercised by threats, importunity or any species of mental coercion . . . .'" [Citation.] It is shown where a [*32] party 'intentionally used threats or pressure to induce action or nonaction to the other party's detriment. . . . The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing. [Citation.]' [Citation.]" (*In re Marriage of Balcof (2006) 141 Cal.App.4th 1509, 1523, 47 Cal. Rptr. 3d 183* (*Balcof*).)

Although duress may be a tort or a crime, most authorities view the true test as contractual. (See *In re Marriage of Gonzalez (1976) 57 Cal.App.3d 736, 743-744, 129 Cal. Rptr. 566* (*Gonzalez*).) "'"By many if not most of the modern authorities, however, the true doctrine of duress is held to be that a contract . . . obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress. . . ."'" (*Ibid.*) To justify setting aside a stipulated judgment, the party seeking relief must prove the duress so exercised control over her, that her will was absolutely subservient to the will of the offending party. (*Id. at p. 744.*) This test does not turn on the nature of the threats, but on the state of mind induced in the victim. (*Ibid.*) The court must take into consideration the attributes or characteristics of [*33] the party claiming duress, including her ability to resist. (*Ibid.*)

Accordingly, to prove contractual duress, Wife faced a very high hurdle of proof. "The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing. [Citation.]" (*In re Marriage of Baltins (1989) 212 Cal.App.3d 66, 84, 260 Cal. Rptr. 403* (*Baltins*).) It is not enough to demonstrate Husband intentionally threatened her by his actions or words to induce her to sign the agreement, and it is not enough to show this coercion induced fear. Wife must show the duress utterly destroyed her free will. "It is well settled that a contract . . . may be set aside for duress only if it was '"obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property . . . as to deprive him of the free exercise of his will."'" [Citations.]" (*In re Marriage of Broderick (1989) 209 Cal.App.3d 489, 499, 257 Cal. Rptr. 397* (*Broderick*).) Consequently, if the coerced party had mixed motives for agreeing to the contract, no duress will be found. (*Ibid.*)

For example, in the *Broderick* case, the wife, who had been the victim of past threats and domestic violence, conceded that she assigned a quitclaim deed to her husband because she wanted to leave him and needed the money. (*Broderick, supra, 209 Cal.App.3d at p. 499.*) She also agreed that when she signed the [*34] deed, her husband was not making threats or acting violent. (*Ibid.*) The court determined Wife had not proven duress.

Similarly, if time has passed between the alleged coercion and execution of a stipulated judgment, no duress will be found. In *In re Marriage of Rosevear (1998) 65 Cal.App.4th 673, 685-686, 76 Cal. Rptr. 2d 691* (*Rosevear*), the court found no cognizable "duress" where the record showed that a complaining spouse's consent to a stipulated judgment was "freely, knowingly and voluntarily given," where she had three months to reflect on the agreement and obtain independent advice before signing the stipulated judgment, and had been thoroughly questioned by a settlement judge to ensure that she understood the agreement.

The passage of time rebuts the inference a party was deprived of the exercise of free agency, or lacked any reasonable alternative but to agree to what she later claimed was a coerced agreement. (See *Rosevear, supra, 65 Cal.App.4th at p. 686* [fact that alleged violence took place months before settlement agreement was signed rebutted inference of duress].) Thus, if the coerced party had time to reflect on the terms of the stipulation and/or obtain legal advice, but nevertheless signs an agreement she later regrets, she is not a victim of duress. Rather, she is suffering from "'buyer's [*35] remorse.'" (*Rosevear, supra, 65 Cal.App.4th at p. 686.*)

In this case, it cannot be said the court abused its discretion in determining wife failed to present adequate evidence of contractual duress. Wife's description of the history of domestic violence was remote and Wife did not assert Husband threatened or pressured her when she signed the stipulation or when she executed the global settlement agreement several months later. At the time of execution, Wife was represented by counsel and was given time to investigate the availability of her father's trust fund money, obtain advice from others, and organize financing to buy out Husband's part of the home. Wife, with the assistance of counsel, negotiated a deal with Husband to buy out his share for the compromised sum of $450,000. As mentioned earlier, this sum appears to be less than Husband's anticipated community property share (half of $1,250,000 minus the

# EXHIBIT 5-048

EXHIBIT "2"
PAGE 45

EXHIBIT "5"
PAGE 277

2020 Cal. App. Unpub. LEXIS 146, *35

outstanding mortgages).

Thus, Wife convinced Husband to postpone the sale and accept a lower pay out. While Husband created pressure to take immediate action to avoid foreclosure, the stressful situation did not preclude Wife from considering her options for two months or prevent her from negotiating favorable terms regarding [*36] the house. This was an insufficient showing Husband's conduct deprived Wife of the exercise of her free will or that she lacked any "reasonable alternative to succumbing." (*Baltins, supra, 212 Cal.App.3d at p. 84;* see also *Balcof, supra, 141 Cal.App.4th at p. 1523.*)

In *Rosevear,* a couple engaged in long-term negotiations throughout which the wife was intermittently represented by a series of attorneys. (*Rosevear, supra, 65 Cal.App.4th at pp. 676-679.*) The parties reached an oral agreement after a day-long settlement conference before a panel of three temporary judges. (*Id. at p. 679.*) That agreement was read into the record and, three months later, the wife executed the stipulated judgment. (*Id. at pp. 679-680.*) Six months later, represented by new counsel, the wife moved to set aside the stipulated judgment and settlement agreement claiming she had executed it under duress and due to mistake. (*Id. at pp. 680-682.*) The appellate court affirmed the trial court's ruling denying wife's motion to vacate. (*Id. at pp. 686-687.*) "The transcript of [the settlement judge's] voir dire at the settlement conference contains no hint of coercion or duress. To the contrary, [the judge] took extraordinary pains to ensure that [the wife's] agreement was freely, knowingly and voluntarily given. . . . [The wife] was clearly and expressly given sufficient opportunity to complain or object. If [*37] she had truly felt coerced or pressured to agree at the time of the settlement conference, surely some indication would appear in the reporter's transcript." (*Id. at pp. 685-686.*) The voir dire coupled with the fact that the wife waited three months after the settlement conference to execute the stipulated agreement "provide[d] strong evidence in support of the trial court's conclusion that [she] failed to establish . . . duress." (*Id. at p. 686.*) The court observed that when a contracting party has had ample time to reflect and obtain advice, this is likely to be evidence of garden variety "'buyer's remorse'" not duress. (*Id. at p. 686.*)

Similarly, in the case before us, Wife's voir dire does not suggest she executed the stipulation or the global settlement under duress. In addition to answering questions posed by her attorney about the agreement, the court sought clarification about whether Wife understood the global settlement was a significant compromise and she "could come out better" or worse if she went to trial. The court mentioned the settlement covered many topics the court usually evaluates and balances equally between the parties, including spousal support, credits, reimbursement, and attorney fees. The court asked [*38] each party if they understood the court did not balance these items because "you've globally compromised it." Wife responded, "Yes." When the court asked if either party had any questions, Wife simply asked, "Are we divorced? Are we free?" She also asked the court how long it would take for Husband's counsel to prepare the final judgment and wanted the court to impose a deadline. Such demands are not made by a person completely deprived of free will.

Finally, we conclude Wife failed to demonstrate Husband's purported threats or coercion destroyed her free will because she concedes other factors influenced her decision to sign the agreement. Specifically, Wife admits she signed the agreement because her attorney gave her bad advice. Mixed motives are insufficient to establish duress. (*Broderick, supra, 209 Cal.App.3d at p. 499* [contracting party does not act under duress where he or she admittedly has multiple motives for entering into the agreement].)

III. *Alleged Legal Malpractice*

Wife's initial declaration asserted there was inadequate time to consult with an attorney and, at the same time, she met with an attorney who pressured her to sign the stipulation and global settlement. She suggested the court was required to set aside [*39] the judgment because her attorney, who negotiated the stipulated judgment, was negligent. We disagree. As explained in *Rosevear,* attorney negligence is not a distinct ground for setting aside a marital dissolution judgment: "[E]ven though attorney negligence will not be imputed to a client to bar an order setting aside a judgment, such an order may still only be granted if it is based on one of the five exclusive grounds specifically set forth in *section 2122.*" (*Rosevear, supra, 65 Cal.App.4th at p. 686.*) "Attorney negligence is not itself one of these enumerated grounds for setting aside a judgment. The fact that attorney negligence is not a bar to setting aside a dissolution judgment does not transform it into a form of fraud, perjury, duress, mental incapacity, mistake, or other ground *for* setting aside a judgment." (*Ibid.*)

IV. *Alleged Court Bias*

In her briefing, Wife's mantra is that the court was obligated to address Husband's failure to comply with

# EXHIBIT 5-049

EXHIBIT "2"
PAGE 46

EXHIBIT "5"
PAGE 278

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 288 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 50 of 76

Page 12 of 16

2020 Cal. App. Unpub. LEXIS 146, *39

court orders. Wife believes an unbiased court would have imposed evidentiary sanctions after Husband refused to disclose documents, hid assets, and lied about his income. She is baffled as to why the court refused to impose sanctions or hold Husband in contempt. She speculates the court [*40] was biased against her because it believed Husband's claim she was a hoarder with psychological problems. While Wife acknowledges the court never made any factual findings regarding Wife's mental state, she asserts the only possible reason the court would have ignored her evidence of fraud and ruled against her was judicial bias against her.

"The operation of the *due process clause* in the realm of judicial impartiality . . . is primarily to protect the individual's right to a fair trial." (*People v. Freeman (2010) 47 Cal.4th 993, 1000, 103 Cal. Rptr. 3d 723, 222 P.3d 177* (*Freeman*).) "The role of a reviewing court 'is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the challenging party] a fair, as opposed to a perfect, trial. [Citation.]' [Citation.]" (*People v. Harris (2005) 37 Cal.4th 310, 347, 33 Cal. Rptr. 3d 509, 118 P.3d 545.*)

Wife forfeited any claim of judicial bias by failing to assert it below. (See *People v. Farley (2009) 46 Cal.4th 1053, 1110, 96 Cal. Rptr. 3d 191, 210 P.3d 361*; *People v. Samuels (2005) 36 Cal.4th 96, 114, 30 Cal. Rptr. 3d 105, 113 P.3d 1125*.) Moreover, none of Wife's bias allegations relate to statements the court made on the record. Rather, Wife infers bias from the rulings made in Husband's favor. "'[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge [*41] of judicial bias, especially when they are subject to review.' [Citation.]" (*People v. Fuiava (2012) 53 Cal.4th 622, 732, 137 Cal. Rptr. 3d 147, 269 P.3d 568.*)

V. *Other Due Process Concerns*

A. *Request for Attorney Fees*

Wife maintains the court ignored her request for need-based attorney fees. Her supporting record references show her "request" was made on pages 29 and 32 of her December 2017 "supplemental declaration" in support of her motion to set aside the stipulated judgments of May and June 2017. On page 32, Wife stated she "petitions the court" for attorney fees and costs pursuant to *section 2032.*

Wife's briefing does not contain any legal analysis or legal citations to support her claim the trial court erred in failing to rule on her request for attorney fees that she buried deep within a supplemental declaration. (See *In re Marriage of Sharples (2014) 223 Cal.App.4th 160, 166, 166 Cal. Rptr. 3d 818* [party seeking attorney fees and costs under *section 2030* must file and serve either form FL-319 or comparable declaration listing amount of fees and costs requested, attorney billing rates, notice to party, and personal declaration as to financial need].)

In addition to procedural and due process concerns with Wife's attorney fee request, it appears the court could have determined Wife abandoned the issue because she did not request a ruling during the hearing. Alternatively, [*42] the court could have recognized its obligation to uphold the stipulated judgment's attorney fee agreement. Because the trial court determined there were no valid grounds to set aside the stipulated judgment, the attorney fee provision was valid. It stated, "Each party shall their own attorney[] fees and costs and shall not be responsible for the attorney[] fees and costs of the other party." It also contained a prevailing party attorney fee provision. In other words, the court likely determined Wife waived her right to need-based attorney fees under *section 2032* as part of the global settlement.

In a marital settlement agreement, parties to a dissolution proceeding or to an action relating to a dissolution judgment may contractually waive their rights to need-based attorney fee awards under *sections 2030* and *2032*. (See, e.g., *In re Marriage of Guilardi (2011) 200 Cal.App.4th 770, 774-775, 132 Cal. Rptr. 3d 798.*) Determining whether the parties intended to waive their statutory rights depends on their expressed intent in the stipulated judgment, requiring application of general rules of contract interpretation. (See generally *In re Marriage of Iberti (1997) 55 Cal.App.4th 1434, 1439, 64 Cal. Rptr. 2d 766* ["Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally"].)

Wife [*43] does not provide legal analysis or discussion regarding the issue of her contractual waiver of need-based attorney fees. Accordingly, we deem the attorney fee issue waived. (*Badie v. Bank of America (1998) 67 Cal.App.4th 779, 784-785, 79 Cal. Rptr. 2d 273* (*Badie*) ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

# EXHIBIT 5-050

Page 13 of 16

2020 Cal. App. Unpub. LEXIS 146, *43

**B.** *No Statement of Decision*

Wife maintains the court ignored her two written requests for a statement of decision. As noted by Husband, the court provided an oral statement of decision on January 26, 2018, at the end of the hearing on Wife's motion to set aside the stipulated judgment. Nothing more was required. Under section 632, the court may give an oral statement of decision if the hearing was concluded within one day or less than eight hours. (See *In Re Marriage of Katz (1991) 234 Cal.App.3d 1711, 1717, 286 Cal. Rptr. 495*.)

**C.** *No Continuance & Husband's Invocation of Fifth Amendment Rights*

The following is a brief summary of the procedural history regarding these two related issues. Wife's initial motion to set aside the stipulated judgment showed the court scheduled the hearing for October 17, 2017. On that date, the court granted Wife's request for a continuance and scheduled the hearing for December 20, 2017. In November 2017, the **[*44]** court also continued Wife's OSC regarding contempt to December 20, 2017. Before the December 20 hearing date, Wife filed an amended declaration regarding the motion to set aside the judgment.

Meanwhile, on December 12, 2017, Husband filed an objection to Wife's request for a hearing on custody, visitation, and support. He explained Wife's OSC regarding contempt (scheduled for December 20, 2017) was a quasi-criminal action and Husband had a right not to incriminate himself by filing responses to Wife's request for a hearing on custody and support. He asserted a response would require him to provide an income and expense declaration, which would essentially waive his *Fifth Amendment* right against self-incrimination. Husband noted Wife filed a second OSC regarding contempt, which was scheduled for January 5, 2018.

On December 13, 2017, Wife filed her third supplemental response to her motion to set aside the judgment. On December 18, 2017, two days before the scheduled hearing, Wife filed a confusing document titled, "Further reply with alternative solution re: [Husband's] objections to hearing on the requests for orders regarding custody, support, visitation and any other proceeding other than a motion **[*45]** to set aside." (Capitalization omitted.) On appeal, she claims this document was a request for a continuance.

The document has only 11 lines. In the first sentence, Wife offers the court "a clean solution to the problem presented by [Husband]." She suggests that the court should hear her two OSCs regarding contempt before the motion to set aside and all other motions regarding support and attorney fees. She explained this plan "will allow all the motions to be heard without them being impeded by the issue of [Husband] taking the *Fifth Amendment*."

Wife does not explain why the court should have construed her further reply as a request for a continuance. Wife's solution of having the court consider the two OSCs before the motion to set aside the stipulated judgment did not necessarily require a continuance. All three motions could have been heard on the same date.

On December 20, 2017, the court continued the hearing on the motion to set aside the judgment to January 19, 2018. The two OSCs regarding contempt were continued to February 20, 2018.

On January 16, 2018, two days before the scheduled hearing, Wife filed her final supplemental response in support of the motion to set aside the judgment. On the **[*46]** scheduled hearing date, the court on its own motion continued the matter to January 26, 2018.

It appears Wife's final argument is that the court violated her right to due process by continuing the hearing date on its own motion. Wife asserts her final 27-page supplemental response, filed on January 16, 2018, informed the court she intended to call three witnesses. She asserts the court abused its discretion when it refused to grant her a continuance to present her witnesses or cross-examine Husband "who was taking the Fifth." The legal basis for this argument is unclear.

The caption of the supplemental response does not mention the need for three additional witnesses or for a hearing on a certain date. Wife does not provide a record reference to support her claim this information was contained in the 27-page supplemental response. Accordingly, we deem this issue waived. (*Badie, supra, 67 Cal.App.4th at pp. 784-785.*)

Wife asserts she objected to the continuance, however, she refers to a written objection she filed on February 7, 2018, long after the hearing on her motion to set aside the judgment. In the objection, Wife claimed she called the court clerk and said her witness was unavailable on the new hearing date (January 26, **[*47]** 2018). She recalled the court clerk informed her to tell the court

**EXHIBIT 5-051**

EXHIBIT "2"
PAGE 48

EXHIBIT "5"
PAGE 280

2020 Cal. App. Unpub. LEXIS 146, *47

about her witness on January 26 and ask, "if they could be heard via telephone." Wife asserted the court denied this request, which was an abuse of due process.

The reporter's transcript indicates Wife told the court "I do have a witness that can testify to the intentional putting [sic] the mortgage into foreclosure status, and he was available last week and the hearing got continued. He is available on the phone." The court stated it was unwilling to hear the witness testify on the telephone. Wife replied "or we can do a short continuance" to a date the witness was available. The court indicated this was unnecessary because Wife's primary allegation did not relate to being unaware of the foreclosure status, but rather that she did not realize the late payments would be detrimental to her credit and ability to secure a loan. Wife agreed this was her main contention, As mentioned, the court ruled Wife's fraud allegations were insufficient to set aside the judgment because she also needed to establish how those facts materially affected the outcome and how she would have materially benefitted by the relief requested.

On [*48] appeal, Wife does not suggest why the court's refusal to allow additional evidence proving fraud prejudiced her case. She does not claim this witness would have contributed evidence to the determinative issue of how the outcome would have been different and materially beneficial. Moreover, based on our review of the record, it does not appear that Wife asked the court to rule on a continuance request. There is actually no order for us to review on appeal.

D. *Refusal to Bifurcate*

Wife asserts her due process rights were violated when the court refused to "grant or deny" her request to "[b]ifurcate the real property issues pending the outcome of her torts [sic] against [Husband] in Case No. 30-2018-00986705-CU-FR-CJC." She elaborates that on December 18, 2017, she requested that the court "bifurcate the family home and order a deferred sale pending the division of assets, debts, offsets for back and present support and the outcome of the lawsuit against [Husband] based on his fraudulent scheme to obtain the family home through deceit and fraud during the divorce which created an unequal division of community property[.]"

