FILED & ENTERED

MAY 18 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>ALICE MARIE RICHARDS<br><br>           Debtor | Case No.: 8:21-bk-10635-SC<br><br>Chapter: 7<br><br>**MEMORANDUM OF DECISION RE: MOTION TO RECUSE HON. SCOTT C. CLARKSON AND REQUEST FOR STAY OF PROCEEDINGS**<br><br>Date: May 17, 2023<br>Time: 11:00 a.m.<br>Ctrm: 5B |

This is the motion of debtor, Alicia Marie Richards ("Debtor") to recuse Judge Scott C. Clarkson, and for a stay of further proceedings. Judge Clarkson could have resolved the motion himself, as he had done before. But instead to maintain all appearances of propriety the motion was reassigned to the undersigned for resolution. The motion is opposed by the chapter 7 trustee, Richard Marshack ("Trustee"). Debtor, as was her right, filed this motion apparently without assistance of counsel, but this has made a concise timeline and deciphering the nature of some

1

of the allegations, difficult. Nevertheless, the court believes the following is an accurate synopsis:

## 1. Background

On March 12, 2021, Debtor filed a voluntary Chapter 7 petition initiating this case. Originally, this case was before the Hon. Erithe Smith, who had presided over Debtor's prior chapter 13 case. Upon Judge Smith's retirement, the case was reassigned to Judge Clarkson on September 1, 2022.

On September 6, 2022, Debtor filed a motion to recuse Judge Clarkson based, at least in part, on remarks allegedly made by Judge Clarkson suggesting that Debtor was venue shopping and causing undue delay. Trustee opposed that motion as well. Judge Clarkson issued a detailed order finding Debtor's motion meritless and so denying it on September 14, 2022.

On November 21, 2022, Judge Clarkson issued a turnover order based upon Debtor's lapsed homestead exemption pursuant to *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1198-99 (9th Cir. 2012). In *Jacobson*, the Ninth Circuit noted, citing Cal. Civ. Proc. Code §704.720(b), that "[i]f the debtor does not reinvest his proceeds in a new homestead within six months of receipt, they lose their exempt status." *Id.* In this case, Debtor received a check from Trustee for $300,000 representing a portion of homestead sales proceeds. Judge Clarkson found that Debtor failed to timely reinvest these funds, and, therefore, held that the funds lost their exempt status. Consequently, Judge Clarkson ordered the $300,000 in lapsed homestead exemption funds to be returned to the estate. Debtor did not comply with that order.

On January 12, 2023, Judge Clarkson issued an order finding Debtor in civil contempt stemming from Debtor's willful failure to comply with the court's turnover order, failure to account for the proceeds and requiring her incarceration pending compliance (or proof of impossibility). Debtor remains incarcerated under

that order. It should be noted that prior to Judge Clarkson's contempt order, Judge Smith had also issued a contempt order against Debtor for failing to comply with a different turnover order. (See dkt. #554); but reportedly that contempt order was later withdrawn.

Debtor filed the present motion to recuse Judge Clarkson on April 20, 2023. Debtor argues that Judge Clarkson is biased against her and should not preside over this case. This motion, according to Debtor, was prompted in part by Judge Clarkson's alleged off-handed comments. For example, Judge Clarkson, allegedly remarking upon Debtor's incarceration, compared her to her father, who was apparently also incarcerated (reportedly on a murder or manslaughter conviction). According to Debtor, Judge Clarkson also made dismissive and prejudicial remarks about the merits of her case, noting her *pro se* status, and mentioned the many appeals filed by Debtor. Debtor also alleges that Judge Clarkson refused her a hearing on her inability to comply with the turnover order as well as her request for release from custody in order to be with her terminally ill mother. Additionally, Debtor makes some vague allegations regarding failure of adequate notice of various hearings. Taken together, Debtor argues that she has been denied due process.