Wife's supporting record references show her request for bifurcation [*49] was not raised in a separate motion. Rather, the request was listed as the fifth item on her December 13, 2017, "supplemental declaration in response to [the] motion to set aside stipulated

judgments." (Capitalization omitted.) She wrote the following: "[Wife] is asking this [c]ourt to 'bifurcate' or divide the divorce into two parts. The divorce can be made final while the issues surrounding the disputed property division and division of debts and assets can be set for trial. Bifurcation is proffered so that [Wife] can present evidence based on [Husband's] actions, as set forth in her pleadings, will prove how [he] willfully, wantonly, and maliciously created a diabolical scheme and acted on said scheme to deprive [Wife] and her children of an equal division of the couples assets, namely the family home located [in] Newport Beach, California."

She asserts the family law court failed to exercise its discretion and rule on the merits of the bifurcation request. To support this allegation, Wife cites to pages 1457-1480 of the clerk's transcript. Within these 23 pages is the court's minute order, stating Husband must make several corrections to the proposed judgment based on its review [*50] of Wife's objections. Not surprisingly, this order, written seven days before Wife's bifurcation request, does not mention the issue of bifurcation. Wife's request was not before the court at that time. The rest of the cited pages contain the following documents: (1) Wife's reply to Husband's objections to having a hearing on orders relating to custody, support, and visitation; and (2) Wife's reply to Husband's objections to proofs of service. Neither of these documents prove the court failed to rule on the merits of Wife's bifurcation request.

We appreciate Wife orally requested bifurcation at the hearing on her motion to set aside the stipulated judgment. When the court asked her about the lawsuit, Wife admitted she had not yet filed a tort action against Husband. It is disingenuous for Wife on appeal to assert the court erred in refusing to consider a tort action filed *after* the court's ruling. The court need not consider speculative arguments.

Wife's argument lacks merit for the additional reason that her request to bifurcate family law issues was included in documents relating to her motion to set aside the stipulated judgment. The issues Wife wanted the court to bifurcate were [*51] resolved in the stipulated judgment. The court had no legal basis to bifurcate matters no longer pending.

For this same reason, we reject Wife's assertion the court abused its discretion by failing to consider her request for a deferred sale of the home. *Sections 3801* and *3802* permit a court to defer the sale of a family

EXHIBIT 5-052

EXHIBIT "2"
PAGE 49

EXHIBIT "5"
PAGE 281

2020 Cal. App. Unpub. LEXIS 146, *51

home where certain conditions are met, relating to limited factual circumstances. However, in this case the court lacked jurisdiction to consider this particular issue because the fate of the family home was completely resolved by the stipulated judgment. The judgment provided Wife had three weeks to buy out Husband's share of the house, or the parties must cooperate to sell the property and divide the proceeds. After the court determined there were insufficient grounds to set aside the judgment, there was no legal basis to disturb the final judgment and revisit the issue of whether the house should be sold. "A stipulated judgment is as conclusive as to the matters in issue it determines as a judgment after trial. [Citation.]" (*Sargon Enterprises, Inc. v. University of Southern California (2013) 215 Cal.App.4th 1495, 1507, 156 Cal. Rptr. 3d 372*.) The doctrine of res judicata bars further litigation regarding the fate of the family residence.

### VI. Disentitlement Doctrine

Husband asserts Wife lacked standing [*52] to appeal from a judgment because she violated the trial court's order and judgment to cooperate with efforts to sell the house. This argument is somewhat paradoxical because in our record the only evidence suggesting a party violating court orders relates to Husband. The record shows two scheduled OSCs regarding contempt relating to his alleged failure to pay court-ordered utility bills, spousal support, and child support. Husband never denied that he violated the order requiring he pay two mortgages, which put the loans in default, damaged the couple's credit rating, and created a threat of foreclosure. Disentitlement is based on an equitable rationale, and we are mindful of the maxim that one who comes to court seeking equity must come with clean hands. (See *Blain v. Doctor's Co. (1990) 222 Cal.App.3d 1048, 1059, 272 Cal. Rptr. 250*.)

Husband cites authority holding the following: "'An appellate court has the inherent power, under the "disentitlement doctrine," to dismiss an appeal by a party that refuses to comply with a lower court order. [Citations.] As the Supreme Court observed . . . .. "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders [*53] and processes of the courts of this state. [Citations.]" [¶] . . . [An] equitable rationale underl[ies] the doctrine. "Dismissal is not "a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance'" with a presumptively valid order.""'

[Citation.] 'No formal judgment of contempt is required; an appellate court "may dismiss an appeal where there has been *willful disobedience or obstructive tactics*. [Citation.]" [Citation.] The doctrine "is based upon fundamental equity and is not to be frustrated by technicalities." [Citation.]' [Citation.]"' (*Blumberg v. Minthorne (2015) 233 Cal.App.4th 1384, 1390-1391, 183 Cal. Rptr. 3d 179* (*Blumberg*).)

Our record does not contain any evidence Wife failed to comply with a lower court order before she filed this appeal. Indeed, Husband does not suggest Wife acted inappropriately before filing this appeal. We note that she has not violated any orders issued by this court.

Husband suggests evidence of more recent incidents of misconduct in the trial court warrant her dismissal. He filed a request asking this court to take judicial notice of a court order, dated November 9, 2018, which indicates Wife violated court orders. Without having the benefit [*54] of any supporting legal authority, Husband argues Wife should be dismissed from this appeal because "[t]hroughout this entire appellate proceeding, [Wife] has been in violation" of the trial court's orders to help sell the family residence and she "instead sought unsuccessfully to postpone any such sale." This argument runs contrary to Husband's case authority and the holding of *Blumberg*. The test is whether Wife sought assistance from the appellate court while standing "in an attitude of contempt." (*Blumberg, supra, 233 Cal.App.4th at pp. 1390-1391*.) When Wife filed this appeal, there was no evidence she had willfully disobeyed trial court orders. Husband's argument lacks merit, and we deny his request for judicial notice.

### VII. Motion to Dismiss

Husband's motion to dismiss the appeal was made on the grounds Wife cannot appeal from a judgment because she benefitted from it. In summary, Husband asserts Wife cannot try to buy the property as permitted by the judgment and then later attack the validity of that same judgment. We disagree.

As a general rule, "one who *accepts* the *benefits* of a judgment cannot thereafter attack the judgment by appeal." (*Lee v. Brown (1976) 18 Cal.3d 110, 114, 132 Cal. Rptr. 649, 553 P.2d 1121* (*Lee*).) The Supreme Court has repeatedly stated the rule as follows: "'The right to accept [*55] the fruits of a judgment, and the right of appeal therefrom are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these courses is, therefor, a renunciation of the other.' [Citation.]" (*Id. at p. 114*.) In other words, the

# EXHIBIT 5-053

EXHIBIT "2"
PAGE 50

EXHIBIT "5"
PAGE 282

2020 Cal. App. Unpub. LEXIS 146, *55

acceptance of a judgment's benefits "constitutes an '. . . affirmance of the validity of the judgment against him [or her].' [Citation.]" (*Ibid.*)

"This general rule has been applied in a number of contexts. (See, e.g., *Schubert v. Reich (1950) 36 Cal.2d 298, 223 P.2d 242* [appellant accepted money pursuant to an order of the court that had explicitly conditioned the granting of plaintiff's motion for a new trial on the payment to defendant of that money, which order appellant then attempted to challenge]; *Giometti v. Etienne (1936) 5 Cal.2d 411, 55 P.2d 216* [appellants paid the balance due on a contract of purchase, received a conveyance of property, encumbered that property, and filed a satisfaction of judgment]; *Wilson v. Wilson (1958) 159 Cal.App.2d 330, 323 P.2d 1017* [appellant accepted the benefits of a divorce decree and then sought to appeal the portion of the decree imposing obligations upon him] . . . .)" (*Lee, supra, 18 Cal.3d at pp. 114-115.*) "'Although the acceptance must be clear, unmistakable, and unconditional [citation], acceptance of even a part of the benefit of a judgment or order will ordinarily preclude an appeal [*56] from the portion remaining. [Citation.]' [Citation.]" (*Satchmed Plaza Owners Assn. v. UWMC Hospital Corp. (2008) 167 Cal.App.4th 1034, 1041-1042, 84 Cal. Rptr. 3d 585* (*Satchmed Plaza Owners*).)

"'As is so often the case, however, application of the rule has generated a number of equitable exceptions.' [Citation.] For one, 'a waiver will be implied [only] where there is *voluntary compliance* with a judgment . . . ,' [Citation.] 'Thus where compliance arises under compulsion of risk or forfeiture, a waiver will not be implied. [Citations.]' [Citation.] For another, 'one may appeal from a portion of a severable and independent judgment while accepting the benefits of the unaffected remainder of the judgment. [Citations.]' [Citation.]" (*Satchmed Plaza Owners, supra, 167 Cal.App.4th at p. 1042.*) Wife maintains both that she acted under compulsion in an attempt to purchase the family home and that portions of the judgment were severable, such as the inclusion of terms unrelated to the home and terms not previously discussed.

We reject Husband's argument for a different reason. Wife did not need the judgment to investigate lenders or seek financing. Ultimately, she was unable to find enough money to take advantage of the benefit offered to her by the judgment. A clear acceptance would have taken place if Wife purchased the home and then sought to set aside [*57] other portions of the judgment, such as the spousal/child support or the *Gavron*

warning. Accordingly, we conclude Wife did not waive her right to appeal. We deny the motion to dismiss.

DISPOSITION

We affirm the postjudgment order. We deny the request for judicial notice and the motion to dismiss. In the interests of justice, each party shall bear their own costs on appeal.

O'LEARY, P. J.

WE CONCUR:

THOMPSON, J.

GOETHALS, J.

_____

End of Document

# EXHIBIT 5-054

**EXHIBIT "3"**

**EXHIBIT 5-055**

Case 8:21-bk-10635-SC   Doc 845   Filed 09/13/22   Entered 09/13/22 11:46:13   Desc
Main Document      Page 294 of 350

Case 8:21-bk-10635-ES   Doc 653   Filed 04/28/22   Entered 04/28/22 18:44:00   Desc
Main Document      Page 56 of 76

Case 8:21-bk-10635-ES   Doc 46   Filed 05/24/21   Entered 05/24/21 18:10:57   Desc
Main Document      Page 46 of 124

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE, WEST JUSTICE CENTER

DEPARTMENT W10

RYAL W. RICHARDS,                     )
                                      )
              PETITIONER,             )
                                      )
         VS.                          )    CASE NO. 15D009634
                                      )
ALICIA MARIE RICHARDS,                )
                                      )
              RESPONDENT.             )
_____)


HONORABLE ANDRE DE LA CRUZ, JUDGE PRESIDING

REPORTER'S TRANSCRIPT

OCTOBER 23, 2020


APPEARANCES OF COUNSEL:

FOR THE PETITIONER:        KEVIN E. ROBINSON
                           ATTORNEY AT LAW

FOR THE RESPONDENT:        (NO APPEARANCE)


WENDY A. TORRES, CSR NO. 10856
OFFICIAL COURT REPORTER

46

**EXHIBIT 5-056**

**EXHIBIT "3"**
**PAGE 52**


**EXHIBIT "5"**
**PAGE 285**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 295 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 57 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 47 of 124

1.

```
 1              ORANGE, CALIFORNIA - OCTOBER 23, 2020

 2                    {AFTERNOON SESSION:}

 3            (PROCEEDINGS HELD IN OPEN COURT:}

 4                         *****

 5         THE COURT:  WE'RE ON THE RECORD.

 6         SHE HAS BEEN ORDERED TO BE HERE AT 1:30.  SHE HAS

 7    ADVISED THE CLERK THAT SHE HAS, YET AGAIN, BEEN EXPOSED TO

 8    COVID WHICH I FIND ABSOLUTELY LACKING CREDIBILITY.  I WILL

 9    STATE AS SUCH ON THE RECORD AND I WILL SIMPLY GIVE YOU WHAT MY

10    DECISION IS ON THE TWO MOTIONS PRESENTLY BEFORE ME TODAY.

11         MR. ROBINSON:  OKAY.

12         THE COURT:  DO YOU WANT TO DO THAT OR DO YOU WANT TO

13    WAIT?  YOUR CHOICE.

14         MR. ROBINSON:  I ACTUALLY WOULD PREFER TO WAIT SO SHE

15    CAN'T CLAIM WE DID IT WITHOUT HER AND VIOLATED HER DUE

16    PROCESS.

17         THE COURT:  SHE'S GOING TO DO THAT REGARDLESS.

18         MR. ROBINSON:  I KNOW, BUT IF SHE'S HERE IT WILL LOOK

19    BETTER ON THE RECORD.

20         THANK YOU, YOUR HONOR.

21         THE COURT:  OKAY.  I'LL BE BACK IN 20.

22         (PAUSE IN PROCEEDINGS.}

23         THE COURT:  ON THE RECORD ON RICHARDS AND RICHARDS.

24         APPEARANCE, PLEASE?

25         MR. ROBINSON:  GOOD AFTERNOON, YOUR HONOR.

26         KEVIN ROBINSON ON BEHALF OF RYAL RICHARDS WHO IS
```

47

# EXHIBIT 5-057

**EXHIBIT "3"**
**PAGE 53**

**EXHIBIT "5"**
**PAGE 286**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 296 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document    Page 58 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document    Page 48 of 124

2

1    PRESENT IN THE COURTROOM.

2         THE COURT:  THANK YOU.

3         AND THE COURT IS -- ACTUALLY, WE'RE NOT RELYING ON

4    ADMINISTRATIVE ORDER 20/15 TODAY SINCE YOU ARE PHYSICALLY

5    PRESENT IN THE COURTROOM.

6         THE TIME IS NOW 2:32 P.M.  THIS MATTER WAS CONTINUED

7    PREVIOUSLY AND SET FOR 1:30 P.M.  THESE MATTERS HAVE NOW BEEN

8    CONTINUED MULTIPLE, MULTIPLE, IN FACT, I CAN JUST SAY MANY

9    TIMES.  AND, TO BE VERY SPECIFIC, IT LOOKS LIKE NINE TIMES ON

10   THE MOTION TO DEEM MRS. RICHARDS A VEXATIOUS LITIGANT AND

11   SEVEN TIMES ON THE MOTION REGARDING THIRD-PARTY POSSESSION OF

12   THE FAMILY HOME.

13        IN ANY CASE, TODAY, YET AGAIN, THE CLERK OF THE COURT

14   HAS RECEIVED A PHONE CALL FROM MRS. RICHARDS STATING THAT SHE

15   WAS EXPOSED TO CORONAVIRUS.  THIS EXCUSE HAS NOW BEEN GIVEN BY

16   MRS. RICHARDS THREE OR FOUR TIMES IN SERIATIM.  IN OTHER

17   WORDS, EVERY TIME WE TRY TO HEAR THE CASE, THERE HAS ALWAYS

18   BEEN ONE EXCUSE OR ANOTHER REGARDING WHY MRS. RICHARDS CANNOT

19   BE PRESENT IN THE COURTROOM TODAY.

20        AND BY WAY OF ADDITIONAL HISTORY, WE INITIALLY TRIED

21   TO CONDUCT THIS MATTER, AS THE COURT HAS CONDUCTED THOUSANDS

22   OF OTHER MATTERS, OVER A VIDEO CONFERENCE PLATFORM.  WHEN WE

23   ATTEMPTED TO DO SO, MRS. RICHARDS THEN STATED THAT SHE WAS

24   HAVING TECHNICAL ISSUES, TECHNICAL PROBLEMS, AND WAS UNABLE TO

25   PARTICIPATE AND HEAR THE PROCEEDINGS THAT WERE BEING

26   CONDUCTED.

# EXHIBIT 5-058

**EXHIBIT "3"**
**PAGE 54**

**EXHIBIT "5"**
**PAGE 287**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 297 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document    Page 59 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document    Page 49 of 124