Further, Debtor argues that Judge Clarkson had an initially undisclosed prior professional relationship with Trustee's attorney, Tinho Mang ("Mang"). Mang, while a law student, served as Judge Clarkson's judicial extern for two summers, most recently in 2017. Judge Clarkson allegedly made complimentary statements directed toward Trustee and his counsel on the record and allowed Trustee extra (and in Debtor's view improper) time to respond to Debtor's *ex parte* motion to stay the compromise between Trustee and one Lucian Rusu. According to Debtor, these circumstances in sum should cause a reasonable person to question Judge Clarkson's impartiality in this case.

## 2. Legal Standards

Pursuant to 28 U.S.C. § 455(a), a judge must disqualify himself if his impartiality might reasonably be questioned. "It is a general rule that the appearance of partiality is as dangerous as the fact of it." *U.S. v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980). But in the absence of a legitimate reason to recuse himself, a judge should participate in the cases he is assigned. *U.S. v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008). If it is a close case, the balance tips in favor of recusal. *Id*.

Recusal is appropriate where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014) citing *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008); see also *Holland*, 519 F.3d at 913[section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits]. The appearance of impropriety can be enough for recusal; actual bias is not necessary. *Id*. citing *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 864-65 (1988); *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993). Appearance is evaluated by looking at how the conduct would be seen by a reasonable person, not someone "hypersensitive or unduly suspicious." *Id*. citing *Holland*, 519 F.3d at 913. Recusal under section 455(a) requires a fact-driven inquiry and may turn on the subtleties of a specific case. The analysis should not be focused on general comparisons to similar situations, but by an independent examination of the specific facts and circumstances at issue. *Holland*, 519 F.3d at 913.

"Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). These are almost always proper grounds for appeal, not recusal. *Id*. In *Liteky* the U.S. Supreme Court explained:

4

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id*. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" does not establish bias or partiality. *Id*. at 555-556. Ordinary efforts at courtroom administration, even if short-tempered, remain immune. *Id*. at 556.

Finally, under 28 U.S.C.§455(b)(1), "[a judge] shall also disqualify himself…[w]here he has a personal bias or prejudice concerning a party[.]" There are additional specific provisions of §455(b) that require recusal, but none are factually pertinent to this case.

### 3. Should Judge Clarkson Be Recused?

So, is this the sort of 'close case' which might require recusal as described in *Holland* or is this case closer to the sort of impatience short of grounds for recusal as described in *Liteky*? Below we explore the showing made by Debtor.

As described above, Debtor has raised two distinct grounds for recusing Judge Clarkson: (1) Judge Clarkson's prior professional relationship with attorney Mang; and (2) Judge Clarkson's allegedly dismissive off-handed remarks about Debtor and her case, as well as alleged denial of Debtor's right to due process. Both grounds are unsupported and meritless. Neither ground, on these facts, would cause a reasonable person to believe, or to even suspect, that Judge Clarkson's impartiality is compromised or that Debtor has been denied due process. Each purported ground is explored below:

5

**A. Was Mang's Role as Extern Grounds for Recusal, or Even for Requiring an Early Disclosure?**

With respect to Mang, Debtor's position is completely baseless. Debtor incorrectly identifies Mang as Judge Clarkson's former *law clerk*. But in fact, as noted above, Mang served as a *judicial extern* to Judge Clarkson several years ago, in 2017. At most, Mang served in that position, in aggregate, for a few months as a student. The position of judicial extern is far different from that of a judicial law clerk, but for purposes of this motion, it makes no difference.

Moreover, for Debtor's edification, a judicial extern, such as Mang was in 2017, typically works most directly with the judge's law clerk(s), and mainly on rudimentary motions. Judicial externs are often invited to (and do) observe hearings. This would explain the misidentification of externs as "nephews" appearing in Debtor's reply. On occasion, especially when there is a learning opportunity, a judge will take time out to interface directly with an extern, but most of the time an extern spends in chambers is with fellow externs and the law clerks. By contrast, a judicial law clerk takes on all matters before the court and frequently engages in more in-depth communication with the judge. The level of responsibility a judicial law clerk takes on day to day is usually by orders of magnitude higher than that of a judicial extern. Judicial law clerks also typically spend several years working with a judge, as opposed to the judicial externs who spend mere months within a given chambers. Judicial law clerks are paid employees of the court. Thus, it is wrong of Debtor to allege, particularly without any evidence or personal experience to draw upon, that an extern, such as Mang, is more likely to form a closer relationship with a judge because the extern is not compensated, unlike the judge's law clerk.