3

1           IN LIGHT OF MRS. RICHARDS' TECHNICAL PROBLEMS, THE

2    COURT FOUND GOOD CAUSE TO BRING YOU FOLKS IN, IN PERSON.  WE

3    HAVE ATTEMPTED TO DO SO ON, AS I SAID PREVIOUSLY, THREE

4    OCCASIONS.  AND ON EACH AND EVERY SINGLE ONE OF THOSE

5    OCCASIONS, MRS. RICHARDS HAS CONTACTED THE CLERK SAYING SHE'S

6    BEEN "EXPOSED TO COVID".  YET, AGAIN, PREDICTABLY,

7    MRS. RICHARDS HAS CONTACTED THE CLERK AND SAID THAT SHE WAS

8    EXPOSED TO COVID AGAIN.

9           SO THE COURT IS VERY CLEAR, THE COURT DOES NOT FIND

10   MRS. RICHARDS TO BE CREDIBLE AT ALL WITH HER CONTENTION

11   REGARDING EXPOSURE OF CORONAVIRUS.

12           IN FACT, AS A RESULT OF HER PRIOR THREE OR FOUR

13   ATTEMPTS FOR THE SAME REASONS, THE COURT HAS ORDERED HER TO

14   BRING IN DOCUMENTATION TO SUPPORT HER DIAGNOSIS OF EITHER

15   HAVING BEEN INFECTED WITH CORONA OR A TEST THAT WOULD INDICATE

16   THAT SHE WAS TESTED FOR COVID EXPOSURE.  TO DATE, NOTHING HAS

17   BEEN SHOWN TO THE COURT.

18           IN LIGHT OF OUR CONSTANT TROUBLES WITH GETTING

19   MRS. RICHARDS IN THE COURTROOM TODAY, THE COURT IS INCLINED TO

20   PROCEED IN HER ABSENCE.

21           MR. ROBINSON, DO YOU AGREE THE COURT CAN PROCEED IN

22   HER ABSENCE?

23           MR. ROBINSON:  YES, YOUR HONOR.  I DO.

24           THE COURT:  IS THERE ANYTHING YOU WISH TO ADD WITH

25   RESPECT TO GOOD CAUSE IN PROCEEDING IN MRS. RICHARDS' ABSENCE?

26           MR. ROBINSON:  YES, YOUR HONOR.  I WOULD JUST MAKE

49

# EXHIBIT 5-059

**EXHIBIT "3"**
**PAGE 55**

**EXHIBIT "5"**
**PAGE 288**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 298 of 350

Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document    Page 60 of 76

Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document    Page 50 of 124

4

1    THE FOLLOWING RECORD OF MATTERS THAT MRS. RICHARDS HAS DONE

2    OUTSIDE OF THIS ACTUAL COURTROOM.

3            THE COURT:  HOLD ON.  WE'LL GET INTO THAT.  I'M JUST

4    ASKING AS FAR AS WHY SHE'S NOT HERE TODAY.

5            IS THERE ANYTHING ELSE WITH THAT?

6            MR. ROBINSON:  NO.  SHE WAS ALSO -- I WOULD ADD THAT

7    YOU ORDERED HER TO PERSONALLY APPEAR TODAY AND, IF NOT, THERE

8    WOULD BE A BENCH WARRANT ISSUED FOR HER AT OUR LAST HEARING.

9            THE COURT:  THAT IS ACCURATE.

10           ALSO, THERE IS A THIRD ISSUE REGARDING THE COURT'S

11   OWN MOTION RE: SANCTIONS THAT HAS BEEN ON REMAND PURSUANT TO

12   ONE OF MRS. RICHARDS' APPEALS.  IN ORDER TO CLEAN UP THIS

13   RECORD, TO KEEP IT VERY CLEAN FOR PURPOSES OF PROCEEDING AFTER

14   TODAY, I'M INCLINED TO SIMPLY VACATE THE COURT'S MOTION

15   REGARDING SANCTIONS.

16           MR. ROBINSON, ARE YOU OKAY WITH THAT?

17           MR. ROBINSON:  I'M OKAY WITH THAT, YOUR HONOR.

18           THE COURT:  OKAY.  NOW, WE'RE PROCEEDING ON THE OTHER

19   MOTIONS AND UNLESS MR. ROBINSON HAS ANYTHING TO HAD, I WILL

20   JUST READ TO YOU, BASED ON ALL OF THE COURT'S SUBMISSIONS AND

21   FILINGS, AND PRIOR TESTIMONY RECEIVED IN THIS CASE, MY

22   RULINGS.

23           DO YOU AGREE?

24           MR. ROBINSON:  I AGREE, YOUR HONOR.

25           THE COURT:  OKAY.  FIRST, WITH RESPECT TO THE

26   THIRD-PARTY POSSESSIONS; CCP SECTIONS 715.010 AND 715.020 ARE

50

# EXHIBIT 5-060

**EXHIBIT "3"**
**PAGE 56**

**EXHIBIT "5"**
**PAGE 289**

Case 8:21-bk-10635-SC   Doc 845   Filed 09/13/22   Entered 09/13/22 11:46:13   Desc
Main Document      Page 299 of 350

Case 8:21-bk-10635-ES   Doc 653   Filed 04/28/22   Entered 04/28/22 18:44:00   Desc
Main Document      Page 61 of 76

Case 8:21-bk-10635-ES   Doc 46   Filed 05/24/21   Entered 05/24/21 18:10:57   Desc
Main Document      Page 51 of 124

5

1   FOUND IN THE SECTION OF THE CODE OF CIVIL PROCEDURE THAT

2   RELATES TO THE ENFORCEMENT OF NON-MONEY JUDGMENTS.  TYPICALLY,

3   THAT SECTION RELATES TO ENFORCEMENT OF A JUDGEMENT FOR

4   POSSESSION OF THE REAL PROPERTY.  CCP SECTION 1174.3 CAN BE

5   FOUND IN THE PORTION OF THE CCP THAT RELATES TO SUMMARY

6   JUDGMET SPECIFICALLY AS RELATED TO UNLAWFUL DETAINER

7   PROCEEDINGS; SEE 1161(4).

8           THIS IS NOT AN UNLAWFUL DETAINER PROCEEDING.  THE

9   FORM USED BY THE THIRD-PARTY CLAIMANT, JONATHAN RICHARDS, IS

10  WHOLLY INAPPLICABLE HERE IN THIS INSTANCE.  IT IS DOUBTFUL

11  THAT JONATHAN EVEN HAS STANDING TO ASSERT A PROPERTY CLAIM IN

12  A DISSOLUTION ACTION BETWEEN HIS PARENTS.

13          IN THIS CASE, MRS. RICHARDS FILED ON BEHALF OF HER

14  ADULT SON, JONATHAN, ON AN FL-300 FORM TO WHICH WAS ATTACHED

15  JUDICIAL COUNSEL FORM CP10, CLAIM OF RIGHT TO POSSESSION.  ON

16  ITS FACE, THE FORM IS AND AT ALL TIMES HAS BEEN DEFICIENT IN

17  THAT THE DATE ON ITEM NUMBER 4 WAS NOT PROPERLY INSERTED,

18  ESSENTIALLY RENDERING THE REST OF THE INFORMATION IN THE FORM

19  USELESS.

20          THIS ACTIVITY SERVES TO HIGHLIGHT YET ANOTHER OF

21  RESPONDENT'S, MRS. RICHARDS, DESPERATE AND MERITLESS ATTEMPTS

22  TO DEFY THE COURT'S ORDER THAT SHE LEAVE THE PREMISES AND

23  PREPARE IT FOR SALE SO THAT THESE PARTIES CAN MOVE ON WITH

24  THEIR SEPARATE LIVES.

25          MRS. RICHARDS' ARGUMENTS IN OPPOSITION TO THIS MOTION

26  ARE BASED ON THE AUTOMATIC STAY AFFORDED BY FILING HER APPEAL

51

# EXHIBIT 5-061

**EXHIBIT "3"**
**PAGE 57**

**EXHIBIT "5"**
**PAGE 290**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 300 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 62 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 52 of 124

6

1   OF THE JUDGMENT, CCP 916.  THERE WAS SOME QUESTION ABOUT

2   WHETHER THE UNDERTAKING SHE POSTED IN NOVEMBER 2018 WAS

3   SUFFICIENT; THAT IS NO LONGER THE CASE.  THE DISTRICT COURT OF

4   APPEAL HAS ALREADY AFFIRMED THE LOWER COURT IN MULTIPLE

5   REGARDS, INCLUDING SUPPORTING THIS COURT'S INHERENT AUTHORITY

6   TO ENFORCE A JUDGMENT AND THAT IS EXACTLY WHAT THIS COURT

7   INTENDS TO DO.

8        ACCORDINGLY, THIS COURT WILL GRANT PETITIONER'S

9   REQUEST TO DENY JONATHAN RICHARDS' THIRD-PARTY CLAIM DUE,

10  SUBSTANTIALLY, TO NOT ONLY THE DEFECTIVENESS OF THE CP10

11  APPLICATION ITSELF, BUT ALSO SINCE THIS IS NOT AN UNLAWFUL

12  DETAINER ACTION, AND THIS COURT IS NOT AMUSED BY THE CONSTANT

13  SUBTERFUGE, TRICKS AND MANEUVERING OF MRS. RICHARDS IN HER

14  INSISTENCE THAT SHE REMAIN IN THE FAMILY RESIDENCE YEARS AFTER

15  A JUDGE ORDERED HER TO SELL THE HOME.

16       MOREOVER, NOT ONLY IS IT APPALLING ENOUGH THAT A

17  SELF-REPRESENTED LITIGANT HAS MOCKED THE JUDICIAL PROCESS, IT

18  NOW APPEARS THAT MRS. RICHARDS IS GETTING THIRD PARTIES TO BE

19  COMPLICIT IN HER CONTEMPT FOR THE COURT PROCESS.

20       THE COURT UNDERSTANDS THAT JONATHAN RICHARDS IS THE

21  COUPLE'S ADULT SON, AND GREGORY REMSEN IS THE RESPONDENT'S

22  BROTHER.  SHOULD THE COURT FAIL TO ISSUE AN ORDER BARRING ALL

23  THIRD-PARTY CLAIMS ON THIS PROPERTY IN THE FUTURE, IT

24  COMPLETELY EXPECTS THAT MRS. RICHARDS WILL SIMPLY CAJOLE YET

25  ANOTHER FAMILY MEMBER TO FILE ANOTHER THIRD PARTY RIGHT OF

26  POSSESSION CLAIM.  THIS CANNOT CONTINUE.

**EXHIBIT 5-062**

**EXHIBIT "3"**
**PAGE 58**

**EXHIBIT "5"**
**PAGE 291**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 301 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document    Page 63 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document    Page 53 of 124

7

1          IT HAS LONG BEEN PAST THE TIME THAT MRS. RICHARDS

2     NEEDS TO BE REMOVED FROM HER PROPERTY, BY FORCE IF NECESSARY,

3     SINCE IT APPEARS THAT AFTER YEARS OF LITIGATION NOTHING WILL

4     CONVINCE HER TO LEAVE PEACEFULLY.

5          IN SUM, JONATHAN RICHARDS' DEFICIENT AND MERITLESS

6     THIRD-PARTY CLAIM IS DENIED.

7          AS TO THE MOTION REGARDING DEEMING MRS. RICHARDS A

8     VEXATIOUS LITIGANT --

9          MR. ROBINSON:  YOUR HONOR, COULD I BE HEARD ON THAT

10    FIRST?  I JUST HAVE A COUPLE THINGS TO ADD.

11         THE COURT:  SURE.

12         MR. ROBINSON:  THE ORDER THAT I PROPOSED AND AS A

13    SEGUE WAY TO THE COURT'S RULING, I SUBMITTED A PROPOSED ORDER

14    ON NOVEMBER 12TH OF 2019 THAT WAS ORDERING ONE, THE CLAIM OF

15    POSSESSION BY JONATHAN RICHARDS IS DENIED.  TWO, ON THAT

16    PROPERTY ON CATALINA DRIVE, NO FURTHER CLAIM OF POSSESSION AND

17    NOTICE OF HEARING SHALL BE FILED ON THIS PROPERTY DELAYING THE

18    WRIT OF POSSESSION.  AND THREE, THE SHERIFF'S OFFICE SHALL

19    DISREGARD ANY FURTHER CLAIM OF POSSESSION FILED BY ANY ALLEGED

20    TENANT, OCCUPIER OR ANY OTHER PERSON REGARDING SAID PROPERTY

21    AND THAT THE OFFICERS IMMEDIATELY EXECUTE THE EVICTIONS AND

22    THAT WAS SERVED BACK WHEN I FILED THE ACTUAL MOTION ALMOST A

23    YEAR AGO.

24         THE COURT:  LET ME FINISH THE COURT'S RULING WITH

25    RESPECT TO THE VEXATIOUS LITIGANT AND THEN WE WILL BUTTON UP

26    ALL ORDERS AFTER TODAY.

53

# EXHIBIT 5-063

**EXHIBIT "3"
PAGE 59**

**EXHIBIT "5"
PAGE 292**

Case 8:21-bk-10635-SC   Doc 845   Filed 09/13/22   Entered 09/13/22 11:46:13   Desc
Main Document      Page 302 of 350

Case 8:21-bk-10635-ES   Doc 653   Filed 04/28/22   Entered 04/28/22 18:44:00   Desc
Main Document      Page 64 of 76

Case 8:21-bk-10635-ES   Doc 46   Filed 05/24/21   Entered 05/24/21 18:10:57   Desc
Main Document      Page 54 of 124

8

1          MR. ROBINSON:  THANK YOU, YOUR HONOR.

2          THE COURT:  PURSUANT TO CCP 391.2, MRS. RICHARDS HAS

3    BEEN GIVEN AN OPPORTUNITY TO BE HEARD ON DEEMING HER A

4    VEXATIOUS LITIGANT.  SHE HAS SUBMITTED DOCUMENTS.  SHE KNOWS

5    THAT THIS ITEM IS NOW PENDING BEFORE THE COURT TODAY.  SHE'S

6    BEEN ORDERED TO BE HERE TODAY.  SHE IS NOT HERE TODAY DUE TO

7    THE PRIOR STATED REASONS.

8          TO BE VERY CLEAR, THIS COURT HAS NEVER DEEMED ANYONE

9    A VEXATIOUS LITIGANT THE ENTIRE TIME THE COURT HAS BEEN OPEN,

10   IN THIS SEAT.  THE COURT CANNOT RECALL ANYONE EVER REQUESTING

11   SUCH EXTRAORDINARY RELIEF; PERHAPS BECAUSE IT IS TRULY

12   EXTRAORDINARY TO PRECLUDE SOMEONE FROM AVAILING THEMSELVES OF

13   OUR JUDICIAL SYSTEM NO MATTER ECONOMIC STATUS, RICH OR POOR,

14   NO MATTER RACE, SEX, SEXUAL ORIENTATION OR ANY OTHER PROTECTED

15   CLASS.  THIS COURT PRIDES ITSELF IN DISPENSING JUSTICE IN AN

16   EVEN-HANDED AND FAIR MANNER.

17         THE INSTANT CASE IS TRULY AN EXTRAORDINARY CASE THAT

18   HAS RESULTED IN FILING LEVELS THAT ARE COMPLETELY

19   UNPRECEDENTED, UNWARRANTED, AND ONLY SERVE TO CAUSE DELAY AND

20   CONFUSION.  AMONG THE THOUSANDS OF CASES IN THIS COURT'S

21   INVENTORY OF CASES, THIS CASE STICKS OUT AS NEEDING A

22   SUBSTANTIAL AMOUNT OF THE COURT'S TIME TO UNTANGLE THE MESS OF

23   FILINGS ATTRIBUTABLE TO MRS. RICHARDS.

24         THIS CASE HAS NOW BEEN IN THE COURT'S INVENTORY FOR

25   ALMOST THREE YEARS AND LITTLE, IF ANY, PROGRESS HAS BEEN MADE.

26   OVER TWO YEARS AGO, MRS. RICHARDS STRUCK A DEAL AND ENTERED

54

**EXHIBIT 5-064**

**EXHIBIT "3"**
**PAGE 60**

**EXHIBIT "5"**
**PAGE 293**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 303 of 350

Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 65 of 76

Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 55 of 124

9

1    INTO A STIPULATED JUDGMENT; THAT STIPULATED JUDGMENT HAS NOW

2    BEEN AFFIRMED BY THE DISTRICT COURT OF APPEALS.  HOWEVER,

3    SINCE THAT DATE, MRS. RICHARDS HAS FILED CLOSE TO 100 SEPARATE

4    DOCKET ENTRIES.  MANY OF HER FILINGS SPAN DOZENS UPON DOZENS

5    OF PAGES THAT ARE LARGELY COPY AND PASTE JOBS, REPETITIVE,

6    UNINTELLIGIBLE, AND OTHERWISE A COMPLETE WASTE OF THE COURT'S

7    TIME IN HAVING TO REVIEW AND ANALYZE THESE FILINGS IN SEARCH

8    FOR ANY PLAUSIBLE LEGAL ARGUMENT THAT MRS. RICHARDS RAISES.

9           IN ADDITION TO THIS CASE, MRS. RICHARDS HAS INITIATED

10   A SEPARATE CIVIL PROCEEDING AGAINST HER FORMER HUSBAND, A

11   BANKRUPTCY PROCEEDING, TO PREVENT THIS CASE FROM PROGRESSING.

12   AT LAST COUNT, OVER TEN SEPARATE APPEALS TO THE DISTRICT COURT

13   OF APPEALS AND NOW, MOST RECENTLY, MULTIPLE EFFORTS TO REMOVE

14   THIS CASE TO THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT

15   OF CALIFORNIA WHO, PREDICTABLY, REMANDED THIS CASE BACK TO THE

16   SUPERIOR COURT FOR FURTHER PROCEEDINGS.

17          AS LATE AS VERY RECENTLY, MRS. RICHARDS HAS ATTEMPTED

18   TO AMEND HER REMOVAL REQUEST TO FEDERAL COURT REQUIRING THIS

19   COURT'S STAFF TO HAVE TO EXPLORE THE STATUS OF SUCH EFFORTS.

20   AS OF THIS MORNING, OR EARLIER YESTERDAY, THE COURT STAFF HAS

21   BEEN ADVISED BY JUDGE JAMES SELNA'S COURT STAFF THAT THE

22   REMAND IS NOT AFFECTED BY MRS. RICHARDS' LATEST PARADE OF

23   DELAY TACTICS.

24          IN ADDITION TO ALL OF THE ABOVE, THIS COURT HAS NOW

25   HAD TO CONTINUE THIS MOTION TO DEEM HER A VEXATIOUS LITIGANT

26   MANY, MANY TIMES DUE TO MRS. RICHARDS' EXPERTLY TIMED COVID

55

# EXHIBIT 5-065

**EXHIBIT "3"**
**PAGE 61**

**EXHIBIT "5"**
**PAGE 294**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 304 of 350

Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document    Page 66 of 76

Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document    Page 56 of 124

10

1   SYMPTOMS OR COVID TESTING.  UNDOUBTEDLY, EVERY SINGLE TIME

2   THIS COURT HAS ATTEMPTED TO PROCEED ADDRESSING THE MERITS OF

3   THE INSTANT MOTION, MRS. RICHARDS COMES UP WITH A NEW EXCUSE

4   NOT TO PROCEED WITH THE HEARING.

5        EARLY ON, WHILE THE COURT HAS PROCEEDED PURSUANT TO

6   ADMIN ORDER 20/15, MRS. RICHARDS STATED SHE WAS HAVING

7   TECHNICAL ISSUES WHICH PROMPTED THIS COURT TO HAVING TO FIND

8   GOOD CAUSE FOR SETTING THIS MATTER IN PERSON.

9        SINCE THEN, MRS. RICHARDS HAS COME UP WITH ADDITIONAL

10  EXCUSES FOR NOT WANTING TO PROCEED AND DEMANDING THAT THE

11  COURT ADDRESS HER FILINGS IN THE ORDER OF HER OWN CHOOSING.

12       AS THIS COURT HAS ADVISED MRS. RICHARDS, NEITHER

13  LITIGANT NOR COUNSEL ARE ALLOWED TO CONTROL THIS COURT'S

14  CALENDAR.  BUT, RATHER, IT IS THE COURT ITSELF THAT GETS TO

15  RUN THE COURTROOM.

16       ADDITIONALLY, OVER THE COURSE OF THESE YEARS, THIS

17  COURT HAS WARNED MRS. RICHARDS ON AT LEAST FOUR OCCASIONS THAT

18  IF HER HISTORICAL PRACTICE OF SUPERFLUOUS AND UNWARRANTED

19  FILINGS DID NOT CEASE, THIS COURT WOULD HAVE NO OPTION OTHER

20  THAN TO DEEM HER A VEXATIOUS LITIGANT.

21       IT IS NOW ABUNDANTLY CLEAR THAT ALL OF THESE WARNINGS

22  HAVE NOT BEEN OBSERVED.  NOT ONLY HAVE HER FRIVOLOUS FILINGS

23  AFFECTED THIS COURT'S ABILITY TO EXECUTE ON THE JUDGMENT, BUT

24  MRS. RICHARDS HAS ALSO AFFECTED MULTIPLE OTHER COURTS UP AND

25  DOWN THE STATE AS PREVIOUSLY STATED, MAINTAINING HER RAMPAGE

26  OF ABUSING THE LEGAL PROCESS IN A CIVIL COURTROOM, TORT CLAIMS

56

# EXHIBIT 5-066

**EXHIBIT "3"**
**PAGE 62**

**EXHIBIT "5"**
**PAGE 295**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document         Page 305 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document         Page 67 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document         Page 57 of 124