"The existence of a prior relationship—whether a personal or professional connection—between a judge and a lawyer or litigant 'does not by itself require recusal.' *See, e.g.*, *In re Menchaca*, 2017 WL 58988036, at *5 (C.D. Cal. 2017) [finding no error where a court denied a motion to disqualify the judge where

6

counsel for appellees was the judge's former extern] [.]" *Golden v. Kipperman (In re Golden),* 2019 U.S. Dist. LEXIS 203484 at *5 (S.D. Cal. 2019).

    As noted in Trustee's opposition brief, Debtor has badly mischaracterized the relationship between Mang and Judge Clarkson. Debtor paints a picture of a close-knit personal and perhaps more than professional relationship between Mang and Judge Clarkson. No evidence is offered. But far more realistic is Trustee's opposition brief, which characterizes the relationship between Mang and Judge Clarkson as certainly familiar, maybe even friendly, but nevertheless professional, observing the appropriate professional distance, much in the same way Judge Clarkson interacts with other members of the Central District bar and bench. Indeed, the role of extern as was occupied by Mang is not dissimilar to professor and student and is not even unusual. Likely every bankruptcy judge in the Central District employs one or more externs in chambers at any given time. If filling the role of extern were to automatically disqualify students from thereafter appearing before their judge, it would be a far less useful educational device and professionally prohibitive to the extern, particularly in a relatively small group such as the bankruptcy bar of the Santa Division of the Central District. Moreover, it appears in Trustee's opposition that a voluntary(but not mandatory) period of at least one to two years was observed after the externship where he avoided any court appearance in cases before Judge Clarkson to bolster the appearance of propriety yet further; and in any event, this case was not even filed until about four years after the externship, well separating the events and completely dispelling even the smallest hint of impropriety. This fortifies the conclusion that both Judge Clarkson and Mang always observed all proprieties. Debtor has failed to demonstrate any actual or potential conflict of interest warranting Judge Clarkson's recusal with respect to his prior professional relationship with Mang.

    Debtor, in her reply, also elaborates on another supposed instance of favoritism toward Mang, and by extension Trustee, allegedly displayed by Judge

Clarkson. On March 28, 2023, Debtor filed a handwritten declaration requesting a hearing to argue the defense of impossibility to comply with Judge Clarkson's turnover order. (*See* dkt. #1264). Trustee filed a reply to Debtor's declaration arguing, among other things, that Debtor's declaration was grossly inaccurate in its accounting and was contradicted by evidence in Trustee's possession. (*See* dkt. #1266). Upon review of both Debtor's declaration and Trustee's response, Judge Clarkson denied Debtor's request for a hearing without prejudice. (*See* dkt. #1270). According to Debtor, Judge Clarkson simply agreed with Trustee's opposition without giving Debtor an opportunity to respond. As such, Debtor argues, she remained incarcerated without justification because, in her mind, she had set forth facts tending to show her inability to comply with the turnover order.

But reality was different. Judge Clarkson's order denying Debtor's request for a hearing reflects a straightforward, dispassionate, and unbiased analysis. Judge Clarkson noted that statements in the "Accounting" portion of Debtor's declaration "appear to contradict Debtor's prior testimony, under oath." (*See* dkt. #1270, p. 2, lns. 7-8). For example, Judge Clarkson observed, "in §II, she appears to indicate that she has an estimated $10,000 in her purse and notes that it 'is not accounted for since incarcerated' [Dk. 1264, pg. 9]; however, she previously testified at her judgment debtor exam that she did not have such funds in her purse." (*Id.* at lns. 8-11). Judge Clarkson further observed that the "Accounting" was lacking in detail and was far too broad to constitute an accounting sufficient to purge Debtor's contempt. (*Id.* at lns. 23-25). Recognizing that Debtor was apparently acting without counsel, Judge Clarkson added, "Debtor must provide a detailed breakdown or explanation, containing dates, amounts, and vendors identified by name sufficient to enable Trustee to determine how and where the funds were spent or where they presently are, to enable Trustee to recover any existing balance." (*Id.* at lns. 25-28). Finally, noting that Trustee had been in communication with Debtor's counsel, and understanding that Debtor's counsel required additional time to gather the relevant