11

1    AGAINST HUSBAND, A BANKRUPTCY COURTROOM, A FEDERAL BANKRUPTCY

2    COURT, THE COURT OF APPEALS, WHO HAS NOW RECEIVED TEN APPEALS

3    FROM THIS CASE, ALL OF WHICH HAVE AFFIRMED THE LOWER COURT

4    SAVE FOR THE AMOUNT OF SANCTIONS PURSUANT TO A PRIOR SANCTIONS

5    ORDER, A FEDERAL COURT, AND STATE BAR COMPLAINTS OF OPPOSING

6    COUNSEL.

7         IT'S ALMOST AS IF THE RESPONDENT SIMPLY PONDERS WHAT

8    AVENUE OF THE JUDICIAL PROCESS TO EXPLOIT NEXT AND PURSUES

9    THAT OPTION TO DELAY MATTERS EVEN FURTHER.

10        ALL OF THESE GAMES WILL NO LONGER BE TOLERATED BY

11   THIS COURT AND THE COURT WILL DEEM HER A CLEAR AND UNEQUIVOCAL

12   VEXATIOUS LITIGANT.

13        391(B)(2) OF THE CALIFORNIA CODE OF CIVIL PROCEDURE

14   STATES AFTER LITIGATION HAS BEEN FINALLY DETERMINED AGAINST

15   THE PERSON REPEATEDLY RELITIGATES OR ATTEMPTS TO RELITIGATE,

16   IN PROPRIA PERSONA EITHER, ONE, THE VALIDITY OF THE

17   DETERMINATION AGAINST THE SAME DEFENDANT OR DEFENDANTS AS TO

18   WHOM THE LITIGATION WAS FINALLY DETERMINED OR, TWO, THE CAUSE

19   OF ACTION CLAIM, CONTROVERSY, OR ANY OF THE ISSUES OF FACT OR

20   LAW, DETERMINED OR CONCLUDED BY FINAL DETERMINATION AGAINST

21   THE SAME DEFENDANT OR DEFENDANTS AS TO WHOM THE LITIGATION WAS

22   FINALLY DETERMINED.

23        A LITIGANT MAY BE DECLARED "VEXATIOUS" WHERE, AFTER A

24   LITIGATION HAS BEEN FINALLY DETERMINED AGAINST THE PERSONS --

25   FINALLY DETERMINED MEANS ALL AVENUES FOR DIRECT REVIEW,

26   INCLUDING APPEAL, HAVE BEEN EXHAUSTED OR THE TIME FOR APPEAL

57

# EXHIBIT 5-067

**EXHIBIT "3"**
**PAGE 63**

**EXHIBIT "5"**
**PAGE 296**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 306 of 350

Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 68 of 76

Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 58 of 124

12

1   HAS EXPIRED -- REPEATEDLY RELITIGATES OR ATTEMPTS TO

2   RELITIGATE IN PRO PER EITHER THE CAUSE OF ACTION CLAIM,

3   CONTROVERSY OR ANY OF THE ISSUES OF FACT OR LAW DETERMINED OR

4   CONCLUDED BY THE FINAL DETERMINATION AGAINST THE SAME

5   DEFENDANT OR DEFENDANTS AS TO WHOM THE LITIGATION WAS FINALLY

6   DETERMINED.

7       TO SATISFY THE REQUIREMENTS THAT THE RELITIGATION BE

8   REPEATED, THE LITIGANT MUST HAVE ATTEMPTED SUCH LITIGATION OF

9   ANY ISSUE MORE THAN TWO TIMES; SEE *HOLCOMB V. US BANK NATIONAL*

10  *ASSOCIATION, 129 CAL.APP.4TH* 1494 AT 1504.

11      ALTHOUGH HER ACTIONS AND CONDUCT APPROACH BEING FOUND

12  A VEXATIOUS LITIGANT PURSUANT TO (B)(2), IT IS MORE

13  APPROPRIATE IN THIS CIRCUMSTANCE TO DEEM MRS. RICHARDS A

14  VEXATIOUS LITIGANT PURSUANT TO (B)(3).

15      (B)(3) OF 391 STATES, "ANY LITIGATION WHILE ACTING IN

16  PROPRIA PERSONA, REPEATEDLY FILES UNMERITORIOUS MOTIONS,

17  PLEADINGS OR OTHER PAPERS, CONDUCTS UNNECESSARY DISCOVERY, OR

18  ENGAGES IN OTHER TACTICS THAT ARE FRIVOLOUS OR SOLELY INTENDED

19  TO CAUSE UNNECESSARY DELAY."

20      THAT LEAVES THE QUESTION TO BE CONSIDERED BY THE

21  COURT OF WHAT CONSTITUTES REPEATED AND UNMERITORIOUS.  THOSE

22  DEFINITIONS ARE GENERALLY WITHIN THE TRIAL COURT'S DISCRETION;

23  SEE *MORTON V. WAGNER, 156 CAL.APP.4TH 963* AT 971 THROUGH 972,

24  WHETHER OR NOT TO DEEM WIFE A VEXATIOUS LITIGANT IS ENTIRELY

25  WITHIN THE TRIAL COURT'S DISCRETION.

26      AS PREVIOUSLY MENTIONED, IT IS NO LONGER TIME FOR

58

# EXHIBIT 5-068

**EXHIBIT "3"**
**PAGE 64**

**EXHIBIT "5"**
**PAGE 297**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 307 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 69 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 59 of 124

13

1    WARNINGS.  IT'S NOW A TIME FOR ACTION.  THE COURT FINDS THAT

2    AS A MATTER OF ABSOLUTE FACT THERE IS SUBSTANTIAL EVIDENCE OF

3    RECORD TO FIND MRS. RICHARDS TO BE DEEMED A VEXATIOUS

4    LITIGANT.

5         AS THE TRIAL COURT IS BEST SITUATED TO RECEIVE

6    EVIDENCE AND HOLD HEARINGS ON THE QUESTION OF WHETHER A

7    LITIGANT IS VEXATIOUS ON APPEAL, THE COURT OF APPEAL IS

8    REQUIRED TO PRESUME THE ORDER DECLARING A LITIGANT VEXATIOUS

9    IS CORRECT AND TO IMPLY FINDINGS NECESSARY TO SUPPORT THAT

10   DESIGNATION.  OF COURSE, THAT COURT CAN ONLY IMPLY SUCH

11   FINDINGS WHERE THERE IS EVIDENCE TO SUPPORT THEM.

12        IN THIS PARTICULAR CASE, THE RECORD IS RIFE WITH

13   EXAMPLES OF VEXATIOUS CONDUCT; UNMERITORIOUS FILINGS,

14   UNMERITORIOUS APPEALS, UNMERITORIOUS APPEALS AFTER THE APPEAL,

15   UNMERITORIOUS FILINGS WITH THE FEDERAL COURTS AND ON AND ON

16   AND ON.

17        FURTHER, ANY DETERMINATION THAT A LITIGANT IS

18   VEXATIOUS MUST COMPORT WITH THE INTENT AND SPIRIT OF THE

19   VEXATIOUS LITIGANT STATUTE.  THE PURPOSE OF WHICH IS TO

20   ADDRESS THE PROBLEM CREATED BY THE PERSISTENT AND OBSESSIVE

21   LITIGANT WHO CONSTANTLY HAS PENDING A NUMBER OF GROUNDLESS

22   ACTIONS AND WHOSE CONDUCT CAUSES SERIOUS FINANCIAL RESULTS TO

23   THE UNFORTUNATE OBJECTS OF HIS OR HER ATTACKS AND PLACES AN

24   UNREASONABLE BURDEN ON THE COURTS; SEE *WOLFE V. STRANKMAN,*

25   *392 F.3D 358 AND PEOPLE V. HARRISON, 92 CAL.APP.4TH 780,*

26   THEREFORE, DEFINE THAT A LITIGANT IS VEXATIOUS, THE TRIAL

59

# EXHIBIT 5-069

**EXHIBIT "3"**

**PAGE 65**

**EXHIBIT "5"**

**PAGE 298**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 308 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 70 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 60 of 124

14

```
 1   COURT MUST CONCLUDE THAT THE LITIGANT'S ACTIONS ARE

 2   UNREASONABLY IMPACTING THE OBJECTS OF THE OTHER PARTY'S

 3   ACTIONS AND THE COURT AS CONTEMPLATED BY THE STATUTE.

 4          THIS COURT IS UNAWARE OF ANYONE MORE BEFITTING BEING

 5   DEEMED A VEXATIOUS LITIGANT THAN MRS. ALICIA RICHARDS.  HER

 6   RAMPAGE OF LITIGATION CONDUCT HAS BEEN AN UNWAVERING,

 7   FLAGRANT ABUSE OF THE SYSTEM WITH FILING AFTER FILING HAVING A

 8   SHRED OR NO REASONABLE PROBABILITY OF SUCCESS, LACK REASONABLE

 9   OR PROBABLE CAUSE OR EXCUSE, AND ARE CLEARLY MEANT TO ABUSE

10   THE PROCESS AND TO HARASS THE PARTY.

11          AS A RESULT OF ALL OF THE ABOVE, THIS COURT IS

12   DEEMING MRS. ALICIA RICHARDS A VEXATIOUS LITIGANT.  UNDER

13   CCP 391.1, THE COURT WILL ORDER MRS. RICHARDS TO PROVIDE

14   SECURITY FOR ANY FURTHER ACTIONS OR FILINGS.

15          FURTHER, UNDER CCP 391.7, THE COURT WILL ORDER THE

16   ENTRY OF A PRE-FILING ORDER PROHIBITING MRS. RICHARDS FROM THE

17   FILING OF ANY NEW DOCUMENTS IN THIS CASE WITHOUT PERMISSION OR

18   CONSENT OF THE PRESIDING JUDGE.

19          NOW THAT THE RESPONDENT HAS BEEN DEEMED A VEXATIOUS

20   LITIGANT, THE COURT WILL EXPLICITLY BAR THE FURTHER FILING OF

21   ANY THIRD-PARTY CLAIM BY ANY THIRD PARTY IN CONNECTION WITH

22   RESPONDENT'S CASE IN THE INSTANT ACTION.

23          THE COURT WILL FURTHER ORDER THAT THE ORANGE COUNTY

24   SHERIFF'S OFFICE SHALL PROCEED WITH THE WRIT OF EXECUTION

25   WITHIN 96 HOURS OF TODAY.  ANY AND ALL FUTURE COURT FILINGS

26   WILL NEED TO BE EXPRESSLY AUTHORIZED BY THE PRESIDING JUDGE OF
```

# EXHIBIT 5-070

**EXHIBIT "3"**
**PAGE 66**

**EXHIBIT "5"**
**PAGE 299**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 309 of 350

Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 71 of 76

Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 61 of 124

15

```
1    THE ORANGE COUNTY SUPERIOR COURT AND, IF AUTHORIZED, A
2    SECURITY PAYMENT SHALL BE MADE OF $4,000 PER FILING PURSUANT
3    TO CCP 391(D).
4          FILINGS MADE BY MRS. RICHARDS PRIOR TO THE MOTION TO
5    DEEM HER A VEXATIOUS LITIGANT WILL STILL BE ENTERTAINED BY
6    THIS COURT SINCE THE ORDER DEEMING HER A VEXATIOUS LITIGANT IS
7    TRIGGERED TO COINCIDE WITH THE PETITIONER'S FILING.
8          ANYTHING ELSE, MR. ROBINSON?
9          MR. ROBINSON:  I BELIEVE THAT COVERS IT ALL, YOUR
10   HONOR.  I DO HAVE ORDERS ON BOTH OF THOSE.  THE ONLY THING I
11   HAD, WAS GOING TO OFFER FOR THE RECORD, WAS MRS. RICHARDS HAS
12   NOT ONLY CLAIMED COVID EXPOSURE, BUT SHE'S MADE CLAIMS
13   REGARDING TECHNICAL DIFFICULTY WITH COMPUTERS AND PHONES.
14   AND OVER THE LAST ABOUT, WELL, IT'S OCTOBER, SO ABOUT THE LAST
15   MONTH AND A HALF, WE HAVE HAD THE FOLLOWING ACTIVITY BY
16   MRS. RICHARDS AND/OR MYSELF IN THIS OR OTHER CASES.
17         ON OCTOBER 15TH THERE WAS A COURT CALL TO DEPARTMENT
18   C22 ON MRS. RICHARDS' MOTION TO TAX COSTS.  WE WERE ON THE
19   LINE WITH THE JUDGE OF THE ORANGE COUNTY SUPERIOR COURT FOR
20   APPROXIMATELY ONE HOUR.  THERE WERE NO TECHNICAL DIFFICULTIES.
21         ON OCTOBER 19TH, 2020 SHE FILED A DOCUMENT IN THE
22   U.S. DISTRICT COURT; DIDN'T SEEM TO HAVE ANY TECHNICAL
23   DIFFICULTIES.
24         ON OCTOBER 19TH SHE FILED HERE IN THE FAMILY LAW
25   COURT, WHICH WAS AN E-FILING PROCEDURE, A DOCUMENT, AND HAD NO
26   TECHNICAL DIFFICULTIES.
```

61

# EXHIBIT 5-071

**EXHIBIT "3"**
**PAGE 67**

**EXHIBIT "5"**
**PAGE 300**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document    Page 310 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document    Page 72 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document    Page 62 of 124

16

```
1          ON SEPTEMBER 29TH OR 30TH SHE FILED A PETITION FOR

2   REVIEW IN THE CALIFORNIA SUPREME COURT ELECTRONICALLY AND HAD

3   NO TECHNICAL DIFFICULTIES.

4          ON OCTOBER 21ST, 2020 SHE FILED A PETITION FOR A

5   RE-HEARING IN OUR FOURTH DISTRICT APPELLATE COURT, WHICH IS

6   ELECTRONIC FILING, AND SEEMED TO HAVE NO PROBLEM.

7          ON AUGUST 18TH OF 2020 SHE PARTICIPATED IN AN ORAL

8   ARGUMENT IN FRONT OF THAT SAME COURT OF APPEAL FOR THE FOURTH

9   DISTRICT IN ONE OF HER APPEALS AND SEEMED TO HAVE NO PROBLEM

10  WITH HER CELL PHONE OR TECHNICAL DIFFICULTIES, ALTHOUGH WE

11  WERE ON THE PHONE WITH THE COURT OF APPEALS FOR AT LEAST AN

12  HOUR.

13         THAT'S THE MOST RECENT ACTIVITY THAT SHE'S ENGAGED IN

14  THAT IS OUTSIDE OF THIS ACTUAL COURTROOM, AND I JUST WANTED TO

15  SET THE RECORD STRAIGHT BECAUSE OF HER CLAIMS THAT SHE CAN'T

16  SEEM TO TALK TO THIS COURT OR PARTICIPATE IN THIS DEPARTMENT'S

17  HEARINGS, ALTHOUGH ANYTHING THAT SHE WANTS TO PARTICIPATE IN

18  SHE SEEMS TO DO JUST FINE.

19         AND, WITH THAT, I'LL SUBMIT.

20         THANK YOU, YOUR HONOR.

21         THE COURT:  THANK YOU, MR. ROBINSON.

22         REMIND THE COURT, I AM GOING TO STAY THE ORDER

23  REGARDING WRIT OF EXECUTION FOR A PERIOD OF FIVE DAYS TO ALLOW

24  MRS. RICHARDS TO SEEK A WRIT SHOULD SHE WANT TO SEEK A WRIT.

25         MAKE SENSE?

26         MR. ROBINSON:  SURE.
```

# EXHIBIT 5-072

**EXHIBIT "3"**
**PAGE 68**

**EXHIBIT "5"**
**PAGE 301**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 311 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 73 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 63 of 124



17

| 1 | THE COURT:  THANK YOU. |
| 2 | OFF THE RECORD. |
| 3 | (PROCEEDINGS CONCLUDED.) |

63

**EXHIBIT 5-073**

**EXHIBIT "3"**
**PAGE 69**

**EXHIBIT "5"**
**PAGE 302**

Case 8:21-bk-10635-SC    Doc 845    Filed 09/13/22    Entered 09/13/22 11:46:13    Desc
Main Document      Page 312 of 350
Case 8:21-bk-10635-ES    Doc 653    Filed 04/28/22    Entered 04/28/22 18:44:00    Desc
Main Document      Page 74 of 76
Case 8:21-bk-10635-ES    Doc 46    Filed 05/24/21    Entered 05/24/21 18:10:57    Desc
Main Document      Page 64 of 124

1          <u>REPORTER'S CERTIFICATE</u>

2

3    STATE OF CALIFORNIA    )
                            )SS.
4    COUNTY OF ORANGE       )

5

6        I, WENDY A. TORRES, CSR 10856, OFFICIAL COURT REPORTER IN

7    AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY

8    OF ORANGE, DO HEREBY CERTIFY THAT THE FOREGOING REPORTER'S

9    TRANSCRIPT, CONSISTING OF PAGES 1 THROUGH 17, INCLUSIVE, IS A

10   FULL, TRUE AND COMPLETE TRANSCRIPT OF MY SHORTHAND NOTES, AND

11   IS A STATEMENT OF THE PROCEEDINGS HAD IN SAID CAUSE.

12

13            DATED THIS 1ST DAY OF DECEMBER, 2020

14

15

16

17

18

19   WENDY A. TORRES, CSR 10856

20

21

22

23

24

25

26

64

**EXHIBIT 5-074**

**EXHIBIT "3"**
**PAGE 70**

**EXHIBIT "5"**
**PAGE 303**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR ORDER AUTHORIZING TRUSTEE TO PAY TO RYAL RICHARDS $300,000 FROM PROCEEDS OF SALE OF HOMESTEAD EXEMPTION, OR IN THE ALTERNATIVE, TO INTERPLEAD THE HOMESTEAD PROCEEDS IN THE ORANGE COUNTY SUPERIOR COURT; REQUEST FOR JUDICIAL NOTICE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 28, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 28, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA EMAIL:**
**DEBTOR/SECURED CREDITOR** ALICIA MARIE RICHARDS, RICHARDSALICIA007@GMAIL.COM