documentation, Judge Clarkson saw no cause to advance the status conference on the turnover order. (*Id.* at p. 3, lns. 1-10). Again, the court does not detect even a trace of bias toward Trustee in denying Debtor's request for a hearing.

Debtor also argues that either Trustee or Judge Clarkson should have disclosed that Mang was an extern for Judge Clarkson in 2017. But no evidence or citation to authority is offered and such disclosure is not a practice that this court has observed in 18 years on the Central District bench, nor is it one likely to be adopted. Employment of student externs is so common and benign that absence of disclosure in any case cannot reasonably be viewed as a basis for suspicion, as Debtor assumes.

**B. Did Judge Clarkson Deny Due Process or Exhibit Antagonism or Bias Requiring Recusal?**

Regarding Debtor's second basis for Judge Clarkson's recusal, Debtor has again failed to identify any comments or other conduct from which a reasonable person would conclude that Judge Clarkson's impartiality is legitimately open to question, or that Judge Clarkson has denied Debtor her right to due process. Debtor believes certain remarks allegedly made by Judge Clarkson demonstrate that he is biased against Debtor to such an extent as to deny her due process of law under the Fourteenth Amendment, which Debtor argues, warrants Judge Clarkson's recusal pursuant to 28 U.S.C. §455(b)(1). Specifically, aside from the off-handed remarks allegedly made by Judge Clarkson (described above), Debtor also points to Debtor being denied a hearing and opportunity to put on evidence on her inability to comply with the court's turnover order (discussed above), and to being denied release from incarceration to visit with her terminally ill mother.

Debtor argues that while incarcerated when she has attempted to calendar a motion, the court takes it off calendar. Debtor also argues that the court has failed to keep her adequately noticed of proceedings in her case. Moreover, Debtor claims that Judge Clarkson had her moved from the Santa Ana jail to a jail in San

Bernardino, allegedly to intentionally keep her farther away from her family. But are these allegations well founded? Debtor bears the burden to show some evidence and that appears entirely lacking.

In Debtor's declaration, attached to her May 15, 2023, reply, Debtor casually argues that during the January 12, 2023 status conference on the turnover order, Judge Clarkson failed to hold trustee's counsel, D. Edward Hays, in contempt for a vague alleged transgression. Debtor argues that she attempted, in vain, to capture the court's attention so that she could expose Mr. Hays' alleged contempt. The failure to even acknowledge her, Debtor argues, is emblematic of the bias Judge Clarkson allegedly holds against her. This court takes such allegations quite seriously as they go to the foundational integrity of the court itself. As such, this court has taken the time to review the lengthy January 12, 2023, related hearings in this matter in their entirety. Debtor's allegations regarding Mr. Hays, as noted, are vague, and the court, upon review, could not intuit any basis for Debtor's allegation. Quite apparent, however, was Debtor's evasive, combative, and passive-aggressive attitude toward both Mr. Hays and Judge Clarkson throughout the hearing. This demeanor, at least as far as the hearings this court has reviewed (discussed further below), is regrettably Debtor's chosen manner. Throughout the increasingly tense proceeding, Judge Clarkson maintained his composure within the standards articulated in *Liteky*, and displayed admirable compassion for Debtor's precarious situation, but Debtor refused to accept any of the proverbial lifelines presented her and was taken into custody.