PURSUANT TO "COURTROOM POLICIES AND PROCEDURES – HONORABLE ERITHE A. SMITH COURTROOM 5A," SECTION VIII. JUDGES' OR COURTESY COPIES, EXCEPT FOR DOCUMENTS 200 PAGES OR OVER, INCLUDING EXHIBITS, JUDGE SMITH **DOES NOT** REQUIRE JUDGE'S COPIES.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 28, 2022 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                       EXHIBIT 5-075 F 9013-3.1.PROOF.SERVICE

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **INTERESTED PARTY COURTESY NEF:** Amanda N Ferns    aferns@fernslaw.com, mmakalintal@fernslaw.com
   - **ATTORNEY FOR CREDITOR FIRST FINANCIAL CREDIT UNION:** Daniel K Fujimoto    wdk@wolffirm.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):**D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Richard G Heston    rheston@hestonlaw.com, yflores@hestonlaw.com, docs@hestonlaw.com; HestonRR41032@notify.bestcase.com, handhecf@gmail.com
   - **ATTORNEY FOR CREDITOR ANDREW BROWN:** Christopher J Langley chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
   - **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
   - **ATTORNEY FOR CREDITOR KEVIN E ROBINSON AND CREDITOR RYAL W RICHARDS:** Kevin E Robinson    robinsonlawoffice@yahoo.com
   - **U.S. TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
   - **ATTORNEY FOR CREDITOR EUGENE V ZECH:** Eugene V Zech    evzechlaw@aol.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

# EXHIBIT 5-076F 9013-3.1.PROOF.SERVICE

# EXHIBIT 6

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Erithe Smith, Presiding**
**Courtroom 5A Calendar**

---

**Thursday, May 5, 2022**                                      **Hearing Room**      **5A**

---

<u>10:30 AM</u>
**8:21-10635    Alicia Marie Richards**                                      **Chapter 7**

  #42.00    Hearing RE: Motion for an Order Authorizing Trustee to Pay to Ryal Richards
          $300,000 From Proceeds of Sale of Homestead Exemption, or in the
          Alternative, to Interplead the Homestead Proceeds in the Orange County
          Superior Court

                          Docket      625

**Courtroom Deputy:**
    - NONE LISTED -

**Tentative Ruling:**

    **May 5, 2022**

    Grant the Trustee's alternative request in the Motion to interplead the funds
    with the State Court.

    <u>Basis for Tentative Ruling:</u>

    As a preliminary matter, the Court will not engage in any discussion or
    analysis of the validity its order authorizing the sale of the real property at 351
    Catalina Drive, Newport Beach, Ca ("Property). The order is final and is not
    subject to any stay pending Debtor's appeal of the same to the 9th Circuit.

    <u>Background</u>

    By her amended Schedule C, Debtor has claimed a homestead exemption
    against the Property in the California statutory amount of $600,000. No
    timely objection to the exemption was filed. Accordingly, $600,000 of the
    proceeds from the sale of the Property is no longer property of the estate
    within the meaning of 11 U.S.C. 541(a).  *In re Heintz*, 198 B.R. 581, 585 (9th
    Cir. BAP 1993); *In re Galvan*, 110 B.R. 446, 449 (9th Cir. BAP 1990).  By
    order of this Court, the trustee has remitted $300,000 or half of such
    proceeds, to Debtor. Debtor's spouse, Ryal Richards ("Ryal") claims
    entitlement to the other half of the exempted proceeds, i.e., $300,000 (the

---

**EXHIBIT 6-001**

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Erithe Smith, Presiding**
**Courtroom 5A Calendar**

Thursday, May 5, 2022                                            Hearing Room        5A

<u>10:30 AM</u>
**CONT...**     **Alicia Marie Richards**                                            Chapter 7
          "Remaining Proceeds").

Ryal asserts entitlement to the Remaining Proceeds pursuant to certain
orders in the protracted state court dissolution/property division litigation
between the parties. Debtor disputes that Ryal is entitled to distribution of the
Remaining Proceeds pursuant to any state court orders. Given that the
Remaining Proceeds are no longer property of the bankruptcy estate, that the
distribution of the same to either Debtor or Ryal will have no affect upon the
administration of the bankruptcy estate, and that entitlement to the Remaining
Proceeds is a matter of state law, including the state court's interpretation of
its own orders, the Court believes that the state court should make the final
determination as to which party is entitled to the Remaining Proceeds.

Ryal has requested that if the Court is inclined to defer the entitlement
determination to the state court, that the Trustee maintain the Remaining
Proceeds in an interest-bearing account pending an order of the state court.
The request is based upon Ryal's belief that the interplead process could be
delayed due to backlogs in the state court system. The Court is not
persuaded by the request however, because it places the Trustee in the
position of havng to maintain control of, be responsible for, and administer
funds that are not property of the estate. For that reason, the Court grants the
Trustee's alternative request that the funds be interpleaded with the state
court within 30 days of the entry of the Court's order.

| Party Information |
|---|

**<u>Debtor(s):</u>**

  Alicia Marie Richards                     Pro Se

**<u>Trustee(s):</u>**

  Richard A Marshack (TR)                   Represented By
                                              Richard G Heston
                                              D Edward Hays
                                              Tinho  Mang

**EXHIBIT 6-002**

**EXHIBIT "5"**
**PAGE 308**

Exhibit "6"

1   D. EDWARD HAYS, #162507
    ehays@marshackhays.com
2   TINHO MANG, #322146
    tmang@marshackhays.com
3   MARSHACK HAYS LLP
    870 Roosevelt Avenue
4   Irvine, CA 92620
    Telephone: (949) 333-7777
5   Facsimile: (949) 333-7778

6   General Counsel for Chapter 7 Trustee,
    RICHARD A. MARSHACK

7

8              UNITED STATES BANKRUPTCY COURT

9      CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11  In re                              Case No. 8:21-bk-10635-ES

12  ALICIA MARIE RICHARDS,             Chapter 7

13        Debtor.                      ORDER ON TRUSTEE'S MOTION FOR
                                       ORDER AUTHORIZING TRUSTEE TO PAY
14                                     TO RYAL RICHARDS $300,000 FROM
                                       PROCEEDS FROM SALE OF HOMESTEAD
15                                     EXEMPTION. OR IN THE ALTERNATIVE,
                                       TO INTERPLEAD THE HOMESTEAD
16                                     PROCEEDS IN ORANGE COUNTY
                                       SUPERIOR COURT
17
                                       Date:    May 5, 2022
18                                     Time:    10:30 a.m.
                                       Ctrm:    5A – Via ZoomGov
19                                     Address: 411 W. Fourth Street,
                                                Santa Ana, CA 92701
20

21          On May 5, 2022, at 10:30 a.m., the Court held a hearing on Trustee's Motion For Order

22  Authorizing Trustee to Pay to Ryal Richards $300,000 from Proceeds from Sale of Homestead

23  Exemption, or in the Alternative, to Interplead the Homestead Proceeds in Orange County Superior

24  Court filed on March 28, 2022, as Dk. No. 625 ("Motion").[1] The Trustee appeared by and through

25

26  _____
    [1] The homestead proceeds at issue constitute the remainder of the proceeds under Debtor's claimed
27  homestead exemption of $600,000, after the distribution of $300,000 to Debtor as one-half of the
28  homestead proceeds pursuant to a prior order of the Court and are referred to herein as the

4870-4453-5073v.1-1015-148

**FILED & ENTERED**

**JUN 14 2022**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY duarte      DEPUTY CLERK

**CHANGES MADE BY COURT**

1   his special counsel, Richard Heston.  Debtor appeared *in pro per*. Debtor's former spouse, Ryal

2   Richards, appeared through his counsel of record, Kevin Robinson. All other appearances were as

3   noted on the record.

4         The Court read and considered the Motion, Ryal Richards' Joinder in the Motion, Debtor's

5   opposition, Trustee's reply, and the other pleadings on file in this case, *except that* for the reasons

6   discussed on the record, the Court did <u>not</u> consider the pleadings filed by Ryal Richards as Dk. Nos.

7   651 and 652, or the Request for Judicial Notice filed by the Trustee as Dk. No. 661.  The Court also

8   did not consider Debtor's pending "Motion for Order Authorizing the Chapter 7 Trustee to Pay

9   Alicia Marie Richards Her $300,000.00 Remaining Homestead Exemption" [Dk. No. 657] which

10   was set for a separate hearing on June 2, 2022.

11         Prior to the hearing, the Court posted its Tentative Ruling, a portion of which the Court

12   adopted as the basis for its ruling on the Motion and which is set forth hereinbelow:

13         *By her amended Schedule C, Debtor has claimed a homestead exemption against the*

14       *Property in the California statutory amount of $600,000.  No timely objection to the*

15       *exemption was filed.  Accordingly, $600,000 of the proceeds from the sale of the Property is*

16       *no longer property of the estate within the meaning of 11 U.S.C. 541(a).  In re Heintz, 198*

17       *B.R. 581, 585 (9th Cir. BAP 1993); In re Galvan, 110 B.R. 446, 449 (9th Cir. BAP 1990).  By*

18       *order of this Court, the trustee has remitted $300,000 or half of such proceeds, to Debtor.*

19       *Debtor's spouse, Ryal Richards ("Ryal") claims entitlement to the other half of the exempted*

20       *proceeds, i.e., $300,000 (the "Remaining Proceeds").*

21         *Ryal asserts entitlement to the Remaining Proceeds pursuant to certain orders in the*

22       *protracted state court dissolution/property division  litigation between the parties.  Debtor*

23       *disputes that Ryal is entitled to distribution of the Remaining Proceeds pursuant to any state*

24       *court orders.  Given that the Remaining Proceeds are no longer property of the bankruptcy*

25       *estate, that the distribution of the same to either Debtor or Ryal will have no affect upon the*

26       *administration of the bankruptcy estate, and that entitlement to the Remaining Proceeds is a*

27

28

"Remaining Proceeds."

4870-4453-5073v.1-1015-148

1    *matter of state law, including the state court's interpretation of its own orders, the Court*

2    *believes that the state court should make the final determination as to which party is entitled*

3    *to the Remaining Proceeds.*

4        For the reasons stated on the record, and as set forth hereinabove, the Court orders as

5    follows:

6        IT IS ORDERED:

7        1.    The Motion is denied to the extent that it seeks authority for the Trustee to

8    immediately distribute the Remaining Proceeds to Ryal Richards.

9        2.    The Motion is granted as to the alternative relief authorizing the Trustee to interplead

10    the Remaining Proceeds with the Orange County Superior Court ("Superior Court') in connection

11    with the pending dissolution of marriage action between Debtor and Ryal Richards, case no.

12    15D009634 ("Dissolution Case") and the Trustee is authorized to take all steps necessary to

13    interplead and deposit the Remaining Proceeds in such court.

14        3.    Notwithstanding the foregoing, and in lieu of interpleader, the Trustee is authorized,

15    in his discretion, to hold the Remaining Proceeds in a segregated account pending an order of the

16    Superior Court in the Dissolution Case determining the party entitled to the Remaining Proceeds.

17    Upon entry of an order by the Superior Court in the Dissolution Case determining the party entitled

18    to the Remaining Homestead Proceeds, the Trustee is authorized to immediately disburse the

19    Remaining Proceeds to such person notwithstanding any pending motion for reconsideration or

20    appeal, so long as no stay of such order has been issued.

21

22    / / /

23

24    / / /

25

26    / / /

27

28

4870-4453-5073v.1-1015-148

4.      Although the Remaining Proceeds are no longer property of the bankruptcy estate, the automatic stay remains in effect with respect to property of the bankruptcy estate and the Superior Court shall not divide community property or take any other action or make any other determinations regarding assets, proceeds, or any other property which remains property of the bankruptcy estate.

###

Date: June 14, 2022

Erithe Smith
United States Bankruptcy Judge

4870-4453-5073v.1-1015-148

Exhibit "7"

FILED & ENTERED

SEP 01 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

In re:

Alicia Marie Richards,

                                    Debtor(s).
_____

Ryal W. Richards,

                                    Plaintiff(s),

        v.

Alicia Marie Richards,

                                    Defendant(s).

CHAPTER 7

Case No.:  8:21-bk-10635-ES
Adv No:  8:22-ap-01067-ES

**ORDER GRANTING MOTION TO REMAND**

Vacated Hearing:
Date:        September 6, 2022
Time:        10:00 a.m.
Courtroom:   5C - Virtual

        The Court has considered the Motion to Remand All Family Law Matters Back to

the Orange County Superior Court, Family Law Division filed August 3, 2022 [Dk. 6],

Debtor's Opposition filed August 23, 2022 [Dk. 17] (the "Motion"), the Reply filed August

30, 2022 [Dk. 18], the docket as a whole including that in the main case, and all related

adversaries, and having determined that this matter is appropriate for disposition

without a hearing, hereby GRANTS the Motion and VACATES the September 6, 2022,

hearing.

-1-

**EXHIBIT "7"
PAGE 313**

1    The Court may remand this matter pursuant to 28 U.S.C. §1452(b), FRBP 9027

2    and *Roberts v. Bisno*, 433 B.R. 753, 758 (CD Cal. 2010). Courts have "an unusually

3    broad grant of authority" to order an equitable remand. *McCarthy v. Prince*, 230 B.R.

4    414, 417 (B.A.P. 9th Cir. 1999). In evaluating whether equitable remand is appropriate,

5    courts generally rely on the following fourteen factors: (1) the effect on the efficient

6    administration of the estate; (2) the extent to which state-law issues predominate; (3)

7    the lack of novelty or difficulty of applicable law; (4) the presence of related state-court

8    proceedings; (5) the lack of jurisdictional bases for removal other than § 1334(b); (5) the

9    remoteness to the main bankruptcy case; (7) the absence of any core proceeding; (8)

10   the inapplicability of severing claims; (9) the burden on the federal docket; (10) the

11   likelihood of forum shopping; (11) the right to a jury trial; (12) the presence of non-

12   debtor parties; (13) comity; and (14) the possible prejudice to the plaintiff. *Id.* See also*,

13   Deen v. Deen (In re Deen), No. SC-21-1035-BSF, 2022 Bankr. LEXIS 1601, at *1*

14   *(B.A.P. 9th Cir. June 7, 2022).*

15   In the instant action, remand is warranted based upon the law and facts as

16   articulated clearly in the pleadings before this Court.

17   First, this action will have little to no material effect on the bankruptcy proceeding.

18   Second, California state law predominates. Third, there are no difficult or unsettled

19   issues of federal law. See, *Citigroup v. Pac. Inv. Mgmt. Co (In re Enron),* 296 B.R. 505,

20   509 (C.D. Cal. 2003) (favoring remand because "California courts have more expertise

21   in interpreting California law"). Fourth, this action does not present any bankruptcy

22   issues. Fifth, jurisdiction is based on §1334(b). Sixth, there are no severability of issues

23   factors to consider here. Seventh, there seems to be forum shopping by Debtor in this

24   case. Eighth, comity favors equitable remand since the only claims asserted are state-

25   law claims. *In re Enron*, 296 B.R. at 509. ("Comity dictates that California courts should

26   have the rights to adjudicate the exclusively state law claims involving California-centric

27   plaintiffs and California-centric transaction").

28

1    **IT IS HEREBY ORDERED** as follows:

2    1. The case is REMANDED to the Orange County Superior Court, Family Law

3       Division.

4    2. All future hearing dates in this adversary proceeding are VACATED.

5    **IT IS SO ORDERED.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: September 1, 2022

26                                          Scott C. Clarkson
                                            United States Bankruptcy Judge

27

28

-3-

Exhibit "8"



FILED & ENTERED

SEP 02 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Alicia Marie Richards,<br><br><div align="right">Debtor(s).</div> | CHAPTER 7<br><br>Case No.:  8:21-bk-10635-SC<br>Adv No:   8:22-ap-01067-SC<br><br>**ORDER** |
| Ryal W. Richards,<br><br><div align="right">Plaintiff(s),</div>    v.<br><br>Alicia Marie Richards,<br><br><div align="right">Defendant(s).</div> | |

      It is hereby ORDERED that this Order, after entry on this adversary

proceeding docket, be immediately transmitted by the Clerk of the Bankruptcy

Court for the Central District of California to the Bankruptcy Appellate Panel for

the Ninth Circuit to accompany all other pleadings in the case regarding the

Notice of Appeal and Request for Emergency Stay Pending Appeal.

<div align="right">

**EXHIBIT "8"**

**PAGE 316**

</div>

On September 2, 2022, a Notice of Appeal and Statement of Election was filed with the Bankruptcy Court in this adversary proceeding as Docket No. 25.

The Notice includes a Request an Emergency Hearing for Stay Pending Appeal directed to the Bankruptcy Appellate Panel for the Ninth Circuit. The Notice does not request that this Court rule on the Stay Pending Appeal and presents no reason why such a request would have been impracticable or impossible.

Federal Rule of Bankruptcy Procedure 8007 contains presentation requirements for Motions for Stay Pending Appeals. "Ordinarily, a party must move first in the bankruptcy court for the following relief . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). If the request is instead made directly to the court where the appeal is pending, the moving party must show "that moving first in the bankruptcy court would be impracticable," or "if a motion was made in the bankruptcy court" must "state the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling." Fed. R. Bankr. P. 8007(b)(2). *In re Rivera*, 2015 U.S. Dist. LEXIS 151860, *4-5 (NDCA 2015) (J. Davila.)

The Bankruptcy Court is perfectly willing to permit the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") to rule on the request for a stay pending appeal, notwithstanding no request by this Court to do so. However, to guide the BAP on the views of this Court in the event it would want to follow the Federal Rules of Bankruptcy Procedure in this instance, it is hereby ordered that this Order be docketed and immediately transmitted to the BAP.