This court next reviewed the recorded transcript of the January 19, 2023, hearing on the Status Conference re: Turnover of Lapsed Homestead Funds, which occurred approximately one week after Debtor's initial incarceration. According to Debtor, in this hearing, Judge Clarkson displayed his alleged bias against Debtor in several instances, including Judge Clarkson's preference for Debtor to be moved to San Bernardino. This court finds nothing in the recorded transcript to support

Debtor's version of events. In fact, as noted above, it was again Debtor who displayed disrespect for the court by repeatedly interrupting Judge Clarkson, and when prompted to give "yes or no" answers to Judge Clarkson's questions, Debtor took on her familiar combative/evasive demeanor, which understandably tried Judge Clarkson's patience. Even after several admonitions against further interruptions, Debtor persisted in her interruptions throughout the hearing. What is crystal clear is that Judge Clarkson displayed no bias against Debtor, and indeed, possibly due to her *pro se* status, attempted to assist her in how she might purge her contempt. Judge Clarkson clearly indicated the steps Debtor must take to purge her contempt, and even suggested that she could (and should) file a motion to assert the defense of impossibility. Judge Clarkson encouraged Debtor and Trustee to discuss potential solutions to help purge her contempt. Judge Clarkson also clearly instructed Trustee's counsel to ensure that Debtor was given adequate notice of all hearings. Quite clearly at worst these allegedly biased comments are of the sort that imperfect human beings, even those elevated to be judicial officers, can be sometimes heard to make, but as held in *Liteky* and similar authority, they do not constitute grounds for recusal. *Liteky* 510 U.S. at 555-56.

At a more recent hearing on April 11, 2023, in the related adversary proceeding of *Marshack v. SchoolsFirst Federal Credit Union et al* (adv. # 23-01001), Debtor claims in her motion that Judge Clarkson refused to allow her to make an appearance. This court has also reviewed the recorded transcript of this hearing, and nowhere was Debtor denied an opportunity to appear by Judge Clarkson. In fact, somewhat confusingly, attorney Bruce Boice made a formal appearance on the record on Debtor's behalf. Thus, there does not seem to be anything here either.

///

///

## 4. Should A Temporary Stay of Proceedings Be Granted?

Debtor also requests a stay of proceedings pending outcome of this recusal motion. However, Debtor's request for stay is ambiguous because it is couched as a request for a stay *pending appeal*. Does that mean an appeal of this motion? Or does Debtor mean her appeal of the first recusal motion? It is unclear why Debtor wants a stay of proceedings and how long such a hypothetical stay would last. Four elements are usually required to obtain a stay. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (Under the standard for a stay pending appeal, "a court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.")  But Debtor has not shown any likelihood of succeeding on an appeal of either recusal motion nor similarly, has she shown that irreparable harm will be suffered if a temporary stay is not imposed. Debtor has also not shown that other interested parties in this case would not be harmed to a greater degree than Debtor by a delay caused by a stay of proceedings. Finally, Debtor also argues that her fundamental due process right to a fair and impartial court is compromised, and that public policy favors granting a temporary stay. But Debtor has not demonstrated, in any way, that she is the victim of bias by Judge Clarkson nor that she has been denied due process, nor are any persuasive (nor indeed any) grounds for recusal offered.  Stripped of the verbiage, what Debtor really seeks here is an early ticket out of jail without purging the contempt which landed her there in the first place.  Consequently, there does not appear to be any reason to grant Debtor a stay of proceedings under the rubric of recusal.

///

///

### 5. Conclusion

In sum, Debtor has not pointed to any instance of judicial misconduct or anything on Judge Clarkson's part that would cause a reasonable person to conclude that Debtor's right to an impartial judicial officer is even potentially compromised. Debtor has not demonstrated that Mang, and by extension Trustee, has gained any unfair advantage because of his prior and very common professional relationship with Judge Clarkson. Debtor has also not identified anything Judge Clarkson has said or done that would objectively cause a reasonable person to question Judge Clarkson's impartiality in this case. What is obvious instead is that Debtor is understandably unhappy with her current situation, but this court sees nothing in this record that suggests that situation in any way is attributable to bias against Debtor that would amount to a basis for recusal. Accordingly, this motion is **DENIED**. These proceedings are returned to Judge Clarkson in their entirety.

###

Date: May 18, 2023

Theodor C. Albert
United States Bankruptcy Judge

13