This case, a chapter 7 case almost entirely involves a **family law matter** now pending in the Orange County Superior Court for the State of California. As previously found by this Court, in an effort to forum shop, the Debtor removed a matter directly from the family law court to this Bankruptcy Court. This Court, having reviewed the entirety of the bankruptcy court docket (with over 820 docketed items since March, 2021), and all adversary proceedings, including all transcripts since the announcement

**EXHIBIT "8"**
**PAGE 317**

of the transfer of the case from the retiring of the Honorable Erithe Smith to this Court on **August 16, 2022**, carefully considered the Motion to Remand.  On the date this Court accepted the assignments, September 1, 2022, the Court entered its order remanding the case back to the Family Law Court in Orange County. That order was entered after careful consideration of the case, since its notice of assignment to this Court was made on August 16, 2022 and proceedings were otherwise scheduled in the family law court.

Had this Court been requested to decide whether a stay pending appeal on the Remand Order should issue, it would have considered the following:

The standard for a stay pending appeal is similar to the standard for a preliminary injunction, as the two orders raise similar concerns. See *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009).

Accordingly, a party seeking a stay pending appeal "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of relief, [3] that the balance of equities tips in his favor, and [4] that a stay is in the public interest." *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (citing *Winter Nat. Res. Def. Council*, 555 U.S. 6, 19 (2008)); *United States SEC v. Wilde, No SACV 11-315-DOC (AJWx)*, 2013 U.S. Dist. LEXIS 76147, 2013 WL 2303761, at *5 (C.D. Cal. May 20, 2013). The party requesting a stay bears the burden of showing that the circumstances justify a stay. *Nken*, 556 U.S. at 433-34.  See *Holmes v. Harris*, 2021 U.S. Dist. LEXIS 106820, *14-15, (CDCA 2021) (Chief Judge Gutierrez).

As the Court carefully familiarized itself with the pleadings, and all of them in this case, reviewed the Motion to Remand back to family law court, and the Opposition, it determined that the removal was an effort to forestall a family law determination and remove the decision to another forum. The Court also determined after careful review that there were no important federal bankruptcy questions involved in the family law court matter and that the family law court was best suited to resolve the issues before it, and it had the jurisdiction to do so.  Thus, this Court would have found that the Movant

**EXHIBIT "8"**
**PAGE 318**

has no likely chance of success on the appeal.  Also, this Court would have discussed

ad considered the standard of review of an appellate court on issues of remand and

would have noted that lower courts have broad discretion with respect to remand

proceedings to state family law courts.

The Court would have found no irreparable harm to any party but for a stay of

appeal. No such showing is set forth in the Request for a Stay.

This Court would have also analyzed the equities of this proceeding and parties

and would have found that the balance, by clear and convincing measures, would weigh

on the side of parties seeking remand of this matter to the family law court in Orange

County, California.

Finally, this Court would have found that the public interest in having family law

matters determined in family law courts (and probate matters heard in state probate

courts) is paramount in these types of cases. See *i.e. Stern v. Marshall*, 564 U.S. 462,

462 (2011).

This Court would have again reviewed its order now under appeal and found that

it had previously held that:

> The Court may remand this matter pursuant to 28 U.S.C. §1452(b), FRBP 9027
> and *Roberts v. Bisno*, 433 B.R. 753, 758 (CD Cal. 2010). Courts have "an
> unusually broad grant of authority" to order an equitable remand. *McCarthy v.
> Prince*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999). In evaluating whether equitable
> remand is appropriate, courts generally rely on the following fourteen factors: (1)
> the effect on the efficient administration of the estate; (2) the extent to which
> state-law issues predominate; (3)the lack of novelty or difficulty of applicable law;
> (4) the presence of related state-court proceedings; (5) the lack of jurisdictional
> bases for removal other than § 1334(b); (5) the remoteness to the main
> bankruptcy case; (7) the absence of any core proceeding; (8)the inapplicability of
> severing claims; (9) the burden on the federal docket; (10) the likelihood of forum
> shopping; (11) the right to a jury trial; (12) the presence of non-debtor parties;
> (13) comity; and (14) the possible prejudice to the plaintiff. *Id.* See also, *Deen v.
> Deen (In re Deen),* No. SC-21-1035-BSF, 2022 Bankr. LEXIS 1601, at *1 (B.A.P.
> 9th Cir. June 7, 2022).

> In the instant action, remand is warranted based upon the law and facts as
> articulated clearly in the pleadings before this Court.

> First, this action will have little to no material effect on the bankruptcy proceeding.

**EXHIBIT "8"**

**PAGE 319**

Second, California state law predominates. Third, there are no difficult or unsettled issues of federal law. See, Citigroup v. Pac. Inv. Mgmt. Co (In re Enron), 296 B.R. 505, 509 (C.D. Cal. 2003) (favoring remand because "California courts have more expertise in interpreting California law"). Fourth, this action does not present any bankruptcy issues. Fifth, jurisdiction is based on §1334(b). Sixth, there are no severability of issues factors to consider here. Seventh, there seems to be forum shopping by Debtor in this case. Eighth, comity favors equitable remand since the only claims asserted are state-law claims. In re Enron, 296 B.R. at 509. ("Comity dictates that California courts should have the rights to adjudicate the exclusively state law claims involving California-centric plaintiffs and California-centric transaction").

For all of these reasons, this Court would have denied the Stay Pending Appeal, had the proper procedures been utilized by the Moving party. However, this Court graciously indicates that it has no problem with the BAP undertaking a hearing on a Motion for Stay Pending Appeal.

**IT IS SO ORDERED.**

Dated: September 2, 2022

Scott C. Clarkson
United States Bankruptcy Judge

# Exhibit "9"

 Positive

As of: September 13, 2022 5:16 PM Z

## *Mehmood v. Sarani*

United States District Court for the Eastern District of California

April 19, 2018, Decided; April 20, 2018, Filed

No. 2:17-cv-0970 KJM AC PS

**Reporter**

2018 U.S. Dist. LEXIS 67214 *; 2018 WL 1891315

YASIR MEHMOOD, Plaintiff, v. TABASSUM SARANI, Defendant.

**Subsequent History:** Adopted by, Motion denied by *Mehmood v. Sarani, 2018 U.S. Dist. LEXIS 90259 (E.D. Cal., May 29, 2018)*

**Prior History:** *Mehmood v. Sarani, 2017 U.S. Dist. LEXIS 120128 (E.D. Cal., July 31, 2017)*

## Core Terms

recusal, undersigned, bias, discovery, district judge, allegations, speculation, assigned, ethnic, findings and recommendations, magistrate judge, motion to recuse, RECOMMENDATIONS, judge's impartiality, impartiality, citizenship, disqualify, partiality, questioned, grounds, matters, biased, gender, sex, sit

**Counsel:** **[*1]** Yasir Mehmood, Plaintiff, Pro se, Miami, FL.

Tabassum Sarani, Defendant, Pro se, Sacramento, CA.

**Judges:** ALLISON CLAIRE, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** ALLISON CLAIRE

## Opinion

ORDER AND FINDINGS & RECOMMENDATIONS

Currently pending before the court are plaintiff's motions for recusal (ECF No. 34) and for discovery (ECF No. 33).

I. MOTION TO RECUSE

Plaintiff seeks recusal of the assigned district judge and magistrate judge. ECF No. 34. Plaintiff's motion is considered under the standards set forth in *28 U.S.C. §§ 144* and *455*.

The Ninth Circuit has "held repeatedly that the challenged judge h[er]self should rule on the legal sufficiency of a recusal motion in the first instance." *United States v. Studley, 783 F.2d 934, 940 (9th Cir. 1986)* (citing *United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978)* (collecting cases)). "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein." *28 U.S.C. § 144*. "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *28 U.S.C. § 455(a)*. Under both recusal statutes, the substantive standard is "whether a reasonable **[*2]** person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Studley, 783 F.2d at 939* (quoting *Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1984)* (internal quotations omitted)).

Plaintiff alleges that the undersigned is biased against him based on the language of a previous order she issued. Plaintiff speculates that this shows a "natural feminism" which "offends and prejudice an immigrant plaintiff and shows partiality of judge." ECF No. 34 at 1 ¶2. Plaintiff further contends that the undersigned has "personal knowledge" of plaintiff's criminal conviction, and related bail matters which involved defendant Sarani, and therefore must be recused. Id. at 2 ¶ 3.[1] To

---

[1] *See United States v. Mehmood*, Case No.2:12-cr-00154 JAM, at ECF Nos. 38 (3/11/13 initial appearance before Judge Claire on pretrial release violation), 39 (detention order signed 3/11/13). This was plaintiff's only appearance before the undersigned in the course of his criminal case.

2018 U.S. Dist. LEXIS 67214, *2

the extent plaintiff's claims of bias arise out of the undersigned's rulings in this case, or involvement in any other case, recusal is not warranted. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. U.S., 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)*. Moreover, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from [her] participation in the case." *United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966)* (citation omitted); see also *Liteky, 510 U.S. at 551* ("Also not subject to deprecatory characterization **[*3]** as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.")

Plaintiff also argues the gender, race and citizenship of both the district judge and the undersigned warrants recusal of both judges. Id. at 2 ¶3-4. However, gender, race and citizenship are not proper grounds for recusal. See *Waters v. Howard Sommers Towing, No. 10-CV-05296 CAS (AJW), 2012 U.S. Dist. LEXIS 199101, 2012 WL 13005445, at *3 (C.D. Cal. Jan. 31, 2012)* (citing *MacDraw, Inc. v. CIT Group Equip. Fin., 138 F.3d 33, 37 (2d Cir. 1998)* ("Courts have repeatedly held that matters such as race or ethnicity are improper bases for challenging a judge's impartiality. ... A suggestion that a judge cannot administer the law fairly because of the judge's racial and ethnic heritage is extremely serious and should not be made without a factual foundation going well beyond the judge's membership in a particular racial or ethnic group. Such an accusation is a charge that the judge is racially or ethnically biased and is violating the judge's oath of office"); *Blank v. Sullivan & Cromwell, 418 F.Supp. 1, 4 (S.D.N.Y. 1975)* ("Indeed, if background or sex or race of each judge were, by definition, sufficient grounds for removal, **[*4]** no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a sex, often with distinguished law firm or public service backgrounds")).

Plaintiff's allegations of bias are entirely baseless and are founded on nothing more than speculation. "*Section 455* does not require the judge to accept all allegations by the moving party as true. If a party could force recusal of a judge by factual allegations, the result would be a virtual 'open season' for recusal." *United States v. Greenough, 782 F.2d 1556, 1558 (11th Cir. 1986)* (citing *Phillips v. Joint Legislative Comm., 637 F.2d 1014 (5th Cir. 1981))*. "[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." Id. Plaintiff's conclusory allegations, based on nothing more than speculation, fail to establish a reasonable question as to the district judge and the undersigned's impartiality or that a bias or prejudice exists.

Accordingly, the motion for recusal of the undersigned is denied, and it is recommended that the request for recusal of Judge Mueller be denied as well.

II. <u>MOTION FOR DISCOVERY</u>

Plaintiff has also filed a motion for discovery. ECF No. 34. However, as communicated in this court's previous court order, discovery for this case will not commence **[*5]** until the defendant has filed an answer and a scheduling order has been issued. Accordingly, the motion for discovery will be denied as premature.

III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:
    1. Plaintiff's motion to recuse the undersigned (ECF No. 34), is DENIED; and
    2. Plaintiff motion for discovery (ECF No. 33), is DENIED.

Further, IT IS HEREBY RECOMMENDED THAT plaintiff's motion to recuse the assigned district judge (ECF No. 34) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of *28 U.S.C. § 636(b)(1)*. Within twenty-one (21) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." *Local Rule 304(d)*. Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991)*.

DATED: April 19, 2018

/s/ Allison Claire

**ALLISON CLAIRE**

**UNITED STATES MAGISTRATE JUDGE**

**End of Document**

Exhibit "10"

 Warning
As of: September 13, 2022 5:17 PM Z

## *Richards v. Strang*

Court of Appeal of California, Fourth Appellate District, Division Three

May 2, 2022, Opinion Filed

G059305 consol. w/ G059495

**Reporter**

2022 Cal. App. Unpub. LEXIS 2686 *; 2022 WL 1302487

ALICIA MARIE RICHARDS, Plaintiff and Appellant, v. PATRICIA STRANG et al., Defendants and Respondents.

**Notice:** NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(b). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

**Prior History: [*1]** Appeal from judgments of the Superior Court of Orange County, No. 30-2018-00986705, Glenn R. Salter, Judge.

*Richards v. Richards, 2022 Cal. App. Unpub. LEXIS 2685, 2022 WL 1302484 (Cal. App. 4th Dist., May 2, 2022)*

**Disposition:** Affirmed. Motion for judicial notice granted.

## Core Terms

anti-SLAPP, dissolution action, trial court, family law court, allegations, protected activity, prevailing, proceedings, conspiracy, cause of action, probability, litigate, motions, prong, lack of subject matter jurisdiction, judicial proceedings, litigation privilege, family residence, defeat, lack subject matter jurisdiction, dissolution proceeding, matter of law, civil court, Defendants', misconduct, ownership, disputes

**Counsel:** Alicia Marie Richards, Pro per.

Law Offices of Randy K. Vogel and Randy K. Vogel for Defendants and Respondents.

**Judges:** O'LEARY, P. J.; GOETHALS, J., MARKS, J.[*] concurred.

**Opinion by:** O'LEARY, P. J.

## Opinion

Alicia Marie Richards and Ryal W. Richards have been embroiled in a long drawn-out and highly acrimonious dissolution action for several years.[1] Alicia has filed multiple unsuccessful appeals in connection with the couple's divorce judgment and Ryal's efforts to enforce it.[2] In April 2018, while some of her appeals were

───────────────

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] We will refer to the parties by their first names to avoid confusion.

[2] *In re Marriage of Richards* (Jan. 9, 2020, G055927) [nonpub. opn.] (*Richards I*) [affirmed order refusing to set aside a stipulated marital dissolution judgment ordering sale of the family residence]; *In re Marriage of Richards* (Jan. 9, 2020, G056626) [nonpub. opn.] (*Richards II*) [regarding postjudgment orders]; *In re Marriage of Richards* (May 18, 2020, G056921) [nonpub. opn.] (*Richards III*) [postjudgment orders regarding enforcement of judgment]; *In re Marriage of Richards* (Oct. 6, 2020, G057803) [nonpub. opn.] (*Richards IV*) [affirmed 2018 orders denying motions to quash/vacate Ryal's writ of possession].)

We have also considered two tangentially related appeals arising from the dissolution action. In *Lavacot [*2] v. Richards* (Mar. 30, 2020, G056745) [nonpub. opn.], we considered Alicia's failed efforts to obtain money from her great-grandparents' trust to buy out Ryal's interest in the family residence. In *Zech v. Richards* (Mar. 8, 2022, G057798) [nonpub. opn.] (*Zech*), we determined the court had subject matter jurisdiction to adjudicate Alicia's former attorney's

2022 Cal. App. Unpub. LEXIS 2686, *2

pending, Alicia filed a fraud action against Ryal. She later amended the complaint to add Ryal's mother, Patricia Strang, as well as Ryal's trial counsel in the dissolution action, Kevin Eugene Robinson. The trial court sustained Ryal's demurrer to the complaint without leave to amend. We affirmed the judgment dismissing Ryal in *Richards v. Richards* (May 2, 2022, G059675 [nonpub. opn.] (*Richards V*.).

This appeal challenges the trial court's decision to grant Strang's and Robinson's special motions to strike (anti-SLAPP motion) (*Code Civ. Proc., § 425.16*).[3] After the court dismissed Strang and Robinson from the case, Alicia filed two notices of appeal which were consolidated. Alicia's arguments attacking the court's jurisdiction to consider the anti-SLAPP motions, as well as her contentions regarding the court's rulings on the motions, lack merit. Accordingly, we affirm the judgments of dismissal entered in favor of Robinson and Strang.

BACKGROUND FACTS

We incorporate by reference the summary of facts outlined in *Richards I* concerning the dissolution action.[4] Relevant to this appeal, Alicia and Ryal were each represented by counsel in 2016 when Ryal filed a dissolution petition and moved out of the family residence (Property). (*Richards I*, G055927.) Ryal, claiming he could not afford to maintain the Property in addition to a separate residence, requested a hearing on selling the Property immediately. (*Ibid.*) He believed the Property's equity was approximately $800,000. (*Ibid.*) Alicia indicated she wanted to purchase the Property. (*Ibid.*) In 2017, Alicia and Ryal, with their counsel, **[*3]** appeared for a hearing and entered into a settlement agreement and stipulation for judgment. (*Ibid.*) The 11-page proposed judgment concerned many of the parties' disputes, including custody arrangements, credits, and support payments. With respect to the Property, the agreement provided Alicia with a July 7, 2017, deadline to obtain funds from a family trust to buy out Ryal's share, or alternatively a timeline and process for vacating and selling the residence if Alicia did not purchase the Property before

───────────────

[3] All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[4] We grant Alicia's motion for judicial notice of documents originally filed in Ryal and Alicia's dissolution case (Orange County Super. Ct. Case No. 15D009634), which also became part of the appellate record for *Richards I*.

July 7. (*Ibid.*)

All did not proceed as planned. Alicia was unable to buy out Ryal's share before the July deadline, and in September 2017, she filed a motion to vacate or set aside the stipulated judgment. (*Richards I, supra*, G055927.) Alicia asserted she was defrauded and coerced into signing the settlement. She added the stipulated judgment was the result of duress and described multiple incidents of perceived misconduct. Before the hearing, Alicia filed two more declarations raising additional allegations of fraud, concealment, duress, mistake, and inequity. (*Ibid.*) In January 2018, the court considered the moving papers and oral argument before denying the motion. ( **[*4]** *Ibid.*) Alicia appealed the ruling.

A few months later, on April 17, 2018, Alicia filed a lawsuit against Ryal alleging causes of action for fraud, sexual misconduct, right of privacy, intentional infliction of emotional distress, defamation of character, threats and spousal abuse, breach of contract, "detriment," and breach of fiduciary duty. Two months later, Alicia amended the complaint to name Ryal's trial counsel a defendant in her action. In October 2018, she added Ryal's mother as a defendant in her action.

Ryal filed a demurrer to the complaint, but before it could be heard the court stayed the matter due to Alicia's appeal in the dissolution action and a new bankruptcy proceeding. Eventually the court lifted the stay, and in 2020 Alicia filed a first amended complaint (FAC).

Alicia's FAC repeated some of the original causes of action, and added a few new ones, as follows: (1) fraud in fact and deceit; (2) negligent infliction of emotional distress; (3) right of privacy; (4) intentional infliction of emotional distress; (5) defamation of character; (6) threats and spousal abuse; (7) breach of contract and covenants; (8) breach of fiduciary duty; and (9) rescission of contract for **[*5]** fraud. Ryal demurred to the FAC. Robinson and Strang filed anti-SLAPP motions The parties filed multiple requests for judicial notice.

The court granted the anti-SLAPP motions. It noted, "This is a marital dissolution proceeding that has spilled over into the civil courts." Applying the well-settled two step analysis, the court determined Robinson met his burden on the first prong by proving all the allegations against him relating to his zealous representation of Ryal in the dissolution action. It concluded, Alicia did not meet her burden of showing the complaint against Robinson was legally sufficient to proceed to trial.

2022 Cal. App. Unpub. LEXIS 2686, *5

As for Strang, the court determined she met her burden on the first prong because the allegations related to Strang's efforts to intervene in the dissolution action and make false claims concerning property being litigated by the family law court. The court determined Alicia did not meet her burden on the second prong because it lacked the authority to reconsider allegations of fraud rejected by the family law court. The court awarded Robinson $5,564.95 and Strang $2,844.95 for attorney fees and costs. The court dismissed Robinson and Strang from the lawsuit.

DISCUSSION [*6]

### I. *Self-Represented Litigants*

The trial court's orders are presumed to be correct. The appellant has the burden to prove otherwise by presenting legal authority and analysis on each point made, supported by appropriate citations to the material facts in the record. If the appellant does not meet this burden, the argument will be deemed forfeited. (*Ewald v. Nationstar Mortgage, LLC (2017) 13 Cal.App.5th 947, 948, 220 Cal. Rptr. 3d 751 (Ewald)* ["We repeatedly have held that the failure to provide legal authorities to support arguments forfeits contentions of error"].) These rules of appellate procedure apply to Alicia even though she is representing herself. (*Nelson v. Gaunt (1981) 125 Cal.App.3d 623, 638, 178 Cal. Rptr. 167*.) "When a litigant is appearing in propria persona, he [or she] is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]." (*Ibid.*)

Alicia has the mistaken impression she is entitled to special treatment because she represented herself. (*Rappleyea v. Campbell (1994) 8 Cal.4th 975, 984-985, 35 Cal. Rptr. 2d 669, 884 P.2d 126* [self-representation not grounds for lenient treatment].) This is not intended to penalize self-represented litigants; instead, it is necessary to maintain stability in appellate proceedings, requiring adherence to the forms and procedures that govern appeals. This in turn supports the appellate court's independent and unbiased decision-making.

### II. [*7] *Anti-SLAPP Applicable Law and Standard of Review*

*Section 425.16* authorizes a special motion to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (*§ 425.16, subd. (b)(1)*.) The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance by allowing defendants "to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc. (2019) 7 Cal.5th 871, 880, 249 Cal. Rptr. 3d 569, 444 P.3d 706*.)

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by *section 425.16*, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. [Citation.] On appeal, we review the trial court's ruling on the anti-SLAPP motion de novo. [Citation.]" (*Wittenberg v. Bornstein (2020) 50 Cal.App.5th 303, 311-312, 263 Cal. Rptr. 3d 677*.)

### III. *First Step—Liability Arising from Protected Activity*

*Section 425.16, subdivision (b)(1)* (*section 425.16(b)(1)*), provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California [*8] Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.]" (*Park v. Board of Trustees of California State University (2017) 2 Cal.5th 1057, 1062-1063, 217 Cal. Rptr. 3d 130, 393 P.3d 905*.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id. at p. 1063*.)

"Consequently, '[i]n deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (*§ 425.16, subd. (b)*.)' [Citation.] Thus, we are 'not limited to examining the allegations of the complaint alone but rather consider[] the pleadings and the factual material submitted in connection with the special motion to strike.' [Citations.]" (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP (2017) 18 Cal.App.5th 95, 111, 226 Cal. Rptr. 3d 246* ["The 'gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action'"].)

Under *section 425.16, subdivisions (e)(1)* and *(e)(2)*,

Exhibit "10"
Page 325

2022 Cal. App. Unpub. LEXIS 2686, *8

respectively, protected activity includes **[\*9]** "any written or oral statement or writing made before a . . . judicial proceeding," and "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body." "Under the plain language of *section 425.16, subdivisions (e)(1)* and *(2)*, as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding . . . are per se protected as petitioning activity by the anti-SLAPP statute. [Citations.]" (*Cabral v. Martins (2009) 177 Cal.App.4th 471, 479-480, 99 Cal. Rptr. 3d 394* (*Cabral*).) "Recognized petitioning activities . . . include not only the conduct of litigation but also acts and communications reasonably incident to litigation . . . ." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1025.)

A. *Robinson's Anti-SLAPP Motion*

Alicia claims the basis for liability was Robinson's role in conspiring with her ex-husband. She asserts that because Robinson's motive was financial, his role in the fraudulent scheme to deprive her of her property, his perjury, and his theft, cannot be considered privileged activities.

Reviewing the matter de novo, we conclude the trial court did not err by deciding each of Alicia's claims against Robinson arose from activity **[\*10]** protected under *section 425.16, subdivisions (e)(1)* and *(e)(2)*. The gravamen of Alicia's complaint was primarily focused on Ryal's misconduct. Alicia's 34-page FAC refers to Robinson only five times, and each allegation related to his conduct as Ryal's counsel in the dissolution action. The five references are as follows:

(1) "Kevin E. Robinson (hereinafter "Robinson") is currently [Ryal's] attorney in fact and his actions in this matter were conducted with malice *within the course and scope of this representation thereof* and as approved and/or ratified by [Ryal] with the advanced knowledge of his conduct." (Italics added.)

(2) "[Ryal engaged in misconduct] to support his claim that Plaintiff was a hoarder and had psychological problems putting her in false light in the family law court and in the Newport Beach community and these false claims were being subordinated by *Robinson who claimed a special relationship with the [f]amily [l]aw [c]ourt [j]udge*. It was not until July, 2017 that Plaintiff began to put the pieces together proving that it was Defendants . . . who conspired together as part of their scheme to libel, slander, and discredit Plaintiff *in the [f]family [l]aw proceedings* and in the Newport Beach community where **[\*11]** Plaintiff resides as part of their scheme to take Plaintiffs real and community property by fraud, deceit, and misrepresentation knowing that these claims were false and misleading, causing Plaintiff extreme emotional distress, humiliation, and fear for the safety of her children and herself." (Italics added.)

(3) "Plaintiff was ignorant that on October, 17, 2016, when [Ryal] and *Robinson filed an emergency hearing* to sell the family residence stating that [Ryal] cannot afford to pay for two households despite the fact he was earning in excess of $10,000.00 a month . . . [Ryal] then purposely put the family home into foreclosure by intentionally defaulting on the mortgages as part of Defendants' scheme to force a fire sale knowing that Plaintiff was trying to obtain her father's trust to keep the family home for the benefit of the children." (Italics added.)

(4) "Plaintiff was ignorant that on March 28, 2017, that as part of the scheme to defraud Plaintiff, Strang was represented by the same person that was present when [Ryal] was vacating the family residence on February 20, 2016, both [Ryal] and Robinson perjured themselves when they lied by claiming they had no knowledge that Strang **[\*12]** was going to assert a 25 [percent] ownership in the family residence.

(5) "[Ryal lied about his ability to] make the monthly debt payments so as to force the sale of the family home . . . . This falsehood was subordinated by Robinson who knew of [Ryal's] income and had the fiduciary duty to state the truth."

Each of these allegations arose from protected activity. The first statement, made as part of Alicia's introduction of Robinson, is the most telling. She admits her claims regarding Robinson relate to his actions during the "course and scope" of his representation of his client Ryal. "[A]ll communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding . . . are per se protected as petitioning activity by the anti-SLAPP statute. [Citations.]" (*Cabral, supra, 177 Cal.App.4th at pp. 479-480*.) The remaining allegations refer to Robinson's disclosure and nondisclosure of specific information about Alicia's reputation and Ryal's financial status while litigating the dissolution action on Ryal's behalf. These statements or omissions were protected under *section 425.15, subdivision (e)(2)*, because they were made in connection with an issue under consideration by the

2022 Cal. App. Unpub. LEXIS 2686, *12

family court, i.e., the classification and division **[13]** of the spouses' property. Similarly, Robinson's statements to the trial court and motions qualified as statements or omissions before a judicial proceeding, which were protected under *section 425.16, subdivision (e)(1)*.

Alicia suggests Robinson's conduct was not protected because he engaged in intentionally criminal activity. We appreciate that all categories of protected activity are subject to an exception, established in *Flatley v. Mauro (2006) 39 Cal.4th 299, 46 Cal. Rptr. 3d 606, 139 P.3d 2* (*Flatley*), for conduct illegal as a matter of law. (*City of Montebello v. Vasquez (2016) 1 Cal.5th 409, 423, 205 Cal. Rptr. 3d 499, 376 P.3d 624*.) But our Supreme Court has emphasized the narrow scope of this exception: "We made it clear in *Flatley* that conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step. [Citation.]" (*Id. at p. 424*.) Here, the *Flatley* exception is inapplicable because Robinson has not conceded he engaged in illegal activity, and Alicia produced no evidence conclusively establishing that he did. Indeed, she does not mention the *Flatley* exception in her briefing or supply any legal analysis on why we should deem Robinson's conduct illegal as a matter of law. (See e.g., *Flatley, supra, 39 Cal.4th at pp. 328-333* [defendant's undisputed letter and telephone **[14]** calls constituted extortion as matter of law]; *Lefebvre v. Lefebvre (2011) 199 Cal.App.4th 696, 700, 705-706, 131 Cal. Rptr. 3d 171* [defendant did not dispute police report was false, as established by finding of factual innocence in criminal case prompted by report]; *City of Colton v. Singletary (2012) 206 Cal.App.4th 751, 767, 770, 142 Cal. Rptr. 3d 74* [defendant pled guilty to federal bribery offense of corruptly giving cash payments to local government agent].)

Alicia suggests she should have been given the opportunity to amend her complaint to remove the sentence stating Robinson was acting in the scope of his representation in the dissolution action. She claims it "was mistakenly put in paragraph 5 [of the FAC]." It is well settled law that this type of amendment is not permitted. "Once the trial court has determined the speech at issue is constitutionally protected, it may not grant leave to amend to omit facts to take the claim out of the protection of *section 425.16*. [Citation.] Allowing an amendment 'once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from

*section 425.16*'s quick dismissal remedy. Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature **[15]** of the suit through more artful pleading.' [Citation.]" (*Mobile Medical Services etc. v. Rajaram (2015) 241 Cal.App.4th 164, 171, 193 Cal. Rptr. 3d 568*.)

**B. *Strang's Anti-SLAPP Motion***

Alicia's claims against Strang in the FAC are more difficult to decipher. We found only two allegations that specifically mention Strang:

(1) "Plaintiff was unaware that on March 24, 2017, that as part of Defendants' intentional scheme, Strang *filed a joinder in the [f]amily [l]aw [c]ourt* claiming a 25 [percent] ownership of the family house misrepresenting facts and knowing them to be untrue specifically because Strang was paid off and deeded off eleven years previously. Plaintiff was ignorant that on March 28, 2017[,] that as part of the scheme to defraud Plaintiff, Strang was represented by the same person that was present when [Ryal] was vacating the family residence on February 20, 2016, both [Ryal] and Robinson perjured themselves when they lied by claiming they had no knowledge that Strang was going to assert a 25 [percent] ownership in the family residence." (Italics added.)

(2) "Defendants' assertion of fraudulent 25 [percent] ownership in the family home by [Strang] in the attempt to scam Plaintiff despite the fact [Strang] was paid off **[11]** years before and was not on the deed. Defendants' **[16]** also *make a fraudulent inheritance claim* on behalf of [Ryal] and Strang that had no merit but ran up huge attorney fees and costs to Plaintiff in the [f]amily [l]aw [c]ourt knowing that these claims were false . . . ." (Italics added.)

These allegations both clearly relate to Strang's efforts to litigate her interest in the Property, which was the primary subject of the dissolution action. We are uncertain why Alicia mentioned Strang's counsel was present when Ryal moved out of the Property. At best, it provides background information about Strang's early and ongoing interest in the Property. In any event, we conclude the trial court correctly determined Strang met her burden of proving the allegations all arise from her petitioning efforts to intervene in the dissolution action. Certainly, Strang's motion to intervene was protected activity. (*§ 425.16, subd. (e)(1)*.) The motion was a writing made in the dissolution action and directly concerned the persons who had an interest in that

proceeding. (See *Contemporary Services Corp. v. Staff Pro Inc. (2007) 152 Cal.App.4th 1043, 1055, 61 Cal. Rptr. 3d 434* [act of filing complaint and e-mail of litigation update protected activity].) Strang's purported fraudulent statements relating to the Property during the dissolution proceedings was protected activity because [*17] they were made in connection with issues currently under review. "'A statement is "in connection with" an issue under consideration by a court in a judicial proceeding within the meaning of clause (2) of *section 425.16, subdivision (e)* if it *relates to* a substantive issue in the proceeding and is directed to a person having some interest in the proceeding. [Citation.]' [Citation.]'" (*Crossroads Investors, L.P. v. Federal National Mortgage Assn. (2017) 13 Cal.App.5th 757, 779, 222 Cal. Rptr. 3d 1.*)

IV. *Second Step—Probability of Prevailing*

Having concluded Alicia's allegations against Robinson and Strang arose from protected activity, we turn our attention to the second prong of the anti-SLAPP analysis, i.e., has Alicia demonstrated a probability of prevailing on the claim. (*§ 425.16, subd. (b)(1).*) To meet this prong, Alicia had the burden of establishing that the elements of the challenged claim are "'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the [party opposing the motion] is credited.' [Citation.]" (*Oasis West Realty, LLC v. Goldman (2011) 51 Cal.4th 811, 820, 124 Cal. Rptr. 3d 256, 250 P.3d 1115.*)

In making this showing, Alicia cannot rely solely on the allegations in the complaint, but must present evidence that would be admissible at trial. (*Alpha & Omega Development, LP v. Whillock Contracting, Inc. (2011) 200 Cal.App.4th 656, 664, 132 Cal. Rptr. 3d 781.*) Regardless of who bears the burden of proof regarding affirmative defenses, the court must determine whether a plaintiff can [*18] establish a prima facie case of prevailing, or whether a defendant has defeated a plaintiff's evidence as a matter of law. (*Dickinson v. Cosby (2017) 17 Cal.App.5th 655, 683, 225 Cal. Rptr. 3d 430.*)

A. *Lack of Subject Matter Jurisdiction Defeats Claims Against Strang*

The court determined Alicia did not meet her burden on the second prong because it lacked the authority to reconsider allegations of fraud rejected by the family law court. We agree, for the same reason we affirmed the trial court's ruling sustaining Ryal's demurrer in *Richards*

*V., supra,* G059675. Simply stated, the trial court lacked subject matter jurisdiction to adjudicate the merits of the same claims that were central to the dissolution proceedings.

We incorporate by reference our discussion in *Richards V, supra,* G059675, of the applicable legal authority regarding subject matter jurisdiction. In that appeal, Alicia agreed with the trial court's conclusion it lacked subject matter jurisdiction to consider her claims against Ryal because the family law court had priority of jurisdiction over those disputes. Similarly, in this appeal, Alicia concedes the trial court lacked jurisdiction to consider her claims against Strang, and asserts the court should have transferred her claims "back to the family law court." She is right. The family law court [*19] had priority of jurisdiction over issues that were part of the dissolution proceedings, which included the ownership interests in the Property.

As in *Richards V.* G059675, Alicia is under the mistaken impression the court lacked authority to dismiss the case and should have instead transferred the matter to a family law judge. We explained in *Richards V.*, that a trial court must address subject matter jurisdiction as a threshold matter because a court lacking jurisdiction has no authority to adjudicate the merits of the dispute. (*Lefebvre v. Southern California Edison (2016) 244 Cal.App.4th 143, 152, 198 Cal. Rptr. 3d 114.*) Alicia apparently overlooked the body of case law holding a trial court can grant an anti-SLAPP motion based on lack of subject matter jurisdiction. Indeed, our Supreme Court addressed this issue and stated the following: "[A] court that lacks the power to answer one type of question in a case may nonetheless have the power to answer another type of question. It is, for example, a truism that '[a] court has jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance.' [Citations.] Lack of subject matter jurisdiction is no bar to [*20] determining that a plaintiff has failed to establish a probability of prevailing on her claim because of lack of subject matter jurisdiction." (*Barry v. State Bar of California (2017) 2 Cal.5th 318, 326, 212 Cal. Rptr. 3d 124, 386 P.3d 788* (*Barry*) [lack of subject matter jurisdiction is proper basis to determine plaintiff met second prong to defeat anti-SLAPP motion].)

We accept Alicia's concession the trial court lacked subject matter jurisdiction over her claims of misconduct regarding Strang. All of Alicia's allegations against Strang related to issues central to the family court

2022 Cal. App. Unpub. LEXIS 2686, *20

proceedings, including Strang's efforts to intervene in the dissolution action. "[R]uling on an anti-SLAPP motion does not necessarily require a ruling on the merits of the plaintiff's claims; it may instead involve a determination that the plaintiff has no probability of prevailing because the court lacks the power to entertain the claims in the first place." (*Barry, supra, 2 Cal.5th at p. 326*.) Such was the case here. The court correctly determined Alicia had no probability of prevailing on her claims against Strang because it lacked subject matter jurisdiction to adjudicate those claims.

We incorporate by reference our discussion in *Richards V., supra*, G059675, of Alicia's assertion the trial court had a sua sponte duty to transfer her case back to the family **[*21]** law court. Simply stated, there is no case authority to support Alicia's theory on this issue.

B. *Litigation Privilege Defeats Claims Against Robinson*

Robinson maintained, and the trial court agreed, Alicia did not meet her burden on this step because the conduct and statements at issue were protected by the litigation privilege. We agree. "A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim. [Citation.]" (*Fremont Reorganizing Corp. v. Faigin (2011) 198 Cal.App.4th 1153, 1172, 131 Cal. Rptr. 3d 478* (*Fremont*).)

"The litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding. '"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." [Citation.] The privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." [Citation.]' [Citation.] [¶] 'The purposes of *section 47, subdivision (b)*, are to afford litigants and witnesses free access **[*22]** to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, "[i]n furtherance of the public policy purposes it is designed

to serve, the privilege prescribed by *section 47[, subdivision (b)*] has been given broad application." [Citation.]' [Citation.]" (*Fremont, supra, 198 Cal.App.4th at p. 1172*, fn. omitted.) The privilege is not limited to statements made during trial or other proceedings, "but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen (2006) 37 Cal.4th 1048, 1057, 39 Cal. Rptr. 3d 516, 128 P.3d 713*. (*Rusheen*).)

The heart of Alicia's complaint against Robinson is that he helped Ryal procure a stipulated judgment, he misrepresented facts to the court while advocating for his client, he claimed to have a special relationship with the family law judge considering the case, and he participated in legal proceedings on behalf of Ryal that injured her reputation in her community. Robinson's conduct and statements, made while zealously advocating for his client before and during the **[*23]** dissolution action, was conduct protected by the litigation privilege. This absolute privilege bars all torts other than malicious prosecution. (*Rusheen, supra, 37 Cal.4th at p. 1057*.)

Alicia's attempt to distance some of Robinson's conduct from the litigation is unavailing. She claims the gravamen of all her causes of action relate to a conspiracy scheme between all the defendants to steal property and defraud her. A similar claim was considered and rejected by the court in *Kenne v. Stennis (2014) 230 Cal.App.4th 953, 179 Cal. Rptr. 3d 198*. In that case, the trial court denied defendants' anti-SLAPP motion on the plaintiff's first cause of action for conspiracy. The court reversed, explaining, "Conspiracy is not a cause of action. It is a theory of liability under which persons who, although they do not actually commit a tort themselves, share with the tortfeasor or tortfeasors a common plan or design in its perpetration. One who participates in a civil conspiracy, in effect, becomes liable for the torts of the coconspirators. But the conspiracy does not result in tort liability unless an actual tort is committed. [Citation.] As the Supreme Court explained, '"A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed **[*24]** resulting in damage."' [Citations.] 'A bare agreement among two or more persons to harm a third person cannot injure the latter unless and until acts are actually performed pursuant to the agreement. Therefore, it is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.' [Citation.] [Citation.]" (*Id. at p. 968*.)

Here, Alicia's fraud action was "a family law OSC with

civil headings." (*Neal v. Superior Court (2001) 90 Cal.App.4th 22, 25, 108 Cal. Rptr. 2d 262*.) Due to the lack of subject matter jurisdiction, Alicia cannot claim she would have prevailed on any of the underlying tort claims upon which the conspiracy claim was based. Alicia also cannot show she had a probability of prevailing because the trial court properly dismissed Robinson's alleged coconspirators, Ryal and Strang, after concluding events in family law litigation cannot be reframed as torts. We conclude the court correctly granted Robinson's and Strang's anti-SLAPP motions.

### V. *Allegations Regarding the Family Law Trial Judge*

Alicia maintains we must reverse the judgment because she was "prejudiced by the family law court judge misleading her into filing her claims in the civil court." She suggests the family law court convinced her to file her civil **[*25]** action to avoid fully litigating her disputes, knowing that the civil court lacked subject matter jurisdiction to consider the issues. We found nothing in the record to support this claim. The record shows Alicia asked the family law court to postpone sale of the Property because she *intended to file* a civil action against Ryal. The court stated a civil action was not good cause to defer the sale. Alicia does not explain how this statement mislead her. We found nothing in the record suggesting the court encouraged Alicia to file a fraud action.

We understand Alicia believes she has not had her day in court to fully litigate her claims against Ryal, Robinson, and Strang. In her briefing, she repeatedly asserts she was not seeking to *relitigate* her claims in the civil court because the family law court stopped her from litigating these disputes during the dissolution proceedings. These, and other disparaging remarks regarding the family law court, do not belong in this appeal. Our review is limited to the rulings and proceedings transpiring before the trial judge in the civil court, i.e., Robinson and Strang's anti-SLAPP motions. Moreover, because we are familiar with the basis for Alicia's **[*26]** many appeals challenging the family law court's rulings, we do not appreciate her fabricated complaints about being unfairly denied the opportunity to litigate her disputes.

### DISPOSITION

The judgments are affirmed. We grant appellant's motion for judicial notice. Respondents shall recover their costs on appeal.

O'LEARY, P. J.

WE CONCUR:

GOETHALS, J.

MARKS, J.[*]

---

**End of Document**

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to *article VI, section 6 of the California Constitution*.

# Exhibit "11"

Ⓐ Neutral

As of: September 13, 2022 5:18 PM Z

## *Waters v. Howard Sommers Towing*

United States District Court for the Central District of California

February 4, 2013, Decided; February 4, 2013, Filed

CV 10-05296 CAS (AJWx)

**Reporter**

2013 U.S. Dist. LEXIS 201290 *

Waters v. Howard Sommers Towing, et al.

**Subsequent History:** Motion for new trial denied by *Waters v. Howard Sommers Towing, Inc., 2013 U.S. Dist. LEXIS 72002 (C.D. Cal., May 21, 2013)*

**Prior History:** *Waters v. Howard Sommers Towing, Inc., 2013 U.S. Dist. LEXIS 4216 (C.D. Cal., Jan. 10, 2013)*

## Core Terms

bias, recusal, religious, disqualification, disqualify, religion, ethnic

**Counsel:** **[*1]** B Benedict Waters, Plaintiff, Pro se, Los Angeles, CA.

For City of Los Angeles, Defendant: Adena Michelle Hopenstand, Los Angeles City Attorney Office, Los Angeles, CA; Gabriel Seth Dermer, Office of the City Attorney, Los Angeles, CA.

For Ciro Ochoa, also known as Ochoa, Defendant: Michael R Amerian, LEAD ATTORNEY, Office of the City Attorney, Los Angeles, CA.

**Judges:** Honorable MARGARET M. MORROW.

**Opinion by:** MARGARET M. MORROW

## Opinion

**CIVIL MINUTES - GENERAL**

**Proceedings: Order Denying Plaintiff's Motion to Disqualify Judge Christina A. Snyder[201]**

On January 28, 2013, plaintiff B. Benedict Waters filed a

motion to disqualify Christina A. Snyder, the judge assigned to hear this action.[1] The motion was referred to this court for decision under General Order 08-05 and *Local Rule 72-5*. Having reviewed the motion, the court finds it suitable for decision without oral argument pursuant to *Rule 78 of the Federal Rules of Civil Procedure* and *Local Rule 7-15*. For the reasons set forth below, the court denies plaintiff's motion and refers the matter to Judge Snyder for further proceedings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2010, Waters, proceeding *pro se*, commenced this action against Howard Sommers Towing, Inc., Stacey Angst, Rickenbacker Group, Inc., and various other defendants.[2] The case **[*2]** was originally assigned to Judge Dolly M. Gee, but was transferred to Judge Snyder pursuant to General Order 08-05.

The complaint asserts various claims against defendants under the Fair Credit Reporting Act and the Fair Debt Collection Practices Act. Waters's claims apparently arise out of grievances related to a debt Waters may have owed, and problems with his credit and credit score that ensued as a result of a dispute regarding that debt. The complaint also contains various factual allegations concerning plaintiff's vehicle, which was allegedly "tow[ed] . . . a greater distance than allowed by law."[3] It is unclear whether or how these facts relate to the claims regarding Waters's debt.

The lengthy history of Waters's litigation against defendants is described in detail in Judge Snyder's

---

[1] Notice of Motion and Affidavit ("Motion"), Docket No. 201 (Jan. 28, 2013).

[2] Complaint, Docket No. 1 (Jul. 19, 2010).

[3] *Id.*, ¶ 50.

2013 U.S. Dist. LEXIS 201290, *2

order granting defendants' motion to declare Waters a vexatious litigant.[4] This action is the third suit he has filed against these and other defendants, evidently related to "a series of incidents in which defendants towed plaintiff's automobiles."[5] The other two cases bore Case Numbers CV No. 07-07568 CAS (AJWx), and CV No. 09-07696 CAS (AJWx).

## II. DISCUSSION

### A. Legal Standard Governing Disqualification

 **[*3]** The disqualification of federal judges is governed by 28 U.S.C. §§ 144 and 455.[6] See, e.g., Liteky v. United States, 510 U.S. 540, 548, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). Under § 144, a party seeking the recusal or disqualification of a federal judge must file a timely affidavit attesting that the judge to whom the matter has been assigned has a personal bias or prejudice against him or in favor of an opponent. The affidavit must state "the facts and reasons for the belief that bias or prejudice exists." 28 U.S.C. § 144. Under § 455, judges must disqualify themselves whenever their impartiality might reasonably be questioned or when they have a personal bias or prejudice concerning a party.

Under both §§ 144 and 455, the standard for disqualification is the same — "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." United States v. Hernandez, 109 F.3d 1450, 1453 (9th Cir. 1997). The bias or prejudice that must be shown is not merely a favorable or unfavorable disposition toward a party, but rather a "favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is

---

[4] Order re: Defendants' Motion for an Order Confirming That Plaintiff is a Vexatious Litigant and That He Be Required to Furnish Security and for a Stay of the Matter, Docket No. 81 (Apr. 25, 2011).

[5] Id. at 2.

[6] Motions to disqualify federal district judges are governed by 28 U.S.C. §§ 144 and 455. In re Webster, 382 F.2d 79, 82 (9th Cir. 1967) (28 U.S.C. § 144 provides the "procedures to be followed where a party to a proceeding in a district court of the United States believes the judge has a personal bias or prejudice against him").

undeserved, or because it rests upon knowledge that the subject ought not to possess." Liteky, 510 U.S. at 550 (emphasis original). For this reason, "the alleged bias and prejudice . . . must stem from an extrajudicial source." Id. at 544. "[O]pinions formed by the judge on the basis of facts introduced or evidence presented during the course of the proceedings are not grounds for disqualification unless there is evidence of such deep-seated favoritism or antagonism that fair judgment would be impossible." Id. at 555; see also United States v. Studley, 783 F.2d 934, 939 (9th Cir. 1986).

### B. Whether Judge Snyder Should Be Disqualified

Waters argues that **[*4]** Judge Snyder should be disqualified because she "routinely favors" parties before her that allegedly share her religious views.[7] He contends that, due to Judge Snyder's purported bias, she has ignored laws favorable to Waters and failed to credit his legal arguments.[8] At various points throughout his motion, Waters' references Judge Snyder's religious affiliation, stating that she is Jewish and uses her position as a judge to "shield" Jewish defendants.[9] He asserts that as a result of Judge Snyder's bias, "[p]laintiff would have fared no worse had he been represented . . . by a crash test dummy" or "empty chair."[10] In his declaration, Waters offers a litany of instances in which Judge Snyder allegedly failed to credit his arguments or "ignored evidence favorable to [him] but damning to the conduct of her Jewish colleagues."[11] Despite his repeated claims that Judge Snyder's religion has caused her to be biased against him, Waters provides no argument or evidence that Judge Snyder's decisions have been based on anything other than her conclusions regarding the law. By way of example, although Waters proffers as evidence the fact that "[Judge] Snyder found [that] the motion [to set aside default] prepared **[*5]** and filed by her Jewish colleague . . . showed that [defendant's] failure to respond was 'excusable,'" and therefore set aside a default entered

---

[7] Motion at 3. Waters asserts that his motion is "based exclusively" on the "extrajudicial source rule," claiming that Judge Snyder's bias stems from her religion. (Motion at 4).

[8] Id. at 17-19.

[9] Id. at 17.

[10] Id. at 15.

[11] Id. at 34, ¶ 98.

2013 U.S. Dist. LEXIS 201290, *5

against it, he does not adequately demonstrate that this decision was the product of extrajudicial bias.[12] The mere fact that Judge Snyder ruled in favor of a party who allegedly shares her religious views does not demonstrate impartiality. See *Kovachevich v. United States, Nos. 05-451, 05-452, 2005 U.S. Claims LEXIS 475, 2005 WL 6124816, *1 (Fed. Cl. July 28, 2005)* ("Plaintiff does not offer proof to substantiate his allegations [of religious bias], nor does he explain how the undersigned's ethnic or religious background or associations with other persons would bias or prejudice plaintiff's case"); *Hoatson v. New York Archdiocese, No. 05 Civ. 10467(PAC), 2006 U.S. Dist. LEXIS 87877, 2006 WL 3500633, *5 (S.D.N.Y. Dec. 1, 2006)* ("Religious devotion or affiliation cannot constitute a general bias or prejudice under *§§ 144* or *455(b)(1)*)". Other than asserting broadly that Judge Snyder's Jewish faith has infected her opinions with bias, Waters identifies no specific instances in which Judge Snyder's race or religion had any bearing on rulings that were made or the manner in which his cases were handled.

The race or religion of a judge, a party or an attorney is not typically grounds for recusal. See *Macdraw, Inc. v. Cit Group Equip. Fin., 1998 U.S. Dist. LEXIS 1919, *31 (S.D.N.Y. Feb. 5, 1998)* ("Judges cannot recuse themselves solely on the basis of their [*6] race or religion or the race or religion of the attorneys or parties who come before them"); see also *MacDraw, Inc. v. CIT Group Equip. Fin., 138 F.3d 33, 37 (2d Cir. 1998)* ("Courts have repeatedly held that matters such as race or ethnicity are improper bases for challenging a judge's impartiality. . . . A suggestion that a judge cannot administer the law fairly because of the judge's racial and ethnic heritage is extremely serious and should not be made without a factual foundation going well beyond the judge's membership in a particular racial or ethnic group. Such an accusation is a charge that the judge is racially or ethnically biased and is violating the judge's oath of office"); *Blank v. Sullivan & Cromwell, 418 F.Supp. 1, 4 (S.D.N.Y. 1975)* ("It is beyond dispute that for much of my legal career I worked on behalf of blacks who suffered race discrimination. I am a woman, and

before being elevated to the bench, was a woman lawyer. These obvious facts, however, clearly do not, *ipso facto*, indicate or even suggest the personal bias or prejudice required by *§ 144*. The assertion, without more, that a judge who engaged in civil rights litigation and who happens to be of the same sex as a plaintiff in a suit alleging sex discrimination on the part of a law firm, is, therefore, so biased that he or she could not hear [*7] the case, comes nowhere near the standards required for recusal. Indeed, if [the] background or sex or race of each judge were, by definition, sufficient grounds for removal, no judge on this court could hear this case, or many others, by virtue of the fact that all of them were attorneys, of a [particular] sex, [and had] distinguished law firm or public service backgrounds"). Consequently, this basis for recusal fails.

At bottom, Waters' motion demonstrates nothing more than that he disagrees with Judge Snyder's previous rulings. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky, 510 U.S. at 555*; see also *Matter of Beverly Hills Bancorp, 752 F.2d 1334, 1341 (9th Cir. 1984)* ("[B]ias for purposes of the statute must be from an extrajudicial source, and not from information gained in the course of the proceedings. Unfavorable rulings alone are legally insufficient to require recusal." *Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1984)* ("To provide grounds for recusal, prejudice must result from extrajudicial source. A judge's previous adverse ruling alone is not sufficient basis" (citation omitted)). Accordingly, his motion for recusal fails.

## III. CONCLUSION

For the reasons stated, plaintiff's motion to recuse Judge Snyder is denied. Pursuant to *Local Rule 72-5*, this action shall [*8] proceed before Judge Snyder as originally assigned.

---

**End of Document**

---

[12] Motion at 32, ¶¶ 88, 89. As a further example, Waters argues that Judge Snyder "was and is ethnically and racially incapable of making" an inference that he argued should be drawn. (Motion at 49, ¶ 203). There is no evidence, however, that Judge Snyder failed to credit Waters' argument because she was biased against him. Rather, Waters offers only his unsupported supposition that her ethnic background was a factor in the decision. Such a claim, devoid of factual support, provides no basis for recusal.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **TRUSTEE'S OMNIBUS OPPOSITION TO DEBTOR'S MOTIONS TO DISQUALIFY OR RECUSE PRESIDING JUDGE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 13, 2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **September 13, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 13, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**HONORABLE SCOTT C. CLARKSON – VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

**VIA EMAIL:**
**DEBTOR/SECURED CREDITOR** ALICIA MARIE RICHARDS, richardsalicia007@gmail.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 13, 2022 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **INTERESTED PARTY COURTESY NEF:** Amanda N Ferns aferns@fernslaw.com, mmakalintal@fernslaw.com
   - **ATTORNEY FOR CREDITOR FIRST FINANCIAL CREDIT UNION:** Daniel K Fujimoto wdk@wolffirm.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Richard G Heston rheston@hestonlaw.com, yflores@hestonlaw.com, docs@hestonlaw.com; HestonRR41032@notify.bestcase.com, handhecf@gmail.com
   - **ATTORNEY FOR CREDITOR ANDREW BROWN:** Christopher J Langley chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com; ecf123@casedriver.com
   - **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
   - **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
   - **ATTORNEY FOR CREDITOR K.M.R and DEFENDANT AND PETITIONING CREDITOR JONATHAN STEVEN RICHARDS:** John H Mitchell    johnmitchelllaw@yahoo.com
   - **ATTORNEY FOR CREDITOR KEVIN E ROBINSON and CREDITOR RYAL W RICHARDS:** Kevin E Robinson    robinsonlawoffice@yahoo.com
   - **U.S. TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
   - **ATTORNEY FOR CREDITOR EUGENE V ZECH:** Eugene V Zech    evzechlaw@aol.com


2. **SERVED BY UNITED STATES MAIL**:

| ALLEGED SECURED CREDITOR | ALLEGED SECURED CREDITOR / POC ADDRESS | ALLEGED SECURED CREDITOR |
|---|---|---|
| LAWRENCE REMSEN, C-67186 CIM MH-159-L POST OFFICE BOX 368 CHINO, CA 91708 | LAWRENCE REMSEN C-67186 P.O. BOX 368 CHINO, CA 9170 | LAWRENCE REMSEN C-67186 CIM MH 159-L P.O. BOX 368 CHINO, CA 91708 |
| **ALLEGED SECURED CREDITOR / POC ADDRESS** LAWRENCE REMSEN C-67186 ALPHA (CIM) MH 156-L P.O. BOX 368 CHINO, CA 91708 | **ATTORNEY FOR DEFENDANT, JONATHAN STEVEN RICHARDS, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OR CO-TRUSTEE OF THE REMSEN FAMILY TRUST** JOHN H MITCHELL, ESQ. LAW OFFICES OF JOHN H. MITCHELL 333 CITY BLVD. WEST, SUITE 2130 SUITE 2130 ORANGE, CA 92868 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.